Jennifer Stisa Granick (State Bar No. 168423)
Matt Zimmerman (State Bar No. 212423)
Marcia Hofmann (State Bar No. 250087)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, California 94110
Telephone:  (415) 436-9333
Facsimile:  (415) 436-9993
Email:      jennifer@eff.org
            mattz@eff.org

Ann Brick (State Bar No. 65296)
Michael T. Risher (State Bar No. 191627)
AMERICAN CIVIL LIBERTIES FOUNDATION
   OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, California 94111
Telephone:  (415) 621-2493
Facsimile:  (415) 255-8437
Email:      abrick@aclunc.org
            mrisher@aclunc.org

Attorneys for Plaintiffs LONG HAUL, INC. and
EAST BAY PRISONER SUPPORT

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONG HAUL, INC. and EAST BAY PRISONER SUPPORT,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES OF AMERICA; VICTORIA HARRISON; KAREN ALBERTS; WILLIAM KASISKE; WADE MACADAM; TIMOTHY J. ZUNIGA; BRUCE BAUER; MIKE HART; LISA SHAFFER; AND DOES 1-25,<br><br>    Defendants. | Case No.: 09-00168-JSW<br><br>**FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

**PRELIMINARY STATEMENT**

1.     Long Haul, Inc. ("Long Haul"), also known as the Long Haul Infoshop, is an all-volunteer collective that provides a lending library, a bookstore, Internet-connected computers, and a community space to members of the public from its two-story storefront, located at 3124 Shattuck Avenue in Berkeley, California. Long Haul also publishes Slingshot, a quarterly newspaper, out of an office on its second floor.

2.     The East Bay Prisoner Support group ("EBPS") occupies an office on the first floor of Long Haul but is otherwise unaffiliated with Long Haul. EBPS publishes a newsletter of prisoners' writings to the general public, and distributes literature to prisoners. EBPS provides support for prisoners, including LBGT, and female prisoners, on a national and international level, including prisoners in California and Texas.

3.     On August 27, 2008, six or more law enforcement officers from the University of California at Berkeley Police Department and the Federal Bureau of Investigation ("raid team"), all of whom are Defendants herein, raided Long Haul. Despite the dictates of the Fourth Amendment that "no warrant shall issue without . . . particularly describing the place to be searched, and the persons or things to be seized," raid team members sought, obtained and acted upon a facially invalid warrant that purported to authorize officers to enter the building where Plaintiffs are located and conduct a general seizure and search of "all electronic data" for "evidence."

4.     The illegality of this general warrant was especially obvious and egregious for two reasons. First, the officers had no reason to suspect Plaintiffs of any wrongdoing and presented no evidence to the issuing magistrate alleging Plaintiffs were involved in any illegal acts. The Statement of Probable Cause presented to the magistrate only alleged improper transmission, by an unknown member of the public, of emails through a public-access computer located at Long Haul to U.C. Berkeley scientists performing research on animals. Nevertheless, Defendants sought and obtained a warrant to search and seize and did search and seize materials that were not accessible to the public and that were unrelated to any justification presented in support of the application for the warrant. Second, the officers left important information out of the Statement of Probable Cause.

They did not inform the magistrate that both Long Haul and EBPS are distributors of information to the public and that, accordingly, federal and state law protects their computers from seizure except under special conditions not present here. Nor did the officers inform the magistrate that EBPS was unaffiliated with Long Haul but maintained office space in the building.

5. At a time when Long Haul was closed, the raid team forced entry through the back door of Long Haul. The raid team looked through the list of people who had borrowed books from the library, looked at book sale records, seized all of the public access computers from a space on the second floor of Long Haul, broke the locks on the Slingshot office, took the computers and digital storage media used for the publication of that newspaper, unscrewed the lock on the door to the EBPS office, and took the computer used by that organization for the publication of prisoner-rights information.

6. Plaintiffs are informed and believe that Defendants and/or their agents have copied the data on the computers and storage media that they seized, have searched those materials, and continue to search some of them.

7. Long Haul and EBPS seek the following relief: (1) to regain control over their information; (2) to preserve the confidentiality of their private information, the private information of their members and patrons, and the information collected or created for public dissemination; (3) to prevent any retaliation, monitoring, or surveillance enabled by the seizure of this information; and (4) to obtain compensation for the invasion of these interests that has already occurred.

