JOSEPH P. RUSSONIELLO (SBN 44332)
United States Attorney
JOANN M. SWANSON (SBN 135879)
Chief, Civil Division
JONATHAN U. LEE (SBN 148792)
Assistant United States Attorney
450 Golden Gate Avenue, 9th Floor
San Francisco, California 94102
Telephone: 415-436-6909
Facsimile: 415-436-6748
Email: jonathan.lee@usdoj.gov

ATTORNEYS FOR FEDERAL DEFENDANTS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LONG HAUL, INC. AND EAST BAY PRISONER SUPPORT,<br><br>    Plaintiffs,<br><br>  v.<br><br>REGENTS OF THE UNIVERSITY OF CALIFORNIA; VICTORIA HARRISON; KAREN ALBERTS; WILLIAM KASISKE; WADE MACADAM; TIMOTHY J. ZUNIGA; BRUCE BAUER; COUNTY OF ALAMEDA; GREGORY J. AHERN; MIKE HART; FEDERAL BUREAU OF INVESTIGATION; LISA SHAFFER; AND DOES 1-25.<br><br>    Defendants. | No. C 09-0168 JSW<br><br>**MOTION TO DISMISS COMPLAINT FOR LACK OF JURISDICTION UNDER FED. R. CIV. P. 12(B)(1), FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(B)(6), OR IN THE ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT UNDER FED. R. CIV. P. 12(E)**<br><br><br>*Date:*    September 4, 2009<br>*Time:*    9:00 a.m.<br>*Place:*    Courtroom 11, 19th Floor<br>*Judge:*    Hon. Jeffrey S. White |

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

   I.   The First Amended Complaint ("FAC") (Docket No. 39).. . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   I.   Applicable Legal Standards. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       A.   Rule 12(b)(1) Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       B.   Rule 12(b)(6) Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

       C.   Rule 12(e) Motion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

   II.  Plaintiffs' Constitutional Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       A.   Claims for Monetary Damages Against Shaffer and Hart. . . . . . . . . . . . . . . . 4

           1.   When Congress Provides for a Statutory Remedy, *Bivens* Claims Are Precluded... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

           2.   The Privacy Protection Act Is Plaintiffs' Exclusive Remedy, Precluding Their Bivens Claims.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

           3.   If Any *Bivens* Claim Is Implied By The Court, The Claims Stated In The Operative Complaint Fail For Lack of Specificity, and Therefore The Claims Should Be Dismissed or Defendants' Motion For More Definite Statement Should Be Granted... . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

               a.   First Amendment Claim.. . . . . . . . . . . . . . . . . . . . . . . . . 11

               b.   Fourth Amendment Claim. . . . . . . . . . . . . . . . . . . . . . . . . 12

                   i.   Warrant claim.. . . . . . . . . . . . . . . . . . . . . . . . 13

                   ii.   Search and seizure claim. . . . . . . . . . . . . . . . . . 14

       B.   Claims Against Shaffer and Hart For Injunctive and Declaratory Relief. . . . . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1

## <u>TABLE OF AUTHORITIES</u>

2

### FEDERAL CASES

3

*Acierno v. Cloutier,*
4
   40 F.3d 597 (3rd Cir. 1994) (*en banc*)............................................ 15

*Armstrong v. Davis,*
5
   275 F.3d 849 (9th Cir. 2001) ...................................................... 16

6

*Balistreri v. Pacifica Police Dept.,*
   901 F.2d 696 (9th Cir. 1990)....................................................... 3
7

*Bell Atl. Corp. v. Twombly,*
8
   550 U.S. 544 (2007)................................................................ 3

9

*Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,*
   403 U.S. 388 (1971)................................................................ 4
10

*Brandon v. Holt,*
11
   469 U.S. 464 (1985)............................................................... 15

12

*Brown v. Li,*
   308 F.3d 939 (9th Cir. 2002), *cert. denied,* 538 U.S. 908 (2003). .................... 11
13

*Bush v. Lucas,*
14
   462 U.S. 367 (1983)............................................................. 6, 7

15

*Carlson v. Green,*
   446 U.S. 14 (1980)............................................................. 4, 5
16

*City of Los Angeles v. Lyons,*
17
   461 U.S. 95 (1983);........................................................... 15, 16

18

*Correctional Servs. Corp. v. Malesko,*
   534 U.S. 61 (2001)............................................................. 5, 7
19

*Cort v. Ash,*
20
   422 U.S. 66 (1975)................................................................ 4

21

*Crawford-El v. Britton,*
   523 U.S. 574 (1998)........................................................... 3, 14
22

*Cruz v. Kauai County,*
23
   279 F.3d 1064 (9th Cir.), *cert. denied,* 537 U.S. 1053 (2002)....................... 11

