Jennifer Granick, Esq. (SBN 168423)
Matthew Zimmerman, Esq. (SBN 212423)
Marcia Hofmann, Esq. (SBN 250087)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993
Email: jennifer@eff.org
       mattz@eff.org
       marcia@eff.org

Ann Brick, Esq. (SBN 65296)
Michael T. Risher, Esq. (SBN 191627)
AMERICAN CIVIL LIBERTIES
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: abrick@aclunc.org
       mrisher@aclunc.org

Attorneys for Plaintiffs
LONG HAUL, INC. and EAST BAY
PRISONER SUPPORT

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| LONG HAUL, INC. and EAST BAY PRISONER SUPPORT,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA; VICTORIA HARRISON; KAREN ALBERTS; WILLIAM KASISKE; WADE MACADAM; TIMOTHY J. ZUNIGA; MIKE HART; LISA SHAFFER; AND DOES 1-25,<br><br>Defendants. | Docket No. 09-00168-JSW<br><br>**OPPOSITION TO MOTIONS TO DISMISS OF (1) DEFENDANTS HART AND SHAFFER AND (2) DEFENDANT UNITED STATES**<br><br>DATE: September 4, 2009<br>TIME: 9:00AM<br>COURTROOM: 11, 19th Floor |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES............................................................................................iii

I.   INTRODUCTION.................................................................................................. 1

II.   FACTS................................................................................................................. 1

III.   ARGUMENT........................................................................................................ 3

    A.   Legal Standard ........................................................................................... 4

    B.   **Plaintiffs Have Properly Pled a Fourth Amendment Claim Seeking Damages Against Defendants Shaffer and Hart In Their Individual Capacities**................... 5

        1.   Plaintiffs' Privacy Protection Act Claim Does Not Preclude Their Fourth Amendment *Bivens* Claim. ................................... 6

            (a)   PPA Claims are Limited to the Search and Seizure of "Work Product" and "Documentary Material" Intended for Public Dissemination....................... 6

            (b)   Because Plaintiffs' Privacy Protection Act Claim Rests on Different Factual Allegations Than Those Alleged in Support of the Fourth Amendment *Bivens* Claim, the *Bivens* Claim Is Not Precluded. ....................... 6

            (c)   Congress Enacted the Privacy Protection Act to Provide a New Remedy for Behavior Otherwise Permissible Under the First and Fourth Amendments, Not to Limit Existing Remedies under *Bivens*............................................ 9

        2.   Plaintiffs Have Met the Notice Requirements for Pleading Their Fourth Amendment *Bivens* Claim. ................................... 12

        3.   A Dismissal on the Grounds of Qualified Immunity is Improper at This Stage Because Plaintiffs Have Stated a Fourth Amendment Claim Under *Bivens* That Shows a Violation of Their Clearly Established Rights. ....................... 13

            (a)   Any Reasonable Officer Should Have Known That the Warrant at Issue in This Case Was Insufficiently Specific. ....................... 14

            (b)   The Defendants Conducted the Search in an Unreasonable Manner............ 18

            (c)   Defendant Shaffer Violated the Fourth Amendment by Participating in Obtaining the Search Warrant.................................................................... 19

    C.   **Plaintiffs Have Properly Pled a First Amendment Claim Seeking Damages Against Defendants Shaffer and Hart In Their Individual Capacities.** ............................... 19

        1.   The Unlawful Search In This Case Violated the First as Well as the Fourth Amendment. .................................................. 19

        2.   The Supreme Court's Decision in *Zurcher* Does Not Defeat Plaintiffs' First Amendment Claim.............................................. 21

    D.   **Plaintiffs Have Adequately Pled First and Fourth Amendment Injunctive Relief Claims Against Defendants Hart and Shaffer.**.................................................... 22

i

**OPPOSITION TO MOTIONS TO DISMISS
OF (1) DEFENDANTS HART AND SHAFFER AND (2)
DEFENDANT UNITED STATES**

1

**E.**   **The Raid Team's Search and Seizure of August 27, 2008, Did Not Qualify for the
"Exigent Circumstances" Exception to the PPA.** .................................................. **24**

2

**IV.**   **CONCLUSION** ....................................................................................................... **25**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

No. 09-00168-JSW

**OPPOSITION TO MOTIONS TO DISMISS
OF (1) DEFENDANTS HART AND SHAFFER AND (2)
DEFENDANT UNITED STATES**

## TABLE OF AUTHORITIES

**CASES**

*Act Up!/Portland v. Bagley*, 988 F.2d 868 (9th Cir. 1993)............................................................. 13

*American Federation of Government Employees Local 1 v. Stone*, 502 F.3d 1027 (9th Cir. 2007).... ..................................................................................................................................................... 23

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ..................................................................................... 14

*Bautista v. Los Angeles County*, 216 F.3d 837 (9th Cir. 2000)........................................................ 5

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ......passim

*Brown v. Socialist Workers '74 Camp. Comm.*, 459 U.S. 87 (1982) ............................................. 20

*Buckley v. Valeo*, 424 U.S. 1 (1976)............................................................................................... 20

*Bush v. Lucas*, 462 U.S. 367 (1983) .......................................................................................... 6, 11

*Cardwell v. Kurtz*, 765 F.2d 776 (9th Cir. 1985)........................................................................... 24

*Cassady v. Goering*, 567 F.3d 628 (10th Cir. 2009)...................................................................... 16

*Cort v. Ash*, 422 U.S. 66 (1975) ..................................................................................................... 5

*Davis v. Indiana State Police*, 541 F.3d 760 (7th Cir. 2008) ....................................................... 14

*Davis v. Passman*, 442 U.S. 228 (1979) ....................................................................................... 10

*Ex Parte Young*, 209 U. S. 123 (1908) ......................................................................................... 24

*F.D.I.C. v. Meyer*, 510 U.S. 471 (1994)........................................................................................ 10

*Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539 (1963)........................................ 20

*Gilligan v. Jamco Development Corp.*, 108 F.3d 246 (9th Cir. 1997) ............................................ 4

*Gomez v. Toledo*, 446 U.S. 635 (1980)........................................................................................... 14

*Groh v. Ramirez*, 540 U.S. 551 (2004) ...................................................................................... 5, 16

*Illinois v. McArthur*, 531 U.S. 326 2001) .................................................................................... 26

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949)....................................... 24

*Lombardi v. City of El Cajon*, 117 F.3d 1117 (9th Cir. 1997) ..................................................... 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................... 4, 25

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ...................................................................... 4

*Maryland v. Garrison*, 480 U.S. 79 (1987)............................................................................. 18, 19

**OPPOSITION TO MOTIONS TO DISMISS OF (1) DEFENDANTS HART AND SHAFFER AND (2) DEFENDANT UNITED STATES**

*McCalden v. California Library Ass'n*, 955 F.2d 1214 (9th Cir. 1992) ......................................... 25

*McHenry v. Renne*, 84 F.3d 1172 (9th Cir. 1996) ..................................................................... 5

*Mena v. City of Simi Valley*, 226 F.3d 1031 (9th Cir. 2000) ....................................................... 18, 19

*Mitchum v. Hurt*, 73 F.3d 30 (3d Cir. 1995) .......................................................................... 23, 24

*NAACP v. Alabama*, 357 U.S. 449 (1958) ............................................................................. 20

*Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260 (9th Cir. 1998) ................ 24

*Pellegrino v. United States*, 73 F.3d 934 (9th Cir. 1996) ......................................................... 12, 13

*Philadelphia Co. v. Stimson*, 223 U.S. 605 (1912) ................................................................... 24

*San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962 (9th Cir. 2005), *cert. denied*, 546 U.S. 1061 (2005) ........................................................................ 18, 19

*Saul v. U.S.*, 928 F.2d 829 (9th Cir. 1991) ........................................................................... 11

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ............................................................................. 4

*Schneider v. Smith*, 390 U.S. 17 (1968) ............................................................................. 23

*Schweiker v. Chilicky*, 487 U.S. 412 (1988) .......................................................................... 11

*Shelton v. Tucker*, 364 U.S. 479 (1960) ............................................................................. 20

