Jennifer Granick, Esq. (SBN 168423)
Matthew Zimmerman, Esq. (SBN 212423)
Marcia Hofmann, Esq. (SBN 250087)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993
Email: jennifer@eff.org
       mattz@eff.org
       marcia@eff.org

Ann Brick (SBN 65296)
Michael T. Risher (SBN 191627)
AMERICAN CIVIL LIBERTIES
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: abrick@aclunc.org
       mrisher@aclunc.org

Attorneys for Plaintiffs
LONG HAUL, INC. and EAST BAY
PRISONER SUPPORT

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LONG HAUL, INC. and EAST BAY PRISONER SUPPORT,<br><br>    Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA; VICTORIA HARRISON; KAREN ALBERTS; WILLIAM KASISKE; WADE MACADAM; TIMOTHY J. ZUNIGA; MIKE HART; LISA SHAFFER; AND DOES 1-25,<br><br>    Defendants. | Docket No. 09-00168-JSW<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEFING PURSUANT TO COURT ORDER OF SEPTEMBER 14, 2009, ON FIRST AMENDMENT ISSUES RAISED BY FEDERAL DEFENDANTS MOTION TO DISMISS** |

I.  INTRODUCTION

On September 14, 2009, the Court posed the following questions to Plaintiffs in connection with Federal Defendants' Motion to Dismiss:

(1) Are Plaintiffs bringing a First Amendment retaliation claim, *i.e.*, that Defendants engaged in their search and seizure in retaliation for Plaintiffs or their members exercising their rights under the First Amendment?

(2) If not, on what authority do Plaintiffs rely to indicate that the law demonstrating that their First Amendment rights were violated was clearly established at the time?

Plaintiffs claim that Defendants would not have searched or seized their premises, property, or information if not for the fact that Plaintiffs are social justice advocates who have criticized both the University and government authority over individuals.  In this way, Defendants' actions were in retaliation for Plaintiffs and their members exercising their First Amendment rights.  *See* sec. III.A.  In addition, Plaintiffs claim that their First Amendment rights were violated when Defendants searched and seized their associational and personally identifying information without just cause in violation of Supreme Court precedent dating at least as far back as *NAACP v. Alabama*, 357 U.S. 449 (1958).  *See* sec. III.B.  Finally, Plaintiffs claim that the unlawful search and seizure has the effect of chilling Plaintiffs' free speech and association.  *See* sec. III.C.  Without a ruling that activist organizations can offer a public internet room without necessarily opening up the entire organization or their co-located groups to plenary search and seizure when a member of the public misuses the computers, Plaintiffs and their associates will be justifiably afraid to exercise their First Amendment rights in the future.

II. PLAINTIFFS' FIRST AMENDMENT ALLEGATIONS

Plaintiffs have alleged that Defendants violated their First Amendment rights in three ways.  First, because of Plaintiffs' activism and unpopular opinions, Defendants improperly used the warrant procedure to search and seize property and material for which they did not have probable cause in a manner that they would not have done if the suspicious email messages had come from a more less controversial public facility like a traditional library or an internet café.  Second, by

improperly searching and/or seizing associational information such as Plaintiffs' book lending logs, letters, email communications, and other private documents, Defendants have interfered with Plaintiffs' First Amendment-protected right to peaceably associate anonymously and without undue government interference. Third, by illegally searching Long Haul and East Bay Prisoner Support ("EBPS"), Defendants have chilled Plaintiffs from freely associating and speaking in the future. These allegations are supported by the following factual claims in the First Amended Complaint ("FAC"):

- Long Haul was founded as an unincorporated association in 1979 by Alan Haber, one of the founding members of the 1960's new-left group Students for a Democratic Society. It is an all-volunteer collective that educates the public about peace and justice and serves as a meeting space for activist groups, radical movie nights, anarchist study groups, and other community meetings and events. Long Haul publishes the Slingshot newspaper and has been and is highly critical of the University of California and of the UC Police Department. FAC ¶¶ 24-27.

