1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LONG HAUL INC. and EAST BAY
PRISONER SUPPORT,

        Plaintiffs,

  v.

REGENTS OF THE UNIVERSITY OF
CALIFORNIA, et al.,

        Defendants.

_____/

No. C 09-00168 JSW

**ORDER REGARDING
DEFENDANTS' MOTIONS TO
DISMISS**

Now before the Court are the motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) filed by defendants Lisa Shaffer ("Shaffer"), Mike Hart ("Hart") and the United States (collectively, "Federal Defendants"). Shaffer and Hart also move in the alternative for a more definite statement. Having considered the parties' pleadings and the relevant legal authority, the Court hereby grants in part and denies Shaffer and Hart's motion to dismiss, denies Shaffer and Hart's alternative motion for a more definite statement, and denies United States' motion to dismiss.

**BACKGROUND**

Plaintiffs Long Haul, Inc. ("Long Haul") and East Bay Prisoner Support ("EBPS") filed this action against officers from the University of California Police Department, the United States, and Shaffer and Hart with the Federal Bureau of Investigation ("FBI") for their conduct in connection with a search of their premises on August 27, 2008.

United States District Court

For the Northern District of California

Long Haul is an all-volunteer collective that provides a lending library, a bookstore, Internet-connected computers, and a community space to members of the public.  (First Amended Complaint ("FAC"), ¶ 1.)  Long Haul operates out of a two-story building located at 3124 Shattuck Avenue in Berkeley, California.  (*Id.*)  Long Haul publishes Slingshot, a quarterly newspaper, out of an office on the second floor.  (*Id.*)  Long Haul educates the public about matters relevant to peace, justice and history through its lending library and community center.  (*Id.*, ¶ 25.)  Long Haul also sells used books on these subjects and provides the public with free computer use, Internet access, and resources for creating magazines.  (*Id.*)

Long Haul serves as a meeting space and resource hub for local activist groups and members of the community.  (*Id.*, ¶ 26.)  Radical movie nights, anarchist study groups, and other events are hosted there.  (*Id.*)  Slingshot, the newspaper Long Haul publishes, is an all volunteer project.  Slingshot has historically reported on the policies of the University of California at Berkeley and continues to do so.  Slingshot's reports are often highly critical of the University, the University of California Police Department, and their practices.  (*Id.*, ¶ 27.)  There are many past and current copies of Slingshot available in a newsrack at the front entrance of Long Haul.  (*Id.*, ¶ 28.)

Slingshot's office is on the second floor and is marked with a sign that reads "Slingshot."  (*Id.*, ¶ 29.)  In this small office, there are bookcases and file cabinets with back issues of the newspaper as well as items used in its publication.  Before August 27, 2008, there were also two computers in this office which were not accessible to the general public.  The Slingshot office is locked when none of the Slingshot workers are present.  (*Id.*)

Long Haul offers an Internet room with computers providing online access to the public. The Internet room is located on the second floor.  Before August 27, 2008, the Internet room was unlocked and contained four operative Internet-connected computers, two hard drives, and eight non-operative computers that were not connected to monitors.  (*Id.*, ¶ 30.)

Long Haul does not create, collect or keep records of individuals who visit there, including individuals who use the public access computers.  Plaintiffs allege that this fact would

United States District Court

For the Northern District of California

1    be apparent to anyone who visited Long Haul because they would not have been asked to sign

2    in.  (*Id.*, ¶ 31.)  Any member of the public can use the space when it is open.  (*Id.*)

3           EBPS is a volunteer-run prison rights group.  (*Id.*, ¶ 33.)  EBPS occupies an office on

4    the first floor of the building at 3124 Shattuck Avenue, but is otherwise unaffiliated with Long

5    Haul.  (*Id.*, ¶ 2.)  EBPS publishes a newsletter of prisoners' writings to the general public, and

6    distributes literature to prisoners.  (*Id.*, ¶ 2.)  EBPS provides support for prisoners on a national

7    and international level.  (*Id.*)  EBPS also helps publish Prison Action News and other small

8    pamphlets.  (*Id.*, ¶ 33.)  Its primary purpose as a publisher of information is to "serve as a

9    resource center that provides information about bay area prison abolition and prison support

10   work, as well as some information on national and international prison support activities."  (*Id.*)

11          EBPS's office is marked with a sign indicating that the space is the EBPS office.  On

12   and before August 27, 2008, EBPS's office was kept locked and was not accessible to members

13   of Long Haul or to the public.  (*Id.*, ¶ 32.)

