

September 16, 2010

To: The Honorable Judge White, via email, facsimile, and overnight mail:

Re: Long Haul et al. v. Celaya et al, 3:09-cv-0168

Your Honor:

This is a joint letter brief regarding a discovery dispute that has arising during depositions conducted in the above-referenced case. Plaintiffs seek a protective order preventing Defendants from asking questions about individuals' political beliefs or activities, including attendance at animal rights-related events or membership in animal rights groups during any future discovery proceedings. Further depositions in this case are scheduled for September 22, 2010.

Plaintiff Long Haul is an all-volunteer collective that provides a lending library, a bookstore, Internet-connected computers, and a community space to members of the public. Plaintiff East Bay Prisoner Support was a tenant at the Long Haul space, working on prisoner rights issues. Plaintiffs have sued University of California and FBI law enforcement officers for violating their rights under the Fourth Amendment and the Privacy Protection Act after the officers searched Plaintiffs' private offices and seized computers containing materials meant for publication. The officers were investigating threatening emails allegedly sent to University faculty conducting research on animals.

Defendants have deposed witnesses about animal rights-related political activities that took place at the Long Haul community space. Plaintiffs dispute that political sympathies of groups that meet at an open community space can be imputed to the organizers of that space, and assert that information obtained during the course of the lawsuit and not prior to the search of Plaintiffs' premises cannot justify an otherwise unlawful entry and seizure. Nevertheless, we have allowed our witnesses to answer those questions. However, Defendants have also interrogated the private political beliefs, affiliations and expressive and associational conduct of individuals associated with Long Haul and EBPS. This line of inquiry threatens to chill legitimate political expression and intrudes into private matters privileged under the First Amendment.[1]

This line of questioning is an irrelevant and inappropriate intrusion into future witnesses' First Amendment-protected rights of speech and association. In the Ninth Circuit, "a claim of First Amendment privilege is subject to a two-part framework." *Perry v. Schwarzenegger*, 591 F.3d 1147, 1160 (9th Cir. 2009). First, "[t]he party asserting the privilege must demonstrate . . . a prima facie showing of arguable first amendment infringement." *Id.* (citation omitted). Second, the burden shifts to the party seeking disclosure "[to] demonstrate that the information sought through the [discovery] is rationally related to a compelling government interest . . . [and] the least restrictive means of obtaining the desired information." *Id.* at 1161 (citation omitted). The

---

[1] For example, during the deposition of Long Haul's 30(b)(6) witness Jesse Palmer, Defendants asked questions to determine: 1) The identity of the pseudonymous author of an article about a group called Stop Cal Vivisection ("SCV") that appeared in Long Haul's Slingshot newspaper. (Palmer Depo, p. 172); 2) Whether members of Long Haul attended a SCV fundraiser held at the premises in April of 2008. (Palmer Depo, p. 182); 3) Whether Long Haul member Greg Horton is a member of SCV, attended the fundraiser, or attended any home demonstrations at researchers' homes. (Palmer Depo, p. 372); 4) Whether the witness considers himself an anarchist (Palmer Depo, p. 385).

454 Shotwell Street • San Francisco, CA 94110 USA
+1 415 436 9333   +1 415 436 9993   www.eff.org   information@eff.org

*Long Haul, et al. v. Celaya, et al.* Case No. 3:09-cv-0168
September 16, 2010
Page 2 of 5

First Amendment imposes "a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)"; "the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation." *Id.* at 1160.

Compelled disclosure of political association assuredly chills exercise of the association right, and therefore is a burden on Plaintiffs' members. *See Perry,* 591 F.3d at 1160. ("The compelled disclosure of political associations can have . . . a chilling effect.")[2]. In *Perry*, the Ninth Circuit upheld a prohibition on discovery of the membership of campaigns in support of Proposition 8 (*Id.* at 1161) and barred discovery of internal communications from an organization promoting the California ballot initiative prohibiting same-sex marriage.  The court held that such disclosure could chill political affiliation, and the plaintiffs did not have an interest in establishing improper motivations for Proposition 8 that outweighed the chilling effect.

Here, as in *Perry*, there is a *prima facie* First Amendment infringement in forced disclosure of Plaintiffs' political affiliations and activities to law enforcement.  And here, even more so than in *Perry*, disclosure of Plaintiffs' political affiliations advances no legitimate state interest, let alone produces material "highly relevant" to the case.

