Jennifer Stisa Granick, Esq. (SBN 168423)
Matthew Zimmerman, Esq. (SBN 212423)
Marcia Hofmann, Esq. (SBN 250087)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993
Email: jennifer@granick.com
        mattz@eff.org
        marcia@eff.org

Michael T. Risher (SBN 191627)
AMERICAN CIVIL LIBERTIES
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: mrisher@aclunc.org

Attorneys for Plaintiffs
LONG HAUL, INC. and
EAST BAY PRISONER SUPPORT

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LONG HAUL, INC. and EAST BAY PRISONER SUPPORT,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA; MITCHELL CELAYA; KAREN ALBERTS; WILLIAM KASISKE; WADE MACADAM; TIMOTHY J. ZUNIGA; MIKE HART; LISA SHAFFER; AND DOES 1-25,<br><br>Defendants. | ) Case No. C 09-00168-JSW<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **DECLARATION OF MATTHEW**<br>) **ZIMMERMAN**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1    1.    I am an attorney of record for the Plaintiffs in this matter and a member in good
2  standing of the California State Bar.  I have personal knowledge of the matters stated in this
3  declaration.  If called upon to do so, I am competent to testify to all matters set forth herein.

4    2.    Attached as Exhibit 1 is a true and correct copy of the search warrant and attached
exhibits issued by Judge Judith Ford of Alameda Superior Court on August 26, 2008.  The warrant
5  was designated as Exhibit E to Defendant William Kasiske's deposition in his personal capacity,
6  taken on July 27, 2010, and produced by the UC Defendants with BATES stamps UC 000188-89.

7    3.    Attached as Exhibit 2 is a true and correct copy of the inventory of the search
8  warrant of August 27, 2008.  The warrant inventory was designated as Exhibit C to Defendant
9  William Kasiske's deposition in his personal capacity, taken on July 27, 2010, and produced by
the UC Defendants with BATES stamps UC 000174-76.

10    4.    Attached as Exhibit 3 is a true and correct copy of the Statement of Probable Cause
11  submitted to Judge Ford on August 26, 2008. The Statement of Probable Cause was designated as
12  Exhibit F to Defendant William Kasiske's deposition in his personal capacity, taken on July 27,
13  2010, and produced by the UC Defendants with BATES stamps UC 000278-81.

14    5.    Attached as Exhibit 4 is a true and correct copy of the following excerpts from
15  volume 1 of Jesse Palmer's deposition as the Fed. R. Civ. P. 30(b)(6) witness representing the
Plaintiff Long Haul, Inc., taken on August 4, 2010.

16    a.  Palmer Dep., vol. 1, 19:17-18 (Long Haul has long been housed at a two-story
17        storefront at 3124 Shattuck Avenue)

18    b.  Palmer Dep., vol. 1, at 24:14-20 (other groups' offices inside Long Haul were
19        adjacent and locked)

20    c.  Palmer Dep. vol. 1, 25:2-26:3 (Needle Exchange and Cycles for Change had offices
21        on Long Haul's premises)

22    d.  Palmer Dep. vol. 1, 63:20-25 (EBPS, Needle Exchange, and Cycles for Change
        had downstairs offices on Long Haul's premises)

23    e.  Palmer Dep. vol. 1, 71:21-23 (Long Haul sublets some parts of premises to tenant
24        organizations)

25    f.  Palmer Dep. vol. 1, 77:21-79:1 (Slingshot began publication in 1988 and moved to
26        its current location in 1993)

27    g.  Palmer Dep. vol. 1, 90:19-21 (EBPS had office on premises)

28    h.  Palmer Dep. vol. 1, 97:1-7 (describing the location of the public computer room,
        and noting that the door was never locked)

i.   Palmer Dep. vol. 1, 148:19-149:14 (Defendants forcibly entered Long Haul back door through neighboring Homeless Action Center)

6.   Attached as Exhibit 5 is a true and correct copy of the following excerpts from volume 2 of Jesse Palmer's deposition taken on August 4, 2010.