**JURISDICTION**

8. This case arises under the United States Constitution, under Title 42 of the United States Code § 1983 (civil rights action) and § 2000aa *et seq.* (Privacy Protection Act), under Title 28 of the United States Code §§ 2201 and 2202 (declaratory relief), and under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

9. This Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 (declaratory relief), and 42 U.S.C. § 2000aa-6(h) (Privacy Protection Act).

## INTRADISTRICT ASSIGNMENT AND VENUE

10. The unlawful acts alleged herein occurred in the County of Alameda, California, which is within this judicial district. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (e) and assignment to either the San Francisco or Oakland Division is proper pursuant to Local Rule 3-2(d).

## PARTIES

11. Plaintiff Long Haul, Inc., DBA Long Haul ("Long Haul") is a non-profit corporation under § 501(c)(3) of the Internal Revenue Code. Long Haul has operated a library, bookshop and community space in Alameda County, California for 15 years. It is located at 3124 Shattuck Avenue in the City of Berkeley.

12. Plaintiff East Bay Prisoner Support ("EBPS") is an unincorporated prisoner-rights group that provides information to the public about Bay Area prison conditions, prison abolition, and prisoner support work, as well as information on national and international prisoner support activities. EBPS occupies an office on the first floor of Long Haul.

13. Defendant United States of America is the United States, its departments, agencies, and entities.

14. Defendant Victoria Harrison is Associate Vice Chancellor/Chief of Police of the University of California at Berkeley Police Department ("UCPD"). UCPD's primary duty is the enforcement of law within the campus of the University of California at Berkeley and an area within one mile of the exterior boundaries of that campus. Defendant Harrison is responsible for the operations of the UCPD and for training, supervising and controlling UCPD officers. Plaintiffs are informed and believe that Defendant Harrison failed to adequately train, supervise and control Defendants Alberts, Kasiske, MacAdam, Bauer and Zuniga, causing said Defendants to violate Plaintiffs' constitutional and statutory rights as alleged herein. At all relevant times, Defendant Harrison acted under color of law and in the course and scope of her employment with the UCPD. She is sued in her official capacity.

15. Defendant Sergeant Karen Alberts is a Sergeant of Investigations at UCPD. She participated in the execution of the warrant as more fully described herein. Plaintiffs are informed and believe that Defendant Alberts is responsible for supervising and controlling the other UCPD officers involved in this search and seizure. At all relevant times, Defendant Alberts acted under the color of law and in the course and scope of her employment with the UCPD. She is sued in her individual and official capacities.

16. Defendant Detective William Kasiske is a UCPD police officer. Detective Kasiske applied for and obtained the August 26, 2008 search warrant at issue in this case. Defendant Kasiske also participated in the execution of the warrant as more fully described herein. At all relevant times, Defendant Kasiske acted under the color of law and in the course and scope of his employment with UCPD. He is sued in his individual and official capacities.

17. Defendant Detective Wade MacAdam is a UCPD police officer. He participated in the execution of the warrant as more fully described herein. At all relevant times, Defendant MacAdam acted under the color of law and in the course and scope of his employment with the UCPD. He is sued in his individual and official capacities.

18. Defendant Corporal Timothy J. Zuniga is a UCPD police officer. He participated in the execution of the warrant as more fully described herein. At all relevant times, Defendant Zuniga acted under the color of law and in the course and scope of his employment with the UCPD. He is sued in his individual and official capacities.

19. Defendant Officer Bruce Bauer is a UCPD police officer. He participated in the execution of the warrant as more fully described herein. At all relevant times, Defendant Bauer acted under the color of law and in the course and scope of his employment with UCPD. He is sued in his individual and official capacities.

20. Defendant Special Agent Lisa Shaffer is a special agent of the Federal Bureau of Investigation ("FBI"). Plaintiffs are informed and believe that Shaffer regularly investigates threats to university-employed scientists who use animals in their research, including seeking search and arrest warrants. For example, on February 19, 2009, Shaffer obtained a criminal complaint in this District against four defendants for using force, violence or threats to interfere with the operations

of the University of California in violation of 18 U.S.C. § 43. Plaintiffs are informed and believe that Shaffer participated in obtaining and executing the search warrant in this case. At all relevant times, Defendant Shaffer acted under the color of law and in the course and scope of her employment with the FBI. She is sued in her individual and official capacities.

21. Defendant Mike Hart participated in the events described herein, including the investigation leading up to the raid and the raid itself, as a deputized law enforcement officer under the authority and control of the FBI. Defendant Hart is a retired member of the Alameda County Sheriff's Department, where he held the rank of Lieutenant. He participated in the execution of the warrant as more fully described herein. At all relevant times, Defendant Hart acted under the color of law and in the course and scope of his employment with the FBI. He is sued in his individual and official capacities.