24

*Davis v. Gracey,*
   111 F.3d 1472 (10th Cir. 1997)................................................... 9
25

*Davis v. Passman,*
26
   442 U.S. 228  (1979).......................................................... 4, 5

27

*Federal Deposit Ins. Corp. v. Meyer,*
   510 U.S. 471 (1994)............................................................. 6
28

*Fourth Amendment. See United States v. Comprehensive Drug Testing, Inc.,*
   513 F.3d 1085 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Golden v. Zwickler,*
   394 U.S. 103 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hufford v. McEnaney,*
   249 F.3d 1142 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*Idaho v. Couer D'Alene Tribe of Idaho,*
   521 U.S. 261 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Inouye v. Kemna,*
   504 F.3d 705 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Kentucky v. Graham,*
   473 U.S. 159 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kokkonen v. Guardian Life Ins. Co.,*
   511 U.S. 375 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*LaDuke v. Nelson,*
   762 F.2d 1318 (9th Cir.1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

*MacKay v. Pfiel,*
   827 F.2d 540 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Menotti v. City of Seattle,*
   409 F.3d 1113 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Moreno v. Baca,*
   431 F.3d 633 (9th Cir. 2005), *cert. denied*, 547 U.S. 1207 (2006). . . . . . . . . . . . . . . . . . . 11

*Pellegrino v. United States,*
   73 F.3d 934 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose,*
   402 F.3d 962 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Saul v. U.S.,*
   928 F.2d 829 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Schweiker v. Chilicky,*
   487 U.S. 412 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Schwenk v. Hartford,*
   204 F.3d 1187 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sorrels v. McKee,*
   290 F.3d 965 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Sprewell v. Golden State Warriors,*
    266 F.3d 979 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Stanley v. University of Southern California,*
    13 F.3d 1313 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Adjani,*
    452 F.3d 1140 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Hay,*
    231 F.3d 630 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Ross,*
    456 U.S. 798 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Taketa,*
    923 F.2d 665 (9th Cir.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Wong,*
    334 F.3d 831 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Warren v. Fox Family Worldwide, Inc.,*
    328 F.3d 1136 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Wilkie v. Robbins,*
    551 U.S. 537, 127 S. Ct. 2588 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Wong v. United States,*
    373 F.3d 952 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 14

*Zurcher v. Stanford Daily,*
    436 U.S. 547 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

**FEDERAL STATUTES**

Title 42, United States Code,

    Section 2000aa. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    Section 2000aa(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Section 2000aa(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Section 2000aa(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Section 2000aa-6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

    Section 2000aa-7(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Section 2000aa-7(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Section 2000aa-7(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**FEDERAL RULES**

Federal Rule of Civil Procedure 7(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Federal Rule of Civil Procedure 8(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Federal Rule of Civil Procedure 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0, 2

Federal Rule of Civil Procedure 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0, 2, 3

Federal Rule of Civil Procedure 12(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 0, 3, 14

Defendants Lisa Shaffer ("Shaffer") and Mike Hart ("Hart") hereby submit this memorandum of points and authorities in support of their motion to dismiss:

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs originally filed a civil action in this Court on January 14, 2009, naming the Regents of the University of California; Victoria Harrison; Karen Alberts; William Kasiske; Wade Macadam; Timothy J. Zuniga; Bruce Bauer; County of Alameda; Gregory J. Ahern; Federal Bureau of Investigation ("FBI"); FBI Agent Lisa Shaffer ("Shaffer") and FBI Task Force member Mike Hart ("Hart"), stating various claims including: (1) First Amendment violation, (2) Fourth Amendment violation, (3) Privacy Protection Act (42 U.S.C. § 2000aa, *et seq*.) violation, (4) state law claims, and (5) claims for injunctive and declaratory relief. Defendants FBI, Shaffer and Hart filed a motion to dismiss. In response, plaintiffs agreed to amend their complaint. The parties filed a stipulation and proposed order allowing for plaintiffs' amendment and this motion. Docket No. 36.

As explained in this motion, the Court should dismiss the claims against Shaffer and Hart on the following grounds:

(1)  Plaintiffs' claims for monetary damages against Shaffer and Hart in their individual capacities for constitutional violations should be dismissed with prejudice because the statutory remedy provided by Congress in the Privacy Protection Act is exclusive, does not permit suits against individual government employees, and therefore the Court should not imply a *Bivens* remedy; and

(2)  Plaintiffs' claims for equitable relief against Shaffer and Hart in their official capacities should be dismissed with prejudice because of the exclusive remedy provided in the Privacy Protection Act, due to sovereign immunity principles, and for lack of standing from lack of redressability.