*Stevenson v. Koskey*, 877 F.2d 1435 (9th Cir. 1989) .............................................................. 13

*Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116 (9th Cir. 2007) .............................. 4

*Tashima v. Administrative Office of the U.S. Courts*, 719 F.Supp. 881 (C.D. Cal. 1989) .............. 24

*United States v. Adjani*, 452 F.3d 1140 (9th Cir. 2006) ............................................................. 18

*United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982) ........................................................... 15

*United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085 (9th Cir.), *reh'g en banc granted*, 545 F.3d 1106 (9th Cir. 2008) ............................................................................. 18

*United States v. George*, 975 F.2d 72 (2d Cir. 1992) .............................................................. 16

*United States v. Hill*, 459 F.3d 966 (9th Cir. 2006) ........................................................ 14, 16, 17

*United States v. Kow*, 58 F.3d 423 (9th Cir. 1995) .................................................................. 16

*United States v. Payton*, No. 07-10567, --- F.3d ----, 2009 WL 2151348 (9th Cir. July 21, 2009) . 18

*United States v. SDI Future Health, Inc.*, 568 F.3d 684 (9th Cir. 2009) ....................................... 15

*United States v. United States Dist. Court (Keith)*, 407 U.S. 297 (1972) ..................................... 20

*United States v. Washington*, 797 F.2d 1461 (9th Cir. 1986) ................................................. 15, 16

iv

*Williams v. Gerber Prods. Co.*, 523 F.3d 934 (9th Cir. 2008) ................................................. 4

*Wong v. U.S.*, 373 F.3d 952 (2004) ............................................................................... 12, 13

*Zurcher v. Stanford Daily*, 436 U.S. 547 (1978) ...................................................... passim

**STATUTES**

28 C.F.R. § 59.4(a)(1) (2009) ...................................................................................... 17

42 U.S.C. § 2000aa(a) ........................................................................................... 6, 10

42 U.S.C. § 2000aa(a)(2) ............................................................................................ 25

42 U.S.C. § 2000aa(b) ........................................................................................... 6, 10

42 U.S.C. § 2000aa(b)(2) ............................................................................................ 25

42 U.S.C. § 2000aa-6(a) .......................................................................................... 9, 10

42 U.S.C. § 2000aa-6(d) ......................................................................................... 10, 23

42 U.S.C. §§ 2000aa *et seq.* ................................................................................. passim

**OTHER AUTHORITIES**

C. Wright & A. Miller, Federal Practice and Procedure, § 1357 (2d ed. 1990) ............................. 25

**LEGISLATIVE MATERIALS**

S. Rep. No. 96-874 (1980) .................................................................................. 9, 11, 23

v

**OPPOSITION TO MOTIONS TO DISMISS
OF (1) DEFENDANTS HART AND SHAFFER AND (2)
DEFENDANT UNITED STATES**

## I.   INTRODUCTION

This lawsuit alleges that state and federal law enforcement officers violated the First and Fourth Amendments of the United States Constitution and the Privacy Protection Act, 42 U.S.C. §§ 2000aa *et seq.*, by leveraging their narrow investigation into the identity of the sender of certain emails to U.C. Berkeley researchers into an overbroad warrant to search Plaintiffs' offices and seize all their computers.  Plaintiffs allege both that Defendants violated their statutory rights guaranteed by the PPA by seizing materials related to the publishing of a newspaper and newsletter and also that Defendants violated their First and Fourth Amendment rights by searching areas and items – and seizing computers and other information – which have nothing to do with Plaintiffs' role as publishers.

Defendants misconstrue this case as one about the improper seizure of PPA-protected materials and ignore the specific allegations that Defendants improperly obtained an overbroad warrant, unnecessarily searched locked offices, improperly looked through book logs and mail, destroyed locks and door jambs, and took other actions that constituted Fourth and First Amendment violations.  This Court should deny the Defendants' motions because recovery for constitutional violations related to the search of Plaintiffs' property and seizure of their computers is not precluded simply because a subset of the items searched and seized were specially protected by the PPA.

## II.   FACTS

Plaintiff Long Haul is a volunteer-run collective located in Berkeley that provides a lending library, bookstore, free Internet access, and community meeting space to the public (the "Infoshop").  First Amended Complaint ("FAC") ¶ 1.  Long Haul also rents office space to other independent organizations, including Plaintiff East Bay Prisoner Support ("EBPS"), which distributes support material and literature to both prisoners and the general public.  FAC ¶ 33. EBPS occupies a separate, locked office within Long Haul, but the two organizations are otherwise unaffiliated.  FAC ¶ 2.

1

**OPPOSITION TO MOTIONS TO DISMISS**
**OF (1) DEFENDANTS HART AND SHAFFER AND (2)**
**DEFENDANT UNITED STATES**

On August 27, 2008, officers from the University of California at Berkeley Police Department ("UCPD") and the Federal Bureau of Investigation ("FBI") executed a search warrant at the Long Haul Infoshop.  FAC ¶ 39.  The warrant apparently issued in connection with an investigation of threatening emails sent to U.C. researchers more than two months earlier.  FAC ¶ 4, Exhibit A to Decl. of Jonathan U. Lee in support of Def. Motion to Dismiss, Document 25-1, pp. 5-7 ("Warrant and Statement of Probable Cause").[1]  The Statement of Probable Cause signed by Defendant Kasiske asserted that the Internet protocol ("IP") address of the computer from which the emails were sent was traced to the Long Haul Infoshop.  Warrant and Statement of Probable Cause, p. 7.  The probable cause statement indicated that officers believed that the messages in question were sent from one of Long Haul's public access computers.  *Id.*

Despite this, Defendants sought and obtained authorization to search all "premises, structures, rooms, receptacles, outbuildings, associated storage areas, and safes situated at Long Haul Infoshop" for unspecified "evidence."  FAC ¶ 35.  A raid team comprised of Defendants Kasiske, Macadam, Alberts, Zuniga, (UCPD) and Defendants Hart and Shaffer (FBI) forced entry into Long Haul on the morning of August 27, 2008.  FAC ¶ 39.  The raid team searched the premises for over two hours, refusing entry and declining to show a warrant to a local attorney and Long Haul members who arrived during that time.  FAC ¶¶ 40-41.  The raid team searched every room in the premises, cutting and crowbarring locks to gain access to the offices Long Haul rented to independent organizations.  FAC ¶ 41.  Long Haul does not keep records of those who use the public computers.  FAC ¶ 31.  Nonetheless, the raid team searched the records and logs of book lending and sales stored inside locked cabinets, went through EBPS's mail, and examined the contents of the filing cabinet for Long Haul's Slingshot newspaper.  FAC ¶¶ 41, 46, 51.  These materials contained private information, including the names of Long Haul supporters, members and customers.  *Id.*

---

[1] Though the Warrant and Statement of Probable Cause are two separate documents, Defendants have presented them as a single exhibit.

**OPPOSITION TO MOTIONS TO DISMISS OF (1) DEFENDANTS HART AND SHAFFER AND (2) DEFENDANT UNITED STATES**

Defendants seized every computer on the Long Haul premises, including computers used in connection with Long Haul's publication of the Slingshot newspaper and the EBPS's publication of its newsletters, even though both the Slingshot and EBPS computers were in private offices marked as belonging to Slingshot and EBPS, were behind locked doors, and were not publicly accessible.  FAC ¶ 42.  Defendants seized hard drives, CD disks, and cassettes that were not related to public access computers.  FAC ¶ 50.

## III.    ARGUMENT

Plaintiffs allege that Defendants violated their constitutional and statutory rights by improperly obtaining and executing an overbroad warrant to search and seize material from the Long Haul Infoshop and EBPS office.  Plaintiffs first allege that Defendants violated their First and Fourth Amendment rights in obtaining and executing the warrant of August 27, 2008.  Plaintiffs next allege that a subset of Defendants (not including Defendants Shaffer and Hart) violated their statutory rights guaranteed by the PPA by searching and seizing material to be "disseminate[d] to the public."