- EBPS is a prisoner rights group that collects and publishes prisoner writings, information about prisoner issues, prison abolition and prison support work. FAC ¶¶ 33.

- The raid team searched every room in the Long Haul space, including the Slingshot and EBPS offices to which the public never had access, even though the justification for the search, as set forth in the affidavit in support of the warrant, was that potentially unlawful emails had been sent from the public access computers. The raid team looked through Long Haul and EBPS files and documents and seized all the computers in each private, locked area. FAC ¶¶ 41-42.

- The raid team searched the records and logs of book lending and sales stored inside locked cabinets, went through EBPS's mail, and examined the contents of the filing cabinet for Long Haul's Slingshot newspaper. These materials contained private information, including the names of Long Haul supporters, members and customers. FAC ¶¶ 41, 46, 51.

- Defendants continue to retain, and in some cases to search, copies of the digital information from Long Haul and EBPS computers. FAC ¶¶ 53-55. The government's indefinite possession of copies of data from the computers and other information it seized enable it to scrutinize Plaintiffs' private communications and relationships with others for reasons completely unrelated to the pending criminal matter — or for no reason at all. FAC ¶¶ 55-58.

- Defendants' conduct in searching the Long Haul and EBPS premises and in seizing and searching their computers and other materials has a chilling effect on the First Amendment associational rights of Long Haul, EBPS, their members, and members of the public who interact with them. FAC ¶ 57. Plaintiffs fear further investigative action or retaliation from the continued retention and search of their computer files. FAC ¶¶ 24-27, 46, 58.

### III. ARGUMENT

#### A. **Defendants Violated The First Amendment By Discriminating Against Plaintiffs on the Basis of Their Political Beliefs When They Searched and Seized Private Spaces, Property, and Information Wholly Unconnected With the Purported Basis for the Warrant.**

Plaintiffs first claim that they were subjected to an illegal search and seizure of their property because of their unpopular political activities and beliefs. Plaintiffs allege, for example, that Defendants would not have broken down doors, reviewed private files, and seized internal computers if suspicious email messages had been sent from public access computers at San Francisco Public Library, a Kinko's Copy Shop, or Coffee Bar internet café – that is, if the messages had been sent from facilities not associated with individuals who held controversial views. It is unimaginable that, having traced suspicious emails to public access computers at one of those locations, officers would think they had just cause to search through book lending logs, to seize business computers, or to break down locked office doors. Yet, while Long Haul served the same role as any of these other computer access providers, Long Haul and EBPS were treated as if they were potentially guilty parties with no further justification.

Defendants could have lawfully served a subpoena and obtained the information they were looking for with Plaintiffs' cooperation.[1] With a valid warrant, Defendants could also have seized any public access computers from which the police and FBI reasonably believed the suspicious emails were sent and left the rest of Plaintiffs' property alone. They chose not to pursue either of these options. Plaintiffs have pled more than enough facts from which this Court can infer that Defendants' improper treatment was the result of their disrespect, distaste, or suspicion for Plaintiffs' activism and political dissent.

A search and seizure made in retaliation for associational and speech activities violates the First Amendment. *See, e.g., Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986); *CarePartners, LLC v. Lashway*, 545 F.3d 867, 877 (9th Cir. 2008). Plaintiffs adequately alleged that Defendants' animus resulted in the harm suffered here. *See Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006) (searching someone's office and seizing materials can satisfy the requirement that a plaintiff prove the challenged action would chill or silence a person of ordinary firmness from future First Amendment activities).[2]

---

[1] *See, e.g.,* 28 CFR § 59.4 (authorized by 42 U.S.C. § 2000aa–11) ("A search warrant should not be used to obtain documentary materials believed to be in the private possession of a disinterested third party unless it appears that the use of a subpoena, summons, request, or other less intrusive alternative means of obtaining the materials would substantially jeopardize the availability or usefulness of the materials sought . . .").