14          On June 14, 2008, a series of threatening emails were sent to a professor at the

15   University of California at Berkeley.  Defendant Detective William Kasiske determined that the

16   emails were sent by a patron using publicly accessible computers at Long Haul.  (Declaration of

17   Jonathan U. Lee ("Lee Decl."), Ex. A (Warrant and Statement of Probable Cause).  On August

18   26, 2008, Detective Kasiske applied for and obtained a warrant to search the "premises,

19   structures, rooms, receptacles, outbuildings, associated storage areas, and safes situated at the

20   Long Haul Infoshop, 3124 Shattuck Avenue, Berkeley, CA."  (FAC, ¶ 35; *see also* Lee Decl.,

21   Ex. A.)  The warrant authorized the search for and seizure of documents containing the names

22   or other identifying information of "patrons who used computers at Long Haul" and of

23   electronic processing and storage devices.  The warrant also purported to authorize the officers

24   to transfer the seized evidence to a secondary location for searching and to search the computers

25   beyond the ten-day issuance period.  (FAC, ¶ 35; *see also* Lee Decl., Ex. A.)  The warrant stated

26   that the search authorized was for "evidence."  (FAC, ¶ 35.)

27          Plaintiffs allege that the warrant authorized searches of areas and seizure of effects for

28   which the affidavit lacked probable cause and that the warrant did not specifically describe the

3

place to be searched or the things to be seized.  (*Id*., ¶ 36.)  Despite the fact that the statement of probable cause only alleged improper use by an unknown member of the public of a public-access computer located at Long Haul, the warrant applied to all of the rooms at Long Haul, including those not used by or inaccessible to the general public.  (*Id*., ¶ 37.)  The warrant did not authorize any search of EBPS or areas that were not under the control of Long Haul.  (*Id*.)

Plaintiffs allege that Defendant Kasiske failed to inform the Magistrate Judge that Long Haul contains four locked offices, including the office of Slingshot and of EBPS, which are not accessible to the public.  He also failed to inform the Magistrate Judge that EBPS occupies an office at Long Haul but is not affiliated with Long Haul.  (*Id*., ¶ 38.)

On August 27, 2009, officers from the University of California Police Department, Shaffer, and Hart ("Search Team") arrived at Long Haul.  Initially, no one was there, and the Search Team entered through a secured back door.  (*Id*., ¶ 39.)  During the search, an attorney with an office nearby and Long Haul members arrived at the scene, but were not allowed in or shown the search warrant.  (*Id*., ¶¶ 40, 41.)

The Search Team searched every room, both public and locked.  They cut, used crowbars, or unscrewed locks on doors and cabinets.  (*Id*., ¶ 41.)  The Search Team removed every computer from the building, including those in closed, locked offices and in the Slingshot office.  (*Id*., ¶¶ 42, 43.)  The Search Team looked through the log of individuals who borrowed books from the library, the log of book sales, and EBPS's mail.  (*Id*., ¶¶ 41, 51.)  During the search, the Search Team damaged the door jamb to the EBPS office and unscrewed the lock on the door of the EBPS office.  The Search Team entered the EBPS office and seized EBPS's computer.  (*Id*., ¶ 47.)

Plaintiffs allege that Doe defendant agents of the University of California Police Department and/or the FBI, who may or may not include members of the Search Team, have copies or caused to be copied data from the computers and storage media seized from Long Haul, the Slingshot office, and the EBPS office.  (*Id*., ¶ 53.)  The devices were returned to Plaintiffs following the search and seizure, but Defendants have retained copies of the data.  (*Id*.)

Plaintiffs allege, based on information and belief, that Shaffer participated in obtaining and executing the search warrant. (*Id.*, ¶ 20.) Hart participated in the investigation leading up to the search and in the search itself. (*Id.*, ¶ 21.)