Essentially, Defendants are hoping to argue that some individual affiliated with Long Haul or EBPS thinks research on animals is wrong so they can argue that the organizations would not have complied with lawful legal process to determine who sent the threatening emails. While UC police have long been following SCV members attending (lawful) home demonstrations, and apparently claim they were operating under the unsubstantiated assumption that whoever sent the threatening emails was also a member of SCV or a participant at the home demonstrations, there is no evidence or logic to support this assertion. Their stated need for privileged information is as unpersuasive as asserting that the local library cannot be trusted to comply with legal process to determine who used the public computers to send threats to a BP oil executive because some employees of the library attended an event on the failures of that company to protect wildlife in the Gulf.

If members of Long Haul and EBPS must submit their political beliefs and lawful political activities for review by UC and federal law enforcement to seek redress in the courts, then these organizations would certainly refrain from seeking such redress in the future.  Furthermore, individuals would limit their participation either in political groups or in the Long Haul for fear of scrutiny by law enforcement and the public.  We ask that a protective order issue.

Sincerely,

Jennifer Granick
Matthew Zimmerman
ELECTRONIC FRONTIER FOUNDATION

Attorneys for
Long Haul, et al.

---

[2] While this letter does not include declarations in support of this letter stating that their political activities would be chilled by the Defendants' efforts to discover their beliefs, (and Plaintiffs would be happy to do so if the Court allows), that conclusion is "self-evident". *Perry*, 591 F.3d at 1163.

*Long Haul, et al. v. Celaya, et al.* Case No. 3:09-cv-0168
September 16, 2010
Page 3 of 5

In the Spring and Summer of 2008, animal researchers at the UC Berkeley campus received threatening and harassing emails from anonymous animal rights activists. During this same period of time, animal rights activists held protests and demonstrations at the homes of these researchers. These demonstrations included chalking the researchers' driveways and sidewalks with offensive messages and placing flyers full of incendiary comments where neighbors would find them. The home demonstrations were publicized on the internet by a group identified as Stop Cal Vivisection, which supported and claimed responsibility for these actions. As part of the UC Berkeley Police Department's ("UCPD") investigation into these activities, Detective Kasiske traced the threatening email messages to an IP address registered to Jesse Palmer, a Long Haul member, with Long Haul as the location of the computer(s) sending the messages. As a result of this and other information, Detective Kasiske sought and obtained a search warrant which resulted in seizure of the computers located at Long Haul.[3] This lawsuit arises from the execution of that search warrant, wherein Plaintiffs claim Fourth Amendment and Privacy Protection Act ("PPA") violations.

Plaintiffs have asserted, and continue to assert, that they were in effect innocent bystanders, beyond any suspicion of complicity in the crime under investigation. They seek to analogize Long Haul to a "public library," and contend that Defendants should have foregone a search warrant entirely, and instead served a subpoena seeking production of the computers and related information.[4] Defendants dispute these assertions, and have pursued discovery in support of their defenses to the Fourth Amendment as well as the PPA claims. The issue of Plaintiffs' complicity is of particular relevance to the PPA claim. Among the separate statutory defenses available under the PPA are 1) establishing there is probable cause to believe that the person possessing protected materials has committed the criminal offense to which the materials relate; and 2) there is reason to believe that the giving of notice pursuant to a subpoena duces tecum would result in destruction, alteration, or concealment of such materials. 42 U.S.C §2000aa(a)(1),(b)(1),(b)(3).

Should a trial be necessary, Defendants anticipate that Plaintiffs will pursue their efforts to portray themselves as "innocent bystanders," in an attempt to undermine the above-referenced defenses and persuade the jury that, at most, Defendants should have used a subpoena, rather than a warrant to obtain the computers and related materials. Defendants anticipate Plaintiffs will seek to minimize, if not outright deny, the various ties between Long Haul and animal rights activists which were known by Defendants at the time the warrant was obtained.[5] Indeed,

---

[3] Defendants are not bolstering their basis for probable cause with facts learned after they sought the search warrant. Rather, Defendants seek testimony about the relationship between Long Haul and animal rights activists because Plaintiffs contend that the decision to seek a search warrant was unreasonable. The full picture of the relationship between Long Haul and animal rights activists will demonstrate that the decision to obtain a search warrant was reasonable and prudent.

[4] Plaintiff's First Amended Complaint, ¶4, Dkt. 39; Plaintiffs' Supplemental First Amendment Briefing, Dkt. 61 at 3-4.