a.   Palmer Dep. vol. 2, 293:10-19 (describing that the loss of Long Haul's computers meant that Long Haul's ability to communicate and organize was disrupted, and that it had to spend time replacing its computers and restoring data)

b.   Palmer Dep. vol. 2, 293:1-22 (discussing how Defendants' searches and seizures of Long Haul's computers and hardware disrupted Long Haul's business by halting all of its work done on its computers and forcing it to spend time replacing its computers and data)

c.   Palmer Dep. vol. 2, 297:11-24 (discussing how the loss of Long Haul's computers resulted in its inability to schedule educational events)

d.   Palmer Dep. vol. 2, 301:23-302:6 (Slingshot computer contained articles for publication)

e.   Palmer Dep. vol. 2, 306:13-24 (discussing the storage of drafts and back issues on the Slingshot computer)

f.   Palmer Dep. vol. 2, 306:13-24 (discussing the storage of drafts and back issues on the Slingshot computer)

g.   Palmer Dep. vol. 2, 313:13-314:12 (Defendants searched Long Haul's library lending logs, chilling patrons' subsequent willingness to check out books)

h.   Palmer Dep. vol. 2, 313:3-317:4 (discussing the raid team's search of Long Haul's lending and sales logs)

i.   Palmer Dep. vol. 2, 315:15-20 (personal testimony that patrons were fearful of signing Long Haul's library lending log)

j.   Palmer Dep. vol. 2, 316:20-24 (patrons were reluctant to buy books from Long Haul and Long Haul members had to replace inventory system that was on seized computers)

k.   Palmer Dep. vol. 2, 325:11-14 (Slingshot computers not used for personal business)

l.   Palmer Dep. vol. 2, 328:14-331:15 (stating that Long Haul was concerned about the possibilities or realities of police surveillance after the illegal search and seizure)

m.   Palmer Dep. vol. 2, at 351:10-18 (describing the fact that Long Haul had to replaced the damaged EBPS office door)

3

n.  Palmer Dep. vol. 2, 377:21-378:3 (discussing the storage of Slingshot drafts and submissions on the Slingshot computer)

o.  Palmer Dep. vol. 2, 377:21-378:3 (discussing the storage of Slingshot drafts and submissions on the Slingshot computer)

p.  Palmer Dep. vol. 2, 381:21-382:2  (Long Haul considered their public Internet room akin to a public library)

7.  Attached as Exhibit 6 is a true and correct copy of the following excerpts from William Kasiske's deposition in his personal capacity, taken on July 27, 2010.

a.  Kasiske Dep. 10:6-17 (Kasiske belonged to the Animal Rights Working Group under the UC Berkeley Police Department)

b.  Kasiske Dep. 21:2-17 (discussing Kasiske's decision to cut and paste language from a boilerplate department warrant form into his warrant application)

c.  Kasiske Dep. 48:5-8 (discussing that Kasiske did not actually know whether Long Haul used a sign-in process)

d.  Kasiske Dep. 52:18-25 (discussing Kasiske's decision to cut and paste language from a boilerplate department warrant form into his warrant application)

e.  Kasiske Dep. 63:9-64:20 (listing the attendees of the pre-raid briefing meeting)

f.  Kasiske Dep. 66:16-22 (Hart was assigned to assist with security and searching the Long Haul premises)

g.  Kasiske Dep. 69:10-13 (affirming Defendant Sgt. Karen Alberts' consent and knowledge of the warrant)

h.  Kasiske Dep. 72:13-17 (Kasiske did not know or remember whether the statement of probable cause was present at the search)

i.  Kasiske Dep. 75:17-77:19 (Hart reviewed the search warrant at the pre-raid briefing)

j.  Kasiske Dep. 76:1-6 (Kasiske did not brief officers participating in raid on which parts of Long Haul's premises belonged to other tenants)

k.  Kasiske Dep. 76:7-11 (Kasiske did not know or remember whether the statement of probable cause was present at the search)

l.  Kasiske Dep. 76:12-19 (Kasiske did not instruct officers what to do if search revealed offices or materials belonging to other tenants)

m.  Kasiske Dep. 82:21-83:10 (affirming the same for Lt. Doug Wing)