22. Plaintiffs are ignorant of the true names and capacities of Defendant DOES 1-25 inclusive and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of DOES 1-25 when they have been ascertained.

23. Plaintiffs are informed and believe that each of the Defendants caused, and is liable for, the unconstitutional and unlawful conduct and resulting injuries alleged in this complaint, by, among other things, personally participating in said conduct and/or acting jointly with others who did so and/or by authorizing, acquiescing or setting in motion policies, plans or actions that led to the unlawful conduct taken by employees under his or her direction and control. Plaintiffs are informed and believe that Defendants' actions were pursuant to a policy, custom, or usage of the UCPD, the FBI or other related agencies. Each of these Defendants was acting in concert with every other Defendant or was the agent and employee of every other Defendant, acting within the course and scope of their agency or employment with every other Defendant.

**FACTUAL ALLEGATIONS RELATED TO ALL COUNTS**

24. Long Haul was founded as an unincorporated association in 1979 by Alan Haber, one of the founding members of the 1960's new-left group Students for a Democratic Society. It leased the premises at 3124 Shattuck Ave in Berkeley. Long Haul was named after the long hallway that runs through its space; the name is also a reference to Long Haul's vision of the process towards achieving individual political freedom. Long Haul was incorporated as a public benefit corporation in 1993 and obtained a determination from the IRS that it was tax exempt in 1994.

25. Long Haul educates the public about matters relevant to peace, justice and history through its lending library and community center. Long Haul also sells "zines" and used books about subjects relevant to peace, justice and history and provides the public with free computer use, Internet access, and resources for creating magazines.

26. Long Haul serves as a meeting space and resource hub for local activist groups and members of the community. The space hosts Pilates classes, acupuncture consultations, knitting circles, radical movie nights, anarchist study groups, and other events.

27. Long Haul publishes Slingshot, a quarterly newspaper. Slingshot is an all-volunteer project of Long Haul. Slingshot has been in continuous publication since 1988. Slingshot has historically reported on the policies of UC Berkeley and continues to do so. These reports are often highly critical of the University, UCPD officers, and their practices.

28. In 1993, Slingshot, which had previously been located on the University of California Berkeley campus, took up residence at, and became part of, Long Haul. The newspaper is distributed by mail subscription and is available at 200 independent bookstores and small businesses around the United States. It is also available at Long Haul and other locations around Berkeley, California. There are many past and current copies of Slingshot available in a newsrack at the front entrance of Long Haul.

29. Slingshot's office is on the second floor of Long Haul and marked with a sign that clearly reads "Slingshot." The primary items within the small office are bookcases and file cabinets

1   with back issues of Slingshot as well as items used in the publication of Slingshot. Before August
2   27, 2008, there were two computers in the Slingshot office. Those computers were not accessible to
3   the general public. The Slingshot office is locked when none of the Slingshot workers are present.
4   On and before August 27, 2008, those computers were off-limits to members of the public and to
5   anyone who did not work on the Slingshot newspaper.

6   30.   Long Haul offers an Internet room with computers providing online access to the
7   public, especially to those otherwise unable to afford it. The Internet room is located on the second
8   floor of Long Haul, up a staircase separate from the staircase leading to the Slingshot office. Before
9   August 27, 2008, the Internet room was unlocked and contained approximately four operative
10  Internet-connected computers, two hard drives, and eight non-operative computers that were not
11  connected to monitors.

12  31.   Long Haul does not create, collect or keep records that identify individuals who visit
13  Long Haul, including individuals who use the public access computers. This fact would be
14  apparent to anyone who visited Long Haul, since they would not be asked to sign in. Any member
15  of the public can use the space when it is open, much like a public library.

16  32.   East Bay Prisoner Support's office is on the first floor of Long Haul and is marked
17  with a sign indicating that that space is the EBPS office. On and before August 27, 2008, the EBPS
18  office was kept locked and was not accessible to members of Long Haul or to the public.

19  33.   EBPS is a volunteer-run prisoner rights project. It is not affiliated with Long Haul.
20  EBPS collects information about prisoner issues to disseminate to the public, both on its own
21  behalf and acting in conjunction with other organizations. EBPS publishes a newsletter of prisoner
22  writings. It also helps publish Prison Action News and other small pamphlets. Its primary purpose
23  as a publisher of information is clearly set forth on its publicly available website at
24  http://www.myspace.com/ebps, which reads:

25  > We serve as a resource center that provides information about bay area prison
    > abolition and prison support work, as well as some information on national and
26  > international prisoner support activities.