## FACTS

### I.  The First Amended Complaint ("FAC") (Docket No. 39)

Plaintiffs' complaint alleges that the execution of a search warrant at 3124 Shattuck Avenue in Berkeley on August 27, 2008 violated the First and Fourth Amendments of the Constitution

1   and the Privacy Protection Act (42 U.S.C. §§ 2000aa, *et. seq*.)  FAC ¶¶ 3-8.  Plaintiffs allege that

2   Shaffer participated in the obtaining and execution of the warrant but that Hart participated only

3   in its execution.  FAC ¶¶ 20-21.  Plaintiffs claim the warrant was facially invalid because (1)

4   probable cause was lacking and (2) that the magistrate had not been informed in the warrant

5   application about the nature and circumstances surrounding plaintiffs' possession and use of the

6   premises to be searched.  FAC ¶¶ 35-38.  Plaintiffs allege that the search team (including FBI

7   Special Agent Lisa Shaffer and FBI Task Force member Mike Hart) broke open the premises'

8   secured doors, looked through the list of people who had borrowed books from the library, seized

9   all of the public access computers from a space on the second floor of Long Haul, took the

10  computers and digital storage media used for the publication of that newspaper, seized the

11  computer used by EBPS for the publication of prisoner-rights information and left the premises

12  in disarray.  *See generally* FAC ¶¶ 39-52.  Plaintiffs further allege that the "raid team" copied

13  data from plaintiffs' computers, which defendants have illegally retained.  FAC ¶ 54.

**ARGUMENT**

## I.  Applicable Legal Standards

### A.      Rule 12(b)(1) Motion

Where subject matter jurisdiction is lacking, dismissal under Rule 12(b)(1) is appropriate.
*MacKay v. Pfiel*, 827 F.2d 540, 543 (9th Cir. 1987).  Once the defendant objects to a lack of
subject matter jurisdiction, plaintiff bears the burden of establishing that the court has subject
matter jurisdiction.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  To survive a
motion to dismiss under Rule 12(b)(1), plaintiff must prove that the Court has jurisdiction to hear
the case.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) ("Federal courts are of
limited jurisdiction...It is to be presumed that a cause lies outside this limited jurisdiction, and the
burden of establishing the contrary rests on the party asserting jurisdiction.").

### B.      Rule 12(b)(6) Motion

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the
claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of
what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly,* 550 U.S.

544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)) (citation omitted) (alteration in original).  In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the Court must accept the well-pleaded allegations of fact in the complaint as true and construe them in the light most favorable to the plaintiff. *Warren v. Fox Family Worldwide, Inc.,* 328 F.3d 1136, 1139 (9th Cir. 2003). The Court need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inference," or "allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (quoting Fed.R.Civ.P. 8(a)(2)) (citations omitted) (alteration in original).  Claims should be dismissed only when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.,* 901 F.2d 696, 699 (9th Cir. 1990).

## C.     Rule 12(e) Motion

The Supreme Court has suggested that where complaints alleging constitutional torts are non-specific, in some cases reliance on other Rules of Civil Procedure may be in order, instead of granting a motion to dismiss. *Crawford-El v. Britton*, 523 U.S. 574 (1998).

In *Crawford-El*, the Court directed that trial courts to,

> [E]xercise [their] discretion in a way that protects the substance of the qualified immunity defense. [Courts] must exercise [their] discretion so that officials are not subjected to burdensome or unnecessary and burdensome discovery and trial proceedings.

523 U.S. at 597. First, the Court suggested requiring a reply to an answer pursuant to Federal Rule of Civil Procedure 7(a); second, the Court suggested granting a defendant's motion for a more definite statement under Federal Rule of Civil Procedure 12(e). *Id.*   In either event, the Supreme Court directed trial courts to "insist that the plaintiff put forward specific, non conclusory factual allegations." *Id*. at 598.

**II. Plaintiffs' Constitutional Claims**

    **A.**      **Claims for Monetary Damages Against Shaffer and Hart**

The complaint alleges damages claims for violations of the First and Fourth Amendment against Shaffer and Hart.

It is well-established that a plaintiff may seek damages against a federal employee in her individual capacity to vindicate violation of a federal "right." *Cort v. Ash*, 422 U.S. 66 (1975) (identifying the factors to consider in determining whether a statute authorizes civil suit for damages, despite the absence of a right to sue provision); *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (recognizing an implied right of action in damages to enforce the provisions of the Fourth Amendment of the Constitution). These are frequently referred to as "*Bivens* claims."