In their Motion to Dismiss (Docket # 43), Defendants Hart and Shaffer argue that the PPA precludes any *Bivens* remedy to which the Plaintiffs might otherwise be entitled under the First and Fourth Amendments.  To the contrary, the plain language and legislative history of the statute show that Congress intended the PPA to preserve and extend, rather than limit, existing Fourth Amendment remedies under *Bivens*.  Moreover, Plaintiffs' PPA claim for seizure of Slingshot and EBPS materials is factually distinct from their Fourth Amendment claim that Defendants wrongfully obtained an warrant and improperly searched the Infoshop and EBPS offices, examining book lending and sale records, mail, and files and seized computers and materials not protected by the PPA.

Alternatively, Defendants Hart and Shaffer argue that the Plaintiffs' 67-paragraph complaint is insufficiently specific.  Plaintiffs, however, have pled more than enough facts to meet the motion to dismiss standard and put Defendants on notice of the claims they face.  Defendants

also raise the issue of qualified immunity, but Defendants are not entitled to qualified immunity because the rights they allegedly violated are clearly established.

Finally, in their separate Motion to Dismiss (Docket # 45), the United States separately argues that the PPA claim brought against it must be dismissed because the "exigent circumstances" exception applies and precludes liability.  This motion must also be denied. The exigency exception does not apply because the seizure here occurred more than two months after the initial incident under investigation, undermining the government's ability to invoke an exception only applicable if the "immediate seizure" of the materials in question were "necessary to prevent death or serious bodily harm."  Even if it could invoke this exception, the United States needs facts that are not before the Court at this stage of the litigation.

### A.    <u>Legal Standard</u>

A Federal Rule of Civil Procedure 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint.  "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). The motion should only be granted "if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 938.

A Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction should be supported, according to the Supreme Court, "with the manner and degree of evidence required at the successive stages of the litigation. . . . At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

**OPPOSITION TO MOTIONS TO DISMISS**
**OF (1) DEFENDANTS HART AND SHAFFER AND (2)**
**DEFENDANT UNITED STATES**

Because of the "system of pleading with simplified and brief forms of complaint" defined by the Federal Rules, a Rule 12(e) motion for a more definite statement is appropriate only "if a complaint is 'so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading.'" *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996); *see also Bautista v. Los Angeles County*, 216 F.3d 837, 843 n.1 (9th Cir. 2000).

### B. Plaintiffs Have Properly Pled a Fourth Amendment Claim Seeking Damages Against Defendants Shaffer and Hart In Their Individual Capacities.

As the Defendants acknowledge, "[i]t is well-established that a plaintiff may seek damages against a federal employee in her individual capacity to vindicate violation of a federal 'right.'" Mot. to Dismiss by Defs. Hart and Shaffer ("Indiv. Mot. to Dism.") 4 (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)); *see also Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 394-95 (1971)**Error! Bookmark not defined.**.  It is undisputed that courts may award damages through a *Bivens* action for Fourth Amendment violations.  *See, e.g., Bivens,* 403 U.S. at 395 (individuals entitled to money damages for "injuries consequent upon a violation of the Fourth Amendment by federal officials" when government agents entered and searched Plaintiff's apartment without a warrant); *Groh v. Ramirez*, 540 U.S. 551, 563 (2004) (upholding Fourth Amendment *Bivens* claim against ATF officer for search executed pursuant to a facially invalid vague warrant).  Plaintiffs' *Bivens* claims are properly pled.

Defendants nevertheless conflate the Plaintiffs' PPA claims with their Fourth Amendment *Bivens* claims and argue that the statute supplants the constitutional causes of action.  However, both the plain language of the statute and its legislative history leave no doubt that Congress had no intent to supplant Fourth Amendment claims outside the limited areas covered by the PPA.  Nor, as Defendants suggest, do they need a more definite statement of Plaintiffs' Fourth Amendment claim in order to respond to the Complaint.  Furthermore, Defendants' assertion of qualified immunity fails because the First and Fourth Amendment rights allegedly violated were clearly established at the time of the raid.

1.   Plaintiffs' Privacy Protection Act Claim Does Not Preclude Their Fourth Amendment *Bivens* Claim.

In recognizing a cause of action against federal officers who violate a Plaintiff's constitutional rights, the Supreme Court noted that special factors, such as the provision of "comprehensive procedural and substantive provisions giving meaningful remedies against the United States" might render a *Bivens* remedy inapplicable. *See, e.g., Bush v. Lucas*, 462 U.S. 367, 368 (1983). Defendants argue that the PPA meets this standard and therefore requires dismissal of Plaintiffs' First and Fourth Amendment claims. As discussed in detail below, Defendants are wrong. Both the plain language of the statute and the legislative history confirm that Congress intended the PPA to provide a remedy where no Fourth Amendment remedy exists. It did not intend to limit existing Fourth Amendment remedies, and specifically stated its intent to preserve them.

(a)   PPA Claims are Limited to the Search and Seizure of "Work Product" and "Documentary Material" Intended for Public Dissemination.

The PPA provides protection from search and seizure beyond what the Constitution affords to a limited class of materials possessed by people who disseminate information to the public:

Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication, in or affecting interstate or foreign commerce . . .

42 U.S.C. § 2000aa(a). *See also* 42 U.S.C. § 2000aa(b) (applying to "documentary materials.")

(b)   Because Plaintiffs' Privacy Protection Act Claim Rests on Different Factual Allegations Than Those Alleged in Support of the Fourth Amendment *Bivens* Claim, the *Bivens* Claim Is Not Precluded.

These protections apply to only a subset of the illegal conduct described in the FAC: (1) the search of the Slingshot office and the seizure of the Slingshot computers and other materials; and (2) the search and seizure of the EBPS computer. Plaintiffs' factual allegations in support of their *Bivens* claims are separate and distinct, focusing on the facial defects in the warrant itself and

6

**OPPOSITION TO MOTIONS TO DISMISS OF (1) DEFENDANTS HART AND SHAFFER AND (2) DEFENDANT UNITED STATES**

the overbreadth of the resulting search of Long Haul and EBPS facilities.  In support of their PPA claim, Plaintiffs made the following factual allegations:

- Long Haul publishes Slingshot, a quarterly newspaper that has been in publication since 1988, out of an office in its building.  FAC ¶¶ 27-28.
- Slingshot's offices are located on the second floor of Long Haul and are clearly marked.  The offices, which are not accessible to the public, contained two computers, back issues of the newspaper, and other materials used in publication at the time of the search.  FAC ¶ 29.
- The raid team seized the Slingshot computers, which, as they knew or should have known, contained work product and documentary materials possessed in connection with a purpose to disseminate material to the public.  FAC ¶¶ 44-45.
- The raid team seized a computer from the office of EBPS, which contained documentary and work product materials possessed in connection with a purpose to disseminate pamphlets and newsletters to the public and prison populations.  FAC ¶¶ 47-49.

In support of their constitutional claims, Plaintiffs make very different allegations:

- The warrant did not limit the scope of the search to any particular time frame.  FAC ¶ 35.
- The warrant failed to specify the criminal conduct that was the subject of the investigation, stating only that the "[s]earch of all of the above items is for . . . evidence."  *Id.*
- The warrant does not limit the items that may be seized, except to state in the affidavit that the "Evidence type" is "Property or things used as means of committing a felony" and "Property or things that are evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony."  Warrant and Statement of Probable Cause, p. 1.

**OPPOSITION TO MOTIONS TO DISMISS OF (1) DEFENDANTS HART AND SHAFFER AND (2) DEFENDANT UNITED STATES**

- The warrant failed to disclose the existence of separate, locked office spaces and failed to distinguish between public areas and areas inaccessible to the public.  FAC ¶ 37.

- The raid team searched every room in Long Haul, including private offices to which the public never had access, even though the basis for the warrant was that certain emails had been sent from the public access computers.  The raid team looked through files and documents and seized every computer in each room.  FAC ¶¶ 41-42.

- The raid team executed the search in an unnecessarily destructive fashion, cutting and crowbarring locks to gain access to private offices.  FAC ¶¶ 41, 47.