[2] By definition, a retaliation claim asserts that the government has targeted and injured a plaintiff for past speech activities. The Supreme Court has made clear the relevant intent is governmental "hostility to the content of . . . [the protected speech], rather than an intent to cause . . . harm." *Crawford-El v. Britton*, 523 U.S. 574, 592 (1998) (citation omitted); *Hartman v. Moore*, 547 U.S. 250, 259-60 (2006) ("[A] *Bivens* (or § 1983) plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury. . . ."); *Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990) (relevant question in retaliation case is "whether . . . [police officer defendant] intended to hassle . . . [plaintiff] as punishment for exercising his First Amendment rights."). Thus, *Skoog* found past harm to a plaintiff was adequate to state the claim, agreeing with the parties that a retaliatory office search is a serious enough consequence that it could create a chilling effect in a reasonable person. 469 F.3d at 1231-32. *Skoog* phrases the plaintiff's burden in terms of showing a chilling effect, but what is required is some showing of non-trivial harm, where "non-trivial" means that the injury must be of a magnitude that would cause a person of ordinary firmness to refrain from speaking out, not that it would cause this individual to refrain from speaking in the future. *Id.* Plaintiffs here have stated a First Amendment claim since police conducted an unreasonable search of their offices because of Long Haul's protected speech and views and since the search and seizure has an ongoing chilling effect. *See* Section III.C., *infra*.

### B. Defendants Violated Plaintiffs' First Amendment Rights by Improperly Searching the Long Haul Premises and Seizing Property, Communications, Member Information, and Other Associational Materials.

Plaintiffs also claim that Defendants violated their First Amendment rights by unlawfully accessing private associational information, including (among other things) documentation about who uses Long Haul, who borrows books from the library, who writes for Slingshot, and the prisoners with whom EBPS communicates, without just cause in violation of the First Amendment. There is a "vital relationship between freedom to associate and privacy in one's associations," especially for activist groups like Plaintiffs that seek social change or adhere to unorthodox political beliefs. *NAACP*, 357 U.S. at 462. Defendants thus violated Plaintiffs' First Amendment rights by intentionally and illegally searching and seizing information about the Plaintiffs and with whom they associate.

It is clearly established that the First Amendment protects Plaintiffs' right to associate privately, free from unwarranted government surveillance or interference. The U.S. Supreme Court has long held that associational privacy is intimately connected to First Amendment freedoms. At least as far back as 1958, the Court has secured First Amendment freedoms by prohibiting improper surveillance as well as other forced disclosures of private membership or identifying information. For example, in *NAACP v. Alabama*, the Supreme Court invalidated an Alabama order that would have required the NAACP to disclose its membership lists because protecting First Amendment interests hinges on keeping private membership information out of the hands of government. In that case, the Supreme Court wrote:

> It is hardly a novel perception that compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association as the forms of governmental action in the cases above were thought likely to produce upon the particular constitutional rights there involved. This Court has recognized the vital relationship between freedom to associate and privacy in one's associations. . . . Inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs.

357 U.S. at 462.

Here, Plaintiffs allege that Defendants improperly searched and seized information that reveals who visits Long Haul, holds meetings in the Infoshop, writes for Slingshot or the EBPS newsletters, sends letters to EBPS from prison, and borrows books from the library. Here, as in

*NAACP*, it is "hardly . . . novel" to conclude that keeping these matters private from improper government surveillance is indispensable to the preservation of First Amendment rights, especially for activist groups like Plaintiffs. *Id.*

Again in 1972, in *United States v. United States District Court for the Eastern District of Michigan*, 407 U.S. 297 (1972) (hereinafter "*Keith*"), the Supreme Court drew a powerful connection between rights protected by the Fourth Amendment and First Amendment:

> History abundantly documents the tendency of Government -- however benevolent and benign its motives -- to view with suspicion those who most fervently dispute its policies. Fourth Amendment protections become the more necessary when the targets of official surveillance may be those suspected of unorthodoxy in their political beliefs. The danger to political dissent is acute where the Government attempts to act under so vague a concept as the power to protect 'domestic security.' Given the difficulty of defining the domestic security interest, the danger of abuse in acting to protect that interest becomes apparent."