Plaintiffs allege that Defendants' conduct had the following repercussions:

> Plaintiffs' ability and the ability of Plaintiffs' members to communicate with other organizations and individuals have been disrupted by the actions of Defendants. Plaintiff Long Haul's ability to publish Slingshot was disrupted by the seizure of Slingshot computers and storage media. Plaintiff EBPS's ability to provide information to the public about prisoner rights and prisoner support efforts was disrupted by the seizure of EBPS's computer and storage media. Plaintiff Long Haul's ability to lend books, sell books, host meetings and have meetings of Long Haul members and other associates was disrupted by the search of the library lending log, the sales log, the seizure of the property and the ongoing reasonable belief that Long Haul space is subject to or will be subject to further police surveillance.

(*Id.*, ¶ 57.)

Based on such alleged conduct, Plaintiffs bring claims for violation of the First and Fourth Amendment of the United States Constitution for damages against Hart and Shaffer in their individual capacities and against Hart and Shaffer in their official capacities for equitable relief. Plaintiffs also assert a claim under the Privacy Protection Act ("PPA"), 42 U.S.C. §§ 2000aa, *et seq.*, against the United States and a claim for declaratory relief against Hart and Shaffer in their official capacities.

Hart, Shaffer and the United States move to dismiss all of Plaintiffs' claims against them.

**ANALYSIS**

**A.    Legal Standards Applicable to Motions to Dismiss.**

A party moving to dismiss under Rule 12(b)(1) may make a facial or a factual attack on jurisdiction. A facial attack challenges the sufficiency of the jurisdictional allegations in a complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual challenge instead "attack[s] the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rel[ies] on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (citation

United States District Court
For the Northern District of California

omitted); *accord Safe Air*, 373 F.3d at 1039.  In resolving a factual attack on jurisdiction, the court "need not assume the truthfulness of the plaintiff's allegations."  *Id.* (citation omitted).

When "the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action," a jurisdictional finding of genuinely disputed facts is inappropriate. *Id.* (internal quotations and citations omitted).  "The question of jurisdiction and the merits of an action are intertwined where a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief."  *Id.* (internal quotation and citation omitted).  Notwithstanding this general rule, dismissal for lack of subject matter jurisdiction, even when intertwined with the merits, may be appropriate "when the allegations of the complaint are frivolous."  *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 734 (9th Cir. 1979) (citation omitted).

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true.  *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986).  The court, however, is not required to accept legal conclusions cast in the form of factual allegations, if those conclusions cannot reasonably be drawn from the facts alleged.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).  Conclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim upon which relief may be granted.  *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), a plaintiff must do more than recite the elements of the claim and must "provide the grounds of his entitlement to relief."  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (internal brackets and quotations omitted).  The pleading must not merely allege conduct that is conceivable.  Rather, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

**United States District Court**
For the Northern District of California

**B.**     **Defendants' Motion to Dismiss.**

**1.**     ***Bivens* Claims.**

Shaffer and Hart initially moved to dismiss both of Plaintiffs' constitutional claims on the grounds that the exclusive remedy provisions of the PPA preclude any *Bivens* claim. However, in their reply brief, Shaffer and Hart concede that the PPA does not preclude Plaintiffs' *Bivens* claim premised on alleged Fourth Amendment violations. Therefore, the Court will only address whether the remedy provisions of the PPA preclude Plaintiffs' *Bivens* claim premised on alleged First Amendment violations.

The Supreme Court in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics* established that victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of a statute conferring such a right. 403 U.S. 388, 396. In *Bivens*, the Court held that it is "well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Id.* (citing *Bell v. Hood*, 327 U.S. 678, 684 (1946)). "*Bivens* from its inception has been based ... on the deterrence of individual officers who commit unconstitutional acts." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 71 (2001). The secondary purpose of extending a *Bivens* remedy to a person who has been subjected to the deprivation of constitutionally-guaranteed rights by an individual officer is to "provide a cause of action for a plaintiff who lack[s] any alternative remedy for harms caused by an individual officer's unconstitutional conduct." *Id.* at 70.