[5] By the time Defendants obtained the search warrant, they were aware that Long Haul had expressed a significant level of sympathy, association, and support for the animal rights movement, particularly for those involved with Stop Cal Vivisection. In April of 2008, UCPD was aware that Stop Cal Vivisection used Long Haul to hold a fundraiser to defray the legal fees of some of its members. UCPD was also aware that Stop Cal Vivisection publically claimed responsibility for the home demonstrations and protests. Further, UCPD was aware that Stop Cal

*Long Haul, et al. v. Celaya, et al.* Case No. 3:09-cv-0168
September 16, 2010
Page 4 of 5

throughout this litigation, Plaintiffs have sought to minimize and deflect inquiry into their association with animal rights groups and activities, particularly Stop Cal Vivisection.[6] Defendants are entitled to show that Plaintiffs' efforts to dissociate themselves from the animal rights movement are unfounded and contrary to the facts.  They are entitled to develop an adequate factual record concerning the existence of probable cause regarding Long Haul's complicity in the crime or, alternatively, the prospect that Long Haul – given its support of animal rights activists -- would compromise the investigation, if served with a subpoena.  Plaintiffs' eleventh-hour attempt to raise a "First Amendment privilege" as a shield against these inquiries is factually and legally unsupported.[7]

Plaintiffs reliance upon *Perry v. Schwarzenegger* is misplaced, for they have failed to demonstrate a "prima facie showing of arguable first amendment infringement." *Brock v. Local 375, Plumbers Int'l Union of Am.,* 860 F.2d 346, 349-50 (9th Cir.1988) (quoting *United States v. Trader's State Bank,* 695 F.2d 1132, 1133 (9th Cir.1983) (per curiam)). " This *prima facie* showing requires appellants to demonstrate that enforcement of the [discovery requests] will result in (1) harassment, membership withdrawal, or discouragement of new members, or (2) other consequences which objectively suggest an impact on, or 'chilling' of, the members' associational rights." *Id.* at 350.  As stated during the deposition of Jesse Palmer and during the meet and confer with Plaintiffs' counsel, Defendants are not interested in the identities of individual Long Haul members who attended animal rights activist events.  Rather, Defendants have merely asked whether Long Haul hosted or Long Haul members attended these events.  Plaintiffs have not even suggested how such questioning, without seeking identifying information regarding the participants, would chill Long Haul members' associational rights.  Plaintiffs have utterly failed to articulate (or offer proof of) any facts which objectively demonstrate the substantial chilling of First Amendment rights necessary to make out a prima facie showing.

Plaintiffs' abstract, unsubstantiated, and unfounded assertions cannot suffice to deprive Defendants of potentially important discovery which could substantially undermine Plaintiffs' claims.  Plaintiffs' request for a protective order should be denied.

---

Vivisection members went to Long Haul at the conclusion of the home demonstrations and protests.  UCPD was also aware that the Long Haul hosted Peter Young, a speaker who had served time in federal custody for animal rights related activities.  All of these activities contributed to the decision to seek a search warrant for the computers and related materials at Long Haul.

[6] During Jesse Palmer's deposition, he initially attempted to maintain that Long Haul was unaware of the activities of Stop Cal Vivisection prior to the execution of the search warrant in August of 2008. (Palmer Depo., p. 166). However, under further questioning, he subsequently admitted that Slingshot (a Long Haul "project") published an article in the Winter 2008 issue featuring Stop Cal Vivisection and an article in the Spring 2008 issue authored by Stop Cal Vivisection that were sharply critical of the "vivisection" activities by researchers on the UC Berkeley campus and described the activities of Stop Cal Vivisection. (Palmer Depo., pp. 169-180).

[7] While raising a number of objections, Plaintiffs' counsel nonetheless permitted Jesse Palmer, the 30(b)(6) witness for the Long Haul to answer multiple questions about the Long Haul's association with and support of animal rights activist groups, arguably waiving the First Amendment rights which serve as a basis for Plaintiffs' current request. (See e.g., Palmer Depo., pp. 67-71, 166 -189)  Defendants request the opportunity to more fully brief the waiver issue (in addition to elaborating on the other arguments set forth herein) should the Court request further input from the parties.

*Long Haul, et al. v. Celaya, et al.* Case No. 3:09-cv-0168
September 16, 2010
Page 5 of 5

Sincerely,

Sara L. Ellis
SCHIFF HARDIN LLP

Attorneys for Defendants

Mitchell Celaya, Karen Alberts, William Kasiske, Wade MacAdam, and Timothy Zuniga

SF\9802823.1