Case No. C 09-00168-JSW

DECLARATION OF MATTHEW ZIMMERMAN

n.  Kasiske Dep. 93:17-94:12 (explaining that Kasiske had not tried either using a subpoena or asking directly to uncover information about what he was seeking from Long Haul)

o.  Kasiske Dep. 97:9-101:18 (Kasiske led entry and search of Long Haul)

p.  Kasiske Dep. 98:13-15 (Defendants entered Long Haul's premises through secured back door)

q.  Kasiske Dep. 100:9-11 (Kasiske and other officers performed a proximity sweep with weapons drawn before searching Long Haul)

r.  Kasiske Dep. 103:1-117:20 (discussing, step-by-step, Kasiske's search of Long Haul's premises and seizure of the computers)

s.  Kasiske Dep. 108:13-109:19 (discussing the removal of the EBPS door lock)

t.  Kasiske Dep. 109:6-19 (Defendants forcibly gained entry to Long Haul's premises)

u.  Kasiske Dep. 112:12-113:5 (Kasiske describing the location of Long Haul's public Internet room)

v.  Kasiske Dep. 115:13-116:13 (explaining that Kasiske did not actually know how or whether these types of storage media might contain such patron logs).)

w.  Kasiske Dep. 118:16-21 (Alberts and Shaffer searched Slingshot office)

x.  Kasiske Dep. 132:5-11 (Kasiske ordered six computers searched by lab)

y.  Kasiske Dep. 135:8-20 (confirming that Kasiske asked the Silicon Valley Regional Computer Forensic Laboratory to search the seized Long Haul computers)

z.  Kasiske Dep. 136:7-25 (Kasiske narrowed his request to those six computers taken from publicly accessible Internet room)

aa. Kasiske Dep. 136:17-22 (Kasiske initially asked lab to search all computers, including those taken from private offices)

bb. Kasiske Dep. 136:23-137:11 (noting that Kasiske knew that the IP address in question could have been associated with any computer at Long Haul, but never indicating that he took steps to determine whether that IP was the only one associated with Long Haul's physical location)

cc. Kasiske Dep. 138:4-19 (six computers removed from Long Haul publicly accessible Internet room)

dd. Kasiske Dep. 138:18-19 (confirming that Kasiske removed all of the computers from Long Haul's public computer room)

ee. Kasiske Dep. 139:24-140:10 (computers removed from private offices)

DECLARATION OF MATTHEW ZIMMERMAN

8.       Attached as Exhibit 7 is a true and correct copy of the following excerpts from Timothy Zuniga's deposition taken on July 28, 2010.

a.   Zuniga Dep. 20:6-14 (discussing that Zuniga was familiar with Long Haul prior to raid)

b.   Zuniga Dep. 26:9-11 (discussing that Zuniga looked at the Long Haul website prior to the raid)

c.   Zuniga Dep. 26:12-19 (explaining that Zuniga knew before the raid that Long Haul had a room with publicly accessible computers)

d.   Zuniga Dep. 29:11-30:9 (describing Ex. D – email Zuniga sent Alberts acknowledging that Slingshot was in some way affiliated with Long Haul)

e.   Zuniga Dep. 30:13-24 (describing that Zuniga was aware Slingshot was an online publication and had visited the website)

f.   Zuniga Dep. 31:16-32:8 (acknowledging Zuniga was aware that Slingshot is an internet publication)

g.   Zuniga Dep. 43:23-44:16 (describing that Zuniga was not present at Long Haul at the time that the remainder of the raid team entered the building)

h.   Zuniga Dep. 45:4-22 (explaining that Zuniga arrived after initial entry and met up with the rest of the team inside the building by entering through the back door)

i.   Zuniga Dep. 48:21-23 (Zuniga carried computers out of the building)

j.   Zuniga Dep. 49:20-50:25 (describing that Zuniga does not recall if he forced entry or removed a lock to EBPS office, but he does recall entering at least one locked door)

k.   Zuniga Dep. 51:24-53:11 (confirming that Zuniga entered the Slingshot office)

l.   Zuniga Dep. 53:21-54:8 (Zuniga describes searching EBPS office and cabinets for "logs, documents" and not finding any in the Slingshot office)

m.  Zuniga Dep. 54:15-25 (describing Zuniga searching through photographs)

n.   Zuniga Dep. 55:1-6 (describing Zuniga calling photographs to Shaffer's attention)

o.   Zuniga Dep. 55:7-19 (describing the removal of computers)

p.   Zuniga Dep. 55:11-19 (describing the removal of computers)

q.   Zuniga Dep. 55:16-56:1 (Zuniga called Shaffer upstairs into an office)

r.   Zuniga Dep. 63:7-64:20 (Zuniga describes handling the photographs found in the drawer in the Slingshot office)

s.   Zuniga Dep. 65:12-23 (Zuniga stating that he was in the Slingshot office with