27  34.   This website, including the description of EBPS's activities, was available to the
28  public prior to and including August 26, 2008, when the warrant in question here was issued, and

on August 27, 2008, when the raid team executed the warrant. It remains available as of the date of the filing of this Complaint.

## THE AUGUST 27TH RAID

35.    On August 26, 2008, Defendant Detective William Kasiske applied for and obtained a search warrant from the Alameda County Superior Court. The warrant purported to authorize the search of "premises, structures, rooms, receptacles, outbuildings, associated storage areas, and safes situated at the Long Haul Infoshop, 3124 Shattuck Avenue, Berkeley, CA." The warrant authorized search for and seizure of documents containing the names or other identifying information of "patrons who used the computers at Long Haul" and of electronic processing and storage devices. The warrant also purported to authorize officers to transfer the booked evidence to a secondary location for searching and to search the computers beyond the ten-day issuance period. The warrant stated that the search authorized was "for evidence."

36.    The warrant was improper at least because it (1) authorized searches and seizures of areas and effects for which the affidavit failed to provide probable cause, and (2) did not specifically describe the place to be searched or the things to be seized.

37.    Specifically, the Statement of Probable Cause established no reason to suspect Plaintiffs of any wrongdoing and presented no evidence to the issuing magistrate alleging Plaintiffs were involved in any illegal acts. Rather, the Statement of Probable Cause only alleged improper use by an unknown member of the public of a public-access computer located at Long Haul. Despite this, Defendant Kasiske requested and obtained a warrant applying to all the rooms at Long Haul, even those inaccessible to the general public, and all electronic processing and storage devices, even those not used by or accessible to the general public. Neither the Statement of Probable Cause nor the warrant made any reference to EBPS, nor did the warrant authorize a search of EBPS offices or other areas that were not under the control of Long Haul.

38.    Defendant Kasiske's acts and omissions caused the warrant to improperly issue. Defendant Kasiske omitted material information from the Statement of Probable Cause. He failed to inform the magistrate that Long Haul contains four locked offices, including the Slingshot and

EBPS offices, which are not accessible to the public. He failed to inform the magistrate that EBPS occupies office space at Long Haul and is not affiliated with Long Haul. He failed to inform the magistrate that Long Haul publishes a newspaper or that EBPS disseminates information to the public, and thus that the Slingshot and EBPS computers are not subject to seizure except under special conditions not present here. As a result, the warrant that issued authorized a general search of places for which there was no probable cause, and seizure of items that could not legally be seized.

39. On Wednesday morning, August 27, 2008, at least four officers from the UCPD (Defendants Kasiske, MacAdam, Alberts, and Bauer) and at least two officers acting on behalf of the Federal Bureau of Investigation (Defendants Shaffer and Hart) (collectively "raid team") arrived at Long Haul. No one was inside. The raid team contacted the landlord, who refused to allow them entry. They then entered through the front door of the Homeless Action Center next door, went through that office to the back of Long Haul, and forced their entry into Long Haul through its secured back door.

40. An attorney with an office nearby and Long Haul members arrived at the scene while officers were conducting the raid. Despite the request of Long Haul members, the raid team refused to show them any warrant.

41. The raid team spent over two hours searching the premises without allowing Long Haul members entry to the building. Long Haul members were able to view the actions of the raid team through the plate glass window at the front of Long Haul. Plaintiffs are informed and believe, and on that basis allege, that, while inside, the raid team went through every room, both public and locked – cutting, crowbarring, or unscrewing the locks. The raid team cut locks off of cabinets behind the front desk and looked through the log of individuals that borrowed books from the library and through the log of book sales, both of which were stored there.

42. The raid team removed every computer from the building. They removed all the computers from Long Haul's un-monitored public space where people come to use the machines. They also removed all the computers from closed, locked offices. The computers taken from the

locked offices were used for the day-to-day operation of Plaintiffs, including for the publication of information and for other education efforts.

43. Specifically, during the raid, the raid team broke open the locked door of the Slingshot office and seized Slingshot computers.

44. The Slingshot computers contained materials upon which information is recorded (documentary materials), including materials that were prepared or produced in anticipation of communicating the materials to the public, that were possessed for the purpose of communicating these materials to the public, and which contained mental impressions, conclusions, opinions, or theories of the person(s) who prepared or produced them (work product materials). The documentary and work product materials were possessed in connection with a purpose to disseminate to the public a newspaper or other similar form of public communication.