    **1.**      **When Congress Provides for a Statutory Remedy, *Bivens* Claims Are Precluded.**

In *Bivens*, the Court implied a damages remedy for that plaintiff, in part, because there was "no explicit Congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may *not* recover money damages from the agents, but must instead be remitted to another remedy, equally effective in the view of Congress." *Bivens*, 403 U.S. at 397 (*emphasis added*). Similarly, when the Court extended a damages remedy to the plaintiff in *Davis v. Passman*, 442 U.S. 228, 246-48 (1979), it found that "there is in this case 'no *explicit* declaration that persons' in petitioner's position injured by unconstitutional federal employment discrimination 'may not recover money damages from' those responsible for the injury,"(quoting *Bivens*, *supra*), and it later observed that, "were Congress to create equally effective alternative remedies, the need for damages relief might be obviated." Again in *Carlson v. Green*, 446 U.S. 14, 18-19 (1980), the Court acknowledged that a *Bivens* action "may be defeated in a particular case" if the federal officer shows "that Congress has provided an alternative remedy which it explicitly declared to be a *substitute* for recovery directly under the Constitution and viewed as equally effective,"but it still implied a damages action for that plaintiff, in part, because there was "no explicit Congressional declaration that persons injured by federal officers' violations of the

Eighth Amendment may not recover money damages from the agents but must be remitted to another remedy, equally effective in the view of Congress." There was no such declaration, however, and this was key in each case to the Court's recognition of an implied damages remedy. *See Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988) (noting that, in *Bivens, Davis,* and *Carlson,* there was "no explicit statutory prohibition against the relief sought, and no exclusive statutory alternative remedy").

Following *Bivens,* the Supreme Court has significantly limited the availability of implied constitutional-tort actions against federal officers and has sanctioned their creation only on a case-by-case basis.  As the Court recently reiterated, a damages remedy "is not an automatic entitlement ... and in most instances we have found a *Bivens* remedy unjustified." *Wilkie v. Robbins*, 551 U.S. 537, 127 S. Ct. 2588, 2597 (2007). In *Wilkie*, the Court held that a *Bivens* remedy should be inferred only if (1) there is no alternative, existing process for protecting a constitutional interest, and (2) if there are no special factors counseling hesitation against a judicially created remedy. *Id.  Wilkie* furthered a longstanding trend, and only twice since *Bivens* has the Supreme Court implied a damages remedy under the Constitution. *See Carlson v. Green*, 446 U.S. 14 (1980) (allowing prisoner's estate to bring *Bivens* action for alleged violations of Eighth Amendment prohibition on cruel and unusual punishment); *Davis v. Passman*, 442 U.S. 228 (1979) (allowing Congressional employee to bring *Bivens* action under equal protection component of Fifth Amendment Due Process Clause based on termination of employment).

In all other contexts, the Court has *declined* to imply a *Bivens* remedy. *See, e.g.*, *Wilkie,* 127 S. Ct. at 2597 (refusing to allow a *Bivens* remedy for retaliating against the exercise of property ownership rights); *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) (refusing to allow *Bivens* remedy against private entity operating halfway house under contract with Bureau of Prisons); *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471 (1994) (refusing to allow *Bivens* remedy against federal agency).

For example, when Congress has effectively "precluded" damages remedies against federal officers – not by prohibiting any remedy at all – but by expressly declaring *another* remedy to be exclusive for the kind of injury at issue, the Supreme Court has refused *Bivens* relief. *See Bush v.*

*Lucas*, 462 U.S. 367, 373 (1983) (where federal employee sought damages remedy under *Bivens*, on theory that adverse personnel action violated First Amendment, Supreme Court observed that "Congress has not expressly precluded the creation of such a remedy *by declaring that existing statutes provide the exclusive mode of redress")* (emphasis added). In *Bush,* a federal employee sued his supervisors alleging that they demoted him in retaliation for his public criticism of the agency. He alleged that the retaliatory action violated his First Amendment right of free speech and brought suit seeking damages. The Supreme Court held that, even assuming plaintiff's constitutional rights were violated, special factors precluded a judicially created damages action because Congress created in the Civil Service Reform Act ("CSRA") "comprehensive procedural and substantive provisions giving meaningful remedies against the United States." *Id.* at 368. The Court therefore affirmed the dismissal of the case. *Id.* at 390.

Ninth Circuit precedent is in accord. *Saul v. U.S.*, 928 F.2d 829, 837-38 (9th Cir. 1991) (citing 9 other Circuit courts and rejecting argument that plaintiff may maintain *Bivens* suit against supervisor). In *Saul*, plaintiff claimed that because at least some claims did not relate to employment, the constitutional tort claim could proceed. The Ninth Circuit affirmed dismissal of the claims on the grounds that the Civil Service Reform Act precluded constitutional and common law claims:

> We agree ... that the CSRA precludes even those *Bivens* claims for which the act prescribes no alternative remedy. The CSRA's comprehensive remedial provisions convince us that there was no inadvertence by Congress in omitting a damages remedy against supervisors whose work-related actions allegedly violate a subordinate's constitutional rights. In the area of federal employment, Congress is better equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce. *Id.* at 840.