- The raid team left the office of EBPS, an organization unaffiliated with Long Haul but occupying an office in their building, in disarray.  The raid team looked through sorted mail and left it in a jumbled pile.  FAC ¶ 51.

- The raid team searched other areas and items unrelated to the source of the emails under investigation, including the logs of people who had purchased or borrowed books from Long Haul, which were stored in a locked cabinet.  FAC ¶ 41.

- Defendants continue to retain, and in some cases to search, copies of the digital information from Long Haul and EBPS computers.  FAC ¶¶ 53-55.

- Defendants' conduct in searching the Long Haul and EBPS premises and in seizing and searching their computers and other materials has a chilling effect on the First Amendment associational rights of Long Haul, EBPS, their members, and members of the public who interact with them.  Plaintiffs are well known as politically radical organizations.  Plaintiffs and their constituents often take public and private stands that are critical of official governmental action.  Long Haul's newspaper, Slingshot, has previously been critical of the University of California and UCPD police officers.  Plaintiffs fear further investigative action or retaliation from the continued retention and search of their computer files.  FAC ¶¶ 24-27, 46, 58.

8

**OPPOSITION TO MOTIONS TO DISMISS**
**OF (1) DEFENDANTS HART AND SHAFFER AND (2)**
**DEFENDANT UNITED STATES**

Defendants' unconstitutional conduct in obtaining and executing an overbroad warrant in an unreasonably destructive manner is not a cognizable violation of the PPA. Indeed, much of that conduct had nothing to do with Slingshot or the EBPS computer.

                (c)     **Congress Enacted the Privacy Protection Act to Provide a New Remedy for Behavior Otherwise Permissible Under the First and Fourth Amendments, Not to Limit Existing Remedies under *Bivens*.**

Congress passed the PPA in response to the Supreme Court's decision in *Zurcher v. Stanford Daily*, in which the Supreme Court held that the First and Fourth Amendments provided no special protection against the search and seizure of materials in the possession of the press. 436 U.S. 547 (1978). Noting that the Supreme Court had "issued an open invitation to Congress to draw statutory lines where the Constitution did not apply," Congress did so. *See, e.g.,* S. Rep. No. 96-874, at 5-6 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3950, 3952 ("[T]his legislation was prompted by *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978) . . . [which] held that the Fourth Amendment does not confer any special protections against search and seizure for the possessor of documentary evidence who is not himself a suspect in the offense under investigation." *Id.* at 4.).[2] Congress eventually passed the PPA, protecting holders of pre-publication material from searches and seizures as well as mandating the development of internal federal guidelines designed to minimize the invasiveness of other types of third party searches. *See* S. Rep. No. 96-874, at 4-5 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3950, 3951. The PPA increased journalists' protection against governmental searches by providing a new statutory private right of action for damages for conduct that violates the PPA. 42 U.S.C. § 2000aa-6(a).

The PPA addresses only the narrow set of circumstances at issue in *Zurcher*. It bans the search and seizure of "work product" and "documentary" material "possessed by a person

---

[2] *See also, e.g., id.* at 4 (explaining the Judiciary Committee's conviction that "the search warrant procedure in itself does not sufficiently protect the press . . . and that legislation is called for."); *id.* at 6 (declaring that the Judiciary Committee, in reporting the bill, "has answered the [*Zurcher*] Court's invitation" to establish further protections against warrant abuses); *id.* at 10 (observing that "[k]ey to the legislation is the concept of public communication. It is this flow of information to the public which is central to the First Amendment, and which is highly vulnerable to the effects of governmental intrusiveness.").

reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication . . . ." 42 U.S.C. § 2000aa(a), (b).  Section 2000aa-6(a) provides a private right of action for violations of the Act – actions which, under *Zurcher*, do not violate the Fourth Amendment.  Nothing in either the language or the legislative history of the PPA suggests that it was intended to weaken remedies already available, including *Bivens* remedies, when the government violated constitutional or statutory rights in other respects.

Defendants' assertion that the "exclusive remedy" language of 42 U.S.C. § 2000aa-6(d) precludes a *Bivens* action for other violations committed during the same course of events simply misreads the statute.  That statute provides (emphasis added):

> The remedy provided by subsection (a)(1) of this section against the United States, a State, or any other governmental unit is exclusive of any other civil action or proceeding *for conduct constituting a violation of this chapter*, against the officer or employee whose violation gave rise to the claim, or against the estate of such officer or employee.

42 U.S.C. § 2000aa-6(d).

By its terms, section 2000aa-6(d) applies only to conduct constituting a violation of "this chapter"; *i.e.,* the search and seizure of specified categories of materials protected by the Act.  The Supreme Court has confirmed that "exclusivity" provisions of statutes that preclude other remedies for violations of a specific title or chapter do not preclude remedies for other violations that fall outside that title or chapter.  *See, e.g., Davis v. Passman*, 442 U.S. 228, 246-48 (1979) (*Bivens* claims upheld despite the availability of alternative Title VII remedies where there was no Congressional intent "to foreclose alternative remedies available to those not covered by the statute"); *F.D.I.C. v. Meyer*, 510 U.S. 471, 476-78 (1994) (exclusivity clause in the Tort Claims Act did not bar suit for claims that were not "cognizable" under the section).  By limiting the PPA's exclusivity provision in this way, Congress made clear that it was only providing – and limiting – a remedy for actions that did not violate the Constitution.  Exclusivity has no application where the conduct complained of falls outside the protection of the PPA but nevertheless constitutes a Fourth Amendment violation.

10

**OPPOSITION TO MOTIONS TO DISMISS**
**OF (1) DEFENDANTS HART AND SHAFFER AND (2)**
**DEFENDANT UNITED STATES**

The legislative history of the PPA confirms that Congress intended that a PPA remedy be available *in addition to* any other legal remedies available to a party aggrieved in other ways during the same "course of events."  Indeed, the Senate Report expressly states that a person who suffers a PPA violation may also sue for other wrongful acts that occur in the same course of conduct:

> [Section 6(d)] does not preclude the plaintiff from bringing a claim against the officer for wrongful acts other than a violation of the statute which occur in the same course of events.  Thus, even though the government unit is liable for damages for a violation of this statute, the plaintiff could, for example, proceed against the officer for trespass, destruction of property, or a violation of civil rights.

S. Rep. No. 96-874, at 15 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3950, 3961-62.

While the provision of  "comprehensive procedural and substantive provisions giving meaningful remedies against the United States" may counsel against a *Bivens* remedy, no case holds that *every* constitutional claim a plaintiff may bring is disallowed simply because a statute regulates some aspect of his case. The cases Defendants cite are not to the contrary.  *Bush v. Lucas,* 462 U.S. 367 (1983) and *Saul v. U.S.*, 928 F.2d 829 (9th Cir. 1991) stand for the proposition that the Civil Service Reform Act ("CSRA") precludes a federal employee from using a constitutional tort theory to adjudicate at least some employment-related disputes. In both cases, the plaintiff claimed that an adverse personnel action violated his First Amendment rights. Because the CSRA provided comprehensive and meaningful remedies against the U.S. for improper personnel actions, the plaintiffs could not bring their constitutional claims under *Bivens*.  *Lucas*, 462 U.S. at 368, 390; *Saul*, 928 F.2d at 840. Similarly, in *Schweiker v. Chilicky*, 487 U.S. 412 (1988), the plaintiffs sued under the Fifth Amendment when their social security disability benefits were terminated during disability reviews, but were later restored.  The Court held that the Social Security Disability Act comprehensively governed the denial of benefits.  In each case, the statutory scheme was extremely detailed and comprehensive, and the same facts that constituted the alleged constitutional violation were also a violation of the statute at issue. Here, the PPA regulates seizure of pre-publication materials, but it does not purport to control either the physical entry and search of homes or offices or the seizure of other types of information.  Congress clearly anticipated that the Fourth Amendment warrant requirement would continue to govern law enforcement searches.

11

**OPPOSITION TO MOTIONS TO DISMISS**
**OF (1) DEFENDANTS HART AND SHAFFER AND (2)**
**DEFENDANT UNITED STATES**

Furthermore, the facts underlying Plaintiffs' constitutional claims are distinct from the facts underlying their Fourth and First Amendment claims.