*Id.* at 314. While unlawful surveillance particularly threatens First Amendment rights in national security cases, the Supreme Court has clearly stated that such improper government activity also threatens speech and association when misused in a more traditional criminal context. "Official surveillance, whether its purpose be criminal investigation or ongoing intelligence gathering, risks infringement of constitutionally protected privacy of speech." *Id.* at 320. For this reason, *Keith* required a warrant for electronic surveillance in domestic security cases. Here, as recognized in *Keith*, Defendants' improper investigatory actions imperil Plaintiffs' First Amendment interests in peaceful activism and dissent.

*NAACP* and *Keith* are by no means unique. In *Gibson v. Florida Legislative Investigation Committee*, 372 U.S. 539, 544 (1963), the Supreme Court held that the state was not entitled to compel a local race relations association to produce the association's membership records in order to determine whether any alleged Communists were also members of the association. *See also Brown v. Socialist Workers '74 Camp. Committee*, 459 U.S. 87, 91 (1982) (quoting *Buckley v. Valeo*, 424 U.S. 1, 64 (1976)) ("compelled disclosure of political associations and beliefs. . . . 'can seriously infringe on privacy of association and belief guaranteed by the First Amendment.'"); *Shelton v. Tucker*, 364 U.S. 479, 485-86 (1960). A wide range of courts have similarly found a connection between the right to privacy and fundamental First Amendment freedoms in cases

1  dealing with registration statutes,[3] grand jury subpoenas,[4] government subpoenas *duces tecum*,[5] and
2  civil discovery requests between private parties.[6]

3        The search and seizure here also implicates the First Amendment right to anonymous
4  speech because Defendants improperly obtained information identifying contributors to Slingshot
5  and the EBPS newsletter, both of which sometimes publish articles without reporter bylines.
6  Individuals have the right to speak anonymously and pseudonymously, and governmental search
7  and seizure of materials identifying speakers without due cause violates the First Amendment's
8  protection of anonymous speech. "Anonymity is a shield from the tyranny of the majority . . .
9  [that] exemplifies the purpose . . . of the First Amendment . . . to protect unpopular individuals
10  from retaliation . . . at the hand of an intolerant society." *McIntyre v. Ohio Elections Commission*,
11  514 U.S. 334, 357 (1995). *See also, e.g., id*. at 342 ("[A]n author's decision to remain anonymous,
12  like other decisions concerning omissions or additions to the content of a publication, is an aspect
13  of the freedom of speech protected by the First Amendment."); *Talley v. California*, 362 U.S. 60,
14  64 (1960) (finding a municipal ordinance requiring identification on hand-bills unconstitutional,
15  noting that "[a]nonymous pamphlets, leaflets, brochures and even books have played an important
16  role in the progress of mankind."). *See also Highfields Capital Management, L.P. v. Doe*, 385 F.
17  Supp. 2d 969, 971 (N.D. Cal. 2005) (First Amendment considerations require imposing limitations
18  on enforcement of subpoenas seeking identity of online posters).