However, the Supreme Court has held that "any freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee, it is not an automatic entitlement no matter what other means there may be to vindicate a protected interest." *Wilkie v. Robbins*, 127 S. Ct. 2588, 2597 (2007). "[O]n the assumption that a constitutionally recognized interest is adversely affected by the actions of federal employees, the decision whether to recognize a *Bivens* remedy may require two steps." *Id.* at 2698. First, "there is the question whether any alternative, existing process

for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Id.* (citing *Bush*, 462 U.S. at 378); *see also Carlson v. Green*, 446 U.S. 14, 18-19 (1980) (citing *Bivens*, 403 U.S. at 397; *Davis v. Passman*, 442 U.S. 228, 245-47 (1979)) (holding that courts should refrain from finding a cause of action where Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective).

Second, even in "the absence of such a congressional directive, the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counseling hesitation before authorizing a new kind of federal litigation." *Bush*, 462 U.S. at 378; *see also Bivens*, 403 U.S. at 396 (holding that the right to such a cause of action may be defeated where there are "special factors counseling hesitation in the absence of affirmative action by Congress."). The Supreme Court's "prior precedents reveal a reluctance to create *Bivens* remedies where a coordinate branch of government is 'in a far better position that a court' to 'decide whether ... a remedy should be provided,' and if a remedy is to be provided, to decide what form this remedy should take." *Arar v. Ashcroft*, 532 F.3d 157, 178 (2d Cir. 2008) (citing *Bush*, 462 U.S. at 389, 380).

Defendants contend that the Court should refrain from providing a *Bivens* remedy because the PPA provides an alternative remedy. The PPA "generally prohibits government officials from searching for and seizing documentary materials possessed by a person in connection with a purpose to disseminate information to the public." *Citicasters v. McCaskill*, 89 F.3d 1350, 1353 (9th Cir. 1996) (citing 42 U.S.C. § 42 U.S.C. § 2000aa). Plaintiffs counter that although they allege that Defendants violated their statutory rights under the PPA by seizing materials related to the publishing of a newspaper and newsletter, the facts underlying their constitutional claims are factually distinct. Plaintiffs allege that Defendants violated their First Amendment rights by searching areas and items and seizing computers and other materials which have nothing to do with Plaintiffs' role as publishers. (Opp. at 1, 6-7.) By its terms, the remedy provided by the PPA applies only to conduct constituting a violation of the statute, the search and seizure of materials intended for dissemination to the public. *See* 42 U.S.C. §

**United States District Court**
For the Northern District of California

2000aa-6(d).  In their reply brief, Defendants concede that the PPA was not intended to supplant civil rights claims.  (Reply at 1.)  Because Plaintiffs allege conduct in support of their First Amendment claim which is factually distinct from the facts alleged in support of their PPA claim, the Court finds that PPA does not provide an alternative remedy to preclude a *Bivens* remedy here.

The cases cited to be Defendants are not to the contrary.  In *Bush v. Lucas*, the plaintiffs were able to have their constitutional claims addressed by "an elaborate, comprehensive administrative scheme."  *Id.*, 462 U.S. 367, 385 (1983) (noting that the constitutional challenges raised by the petitioner were fully cognizable within the administrative system and that the comprehensive scheme provided meaningful remedies for such claims).  Similarly, in *Schweiker v. Chilicky,* 487 U.S. 412 (1988), the Supreme Court found that the harm resulting from the termination of the plaintiffs' social security disability benefits was redressable through an elaborate, comprehensive scheme.  Therefore, a *Bivens* action challenging the termination of their benefits was not permitted.  *Id.* at 429; *see also Saul v. United States*, 928 F.2d 829, 837-38 (9th Cir. 1991) (holding a federal employee could not bring a *Bivens* action to challenge personnel and corrective actions redressable through the comprehensive administrative scheme established by Congress).  In contrast here, the PPA only governs a portion of the conduct of which Plaintiffs complain.  The constitutional claims asserted by Plaintiffs, because they are not premised on Defendants' search and seizure of materials intended for dissemination to the public, are not cognizable under the PPA.  Therefore, a *Bivens* claim to redress such constitutional torts is not precluded by the PPA.

Defendants also contend that the Court should not imply a *Bivens* remedy because to the extent First Amendment rights are implicated in the search and seizure here, the Ninth Circuit has held that the First Amendment does not create a more stringent standard for law enforcement officers implementing a search and seizure pursuant to a valid warrant.  Although the Fourth Amendment's warrant requirements should be enforced with "scrupulous exactitude" when the government conducts a search or seizure of materials protected by the First Amendment, "no more than this is required where the warrant requested is for the seizure of

1   criminal evidence reasonably believed to be on the premises occupied by a newspaper."