Shaffer)

    t.    Zuniga Dep. 66:15-25 (Zuniga describing his search of the Slingshot office with Shaffer)

9.    Attached as Exhibit 8 is a true and correct copy of the following excerpts from Defendant Lisa Shaffer's deposition taken on July 28, 2010.

    a.    Shaffer Dep. 7:9-18 (Shaffer participated in the search)

    b.    Shaffer Dep. 14:23-15:9 (Alberts contacted Shaffer about the search warrant)

    c.    Shaffer Dep. 23:3-17 (Shaffer was aware that "activists would go [to Long Haul] for meetings, discussions, hang out" and stated that she "may have" received some of this information from UC Berkeley PD)

    d.    Shaffer Dep. 24:5-15 (was aware that Slingshot was a publication of news articles at the time of the search)

    e.    Shaffer Dep. 26:23-27:1 (Shaffer attended the pre-raid briefing)

    f.    Shaffer Dep. 36:13-22 (no pre-raid discussion of off-limits areas or multiple offices in building)

    g.    Shaffer Dep. 36:23-37:2 (no pre-raid instruction of what to do if search revealed offices belonging to other entities)

    h.    Shaffer Dep. 49:11-23 (raid team entered Long Haul through front door of Long Haul neighbor, and then through back door of Long Haul)

    i.    Shaffer Dep. 51:22-52:4 (Shaffer examined log book)

    j.    Shaffer Dep. 55:23-56:11 (Shaffer examined photos of Seattle protests in Slingshot office)

    k.    Shaffer Dep. 56:17-57:4 (Shaffer searched file cabinet in upstairs office)

    l.    Shaffer Dep. 59:17-61:5 (copies of publications on a shelf in the Slingshot office)

    m.    Shaffer Dep. 59:17-61:5 (during the search Shaffer observed organized, archival copies of publications on a shelf along one wall of the office)

    n.    Shaffer Dep. 64:21-65:1 (Shaffer searched EBPS mail)

    o.    Shaffer Dep. 66:23-67:1 (Slingshot computers were removed from premises)

    p.    Shaffer Dep. 67:19-23 (Shaffer searched EBPS office)

10.    Attached as Exhibit 9 is a true and correct copy of the following excerpts from Defendant Lisa Shaffer's Response to Plaintiff's First Set of Interrogatories.

a. Shaffer's Resp. to Pl.'s First Set of Interrogs. No. 8 (Shaffer examined "5-6 photos of scenes of downtown Seattle, including one she recalls as a photo of an old police vehicle")

b. Shaffer's Resp. to Pl.'s First Set of Interrogs. No. 8 (Shaffer recalls "briefly examining a log book of some kind, flipping through 4-5 pages, before closing the book")

c. Shaffer's Resp. to Pl.'s First Set of Interrogs. No. 8 (Shaffer searched EBPS office)

d. Shaffer's Resp. to Pl.'s First Set of Interrogs. No. 10 (Shaffer aware that activists would go [to Long Haul] for meetings, discussions)

e. Shaffer's Resp. to Pl.'s First Set of Interrogs. No. 10 (Shaffer "had an understanding that Long Haul was an activist organization in Berkeley holding or facilitating activities such as meetings, discussions, and recreational activities, which she learned from local law enforcement, probably UCBPD")

11. Attached as Exhibit 10 is a true and correct copy of the following excerpts from Katherine Miller's deposition taken on November 10, 2010.

a. Miller Dep. 48:14-49:22 (noting that the Slingshot computer included articles for publication, layouts, and other documents prepared as part of Slingshot's creation)

b. Miller Dep. 67:11-14 (Miller saw the officers pulling documents out of side cabinet),

c. Miller Dep. 74:18-22 (Miller found the library log left open on counter);

d. Miller Dep. 76:9-11 (stating that the raid team searched filing cabinet holding Slingshot photos and left photos piled on desk)