45. Defendants knew or should reasonably have known at the time of the raid that materials on the Slingshot computers were possessed in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication.

46. Plaintiffs are informed and believe that the raid team searched the Slingshot filing cabinets, including files, folders, and documents stored therein. The raid team left photographs that had been archived in the filing cabinet piled on the desk in the Slingshot office, with a humorous *circa* 1994 photo of some nude individuals in face masks on the top of the pile, presumably to send the message to Long Haul members that the contents of the filing cabinet had been searched.

47. During the raid, the raid team damaged the door jamb to the EBPS office and also unscrewed the lock fastened on the door of the EBPS office. The raid team entered the EBPS office and seized the EBPS computer.

48. The EBPS computer contained documentary and work product materials possessed in connection with a purpose to disseminate to the public a newspaper or other similar form of public communication, including information intended for prisoners, and information from prisoners intended for the general public.

49. Defendants knew or should reasonably have known that materials on the EBPS computers were possessed in connection with a purpose to disseminate to the public a newspaper,

-11-

1  book, broadcast, or other similar form of public communication, including, specifically,
2  newsletters, 'zines and pamphlets.

3      50.    The raid team also seized miscellaneous CDs, computer disks and a USB drive.

4      51.    The raid team left the EBPS office in disarray. EBPS had physically organized its
5  voluminous mail in separate, categorized piles. The raid team left all the mail in one jumbled pile.

6      52.    After the search was completed, the raid team left a copy of the warrant and an
7  inventory of items seized.

8      53.    Plaintiffs are informed and believe that Doe Defendant agents of UCPD and/or the
9  Federal Bureau of Investigation ("search agents"), who may or may not include members of the
10 raid team, have copied or caused to be copied the data from the computers and storage media
11 seized from Long Haul, the Slingshot office, and the EBPS office. The devices were returned to
12 Plaintiffs following the raid, but Defendants have illegally retained copies of the data.

13     54.    On October 22, 2008, counsel for Plaintiffs informed the UCPD and FBI by letter
14 that the Slingshot computers are protected by the Privacy Protection Act, 42 U.S.C. §§ 2000aa *et*
15 *seq*. On October 27, 2008, counsel for Plaintiffs informed the UCPD and FBI by letter that the
16 EBPS computers are also protected by that same act. Both letters asked the UCPD and FBI to cease
17 any search of the computer data and destroy any copies. UCPD refused. The FBI did not respond.

18     55.    Plaintiffs are informed and believe that between August 27, 2008 and May 19, 2009,
19 some or all of the Defendants unnecessarily seized, searched and retained private information
20 and/or searched data copied from the devices. After May 19, 2009, pursuant to stipulation between
21 the parties, this Court ordered Defendants to refrain from searching any of the data that Defendants
22 seized or copied from Slingshot and EBPS without advance notice to Plaintiffs. (*See* Docket 38).
23 No such restrictions have been imposed on Defendants with regard to the data copied from the
24 computers Defendants seized from the public access area, and Plaintiffs are informed and believe
25 that Defendants have searched and continue to search that data.

26     56.    As the warrant did not specifically describe what Defendant search agents are
27 authorized to search for, any searching and any data retention were and continue to be
28 unconstrained and illegal.

57. Plaintiffs' ability and the ability of Plaintiffs' members to communicate with other organizations and individuals have been disrupted by the actions of Defendants. Plaintiff Long Haul's ability to publish Slingshot was disrupted by the seizure of Slingshot computers and storage media. Plaintiff EBPS's ability to provide information to the public about prisoner rights and prisoner support efforts was disrupted by the seizure of EBPS's computer and storage media. Plaintiff Long Haul's ability to lend books, sell books, host meetings and have meetings of Long Haul members and other associates was disrupted by the search of the library lending log, the sales log, the seizure of the property and the ongoing reasonable belief that Long Haul space is subject to or will be subject to further police surveillance.

58. Plaintiffs are suffering and will continue to suffer irreparable injury through the illegal retention, search, and use of their private information, and no legal remedy adequately redresses all the injuries to Plaintiffs as a result of Defendants acts set forth above.

## COUNT I

**VIOLATION OF THE FIRST AMENDMENT
OF THE UNITED STATES CONSTITUTION**

**Claim for Damages Against Defendants Alberts, Kasiske, MacAdam, Zuniga, Bauer, Hart and Shaffer in Their Individual Capacities**

**Claim for Equitable Relief Against Defendants Harrison, Alberts, Kasiske, MacAdam, Zuniga, Bauer, Hart and Shaffer in Their Official Capacities**

59. Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-58 above, as though fully set forth.