In *Schweiker v. Chilicky*, the Supreme Court addressed "whether a *Bivens* remedy should be implied for alleged due process violations in the denial of Social Security benefits," and concluded it should not. 487 U.S. at 420. Plaintiffs, who were wrongfully denied benefits, pursued administrative remedies, but the benefits were restored only after delays of many months. They brought suit alleging that the delay violated a due process interest in continued benefits. *Id.* at 419. Following its decision in *Bush*, in *Chilicky*, the Supreme Court observed that

where Congress enacts a "comprehensive statutory scheme" and gives claimants a forum to challenge agency decisions, "special factors counseling hesitation" may preclude a *Bivens* remedy. *Id.* at 420, 428.

The Supreme Court in *Chilicky* reasoned that where a damages remedy has not "been included in the elaborate remedial scheme designed by Congress," it was not the place of the judiciary to alter the plan crafted by Congress by implying a right of action for damages directly against federal officials in their individual capacity. *Id.* at 414, 429. The Court reached its decision despite the claim of shortcomings in the remedial scheme created by Congress, deciding that where Congress has provided a remedy, even if imperfect, Congressional action precludes a *Bivens* action. *Id.* at 423. Later cases echo this decision. The *"Bivens* line of cases reflects a sensitivity to varying contexts, and courts should consider whether there are 'special factors counseling hesitation,' before allowing a suit to proceed under [that] theory." *Idaho v. Couer D'Alene Tribe of Idaho*, 521 U.S. 261 (1997). "So long as the plaintiff had an avenue for *some* redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability." *Malesko*, 534 U.S. at 69 (emphasis added).

### 2.     The Privacy Protection Act Is Plaintiffs' Exclusive Remedy, Precluding Their Bivens Claims.

Congress passed the Privacy Protection Act ("PPA"), 42 U.S.C. § 2000aa, in 1980. Subject to certain exceptions, the PPA makes it unlawful for a government officer "to search for or seize" materials intended for publication. Plaintiffs may bring their claims against the sovereign only, not against individual employees, and the PPA expressly provides that its remedy is exclusive of "any other civil action or proceeding for conduct constituting a violation of this chapter, against the officer or employee whose violation gave rise to the claim, or against the estate of such officer or employee." 42 U.S.C.A. § 2000aa-6.

By way of background, the PPA defines protected materials as follows:

(a) the materials are "work product materials" prepared, produced, authored, or created "in anticipation of communicating such materials to the public," 42 U.S.C. § 2000aa-7(b)(1);

(b) the materials include "mental impressions, conclusions, or theories" of its creator, 42 U.S.C. § 2000aa-7(b)(3); and

(c) the materials are possessed for the purpose of communicating the material to the public by a person "reasonably believed to have a purpose to disseminate to the public" some form of "public communication," 42 U.S.C. §§ 2000aa-7(b)(3), 2000aa(a);

or

(a) the materials are "documentary materials" that contain "information," 42 U.S.C. § 2000aa-7(a); and

(b) the materials are possessed by a person "in connection with a purpose to disseminate to the public" some form of "public communication." 42 U.S.C. §§ 2000aa(b), 2000aa-7(a).

Although the language of the PPA is broad, the statute contains several exceptions.  Searches will not violate the PPA when:

1) the only materials searched for or seized are contraband, instrumentalities, or fruits of crime, *see* 42 U.S.C. § 2000aa-7(a),(b);

2) there is reason to believe that the immediate seizure of such materials is necessary to prevent death or serious bodily injury, *see* 42 U.S.C. §§ 2000aa(a)(2), 2000aa(b)(2);

3) there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate (an exception which is itself subject to several exceptions), *see* 42 U.S.C. §§ 2000aa(a)(1), 2000aa(b)(1); and

4) in a search for or seizure of "documentary materials" as defined by § 2000aa-7(a), a subpoena has proven inadequate or there is reason to believe that a subpoena would not result in the production of the materials, *see* 42 U.S.C. § 2000aa(b)(3)-(4).

Violations of the PPA may result in civil damages against the sovereign whose officers or

employees execute the search. *See* § 2000aa-6(a), (e); *Davis v. Gracey*, 111 F.3d 1472, 1482 (10th Cir. 1997) (dismissing PPA suit against municipal officers in their personal capacities because such suits must be filed only against the "government entity").