Defendants' argument that Plaintiffs are limited solely to PPA remedies for *any* harm suffered as result of Defendants' unconstitutional actions is contrary to both the language and the intent of the PPA.  Under Defendants' theory, law enforcement would be immune from (for example) Fourth Amendment damages inflicted during a search and seizure *so long as* any aspect of that search and seizure included materials in possession of the press.  This would turn the PPA on its head.

2.   Plaintiffs Have Met the Notice Requirements for Pleading Their Fourth Amendment *Bivens* Claim.

Plaintiffs have amply met the pleading requirement for their Fourth Amendment *Bivens* claim against Defendants Hart and Shaffer.  In a *Bivens* action, as Defendants note, Plaintiffs must allege specific facts that a federal agent had "direct personal responsibility" for a constitutional violation or "set[] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."  Indiv. Mot. to Dism. 10 (quoting *Pellegrino v. United States*, 73 F.3d 934, 936 (9th Cir. 1996); *Wong v. U.S.*, 373 F.3d 952, 966-67 (9th Cir. 2004)).  Plaintiffs have alleged Shaffer's and Hart's direct personal involvement in the unconstitutional raid on the Long Haul and EBPS offices.  *See, e.g.,* FAC ¶ 20 ("Plaintiffs are informed and believe that Shaffer participated in obtaining and executing the search warrant in this case."); FAC ¶ 21 ("Defendant Mike Hart participated in the events described herein, including the investigation leading up to the raid and the raid itself, as a deputized law enforcement officer under the authority and control of the FBI."); FAC ¶ 39 ("raid team" that searched and seized material on August 27, 2008, included Shaffer and Hart); FAC ¶ 42 ("The raid team removed every computer from the building.  They removed all the computers from Long Haul's un-monitored public space where people come to use the machines.  They also removed all the computers from closed, locked offices."); FAC ¶ 55 ("Plaintiffs are informed and believe that between August 27, 2008 and May 19, 2009, some or all of the Defendants unnecessarily seized, searched and retained private

12

information and/or searched data copied from the devices.").  Such allegations easily satisfy the notice pleading requirements for the claims alleged.

Defendants further argue that Plaintiffs' allegations must describe individual Defendants' conduct "with particularity."  This, however, is not a requirement under *Pellegrino* or *Wong* as Defendants claim.  In *Wong*, for example, the Ninth Circuit affirmed dismissal of claims against U.S. Customs officials because the actions claimed on the part of those officials were not shown to have directly or foreseeably caused the violations claimed.  *Wong*, 373 F.3d at 967.  The court did not dismiss on the grounds that the Plaintiff had to allege any Defendant's conduct individually.  In fact, Defendants do not point to *any* precedent suggesting that a Plaintiff must allege individual conduct by Defendants with any more granular particularity than that alleged here.  *Wong* also reaffirmed the view that "causation is established where officer participates in the affirmative acts of another that, acting concurrently, result in deprivation of federal rights."  *Id.* at 966 (citing *Stevenson v. Koskey*, 877 F.2d 1435, 1439 (9th Cir. 1989)).  In the immediate case, Plaintiffs have clearly alleged that all of the members of the raid team, either directly or through joint participation, caused the constitutional violations.[3]

3.  <u>A Dismissal on the Grounds of Qualified Immunity is Improper at This Stage Because Plaintiffs Have Stated a Fourth Amendment Claim Under *Bivens* That Shows a Violation of Their Clearly Established Rights.</u>

Defendants Shaffer and Hart argue that Plaintiffs have failed to state a claim against them under the Fourth Amendment.  They also suggest that qualified immunity provides them a defense because the Fourth and First Amendment rights allegedly violated are not clearly established.  Indiv. Mot. to Dism. 10-11. Defendants' arguments fail because the FAC alleges in considerable detail that both Shaffer and Hart violated Plaintiffs' clearly established Fourth Amendment rights.[4]

---

[3] To the extent there is any question about Shaffer's or Hart's actions during the execution of the Warrant, the determination of what conduct underlies an alleged constitutional violation – that is, what an officer did or failed to do – is a question of fact. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

[4] Although courts may address the question of immunity in a motion to dismiss, qualified immunity is an affirmative defense, and Plaintiffs' complaint need not anticipate it or plead around it.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *see Davis v. Indiana State Police*, 541 F.3d 760, 763-64 (7th Cir. 2008).  Nor is the absence of qualified immunity an element of a claim.  *Gomez*, 446 U.S. at
*(footnote continued on following page)*

13

Plaintiffs' FAC alleges that Defendants Shaffer and Hart violated clearly established Fourth Amendment rights in several explicit ways.  First, both Shaffer and Hart participated in executing a warrant that was void on its face because it lacked probable cause for the places to be searched and because it did not particularly describe the things to be seized.  FAC ¶¶ 3-4, 20, 21, 35-38, 51, 56.  Second, the FAC alleges that Defendants Hart and Shaffer executed the warrant in an unreasonable manner, needlessly destroying property and leaving the premises in disarray.  *Id.* ¶¶ 5, 41, 43, 47, 51.  They searched locked offices that were inaccessible to the public, including the EBPS office, and examined book lending and sale logs and other things not related to the purported justification for the search.  The FAC also alleges that Defendant Shaffer – but not Defendant Hart – personally participated in obtaining the illegal warrant.  *Id.* ¶¶ 20, 38.

(a)    Any Reasonable Officer Should Have Known That the Warrant at Issue in This Case Was Insufficiently Specific.

"Search warrants must be specific.  Specificity has two aspects: particularity and breadth.  Particularity is the requirement that the warrant must clearly state what is sought.  Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based."  *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006) (citation omitted).  The warrant here fails both of these requirements.

The warrant is insufficiently particular because it authorized the police to seize and search all electronic media for evidence of any crime.  *See* Warrant and Statement of Probable Cause.  The most glaring problem with the warrant is that it authorizes the officers to seize and search any electronic media on the premises for "evidence," leaving it to the unfettered discretion of the officers to answer the question:  "Evidence of *what*?"  Warrant and Statement of Probable Cause, p. 3.  The list of electronic media included in this broad search is all-inclusive.  "All electronic data processing and storage devices computers and computer systems including, but not limited to,

---

*(footnote continued from preceding page)*
640-41.  Thus, dismissal under Rule 12(b)(6) on qualified-immunity grounds is only merited where the complaint fails to plead facts that plausibly suggest that Defendant is liable for a violation of clearly established constitutional right.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

14

**OPPOSITION TO MOTIONS TO DISMISS OF (1) DEFENDANTS HART AND SHAFFER AND (2) DEFENDANT UNITED STATES**

central processing units, external hard drives, CDs, DVDs, diskettes, memory cards, PDAs, and USB flash drives," and every conceivable type of file in any of those media, including images, software, and any other "data", was to be seized. *Id*. This broad authorization was *in addition to* the arguably relevant documents of any type – paper or electronic – that contained the names of patrons who had used Long Haul computers. *Id*. The only potentially limiting description of the "evidence" that is to be seized is found in the supporting affidavit: "[p]roperty or things used as a means of committing a felony" and "[p]roperty or things that are evidence that tends to show a felony has been committed or tends to show that a particularly person has committed a felony." *Id*. at p. 2. The search was not even limited to information regarding messages sent from the relevant machines on the relevant dates, even though the officers should have been looking only for information about who had sent email from a public access computer during one week in March 2008 and one day in June 2008. *Id*. at pp. 2-5.[5] Thus, the warrant authorizes the seizure and search of any electronic media that the police believed were in any way connected to the commission of a felony. Such a warrant is facially invalid.