19        These cases reinforce the long-established principle that where the government pries into
20  the membership lists and other private information of an association without sufficient cause, it
21  violates the First Amendment, no matter what investigative means it uses. Search warrants, even

---

[3] *See, e.g., Bates v. City of Little Rock*, 361 U.S. 516 (1960).
[4] *See, e.g., Ealy v. Littlejohn*, 569 F.2d 219, 230-31 (5th Cir. 1978); *Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972) (abrogated by statute on other grounds).
[5] *See, e.g., Gibson*, 372 U.S. 539 (legislative subpoena and subpoena duces tecum ("SDT")); *In re Grand Jury Proceeding*, 842 F.2d 1229 (11th Cir. 1988) (grand jury SDT); *International Longshoremen's Ass'n v. Waterfront Commission of New York Harbor*, 667 F.2d 267 (2d Cir. 1981) (government commission SDT); *Pollard v. Roberts*, 283 F. Supp. 248 (W.D. Ark. 1968), affirmed per curiam, 393 U.S. 14 (1968) (prosecutor SDT).
[6] *Britt v. Superior Court*, 20 Cal.3d 844 (1978); *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202 (N.D. Cal. 1983); *Savola v. Webster,* 644 F.2d 743 (8th Cir. 1981).

when properly issued, endanger First Amendment rights as much as other investigatory tools because they allow the police to examine and seize private materials before the owner has any opportunity to move to quash. *See* Smolla and Nimmer, Freedom of Speech § 25:36 ("The stylized draconian efficiency of the modern police search is inherently chilling" when it intrudes into areas protected by the First Amendment.) If facially valid registration statutes, subpoenas, and discovery requests for associational information violate the First Amendment, certainly an unlawful search that gives law enforcement access to this same information also violates the First Amendment.

In a case similar to this one, the Tenth Circuit held that, under clearly established law, federal agents violated both the First and Fourth Amendments by procuring and using an overbroad warrant to seize membership lists and other materials from a nonprofit tax-protestor organization. *National Commodity & Barter Ass'n v. Archer*, 31 F.3d 1521, 1527-31, 1533-34 (10th Cir. 1994) (denying qualified immunity on First and Fourth Amendment *Bivens* claims where agents used overbroad warrant to seize membership list from controversial nonprofit organization's offices). The case at bar is indistinguishable: Defendants had no justification to discover Plaintiffs' membership information, the identity of visitors who borrowed books from the lending library, with which prisoners EBPS corresponds, or any other associational information. Because this improper search intentionally gave law enforcement access to Plaintiffs' membership and private communications, it clearly violates not only the Fourth Amendment, but the First as well.

*Zurcher v. Stanford Daily*, 436 U.S. 547 (1978), does not suggest otherwise. *Zurcher* held that *if* the government scrupulously complies with the Fourth Amendment in applying for a warrant to search a newspaper office, then it also satisfies the First Amendment's requirements. But this can be true only "if the requirements of specificity and reasonableness are properly applied, policed, and observed." *Id*. at 566. Moreover, courts must "apply the warrant requirements with particular exactitude when First Amendment interests would be endangered by the search." *Id*. at 565. Where, as here, the warrant and the search fail to meet those requirements, and the police fail even to inform the magistrate that a requested warrant implicates First Amendment concerns, the resulting search may violate the First, as well as the Fourth, Amendment. "Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's

commands. Where such multiple violations are alleged . . . we examine each constitutional provision in turn." *United States v. James Daniel Good Real Property*, 510 U.S. 43, 49-50 (1993) (citation omitted); *see Duran v. City of Douglas*, 904 F.2d 1372, 1378 (9th Cir. 1990) (stop without reasonable suspicion would violate First, as well as Fourth, Amendment if done in retaliation for protected speech). Defendants are not entitled to dismissal of the First Amendment claims against them simply because their conduct also violated the Fourth Amendment.

### C. Defendants Violated Plaintiffs' First Amendment Rights Because Their Actions Have the Practical Effect of Chilling Plaintiffs' Exercise of Their Freedoms of Speech and Association.