2   *Zurcher v. Stanford Daily*, 436 U.S. 547, 565 (1978).  As the Court explained in *Zurcher*,

3   "[p]roperly administered, the preconditions for a warrant – probable cause, specificity with

4   respect to the place to be searched and the things to be seized, and overall reasonableness –

5   should afford sufficient protection against the harms that are assertedly threatened by warrants

6   for searching newspaper offices."  *Id.*; *see also Abell v. Raines*, 640 F.2d 1085, 1088 (9th Cir.

7   1981).

8          However, here, Plaintiffs allege that the warrant was not valid and thus, did not justify

9   the intrusions on Plaintiffs' constitutional rights.  Therefore, the Court finds that to the extent

10  Plaintiffs allege violations of their rights under the First Amendment, they may bring a *Bivens*

11  action.

12         In their supplemental brief, Plaintiffs clarified the basis of their First Amendment claim.

13  They contend that Defendants violated their rights protected by the First Amendment by (1)

14  conducting an illegal search and seizure in retaliation for Plaintiffs' unpopular views and (2)

15  searching and/or seizing Plaintiffs' book lending logs, letters, email communications, and other

16  private documents and, thus, interfering with Plaintiffs' right to peacefully associate

17  anonymously.[1]

18         Governmental "action designed to retaliate against and chill political expression strikes

19  at the heart of the First Amendment."  *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir.

20  1987).  To bring this type of claim, Plaintiffs must allege that Defendants "took action that

21  would chill or silence a person of ordinary firmness from future First Amendment activities."

22  *See Skog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006) (internal quote and

23  citation omitted).  Moreover, Plaintiffs must allege, and eventually prove, that Defendants'

24  "desire to cause the chilling effect was a but-for cause of the defendant's action."  *Id.* at 1232;

25  *see also Mendocino Environmental Ctr. v. Mendocino Cty.*, 14 F.3d 457, 464 (9th Cir. 1994)

26  ("The defendant's intent is an element of the claim."); *Gibson*, 781 F.3d at 1342 (holding that

27  _____

28         [1] Although Plaintiffs contend that there is a third basis for their First Amendment
    claim, upon review of the cases cited to in support of this alleged third basis, the Court finds
    that this is really a combination of Plaintiffs' first and second bases.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  plaintiffs may bring a *Bivens* claim under the First Amendment where plaintiffs allege that

2  defendants acted with the impermissible motive of curbing protected speech).  However,

3  although Plaintiffs *argue* that they allege the conduct was done in retaliation for or in order to

4  chill their First Amendment protected activity, their FAC does not actually allege that the

5  purpose of Defendants' conduct was retaliatory or aimed to chill Plaintiffs' First Amendment

6  activities.  At most, in paragraph 57, Plaintiffs allege that their expression and associational

7  rights have been affected, or chilled, but do not allege any intent of any defendants, let alone

8  intent by the FBI agents.  The Court will provide Plaintiffs leave to amend their First

9  Amendment claim.  If Plaintiffs elect to file an amended complaint, they should take care to

10  plead the requisite facts to show that Hart and Shaffer acted with the impermissible motive of

11  retaliating against Plaintiffs or curbing their First Amendment activities.[2]

12          To the extent Plaintiffs also contend that Defendants' execution of the search warrant

13  violated their First Amendment rights by obtaining information on their members' identity, the

14  Court finds that such claims are better addressed through Plaintiffs' Fourth Amendment claims.

15  The cases cited to by Plaintiffs have not demonstrated that, based on the circumstances alleged

16  in this case, if a search warrant was properly issued and executed under the Forth Amendment

17  and if the Defendants were not acting with an improper motive, Plaintiffs would still have a

18  First Amendment claim based on the type of information seized by Defendants.

19          **2.      Plaintiffs Allege Sufficient Conduct by Hart and Shaffer.**

20          Defendants contend that Plaintiffs have insufficiently alleged personal conduct by Hart

21  and Shaffer to hold them liable.  "*Bivens* liability is premised on proof of direct personal

22  responsibility."  *Pellegrino v. U.S.*, 73 F.3d 934, 936 (9th Cir. 1996) (internal quotation marks

23  and citation omitted).  In the absence of proof of direct personal responsibility, an officer cannot

24  "be held vicariously liable for the conduct of another."  *Id.*  However, here, Plaintiffs have

25

26

27          [2] Although Defendants argue that Plaintiffs must meet a heightened pleading
    standard, the Ninth Circuit subsequently overruled this holding of *Branch v. Tunnel*, 937
28  F.2d 1382 (9th Cir. 1991).  *See Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1123-26
    (9th Cir. 2002).