12. Attached as Exhibit 11 is a true and correct copy of the following excerpts from Patrick Lyons' deposition taken on September 22, 2010.

a. Lyons Dep. 22:22-25 (EBPS moved into Long Haul in approximately May or June 2008)

b. Lyons Dep. 53:24-54:8 (sign and lock indicated that EBPS office was not public and distinct from Long Haul)

c. Lyons Dep. 55:7-11 (sign and lock indicated that EBPS office was not public and distinct from Long Haul)

d. Lyons Dep. 85:6-86:21 ("whoever had tried to open the door had clumsily damaged an unnecessary amount of the door," latch was unscrewed, but door was still on hinges)

DECLARATION OF MATTHEW ZIMMERMAN

     e.   Lyons Dep. 87:15-23 (all of EBPS's mail, including approximately 50 to 100 letters, was strewn about, taken off shelves, and out of envelopes)

     f.   Lyons Dep. 89:7-21 (raid team left EBPS office in disarray)

     g.   Lyons Dep. 91:8-15 (missing EBPS computer contained an article or magazine that was eventually distributed)

     h.   Lyons Dep. 104:19-106:23 (raid required EBPS to spend over ten hours reorganizing office, correspondence, and fixing door; removal of computer disrupted EBPS's ability to read and send emails)

     i.   Lyons Dep. 110:16-23 (EBPS feared the FBI and police would continue to surveil their activities)

     j.   Lyons Dep.114:21-115:8 (EBPS feared the FBI and police would continue to surveil their activities)

13.    Attached as Exhibit 12 is a true and correct copy of the following excerpts from Karen Alberts's deposition taken on August 3, 2010.

     a.   Alberts Dep. 12:5-8 (Alberts supervised Kasiske)

     b.   Alberts Dep. 36:9-23 (Alberts contacted Shaffer before the search)

     c.   Alberts Dep. 57:5-59:21 (Alberts knew of Slingshot before the raid)

     d.   Alberts Dep. 63:22-65:13 (confirming Def. Sgt. Alberts's review, knowledge, and consent of the warrant, as well as Lt. Wing's involvement in the process)

     e.   Alberts Dep. 71:6-12 (Alberts did not know or remember whether the statement of probable cause was present at the raid)

     f.   Alberts Dep. 94:22-95:4 (raid team traveled to Long Haul after pre-raid briefing)

     g.   Alberts Dep. 96:4-12 (raid team entered through front door of Long Haul neighbor, and then through back door of Long Haul)

     h.   Alberts Dep. 98:23-99:11 (discussing Alberts's search of Long Haul's sales and lending logs in the front office and cabinets of Long Haul's office)

     i.   Alberts Dep. 100:6-17 (confirming that Defendant Alberts found and searched through the library's lending log)

     j.   Alberts Dep. 110:16-111:24 (stating that Alberts saw Zuniga searching the Slingshot office)

     k.   Alberts Dep. 112:9-11 (discussing Alberts seeing Zuniga examine the Seattle photograph)

     l.   Alberts Dep. 131:23-132:13 (Hart helped to seize computers)

9

m. Alberts Dep. 132:1-4 (Hart provided armed guard as other officers searched Long Haul and seized materials)

n. Alberts Dep. 135:9-13 (Alberts did not know or remember whether the statement of probable cause was present at the raid)

o. Alberts Dep. 148:13-17 (Defendants returned computers and media to Long Haul after searching them, but retained copies of drives and data)

p. Alberts Dep. 149:8-14 (Defendants returned computers and media to Long Haul after searching them, but retained copies of drives and data)

14. Attached as Exhibit 13 is a true and correct copy of excerpts of Mitchell Celaya's Response to Plaintiffs' Request for Admissions.

a. Celaya's Resp. to Pl.'s Req. for Admis. Nos. 20-21 (Celaya reviewed the search warrant before the raid and did not object to the search plan presented by Kasiske).)