60. Defendants' above-described policies, practices and conduct have violated and continue to violate Plaintiffs' free speech and associational rights guaranteed by the First Amendment.

## COUNT II

### VIOLATION OF THE FOURTH AMENDMENT
### OF THE UNITED STATES CONSTITUTION

**Claim for Damages Against Defendants Alberts, Kasiske, MacAdam, Zuniga, Bauer, Hart and Shaffer in Their Individual Capacities**

**Claim for Equitable Relief Against Defendants Harrison, Alberts, Kasiske, MacAdam, Zuniga, Bauer, Hart and Shaffer in Their Official Capacities**

61. Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-60 above, as though fully set forth.

62. Defendants' above-described policies, practices and conduct have violated and continue to violate Plaintiffs' rights to be free from unreasonable search and seizure as guaranteed by the Fourth Amendment.

## COUNT III

### PRIVACY PROTECTION ACT, 42 U.S.C. §§ 2000aa *et seq.*

**Claim for Damages against the United States and Against Defendants Alberts, Kasiske, MacAdam, Zuniga, and Bauer in Their Individual Capacities**

63. Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-62 above, as though fully set forth.

64. Defendants' policies, practices and conduct in seizing the EBPS and Slingshot computers and storage media violated Plaintiffs' rights under the Privacy Protection Act, 42 U.S.C. §§ 2000aa *et seq*.

## COUNT IV

### DECLARATORY RELIEF UNDER 28 U.S.C. §§ 2201, 2202

**Against Defendants Harrison, Alberts, Kasiske, MacAdam, Zuniga, Bauer, Hart and Shaffer in Their Official Capacities**

65. Plaintiffs reallege and incorporate here the allegations in Paragraphs 1-64 above, as though fully set forth.

66. There exists an actual, present and justiciable controversy between Plaintiffs and

Defendants concerning their rights and duties with respect to Defendants' conduct described herein. Plaintiffs contend that Defendants violated and are continuing to violate Plaintiffs' rights under the constitution and laws of the United States through their seizure, retention of information and data seized during the raid. Plaintiffs are informed and believe that Defendants deny that their conduct violates Plaintiffs' rights under the constitution and laws of the United States. Plaintiffs fear that they are now and will again be subjected to such unlawful and unconstitutional actions, and seek a judicial declaration that Defendants' conduct has deprived and is depriving Plaintiffs of their rights under the constitution and laws of the United States.

67. This controversy is ripe for judicial decision, and declaratory relief is necessary and appropriate so that the parties may know the legal obligations that govern their present and future conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek relief from this Court as follows:

1. Issue preliminary and permanent injunctions against Defendants, prohibiting them and their officers, agents, successors, employees representatives and any and all persons acting in concert with them from searching, examining, transmitting, manipulating, transferring to others, or otherwise making use of data seized from Plaintiffs or information derived from such data and requiring that they delete, destroy, and/or expunge any data seized from Plaintiffs or information derived from such data and requiring that they identify any third parties to whom they transferred any such data or information;

2. Issue a judicial declaration that Defendants' actions as alleged in this Complaint violate the First and Fourth Amendments of the United States Constitution and 42 U.S.C. §§ 2000aa *et seq*.

3. Award Plaintiffs nominal, compensatory, special, and statutory damages, in an amount according to proof, and to the extent permitted by law;

4. Award pre-judgment and post judgment interest to the extent permitted by law;

5. Award Plaintiffs their costs and expenses, including reasonable attorneys' fees under 42 U.S.C. § 1988 and 28 U.S.C. § 2412; and

6. Award such other and further relief as is just and proper.

**DEMAND FOR JURY TRIAL**

In accordance with Fed. R. Civ. P. 38(b), and Northern District Local Rule 3-6(a), Plaintiffs hereby demand a jury trial for all issues triable by jury.

DATED: May 28, 2009

By    */s/Jennifer Granick*

Jennifer Stisa Granick (State Bar No. 168423)
Matt Zimmerman (State Bar No. 212423)
Marcia Hofmann (State Bar No. 250087)
ELECTRONIC FRONTIER FOUNDATION

Ann Brick (State Bar No. 65296)
Michael T. Risher (State Bar No. 191627)
AMERICAN CIVIL LIBERTIES FOUNDATION
  OF NORTHERN CALIFORNIA

Attorneys for Plaintiffs