The statute permits a claim against the United States only, which is the exclusive statutory remedy.

> *(a) Right of action*
>
> A person aggrieved by a search for or seizure of materials in violation of this chapter shall have a civil cause of action for damages for such search or seizure ...
>
> (1) against the United States, against a State which has waived its sovereign immunity under the Constitution to a claim for damages resulting from a violation of this chapter, or against any other governmental unit, all of which shall be liable for violations of this chapter by their officers or employees while acting within the scope or under color of their office or employment...
>
> ***(d) Exclusive nature of remedy***
>
> **The remedy provided by subsection (a)(1) of this section against the United States, a State, or any other governmental unit is exclusive of any other civil action or proceeding for conduct constituting a violation of this chapter, against the officer or employee whose violation gave rise to the claim, or against the estate of such officer or employee.**

42 U.S.C.A. § 2000aa-6 (emphasis added).

The PPA is an express provision of remedies by Congress, under which a plaintiff may recover monetary damages and receive injunctive relief against the United States.[1]  Therefore, in keeping with the Supreme Court precedent discussed herein, plaintiffs' claims for monetary

---

[1]In the PPA, Congress went beyond First Amendment protections when it fashioned the remedial statutory scheme.  According to legislative history, Congress intended for the PPA to protect "the press and certain other persons not suspected of committing a crime with protections not provided currently by the Fourth Amendment." S. Rep. No. 96-874, at 4 (1980), rep'd in 1980 U.S.C.C.A.N. 3950.

damages against Shaffer and Hart are precluded.  For lack of subject matter jurisdiction, plaintiffs' damages claims against Shaffer and Hart in the First Amended Complaint should be dismissed with prejudice.  In light of the exclusive remedy provided by the PPA, there is no possibility that plaintiffs could state any claim other than their PPA claim for damages against the United States, so amendment is futile.

> **3.    If Any *Bivens* Claim Is Implied By The Court, The Claims Stated In The Operative Complaint Fail For Lack of Specificity, and Therefore The Claims Should Be Dismissed or Defendants' Motion For More Definite Statement Should Be Granted.[2]**

In *Bivens* claims, damages claims against government officials alleged to arise from constitutional violations cannot be founded upon conclusory, vague, or general allegations. *See, e.g., Pellegrino v. United States*, 73 F.3d 934, 936 (9th Cir. 1996) (requiring "[d]irect personal responsibility").  In addition, the complaint must identify what role, if any, each individual defendant had in causing the alleged constitutional violations.  *Wong v. United States*, 373 F.3d 952, 966-67 (9th Cir. 2004) (affirming dismissal of complaint with sparse factual allegations).  To establish an individual's liability for a constitutional violation, plaintiff must allege either direct, personal participation in the violation or by "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."  *Wong*, 373 F.3d at 966 (citations omitted).

It is significant that *Bivens* defendants may assert qualified immunity.  The Ninth Circuit "has variously characterized the inquiry into qualified immunity as either two-part or three-part." *Schwenk v. Hartford*, 204 F.3d 1187, 1196 n.5 (9th Cir. 2000). When using the two-part test, the Ninth Circuit first determines whether the defendant violated the plaintiff's constitutional right, then asks whether the right was clearly established such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *See Inouye v. Kemna*, 504 F.3d 705, 712 n.6 (9th Cir. 2007) (noting three-part test but adhering to two-part analysis); *Menotti v. City of Seattle*, 409 F.3d 1113, 1152 (9th Cir. 2005); *San Jose Charter of Hells Angels*

---

[2] If the Court accepts the foregoing argument that the stated *Bivens* claims are precluded, this argument section would be rendered moot.

*Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005). When using the three-part test, the Ninth Circuit asks whether the facts alleged show the defendant's conduct violated a constitutional right, whether the right was clearly established at the time of the alleged violation, and then whether it would be clear to a reasonable official that her conduct was unlawful in the situation she confronted. *See Brown v. Li*, 308 F.3d 939, 946-47 (9th Cir. 2002), *cert. denied*, 538 U.S. 908 (2003).

In any case, the plaintiff bears the burden of showing that a right is clearly established. *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002); *Cruz v. Kauai County*, 279 F.3d 1064, 1069 (9th Cir.), *cert. denied,* 537 U.S. 1053 (2002). *But see Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005) ("[T]he moving defendant bears the burden of proof on the issue of qualified immunity."), *cert. denied,* 547 U.S. 1207 (2006). Moreover, plaintiff must also establish "a particular, rather than abstract, right." *Hufford v. McEnaney*, 249 F.3d 1142, 1148 (9th Cir. 2001). In addition, to establish an individual's liability for a constitutional violation, as noted above, plaintiff must allege either direct, personal participation in the violation or by "setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Wong*, 373 F.3d at 966 (citations omitted).