It is clearly established that a warrant that authorizes searches for or seizure of "evidence" of a crime violates the particularity requirement. *United States v. Washington*, 797 F.2d 1461, 1472-73 (9th Cir. 1986) (noting that warrant authorizing search for "instrumentality or evidence of violation of the general tax evasion statute" is invalid) (quoting *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir. 1982). The reason for this rule is that "where a business is searched for records, specificity is required to ensure that only the records which evidence crime will be seized and other papers will remain private." *Id*. at 1472. A warrant that authorizes a search for specified items and "all other evidence of criminal activity" suffers from this same fatal flaw, because it fails to "confine the scope of the search to any particular crime." *Cassady v. Goering*, 567 F.3d 628, 635

---

[5] The contents of the Search Warrant Exhibits and Statement of Probable Cause are relevant to showing that the warrant was needlessly overbroad, but they cannot be used to support the validity of the warrant unless the warrant expressly incorporated them *and* the agents had these documents with them when the executed the warrant. *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 699 (9th Cir. 2009); *United States v. Kow*, 58 F.3d 423, 429 n.3 (9th Cir. 1995). There is no indication that the agents brought these documents to Long Haul during the search.

**OPPOSITION TO MOTIONS TO DISMISS OF (1) DEFENDANTS HART AND SHAFFER AND (2) DEFENDANT UNITED STATES**

(10th Cir. 2009); *see id.* at 642-43 (collecting cases), 643-44 (denying qualified immunity); *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) ("authorization to search for 'evidence of a crime,' that is to say, any crime, is so broad as to constitute a general warrant."). *See also Groh*, 540 U.S. at 557, 564-65 (warrant that provides no description of what was to be seized is "plainly invalid"; denying qualified immunity in *Bivens* action).

The warrant here authorized the seizure and search of every document and every bit of electronic data that the police might find, without limitation other than it be "evidence" of some crime. As a result, the police spent hours rifling through filing cabinets, mail, book sale and purchase logs, and other private documents, and then seized and later searched every computer and all other electronic media they found in the hope that they might find evidence of some crime. This is exactly the type of general search that the particularity requirement is meant to prevent. *Kow*, 58 F.3d at 427 (warrant authorizing "seizure of virtually every document and computer file at" business owned by criminal suspect was unconstitutional general warrant). The warrant was therefore invalid, and any reasonable officer should have known that.

The warrant is also flawed in that it authorized the seizure of all of Plaintiffs' computers and electronic records without any showing that such a broad infringement of Plaintiffs' rights was necessary. Although it may sometimes be appropriate for the government to seize an entire computer system in order to find a single piece of evidence stored on it, when the government seeks to "seize the haystack to look for the needle" it must explain in the search warrant affidavit "why a wholesale seizure is necessary." *Hill*, 459 F.3d at 975-77. The Statement of Probable Cause in this case utterly failed to make a showing that, based on the facts of this particular case,[6] it was necessary to seize all the computers at Long Haul rather than search them on the premises or simply ask for Long Haul's assistance in locating the data. Indeed, it would have been impossible to make such a showing: the police claimed only that a patron of Long Haul had used the

---

[6] Although the Statement of Probable Cause contains general language that searching computer systems is always too complex to perform on-site, allowing such boilerplate language to satisfy the showing of "individualized" necessity would render this protection meaningless. *See Hill*, 459 F.3d at 976-77, n.13.

16

**OPPOSITION TO MOTIONS TO DISMISS
OF (1) DEFENDANTS HART AND SHAFFER AND (2)
DEFENDANT UNITED STATES**

computers to send email, not that any Long Haul staff had done anything wrong.  When, as here, the police are seeking data in the private possession of a disinterested third party, it is unreasonable for them to use such an overbroad and intrusive warrant without exploring any less intrusive means of obtaining the information.[7]

Moreover, Defendants had no probable cause to seize the non-public computers and media, much less search them.  Thus the warrant's authorization to search these computers violated "the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based."  *Hill*, 459 F.3d at 973 (citation omitted).  Arguments regarding the "difficulty" of parsing merged data on a computer are irrelevant, as Plaintiffs claim that any access to those computers was unconstitutional.  Even if the warrant application established probable cause that the public-access computers might contain information about an email sent by a member of the public, it did not show that the other computers and electronic storage media, which Long Haul and EBPS kept behind locked doors, could possibly yield anything of value.[8]

The cases Defendants cite are not ones where there was no probable cause at all, as here, but instead ones in which there *was* cause to search computers for certain evidence.  *See United States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1108 (9th Cir. 2008), *reh'g en banc granted*, 545 F.3d 1106 (9th Cir. 2008) (where computer seizure is based on probable cause, search protocol to protect innocent information is preferable) (not citeable); *United States v. Adjani*, 452 F.3d 1140, 1152 (9th Cir. 2006) (citing need during a computer search to discover evidence of

---

[7] That wholesale seizure is unreasonable under these circumstances is bolstered by the regulations promulgated under the PPA, which direct federal agents to do less disruptive searches: "A search Warrant should not be used to obtain documentary materials believed to be in the private possession of a disinterested third party unless it appears that the use of a subpoena, summons, request, or other less intrusive alternative means of obtaining the materials would substantially jeopardize the availability or usefulness of the materials sought . . ." 28 C.F.R. § 59.4(a)(1) (2009).

[8] The conclusory statement in the Statement of Probable Cause that "[a] search of the Long Haul's premises could reveal logs or sign-in sheets indicating which patrons used the computers on particular dates" does not save the Warrant.  "Could" indicates a mere possibility or capability; a mere capability does not constitute probable cause sufficient to authorized the wholesale search and seizure that occurred here.  *United States v. Payton*, No. 07-10567, --- F.3d ----, 2009 WL 2151348, at *5 (9th Cir. July 21, 2009).

**OPPOSITION TO MOTIONS TO DISMISS
OF (1) DEFENDANTS HART AND SHAFFER AND (2)
DEFENDANT UNITED STATES**

crimes and protect innocent, personal information).  They were not cases where, as here, the

computers should have been off limits to officers in their entirety.  *See Payton*, 2009 WL 2151348

at *5 (if no facts point to computer as repository of evidence, other than that computers are capable

of containing the evidence sought, search of the computer violates the Fourth Amendment).

> (b)      The Defendants Conducted the Search in an Unreasonable
> Manner.

Officers executing a valid warrant nevertheless violate the Fourth Amendment if their

execution of that warrant is unreasonable.  *San Jose Charter of Hells Angels Motorcycle Club v.*

*City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005), *cert. denied*, 546 U.S. 1061 (2005).  The

execution here was unreasonable in several respects.  First, Defendants violated the Fourth

Amendment by searching the office of EBPS, when none of the evidence in support of the Warrant

suggested that organization had anything to do with the public access computers.  The Warrant in

this case was vague in describing the premises to be searched:  it indicated the Long Haul Infoshop,

but also gave the address and described the building as a whole, without any mention of the other

building occupants.  Warrant and Statement of Probable Cause, p. 2.  When officers executing a

warrant for a particular address discover that the building in fact contains multiple units they must

limit their search to the unit for which they have probable cause.  *Maryland v. Garrison*, 480 U.S.

79, 86-87 (1987); *Mena v. City of Simi Valley*, 226 F.3d 1031, 1039 (9th Cir. 2000) (denying

qualified immunity).

Second, Defendants executed the warrant in an unnecessarily destructive way.  Despite the

presence of Long Haul members at the scene, (see FAC ¶ 44), the raid team damaged the EBPS

doorjamb, and cut, crowbarred and unscrewed locks throughout the building.  FAC ¶¶ 5, 41, 43,

47, 51.  Officers executing a warrant may only harm the property to the extent it is "reasonably

necessary to effectuate the performance" of the search.  *San Jose Charter of Hells Angels*

*Motorcycle Club*, 402 F.3d at 975.  Given that the search was intended to gather evidence relating

only to a user of the public-access computers, there was no need for Defendants to destroy any

property when they could simply have allowed Long Haul members to unlock the doors.

---

18

**OPPOSITION TO MOTIONS TO DISMISS**
**OF (1) DEFENDANTS HART AND SHAFFER AND (2)**
**DEFENDANT UNITED STATES**

1

       (c)     Defendant Shaffer Violated the Fourth Amendment by Participating in Obtaining the Search Warrant.