Plaintiffs finally claim that Defendants' illegal search of Plaintiffs' material and property, which centers on their political activism and other efforts to oppose the policies of, among others, the Defendants, chilled First Amendment protected activity of the Plaintiffs and their members. The Defendants have violated the First Amendment, whether or not they intended to chill Plaintiffs' protected activities: if a governmental action has "the practical effect of discouraging the exercise of constitutionally protected political rights . . . even if any deterrent effect . . . arises . . . as an unintended but inevitable result of the government's conduct in requiring disclosure," then the action violates the First Amendment unless justified by a compelling government need. *Waterfront Commission of New York Harbor*, 667 F.2d 267, 270-71 (2nd Cir. 1981). *See also, e.g., Shelton*, 364 U.S. at 486 (1960) (striking down a state law requiring the teachers of Arkansas to disclose all organizations to which they belonged on First Amendment grounds, noting that "the pressure upon a teacher to avoid any ties which might displease those who control his professional destiny would be constant and heavy."); *Archer*, 31 F.3d at 1530-31; *Pollard*, *supra* note 4, (though there was no evidence of past reprisals against contributors to the Republican Party of Arkansas, it would be "naive" not to recognize that disclosure would impermissibly discourage the exercise of constitutional rights given the unpopularity of the Party at that time);[7] *Skoog*, 469 F.3d at 1231-32 (evidence that office was searched and material seized satisfies requirement that plaintiff prove challenged action would chill or silence a person of ordinary firmness from future First

---

[7] The Supreme Court's per curiam affirmation means that the holding, if not the reasoning, of *Pollard* is binding on this court. *See, e.g., Mandel v. Bradley*, 432 U.S. 173, 176 (1977).

Amendment activities); *Britt v. Superior Court*, *supra* note 5, at 852-56.  Thus, Plaintiffs need not allege that Defendants intended to chill Plaintiffs' First Amendment activities in order to prevail on the claim.

Plaintiffs have alleged that Defendants improperly sought and obtained associational information – indeed, that was the obvious effect of extending the search beyond the public access computers to private offices and files.  This allegation satisfies Plaintiffs' pleading requirement without more.  *See, e.g., Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957) ("Merely to summon a witness and compel him, against his will, to disclose the nature of his past expressions and associations is a measure of governmental interference in these matters.").  *See also, e.g., Baird v. State Bar of Arizona*, 401 U.S. 1 (1971) (finding that questioning a bar applicant about membership in any organization "that advocate[d] overthrow of the United States Government by force or violence" infringed on freedom of association).[8]

## IV.  CONCLUSION

For the above reasons, Defendants' Motions to Dismiss should be denied.

DATED:  September 29, 2009                    /s/   Matthew Zimmerman

ELECTRONIC FRONTIER FOUNDATION
MATTHEW ZIMMERMAN
454 Shotwell Street
San Francisco, CA 94110
(p):  (415) 436-9333 x127 / (f): (415) 436-9993
COUNSEL FOR PLAINTIFFS

---

[8] *See also, e.g., Archer*, 31 F.3d at 1530 ("the chilling effect of obtaining such membership records "has been said to be 'readily apparent.'") (citation omitted); *In re First National Bank*, 701 F.2d 115, 118 (10th Cir. 1983) (finding that First Amendment was implicated by grand jury subpoena to bank for account records of two anti-taxation groups because "the constitutionally protected right, freedom to associate freely and anonymously, will be chilled equally whether the associational information is compelled from the organization itself or from third parties"); *International Longshoremen's Ass'n*, 667 F.2d at 272 (2d Cir. 1981) (concluding that subpoena for list of contributors to political committee violated First Amendment because "compelled disclosure of the Fund's contributors under the circumstances of this case would give rise to a chilling effect similar to the one recognized by the Supreme Court in *Shelton v. Tucker* . . ."); *United States v. Citizens State Bank*, 612 F.2d 1091, 1094 (8th Cir. 1980) (finding that anti-tax group's allegations that subpoena to bank for account records caused "adverse effects . . . on [its] organizational and fundraising activities . . . [established] a prima facie showing of arguable First Amendment infringement").