1    alleged direct involvement by Hart and Shaffer and do not seek to hold them vicariously liable

2    for the acts of others under their Fourth Amendment claim.[3]

3        **3.    Qualified Immunity.**

4        The doctrine of qualified immunity protects government officials "from liability for civil

5    damages insofar as their conduct does not violate any clearly established statutory or

6    constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

7    457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests – the need to

8    hold public officials accountable when they exercise power irresponsibly and the need to shield

9    officials from harassment, distraction, and liability when they perform their duties reasonably."

10   *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

11       Qualified immunity is "an entitlement not to stand trial or face the other burdens of

12   litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  The privilege is an immunity from

13   suit rather than a mere defense to liability.  *Id.*  Accordingly, courts have repeatedly stressed

14   "the importance of resolving immunity questions at the earliest possible stage in litigation."

15   *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*).  Because qualified immunity is an

16   affirmative defense, the burden of proof initially lies with the official asserting the defense.

17   *Harlow*, 457 U.S. at 812.

18       The Ninth Circuit has recognized that "a motion to dismiss on qualified immunity

19   grounds puts the court in the difficult position of deciding far-reaching constitutional questions

20   on a non-existent factual record." *Hydrick v. Hunter*, 500 F.3d 978, 985 (9th Cir. 2007) (citing

21   *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir. 2004)).  Courts therefore must be

22   "cautious not to eviscerate the notice pleading standard in suits where qualified immunity is at

23   issue." *Id.* at 985-86, 986 n.5 (holding that the aim of a motion to dismiss is not to evaluate the

24   veracity of the plaintiff's allegations or to speculate as to the defendant's justifications for their

25   actions).

26   ─────────────────

27       [3] Because the Court finds that Plaintiffs have sufficiently pled personal involvement
     by Hart and Shaffer regarding Plaintiffs' Fourth Amendment claim and is providing
28   Plaintiffs leave to amend regarding their First Amendment claim, the Court DENIES
     Defendants' motion for a more definite statement.

United States District Court

For the Northern District of California

In *Saucier v. Katz*, the Supreme Court stated that a court called upon to rule on the issue of qualified immunity must ask the following threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Id.* However, if the Court finds that the facts would show the violation of a constitutional right, the next inquiry is to determine "whether the right was clearly established."  *Id.*  Thus, a court "must determine whether the law governing the official's conduct was clearly established at the time the challenged conduct occurred."  *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994) (citing *Hallstrom v. Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993)); *see also Blueford v. Prunty*, 108 F.3d 251, 255 (9th Cir. 1997) (holding that the issue whether an aspect of law was clearly established must be determined as of the time of the alleged conduct at issue).  The Supreme Court in *Pearson v. Callahan* determined that the specific order of the qualified immunity inquiry is not required and held that "judges of the district court and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  129 S. Ct. at 818.

A constitutional right is clearly established for purposes of qualified immunity if "[t]he contours of the right [are] sufficiently clear that [at the time the alleged unlawful action is taken] a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ...; but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Anderson,* 483 U.S. at 640.  However, government officials are not "charged with predicting the future course of constitutional law."  *Ostlund v. Bobb*, 849 F.2d 365, 371 (9th Cir. 1988).