15. Attached as Exhibit 14 is a true and correct copy of the following excerpts from the FBI's 30(b)(6) witness David Strange's deposition taken on December 16, 2010.

a. Strange Dep. 9:17-11:16 (discussing Officer Defendant Hart's classification

b. Strange Dep. 36:2-9 (describing FBI jackets that would have been worn by agents at the raid)

c. Strange Dep. 72:4-8 (the United States helps to fund and organize the Lab)

16. Attached as Exhibit 15 is a true and correct copy of the following excerpts from Wade MacAdam's deposition taken on November 15, 2010.

a. MacAdam Dep. 45:20-22 (raid team entered through front door of Long Haul neighbor, and then through back door of Long Haul)

b. MacAdam Dep. 50:6-9 (MacAdam cut or removed all locks inside the Long Haul building)

c. MacAdam Dep. 51:14-20, 54:15-17 (describing Def. MacAdam's entry to EBPS offices)

d. MacAdam Dep. 57:16-58:12 (discussing Defendant MacAdam's cutting of the front cabinet's locks)

e. MacAdam Dep. 67:8-10 (MacAdam provided security for the search)

17. Attached as Exhibit 16 is a true and correct copy of the following excerpts from Wade MacAdam's Response to Plaintiffs' Request for Admissions.

Case No. C 09-00168-JSW

DECLARATION OF MATTHEW ZIMMERMAN

a. MacAdam Resp. to Pl.'s Req. for Admis. Nos. 20-21 (Defendants returned computers and media to Long Haul after searching them, but retained copies of drives and data)

b. MacAdam Resp. to Pl.'s Req. for Admis. No. 25 (MacAdam cut or removed all locks inside the Long Haul building)

18.     Attached as Exhibit 17 is a true and correct copy of the following excerpts from Michael Hart's Response to Plaintiffs' First Set of Requests for Admissions.

a. Def. Hart's Resp. to Pf.'s First Set of Reqs. For Admis. No. 11 (admitting that at the time of the raid Hart knew that Slingshot was a publication).

b. Def. Hart's Resp. to Pf.'s First Set of Reqs. For Admis, No. 25 (stating that the raid team removed every computer from the building)

19.     Attached as Exhibit 18 is a true and correct copy of the following excerpts from Max Harris' deposition taken on September 22, 2010.

a. Harris Dep. 70:9-13 (Harris recalls that "the hinge was pried open at the EBPS office and that the door was screwed up")

b. Harris Dep. 70:22-71:17 (computer disks, a flash drive, and other computer equipment, were missing after the raid)

c. Harris Dep. 70:20-24 (the raid team left the EBPS office in disarray)

d. Harris Dep. 70:22-71:17 (the raid team seized miscellaneous CDs, computer disks, and a USB drive from the EBPS office)

e. Harris Dep. 73:24-74:3 (missing EBPS computer contained an article or magazine that was eventually distributed)

f. Harris Dep. 75:6-12 (the raid team removed all of the computers from Long Haul's public space)

g. Harris Dep. 86:22-87:6 (EBPS members could not access EBPS email account after computer was taken during raid)

20.     Attached as Exhibit 19 is a true and correct copy of an excerpt from the UC Berkeley Police Department's call log for the day of the raid, indicating the time period during which the raid took place.  This document was originally produced by the UC Defendants with BATES stamps 000183-184.

21.     Attached as Exhibit 20 is a true and correct copy of the following excerpts from William Kasiske's Response to Plaintiffs' Request for Admissions.

a. Kasiske Resp. to Pl.'s Req. for Admis. No. 35 (Defendants made copies of data from computers taken during the raid, and then returned the devices but retained copies)

22. Attached as Exhibit 21 is a true and correct copy of the following excerpts from the 30(b)(6) deposition of the SVRCL Lab (Chris Beeson's) deposition taken on December 1, 2010.

a. Beeson Dep. 13:17-21 (FBI is the Lab's primary funding source, and the lab follows FBI principles and protocols as they relate to computer forensic material)

b. Beeson Dep. 14:7-12 (some employees at the Lab are employed by the FBI)

23. Attached as Exhibit 22 is a true and correct copy of the following excerpts from Wade MacAdam's Responses to Plaintiff's First Set of Interrogatories.

a. MacAdam Resp. to Pl.'s First Set of Interrogs. No. 13 (MacAdam was aware of Slingshot at the time of the raid)

24. Attached as Exhibit 23 is a true and correct copy of the following excerpts from Karen Alberts's Responses to Plaintiff's First Set of Interrogatories.