### a.    First Amendment Claim

Plaintiffs state no First Amendment allegations against Shaffer and Hart, but in general the complaint alleges that the search of plaintiffs' premises violated the First and Fourth Amendment.   Shaffer and Hart are mentioned in two paragraphs of the First Amended Complaint, 20 and 39, neither of which make out a First Amendment claim.

In *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978), the Supreme Court rejected similar claims by a campus newspaper. *Zurcher* arose from a search by the District Attorney's Office in Santa Clara County, after obtaining a search warrant, of the offices of The Stanford Daily, a Stanford University student newspaper. The DA's office was investigating a violent clash between the police and demonstrators that had occurred at the Stanford University Hospital three days earlier. The Stanford Daily had covered the incident, and published a special edition featuring

photographs of the clash.  Believing that the newspaper probably had more photographs of the clash that could help the police identify the demonstrators, the police obtained a warrant and sent four police officers to search the newspaper's office for further evidence that could assist the investigation. The officers found nothing. A month later, however, the Stanford Daily and its editors brought a civil suit against the police claiming that the search had violated their First and Fourth Amendment rights. The Supreme Court rejected the newspaper's claims, holding that neither the First nor the Fourth Amendment prohibited police from undertaking searches and seizures of documentary evidence held by innocent third parties, such as the newspaper whose records were searched in the case. *Id*. at 566-68.   Noting that "the Fourth Amendment does not prevent or advise against legislative or executive efforts to establish nonconstitutional protections" for searches of the press, it held that neither the Fourth nor First Amendment prohibited such searches. *Id*. at 567.

Therefore, for failure to state a claim, the First Amendment *Bivens* claims should be dismissed.

### b.     Fourth Amendment Claim

The complaint alleges Fourth Amendment violations arising from the obtaining of the search warrant as well as from the execution of the warrant in the August 27, 2008 search of plaintiffs' premises and seizure of plaintiffs' computers and related property.  Again, as to Shaffer and Hart, the allegations are sparse.  Against Shaffer, the FAC alleges, on information and belief, her participation in the obtaining and executing of the warrant, generally.  FAC ¶¶ 20, 39.  The allegations against Hart are similarly vague and general.  FAC ¶¶ 21, 39.

Computer searches present difficult questions under the Fourth Amendment. *See United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1108 (9th Cir. 2008); *United States v. Adjani*, 452 F.3d 1140, 1152 (9th Cir. 2006)). "Computers are simultaneously file cabinets (with millions of files) and locked desk drawers; they can be repositories of innocent and deeply personal information, but also of evidence of crimes. The former must be protected, the latter discovered. As society grows ever more reliant on computers as a means of storing data and

communicating, courts will be called upon to analyze novel legal issues and develop new rules within our well established Fourth Amendment jurisprudence." *Adjani*, 452 F.3d at 1152 (footnote omitted).

"Probable cause exists if 'it would be reasonable to seek the evidence in the place indicated in the affidavit.' " *United States v. Wong,* 334 F.3d 831, 836 (9th Cir. 2003) (quoting *United States v. Peacock,* 761 F.2d 1313, 1315 (9th Cir. 1985)). Probable cause is not limited by ownership or possession of the materials. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily,* 436 U.S. 547, 556 (1978); *cf. United States v. Ross,* 456 U.S. 798, 820-21 (1982) ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search."). In *Adjani*, the Court affirmed an order denying defendant's motion to suppress on the ground that there was probable cause to permit a search of all computers at Adjani's residence "accessible" to Adjani, even if not owned by him. 452 F.3d at 1147.

Similarly, the Ninth Circuit has rejected the argument that in obtaining and executing warrants to search computers, officers' probable cause is limited by whether there is probable cause to arrest the search target. *United States v. Hay*, 231 F.3d 630, 635 (9th Cir. 2000) ("[i]t is well established that a location can be searched for evidence of a crime even if there is no probable cause to arrest the person at the location"); *see also United States v. Taketa*, 923 F.2d 665, 674 (9th Cir.1991) ("[T]he correct inquiry is whether there was reasonable cause to believe that evidence of ... misconduct was located on the property that was searched.").

### i.  Warrant claim

Again, the complaint makes detailed allegations about the warrant application. *See* FAC ¶¶ 35-38. None of these allegations are directed at Shaffer or Hart.