2       Officers applying for a search warrant have a duty to provide the magistrate with accurate

3 and complete information.  Thus, if an officer applying for a warrant knows or should know that a

4 single address contains multiple tenants, she has a duty to include this information in her affidavit.

5 *Garrison*, 480 U.S. at 85; *Mena*, 226 F.3d at 1036-37.  Similarly, an officer must not knowingly or

6 recklessly omit from her affidavit facts that may show that the items to be seized are protected by

7 the PPA – and thus may not be searched unless an exception to the law applies[9] – because that fact

8 is material to the magistrate's determination of whether to authorize a search.  *See Lombardi v. City*

9 *of El Cajon*, 117 F.3d 1117, 1123-26 (9th Cir. 1997).  The FAC alleges both that the application for

10 the Warrant violated both of these clearly established legal principles (because the affidavit omits

11 any mention of EBPS or Slingshot) and that Shaffer participated in obtaining the Warrant.  FAC ¶¶

12 4, 20, 38.

13     **C.**    **Plaintiffs Have Properly Pled a First Amendment Claim Seeking Damages Against Defendants Shaffer and Hart In Their Individual Capacities.**

14

15       Plaintiffs' First Amendment claim survives this motion to dismiss for the same reasons as

16 their Fourth Amendment claim:  the PPA does not preempt, see *supra* at pp. 6-12,  and Plaintiffs

have adequately pled the violation.  As with Plaintiffs' Fourth Amendment claim, the First

17 Amendment rights Defendants violated are clearly established.

18
19     1.    The Unlawful Search In This Case Violated the First as Well as the Fourth Amendment.

20       The Supreme Court has long recognized that protecting individual privacy is an essential

21 element in protecting the First Amendment right of freedom of association.  *Gibson v. Fla.*

22 *Legislative Investigation Comm.*, 372 U.S. 539, 544 (1963).  As Justice Douglas explained in his

23 concurring opinion in *Gibson*, 372 U.S. at 565:

24       Government is . . . precluded from probing the intimacies of spiritual and intellectual relationships in the myriad of such societies and groups that exist in this

25       country . . . . If that is not true, I see no barrier to investigation of newspapers, churches, political parties, clubs, societies, unions, and any other association for

26       their political, economic, social, philosophical, or religious views.

27     ――――――――――――
[9] As discussed in § III.D, below.

28

No. 09-00168-JSW      **OPPOSITION TO MOTIONS TO DISMISS OF (1) DEFENDANTS HART AND SHAFFER AND (2) DEFENDANT UNITED STATES**

This is particularly critical where a group holds unorthodox views. *Brown v. Socialist Workers '74 Camp. Comm.*, 459 U.S. 87, 91 (1982) (quoting *Buckley v. Valeo*, 424 U.S. 1, 64 (1976) ("compelled disclosure of political associations and beliefs . . . 'can seriously infringe on privacy of association and belief guaranteed by the First Amendment.'"); *Shelton v. Tucker*, 364 U.S. 479, 485-86 (1960); *NAACP v. Alabama*, 357 U.S. 449, 462 (1958) ("inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs.").

Government surveillance threatens not only freedom of association, but also freedom of expression. Law enforcement scrutiny, whether through a wiretap or through search and seizure pursuant to an invalid warrant, threatens First Amendment as well as Fourth Amendment freedoms. The Supreme Court made this point in its opinion in *United States v. United States Dist. Court (Keith)*, 407 U.S. 297, 314 (1972): "The price of lawful public dissent must not be a dread of subjection to an unchecked surveillance power. Nor must the fear of unauthorized official eavesdropping deter vigorous citizen dissent and discussion of Government action in private conversation. For private dissent, no less than open public discourse, is essential to our free society."

Plaintiffs in this case are known to hold unorthodox views. Long Haul "educates the public about matters relevant to peace, justice and history," and its offices serve as "a meeting space and resource hub for local activist groups and members of the community" ranging from knitting circles to anarchist study groups. FAC ¶¶ 25-26. EBPS is a volunteer-run prisoner rights project that disseminates information about prisoner rights issues to the public. FAC ¶ 33. Their respective publications espouse views that many consider unconventional. Their First Amendment rights of association and speech are therefore infringed when the privacy of their offices, files, and computer data is improperly invaded.

The FAC alleges that government agents came into Long Haul and EBPS, seized, copied, searched, and retained sensitive information related to those two organizations. For example, in seizing the public access computers used by Long Haul members as well as by members of the

**OPPOSITION TO MOTIONS TO DISMISS
OF (1) DEFENDANTS HART AND SHAFFER AND (2)
DEFENDANT UNITED STATES**

public, the government obtained access to a wealth of information related to the use of those computers for Internet browsing and email. The same is true of the search of the EBPS office and the search through its mail. The government's indefinite possession of copies of data from the computers and other information it seized enable it to scrutinize Plaintiffs' private communications and relationships with others for reasons completely unrelated to the pending criminal matter — or for no reason at all. FAC ¶¶ 55-58. These searches and seizures chill Long Haul and EBPS members and others who would like to freely associate at a location that they now fear is subject to unlawful surveillance. It also chills the willingness of prisoners and members of their families to communicate with EBPS. Finally, the searches and seizures chill the dissenting views of the members of these organizations. FAC ¶ 57. Thus, Plaintiffs have a claim not only under the Fourth Amendment, but under the First Amendment as well.[10]

> 2.   The Supreme Court's Decision in *Zurcher* Does Not Defeat Plaintiffs' First Amendment Claim.

Defendants' *Zurcher* argument, couched in qualified immunity terms as a failure to allege a constitutional violation, does not withstand scrutiny. *Zurcher* addressed whether either the Fourth or First Amendments require law enforcement officers to meet more than the traditional Fourth Amendment standard in seeking a warrant to search a newspaper. In holding that they do not, the Supreme Court did not purport to address the issue of whether a search pursuant to an *invalid* warrant may violate not only the Fourth Amendment, but also the First Amendment as well. As discussed in the preceding section, invalid searches plainly can result in both such violations.

*Zurcher* sets forth the constitutional standard that Defendants here should have met but failed to do so. In *Zurcher*, a District Attorney obtained a warrant to search the offices of The

---

[10] Defendants argue that the PPA bars not only Plaintiffs' Fourth Amendment *Bivens* claim, but their First Amendment claim as well. As discussed in great detail above, neither the language nor the legislative history of the Act support this argument because the First Amendment claims at issue here fall outside the territory covered by the PPA. As explained above, the gravamen of Plaintiffs' First Amendment claims is that rights of freedom of association and expression have been chilled by the seizures and searches of the public computers at Long Haul, and of the non-publication related materials at Long Haul and EBPS. Because *Zurcher* does not bar these claims (see discussion in the next section) and because they lie outside the conduct addressed by the PPA, these claims may not be dismissed.

**OPPOSITION TO MOTIONS TO DISMISS**
**OF (1) DEFENDANTS HART AND SHAFFER AND (2)**
**DEFENDANT UNITED STATES**

Stanford Daily newspaper for photos of a violent clash between police and demonstrators.  The Stanford Daily and its editors brought a civil suit against the police, claiming that the search had violated their First and Fourth Amendment rights.  The Supreme Court rejected the claim that the First Amendment protects newspapers from such search warrants except under certain conditions.  Rather, the Court held that the First Amendment requires "particular exactitude" when applying probable cause, specificity with regard to the place to be searched and the things to be seized, and overall reasonableness.  Where those requirements are met, the fact that it was a newspaper that was searched does not give rise to a First Amendment claim.

Here, Plaintiffs have alleged that the warrant lacked both the required specificity and lacked probable cause because it purported to authorize a search of the entire premises for unspecified "evidence" of an unspecified crime.  The Complaint also alleges that, while the officers stated that the basis for the search was their belief that an unknown member of the public had used the public access computers at Long Haul to send the emails under investigation, the officers searched areas that could not have contained any evidence of who might have sent an email from a public access computer.  Their improper conduct included the search of the EBPS offices, which are kept locked and inaccessible to the public (FAC ¶ 32) as well as the search of files, cabinets, book borrowing logs, and non-public computers that could not have contained such evidence.  *Zurcher* plainly cannot be read to bar Plaintiffs' First Amendment claims any more than it could be read to bar their Fourth Amendment claims.