United States District Court

For the Northern District of California

1    A court should then address the question "whether, under that clearly established law, a

2  reasonable [official] could have believed the conduct was lawful." *Id.*  This inquiry must be

3  undertaken in the light of the specific context of the case.  *Saucier*, 533 U.S. at 194.  In deciding

4  whether the plaintiff's rights were clearly established, "[t]he proper inquiry focuses on whether

5  'it would be clear to a reasonable officer that his conduct was unlawful in the situation he

6  confronted' ... or whether the state of the law [at the time] gave 'fair warning' to the officials

7  that their conduct was unconstitutional." *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002)

8  (quoting *Saucier*, 533 U.S. at 202).  Although the inquiry is undertaken in the specific context

9  of the case, the fact that no case has found a constitutional violation under the exact facts

10  alleged does not imply that the law is not clearly established.  *Phillips v. Hust*, 477 F.3d 1070,

11  1079-1080 (9th Cir. 2007).  When there is no specific, binding precedent on the exact question,

12  the Ninth Circuit looks "to all available decisional law, including the law of other circuits and

13  district courts." *Inouye v. Kemna*, 504 F.3d 705, 714 (9th Cir. 2007).

14    To satisfy the requirements of the Warrant Clause of the Fourth Amendment, a warrant

15  "must describe the place to be searched or things to be seized with sufficient particularity,

16  taking account of 'the circumstances of the case and the types of items involved.'" *United*

17  *States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1991) (quoting *United States v. Spilotro*, 800

18  F.2d 959, 963 (9th Cir. 1986)).  In addition, a warrant "must be no broader than the probable

19  cause on which it is based." *Id.*

20    "The particularity requirement requires the magistrate to make sure that the warrant

21  describes things with reasonable precision, since vague language can cause the officer

22  performing the search to seize objects on the mistaken assumption that they fall within the

23  magistrate's authorization." *Id.* (internal quotes and citation omitted).  This requirement is

24  satisfied "if the description is such that the officer with a search warrant can with reasonable

25  effort ascertain and identify the place intended." *Mena v. City of Simi Valley*, 226 F.3d 1031,

26  (9th Cir. 2000) (quoting *Steele v. United States No. 1*, 267 U.S. 498, 503 (1925)).  A search

27  warrant authorizing the search of an entire multi-unit dwelling or building, when there is only

28  probable cause to search one of the units, would violate the particularity requirement or would

be over broad if the officers knew that the building was a multi-unit one. *See Maryland v. Garrison*, 480 U.S. 79, 85 (1987); *see also Mena*, 226 F.3d at 1037-38 (finding that there was no evidence in the record to create a question of fact that any officer knew or should have known that the residence was a multi-unit dwelling). Moreover, even if the warrant is valid, the manner in which the search warrant is executed may violate a plaintiff's constitutional rights if, during the search, the officers become aware that the warrant describes multiple units but continue to search in areas where there is no probable cause to search. *See Mena*, 226 F.3d at 1038 ("If, during the search, the officers become aware that the warrant describes multiple residences, the officers must confine their search to the residence of the suspect.") (quoting *United States v. Kyles*, 40 F.3d 519, 524 (2d Cir. 1994)).

Defendants do not dispute that the law in this area is clearly established. Instead, they argue that it was not clear that EBPS was a separate unit and that the officers had a reasonable belief that EBPS's computers were under Long Haul's control. (Reply at 7.) However, Plaintiffs allege that EBPS maintained separate office space in the building and was unaffiliated with Long Haul, and the officers failed to inform the magistrate of these facts. (FAC, ¶ 4.) Taking these facts as true, the Court cannot find at this procedural stage that a reasonable officer would not have known that EBPS, including its office space, was unaffiliated with and not under the control of Long Haul. Moreover, based on the facts alleged, the Court cannot determine at this procedural stage as a matter of law that the members of the Search Team would not have become aware, during the search that EBPS maintained a separate office space that was not under the control of Long Haul. Therefore, the Court cannot grant Defendants' motion on the grounds of qualified immunity.[4]

### 4. Claims Against Hart and Shaffer for Injunctive Relief.

Defendants contend that Plaintiffs' claims seeking injunctive and declaratory relief against Hart and Shaffer fail for three reasons. First, Defendants contend that these claims

---

[4] Because the Court finds that Plaintiffs' Fourth Amendment claim withstands qualified immunity based on the allegations of searching multiple units, the Court need not address whether Plaintiffs' additional factual allegations regarding other deficiencies with the warrant and the search are also sufficient.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

should be dismissed because of the exclusive remedy provision of the PPA. However, the Court has already rejected this argument. Second, Defendants contend that Plaintiffs' claims against Hart and Shaffer in their official capacities are barred by sovereign immunity. However, while, ordinarily, the Eleventh Amendment bars official-capacity suits against state officials such as Defendants, a suit against state officials seeking prospective injunctive relief from unconstitutional state action is not barred. *See Kentucky v. Graham*, 472 U.S. 159, 167 n. 14, 169-70 (1985); *Ex parte Young*, 209 U.S. 123, 159-60 (1908). Plaintiffs allege that Defendants' constitutional violations are causing ongoing harms.