a. Alberts Resp. to Pl.'s First Set of Interrogs. No. 8 (Alberts was aware of Slingshot at the time of the raid)

b. Alberts Resp. to Pl.'s First Set of Interrogs. No. 9 (Alberts participated in monitoring activities at the Long Haul and followed suspects back to Long Haul)

25. Attached as Exhibit 24 is a true and correct copy of the following excerpts from Timothy Zuniga's Responses to Plaintiff's First Set of Interrogatories.

a. Zuniga Resp. to First Set of Pl.'s Interrogs. No. 8 (Zuniga searched the Slingshot office)

26. Attached as Exhibit 25 is a true and correct copy of Exhibit L to William Kasiske's deposition taken July 27, 2010. Exhibit L is an email sent from William Kasiske to Karen Alberts on August 29, 2009, containing documents provided by William Kasiske to the Silicon Valley Regional Computer Forensic Laboratory to assist them with the searching of Long Haul's computers.

a. Kasiske Dep. Ex. L, at 1 (email to Alberts with written request to labs attached)

b. Kasiske Dep. Ex. L, at 2 (Kasiske's written request to search six computers taken from publicly accessible Internet room)

27. Attached as Exhibit 26 is a true and correct copy of Exhibit D to Timothy Zuniga's deposition taken on July 28, 2010. Exhibit D is an email from Timothy Zuniga to Karen Alberts on February 19, 2008, concerning a connection of Slingshot with Long Haul.

12

a.   Zuniga Dep. Ex. D (email from Zuniga to Alberts acknowledging that Slingshot is in some way affiliated with Long Haul)

28.     Attached as Exhibit 27 is a true and correct copy of Exhibit I to Timothy Zuniga's deposition taken on July 28, 2010. Exhibit I is a photograph of the door to the Slingshot office inside the Long Haul building.

a.   Zuniga Dep. Ex. I. (depicting closed internal door with a lock and the Slingshot sign above it)

29.     Attached as Exhibit 28 is a true and correct copy of Exhibit D to Karen Alberts's deposition taken on August 3, 2010. Exhibit D is an email from Timothy Zuniga to Karen Alberts on February 19, 2008, concerning a connection of Slingshot with Long Haul.

a.   Alberts Dep. Ex. D (stating that Zuniga and Alberts at least knew of a connection between Long Haul and Slingshot)

30.     Attached as Exhibit 29 is a true and correct copy of Exhibit G to Karen Alberts's deposition taken on August 3, 2010. Exhibit G is an email from William Kasiske to Karen Alberts discussing IP address of Long Haul and Long Haul's likelihood to cooperate in an investigation.

a.   Alberts Dep. Ex. G (stating that Zuniga and Alberts at least knew of a connection between Long Haul and Slingshot)

31.     Attached as Exhibit 30 is a true and correct copy of a report from the UC Berkeley Police Department stating that, per William Kasiske's request, several computer hard drives from Long Haul were cloned and booked into evidence on June 16, 2008. This document was originally produced by the UC Defendants with BATES stamp UC000170.

32.     Attached as Exhibit 31 is a true and correct copy of the following excerpts from Karen Alberts's Responses to Plaintiffs' Requests for Admission.

a.   Alberts Resps. to Pl.'s Reqs. For Admis. No. 21 (admitting that the UC Berkeley Police Department made and retained copies of the hard drives and a flash drive seized from Long Haul)

33.     Attached as Exhibit 32 is a true and correct copy of the request for service that William Kasiske sent to the Silicon Valley Regional Computer Forensic Laboratory. The form was designated Exhibit J to the deposition of William Kasiske in his personal capacity, taken on taken on July 27, 2010, and produced by the UC Defendants with BATES stamp 000185.

13

Case No. C 09-00168-JSW

DECLARATION OF MATTHEW ZIMMERMAN

1

     I declare under penalty of perjury of the laws of the State of California that the foregoing is

2

true and correct to the best of my knowledge and belief.  Executed January 31, 2011, in San

3

Francisco, California.

4

5

                             /s/ *Matthew Zimmerman*
                                Matthew Zimmerman

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 09-00168-JSW

DECLARATION OF MATTHEW ZIMMERMAN