The Fourth Amendment claims for obtaining the allegedly invalid warrant should be

dismissed as to Shaffer or Hart on qualified immunity grounds. Plaintiff must allege and prove Shaffer and Hart's direct, personal participation in the violation of an established constitutional right, or that either set "in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Wong*, 373 F.3d at 966 (citations omitted); *Hufford*, 249 F.3d at 1148. None of the facts alleged against Shaffer or Hart establish or could establish participation in obtaining the allegedly invalid warrant. This claim should be dismissed.

### ii.   Search and seizure claim

The complaint generally alleges that Shaffer and Hart were members of the "raid team" that searched plaintiff's premises, but none of the allegations describe any individual defendant's conduct with particularity.

Plaintiff's complaint fails to state a claim involving the execution of the warrant or search of the premises against Shaffer or Hart that meets Ninth Circuit standards. *Wong*, *supra*, 373 F.3d at 966-67; *Pellegrino*, *supra*, 73 F.3d at 936. As a result, these claims are subject to dismissal.

In the alternative, the Court should grant federal defendants' Rule 12(e) motion for more definite statement, consistent with the Supreme Court's instructions in *Crawford-El v. Britton*, 523 U.S. 574, 597-98 (1998) (directing trial courts to "insist that the plaintiff put forward specific, non conclusory factual allegations"). Plaintiff's complaint lacks specific, non-conclusory allegations against Shaffer or Hart. Without a more definite statement of the claims, the parties and the Court will be unable to analyze qualified immunity, thwarting the policy and purpose behind the doctrine. The motion for more definite statement should be granted.

### B.   Claims Against Shaffer and Hart For Injunctive and Declaratory Relief

These claims fail for three reasons.

First, these claims are dismissed because of the exclusive remedy provision of the PPA discussed above. Under the PPA, plaintiffs may seek injunctive relief against the United States, as they have done in the First Amended Complaint. The PPA claims are the exclusive remedy

available to plaintiffs.

Second, when a plaintiff sues a federal official in her official capacity, in reality the complaint seeks to impose liability on the United States. *See Brandon v. Holt*, 469 U.S. 464, 471 (1985). "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua entity*, may possess." *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). Relief in "official capacity" suits, when granted, affects the government entity rather than the officer's personal assets. *See id.* at 166. Because of sovereign immunity, these claims must be dismissed with prejudice.

Third, suits seeking equitable relief from federal officials are impermissible under *Bivens* analysis for two reasons. First, if plaintiff seeks relief by means of an injunction requiring a defendant to take or refrain from some official action, a plaintiff has no standing to sue a defendant in his individual capacity because the plaintiffs' injury is not redressable by the defendant in his individual capacity. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (requiring, for purposes of Article III standing, that the asserted injury will be redressed by a favorable decision); *see also Acierno v. Cloutier*, 40 F.3d 597, 608 (3rd Cir. 1994) (en banc) ("[A] defendant who loses a claim for injunctive relief is simply ordered to refrain from taking certain action in his or her official capacity."). First, in order to invoke the equitable jurisdiction of the Court, plaintiffs must meet "the basic requisites of the issuance of equitable relief in these circumstances-the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983); *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994).

To establish standing to seek an injunction, a plaintiff must demonstrate "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles*, 461 U.S. at 111. To do so, a plaintiff must allege a "real and immediate" threat of repeated harm that is not merely conjectural or hypothetical. *Id.* at 102. Past exposure to illegal conduct does not alone show that threat if unaccompanied by any continuing, present adverse effects. *Id*. A plaintiff can show that future harm is likely to recur in two ways. First, plaintiff can demonstrate that "the defendant

had, at the time of the injury, a written policy, and that the injury 'stems from' that policy." *Armstrong v. Davis*, 275 F.3d 849, 861 (9th Cir. 2001). That is, when the harm alleged is directly traceable to a written policy, there is an implicit likelihood of its repetition in the immediate future. *Id*. Plaintiffs have not and cannot allege that the individual defendants have policies that meet this test. Second, a plaintiff may also establish a likelihood of harm by demonstrating that the harm is part of a "pattern of officially sanctioned behavior" violative of the plaintiffs' federal rights. *Id*. (*quoting LaDuke v. Nelson*, 762 F.2d 1318, 1323 (9th Cir.1985)). Abstract injury is not enough. The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." *See*, *e.g., Golden v. Zwickler,* 394 U.S. 103, 109-110 (1969). There is no such allegation made.

## CONCLUSION

For the foregoing reasons, the claims against Shaffer and Hart should be dismissed with prejudice.

DATED: July 2, 2009                    JOSEPH P. RUSSONIELLO
                                       United States Attorney


                                       /s/_____
                                       JONATHAN U. LEE
                                       Assistant United States Attorney
                                       Attorneys for United States of America