**D.**     **Plaintiffs Have Adequately Pled First and Fourth Amendment Injunctive Relief Claims Against Defendants Hart and Shaffer.**

Having adequately pled constitutional violations by Defendants Hart and Shaffer, Plaintiffs may properly obtain equitable relief against Shaffer and Hart in their official capacities in order to prevent further constitutional harm.  Defendants Hart and Shaffer claim that such injunctive and declaratory relief is barred by the PPA, by sovereign immunity, and because there is no likelihood of future harm.  Defendants are wrong.

First, as discussed above (*see, supra,* p. 10), the exclusive remedies provision of the PPA is limited to "conduct constituting a violation of this chapter . . . ."  42 U.S.C. § 2000aa-6(d).

22

Congress made clear its intent not to preclude other remedies to address violations not proscribed by the statute. S. Rep. No. 96-874, at 7 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 3950, 3953. It would be perverse indeed if the PPA were construed to preclude members of the media from obtaining equitable relief for constitutional remedies unrelated to a PPA violation, when any other person or entity would be entitled to that relief. Because available equitable remedies for First and Fourth violations are not proscribed by the statute, injunctive relief against Defendants Hart and Shaffer in their official capacities is an appropriate remedy for the ongoing constitutional violations alleged by the Plaintiffs. *American Federation of Government Employees Local 1 v. Stone*, 502 F.3d 1027, 1035, 1038-39 (9th Cir. 2007); *Mitchum v. Hurt*, 73 F.3d 30, 35 (3d Cir. 1995) (Alito).

Second, sovereign immunity does not bar Plaintiffs' injunctive relief claims against Hart and Shaffer in their official capacities. It has long been recognized that sovereign immunity does not bar suits against federal officers in their official capacities for prospective injunctive relief to prevent ongoing infringements of federal rights. *See Schneider v. Smith*, 390 U.S. 17 (1968); *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949); *Philadelphia Co. v. Stimson*, 223 U.S. 605, 619-20 (1912); *Tashima v. Administrative Office of the U.S. Courts*, 719 F.Supp. 881, 887 (C.D. Cal. 1989).[11] Plaintiffs have adequately pled that Defendants' First and Fourth Amendment violations are causing ongoing harms. *See, e.g.,* FAC ¶¶ 20, 21, 55-56, 58 (alleging that Defendants continue to possess, use, and search materials obtaining pursuant to an illegal, overbroad search). Accordingly, injunctive relief against Defendants in their official capacities is appropriate.

Finally, Plaintiffs do not lack standing to seek injunctive relief against the Defendants in their official capacities due to lack of redressability. *See* Indiv. Mot. to Dism. 15-16. In the FAC, Plaintiffs allege that, pursuant to an illegal search, Defendants seized, copied, and continue to

---

[11] This exception to the usual rules of sovereign immunity for suits against federal officials is the counterpart to the more commonly discussed doctrine allowing official-capacity suits against state officials under *Ex Parte Young*, 209 U. S. 123 (1908), despite the Eleventh Amendment's promise of sovereign immunity to the states. *See Philadelphia Co.*, 223 U.S. at 619-20; *Mitchum*, 73 F.3d at 35 (both citing *Ex Parte Young* in support of allowing official-capacity suits against federal officials).

No. 09-00168-JSW                    **OPPOSITION TO MOTIONS TO DISMISS**
                                    **OF (1) DEFENDANTS HART AND SHAFFER AND (2)**
                                    **DEFENDANT UNITED STATES**

search and otherwise make use of the data taken from Long Haul's computers.  Plaintiffs do not

seek injunctive relief against hypothetical future raids or seek injunctive relief requiring

Defendants to engage in or refrain from activity not directly tied to Plaintiffs' alleged harm; rather,

Plaintiffs seek the destruction of the illegally obtained data and protection against any further

illegal searches of such data that remains in Defendants' possession.  *See* FAC ¶¶ 55, Prayer for

Relief.

        When the government seizes a person's private data in violation of the Fourth Amendment,

a federal court has jurisdiction to order "that the government simply give back what it took

illegally."  *Cardwell v. Kurtz*, 765 F.2d 776, 779 (9th Cir. 1985) (rejecting government's mootness

and ripeness arguments where Plaintiffs requested that federal officials destroy tax information that

they had illegally obtained); *accord Norman-Bloodsaw v. Lawrence Berkeley Laboratory,* 135 F.3d

1260, 1274-75 (9th Cir. 1998) (rejecting argument that request to destroy personal information

seized by officials in violation of Fourth Amendment was moot).  Plaintiffs' injury from

defendants' actions is concrete and ongoing.  Absent injunctive relief, the injury will continue.

Plaintiffs meet the standing requirements of *Lujan*, 504 U.S. at 560-61.

## E.   The Raid Team's Search and Seizure of August 27, 2008, Did Not Qualify for the "Exigent Circumstances" Exception to the PPA.

        Defendant the United States argues that even if it was otherwise properly pled, the PPA

claim must be dismissed because the exigent circumstances exemption found in 42 U.S.C. §§

2000aa(a)(2) and (b)(2) justify the search and seizure of the Slingshot and EBPS newsletter

materials.  The exception provides that searches will not violate the PPA if "there is reason to

believe that the immediate seizure of such materials is necessary to prevent the death of, or serious

bodily injury to, a human being."  This argument fails for two reasons: (1) any such assertion is

factual in nature and is inappropriate to raise at a motion to dismiss stage, and (2) even if its factual

assertions were true, they clearly indicate that the United States does not qualify for the exemption.

        First, determining whether Defendant's actions fall under the exigency exception requires a

determination of fact that is inappropriate at the motion to dismiss stage.  In order for Defendant to

24

**OPPOSITION TO MOTIONS TO DISMISS**
**OF (1) DEFENDANTS HART AND SHAFFER AND (2)**
**DEFENDANT UNITED STATES**

1   prevail on this argument, they will need to raise factual assertions and inferences that are

2   inappropriate at this stage of the litigation.[12]

3       Second, the government's two-month delay[13] between learning of the threatening emails

4   and seeking a search warrant for the Long Haul Infoshop undermines their claim to a reasonable

5   belief in the necessity of "immediate seizure" of Long Haul's computers and records.  While the

6   reasonableness of any given warrantless search or seizure depends on the circumstances of each

7   individual case, the acceptable delay before a thorough investigation is made or a warrant is

8   obtained is generally calculated in minutes or hours, not months.  *See Illinois v. McArthur*, 531

9   U.S. 326, 332-33 (2001) (discussing precedent finding a 90-minute detention of property

10  unreasonable while a separate 29-hour detention of property reasonable in light of circumstances).

11  **IV.   CONCLUSION**

12      For the above reasons, Defendants' Motions to Dismiss should be denied.

13

14  DATED:  July 24, 2009

15                                          */s/*  Matthew Zimmerman

16                                          ELECTRONIC FRONTIER FOUNDATION
                                            MATTHEW ZIMMERMAN
                                            454 Shotwell Street
17                                          San Francisco, CA 94110
                                            Telephone:  (415) 436-9333 x134
18                                          Facsimile:   (415) 436-9993

19                                          COUNSEL FOR PLAINTIFFS

20

21

22

23

24  [12] The PPA's exigent circumstances exception is predicated on the disputed existence of the necessity for immediate seizure and need not be addressed by Plaintiffs at the pleading stage.  *See*

25  *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1992) ("For a complaint to be dismissed because the allegations give rise to an affirmative defense 'the defense clearly must

26  appear on the face of the pleading,'" quoting C. Wright & A. Miller, Federal Practice and Procedure, § 1357, at 348-49 (2d ed. 1990)).

27  [13] See Warrant and Statement of Probable Cause, pp. 5-7.

28
                                            25

**OPPOSITION TO MOTIONS TO DISMISS
                                            OF (1) DEFENDANTS HART AND SHAFFER AND (2)
                                            DEFENDANT UNITED STATES**