Third, Defendants argue that Plaintiffs lack standing to seek an injunction against Hart and Shaffer because they have not alleged a sufficient likelihood that they will be wronged again by Hart and Shaffer in a similar way. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Plaintiffs counter that they do not lack standing to seek injunctive relief against Hart and Shaffer in their official capacities because they allege that, "pursuant to an illegal search, Defendants seized, copied, and continue to search and otherwise make use of the data taken from Long Haul's computers." (Opp. at 23-24.) However, as Defendants point out, Plaintiffs allege generally that "defendants," without any reference to Hart or Shaffer, retain and continue to search the seized materials. Plaintiffs specifically allege that Hart and Shaffer participated in the initial search of Long Haul and EBPS, but do not address whether Hart and/or Shaffer continue to possess or search the seized materials. Therefore, the Court finds that Plaintiffs have not alleged facts sufficient to establish standing to seek injunctive relief against Hart or Shaffer. The Court thus dismisses Plaintiffs' request for injunctive relief against Hart or Shaffer but will provide Plaintiffs leave to amend.

**5.      PPA Claim Against the United States.**

Defendants move to dismiss the PPA claim against the United States on the grounds that the PPA exempts from its coverage searches conducted in a good faith belief that the immediate seizure of such materials was necessary to prevent death or serious bodily injury. The PPA provides that it "shall not impair or affect the ability of any government officer or employee, pursuant to otherwise applicable law, to search for or seize such materials, if ... there is reason

**United States District Court**
For the Northern District of California

1   to believe that the immediate seizure of such materials is necessary to prevent the death of, or

2   serious bodily injury to, a human being." 42 U.S.C. § 2000aa(b)(2). The PPA further provides

3   that "it shall be a complete defense to a civil action ... that the officer or employee had a

4   reasonable good faith belief in the lawfulness of his conduct." 42 U.S.C. § 2000aa-6(b).

5          Plaintiffs counter that the government's two month delay in learning of the threatening

6   emails and in seeking a search warrant undermines their claim to a reasonable belief in the

7   necessity of an "immediate seizure" of Long Hauls computers and records. Moreover, Plaintiffs

8   argue that the applicability of the exigent circumstances exception depends upon a factual

9   inquiry, which is inappropriate to address at this procedural stage. The Court agrees.

10  Therefore, the Court denies Defendants' motion to dismiss the PPA claim.

11                                           **CONCLUSION**

12         For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Hart

13  and Shaffer's motion to dismiss, DENIES Hart and Shaffer's alternative motion for a more

14  definite statement, and DENIES the United States' motion to dismiss. The Court DENIES Hart

15  and Shaffer's motion to dismiss as to Plaintiff's *Bivens* claim premised on the Fourth

16  Amendment. Although the Court finds that Plaintiffs may allege a *Bivens* claim premised on

17  First Amendment violations, Plaintiffs do not allege sufficient facts to state a claim under the

18  First Amendment. Therefore, the Court GRANTS Hart and Shaffer's motion to dismiss

19  Plaintiffs' *Bivens* claim premised on alleged First Amendment violations, but is providing

20  Plaintiffs leave to amend. The Court also GRANTS Hart and Shaffer's motion to dismiss as to

21  Plaintiff's request for injunctive relief against them, but is providing Plaintiffs leave to amend.

22         Plaintiffs shall file any amended complaint within twenty days of the date of this Order.

23  If Plaintiffs do not file a second amended complaint, Hart and Shaffer shall file an answer

24  within twenty days. If Plaintiffs file a second amended complaint in accordance with this

25  Order,

26  ///

27  ///

28  ///

17

*///*

Hart and Shaffer shall either file an answer or move to dismiss within twenty days of service of the second amended complaint.

**IT IS SO ORDERED.**

Dated: November 30, 2009

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California