1  SCHIFF HARDIN LLP
   WILLIAM J. CARROLL (CSB #118106)
2  wcarroll@schiffhardin.com
   SARAH D. YOUNGBLOOD (CSB #244304)
3  syoungblood@schiffhardin.com
   One Market, Spear Street Tower, 32nd Floor
4  San Francisco, CA  94105
   Phone: (415) 901-8700 / Fax: (415) 901-8701
5
   SARA L. ELLIS (ILSB #6224868)
6  sellis@schiffhardin.com
   233 South Wacker Drive, Suite 6600
7  Chicago, IL  60606
   Phone: (312) 258-5800 / Fax: (312) 258-5600
8
   Attorneys for Defendants MITCHELL CELAYA,
9  KAREN ALBERTS, WILLIAM KASISKE, WADE
   MACADAM and TIMOTHY J. ZUNIGA
10
   MELINDA HAAG (CSB #132612)
11 United States Attorney
   JOANN M. SWANSON (CSB #88143)
12 Assistant United States Attorney
   Chief, Civil Division
13 JONATHAN U. LEE (CSB #148792)
   NEILL T. TSENG (CSB #220348)
14 Assistant United States Attorneys
   Northern District of California
15 450 Golden Gate Avenue, Box 36055
   San Francisco, CA  94102
16 Phone: (415) 436-6909 (Lee) / Fax: (415) 436-7169

17 Attorneys for the FEDERAL DEFENDANTS

18                    UNITED STATES DISTRICT COURT

19                   NORTHERN DISTRICT OF CALIFORNIA

20

21 LONG HAUL, INC., et al.,                Case No.  3:09-cv-0168 JSW

22                    Plaintiffs,          **DEFENDANTS' NOTICES OF MOTION
                                           AND MOTIONS FOR SUMMARY
23 v.                                      JUDGMENT; JOINT MEMORANDUM OF
                                           POINTS AND AUTHORITIES IN
24 U.S.A., et al.,                         SUPPORT THEREOF AND IN
                                           OPPOSITION TO PLAINTIFFS' MOTION
25                    Defendants.          FOR SUMMARY JUDGMENT**

26                                         [F.R.C.P. Rule 56]

27                                         Date:    April 8, 2011
                                           Time:    9:00 a.m.
28                                         Dept.:   11

                                           Judge:   Jeffrey S. White

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 9:00 a.m. on April 8, 2011, or as soon thereafter as the matter may be heard in Courtroom 11 on the 19th Floor of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, Defendants Mitchell Celaya, Karen Alberts, William Kasiske, Wade Macadam and Timothy J. Zuniga (collectively, "the University Defendants") will, and hereby do each move for summary judgment in their favor on all claims asserted against each of them by Plaintiffs Long Haul and East Bay Prisoner Support, respectively.

PLEASE TAKE FURTHER NOTICE that on the date and time set forth above, Defendants United Stated of America, Mike Hart, and Lisa Shaffer (collectively, "the Federal Defendants") will, and hereby do each move for summary judgment in their favor on all claims asserted against each of them by Plaintiffs Long Haul and East Bay Prisoner Support, respectively.

The respective Motions of the University Defendants and the Federal Defendants are based on these Notices of Motion, the Joint Memorandum of Points and Authorities in support of these Motions, the Declarations of William Kasiske, Karen Alberts, Timothy Zuniga, Lisa Shaffer, Mike Hart, Wade MacAdam, and Sara Ellis in support of these Motions, all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any further evidence and argument which may be offered.

Dated:  February 14, 2011           SCHIFF HARDIN LLP


By:___/s/ William J. Carroll_____
        William J. Carroll
    Attorneys for Defendants
    MITCHELL CELAYA, KAREN ALBERTS,
    WILLIAM KASISKE, WADE MACADAM and
    TIMOTHY J. ZUNIGA

Dated:  February 14, 2011           MELINDA HAAG
                                    United States Attorney


By:___/s/ Jonathan U. Lee_____
        Jonathan U. Lee
        Assistant United States Attorney
    Attorneys for the FEDERAL DEFENDANTS

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- i -                    CASE NO.  3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ............................................................................................................. i

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF FACTS ......................................................................................... 2

      A.      Animal Rights Activists Directed Harassing and Threatening Activities Against UCB Researchers.................................................................................... 2

      B.      Detective Kasiske Traced The Harassing and Threatening Emails Back to Long Haul ......................................................................................................... 3

      C.      Long Haul Provided Support and Resources to Animal Rights Activists ............. 4

      D.      Kasiske's Application For A Search Warrant ........................................................ 5

            1.      The Statement of Probable Cause ............................................................. 5

            2.      The Terms of the Search Warrant ............................................................. 7

      E.      The Warrant Team Executed the Search Warrant................................................. 8

            1.      Assembling the Team and the Briefing Meeting ....................................... 8

            2.      Entering The Premises And Initial Inspection ........................................... 9

            3.      The Search Of The Premises.................................................................... 10

                a.      The Ground Floor.......................................................................... 10

                b.      The Loft Areas .............................................................................. 11

      F.      Defendant Kasiske Promptly Returned Plaintiffs' Property And Properly Limited The Scope Of The Search ..................................................................... 12

            1.      The Prompt Return of Plaintiffs' Property............................................... 12

            2.      The Search of the Computers................................................................... 13

III.    ARGUMENT .......................................................................................................... 14

      A.      Defendants Are Entitled To Summary Judgment On Plaintiffs' Second Cause Of Action Alleging Violation Of The Fourth Amendment....................... 14

            1.      Defendants Did Not Violate The Fourth Amendment ............................. 14

                 a.      The Search Warrant Was Supported By Probable Cause ............. 14

                 b.      The Search Warrant Was Not Unconstitutionally Overbroad....... 14

                     (1)     Computers and Electronic Storage Devices...................... 15

- ii -                                                    CASE NO.  3:09-cv-0168 JSW

DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**
(continued)

Page

2.   Documents Identifying Computer Users ................................... 17

    a.   The Warrant Was Properly Executed ............................................ 18

        (1)   The Search Was Limited to the Areas Described in the Warrant ................................................................................ 18

        (2)   The Search Was of Reasonable Duration And Thoroughness ................................................................. 20

        (3)   The Seized Computers Were Properly Searched And Promptly Returned ................................................. 21

3.   Defendants Are Entitled To Qualified Immunity With Regard To Plaintiffs' Fourth Amendment Claims ................................................ 22

    a.   Plaintiffs Cannot Establish That Defendants, Or Any Of Them, Violated Their "Clearly Established" Fourth Amendment Rights Under The Specific Circumstances Alleged Here ................................................................. 22

4.   Plaintiffs Lack Any Basis For Asserting Their Fourth Amendment Claims Against Defendants In Their Official Capacities ........................ 25

B.   Defendants Are Entitled To Summary Judgment On Plaintiffs' Third Cause Of Action For Violation Of The Privacy Protection Act ...................................... 26

    1.   Defendants Lacked Any Knowledge Or Belief That Plaintiffs Engaged In Publishing Activities At The Shattuck Street Premises ........ 26

        a.   Slingshot ................................................................................. 27

        b.   EBPS ................................................................................. 29

    2.   Defendants' Conduct Falls Within The Criminal Suspect Exception Created By The PPA ................................................................. 30

    3.   Plaintiffs' Claims Against The University Defendants Are Barred By The Good Faith Defense Available Under The PPA ........................ 32

C.   Defendants Are Entitled To Summary Judgment On Plaintiff's Fourth Cause Of Action Seeking Declaratory Relief ................................................ 32

IV.   EVIDENTIARY OBJECTIONS ................................................................. 33

A.   Lacks Authentication (Fed. Rule of Evid. 901) and Incomplete Document (Fed. Rule of Evid. 106) ................................................................. 33

B.   Hearsay (Fed. Rule of Evid. 802) ................................................................. 33

C.   Lacks Foundation (Fed. Rules of Evid. 602 and 701) ......................................... 33

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -

CASE NO. 3:09-cv-0168 JSW

DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**<u>TABLE OF CONTENTS</u>**
**(continued)**

**<u>Page</u>**

D.      Mischaracterizes Cited Testimony or Document .................................................. 34

V.      CONCLUSION .............................................................................................................. 34

Schiff Hardin LLP
Attorneys At Law
San Francisco

- iv -

CASE NO.  3:09-cv-0168 JSW

DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

**Page**

CASES

*Andresen v. Maryland,*
    427 U.S. 463 (1976) ................................................................................................................ 21

*Baker v. Racansky,*
    887 F.2d 183 (9th Cir. 1989) .................................................................................................. 23

*Barlow v. Ground,*
    943 F.2d 1132 (9th Cir. 1991) ................................................................................................ 24

*Berglund v. City of Maplewood,*
    173 F.Supp.2d 935 (D. Minn.2001), *aff'd* 50 Fed.Appx. 805, 2002 WL
    31609767, *cert. denied,* 539 U.S. 965 ................................................................................. 30

*Carr HUML Investors, LLC v. Arizona,*
    2007 WL 4403981 (D. Ariz. 2007) ......................................................................................... 32

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) .................................................................................................................. 25

*City of West Covina v. Perkins,*
    525 U.S. 234 (1999) ................................................................................................................ 26

*Dalia v. U.S.,*
    441 U.S. 238 (1979) ........................................................................................................... 14-15

*DePugh v. Sutton,*
    917 F.Supp. 690 (W.D. Mo. 1996) ......................................................................................... 31

*Devereaux v. Abbey,*
    263 F.3d 1070 (9th Cir. 2001) ............................................................................................ 22-23

*Doe v. Lawrence Livermore Nat'l Lab.,*
    131 F.3d 836 (9th Cir. 1997) .................................................................................................. 25

*Dong v. Chertoff,*
    513 F.Supp.2d 1158 (N.D. Cal. 2007) .................................................................................... 32

*Guest v. Leis,*
    255 F.3d 325 (6th Cir. 2001) .................................................................................................. 31

*Hafer v. Melo,*
    502 U.S. 21 (1991) .................................................................................................................. 25

*Heck v. Humphrey,*
    512 U.S. 477 (1994) ................................................................................................................ 18

*Illinois v. Gates,*
    462 U.S. 213 (1983) ........................................................................................................... 14, 16

Schiff Hardin LLP
Attorneys At Law
San Francisco

- v -

CASE NO.  3:09-cv-0168 JSW

DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF AUTHORITIES
### (continued)

Page

*Johnson v. Walton,*
    558 F.3d 1106 (9th Cir. 2009) ............................................................................ 24

*Kolender v. Lawson,*
    461 U.S. 352 (1983) ........................................................................................... 25

*KRL v. Estate of Moore,*
    512 F.3d 1184 (9th Cir. 2008) ............................................................................ 24

*Malley v. Briggs,*
    475 U.S. 335 (1986) .................................................................................... 22, 24

*Marks v. Clarke,*
    102 F.3d 1012 (9th Cir. 1996) ............................................................................ 24

*Maryland v. Garrison,*
    480 U.S. 79 (1987) ................................................................................. 19, 20, 24

*Millender v. Los Angeles,*
    620 F.3d 1016 (2010) ......................................................................................... 15

*Murphy v. Hunt,*
    455 U.S. 478 (1982) ........................................................................................... 25

*Orr v. Bank of America, NT & SA,*
    285 F.3d 764 (9th Cir. 2002) .............................................................................. 33

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ........................................................................................... 22

*Rodis v. City and County of San Francisco,*
    558 F.3d 964 (9th Cir. 2009) .............................................................................. 23

*S.H.A.R.K. v. Metro Parks Serving Summit County,*
    499 F.3d 553 (6th Cir. 2007) .............................................................................. 30

*Sample v. Johnson,*
    771 F.2d 1335 (9th Cir. 1985) ............................................................................ 26

*Saucier v. Katz,*
    533 U.S. 194 (2001) ...................................................................................... 22-23

*Stanley v. University of Southern California,*
    13 F.3d 1313 (9th Cir. 1994) .............................................................................. 25

*Steve Jackson Games, Inc. v. U.S. Secret Service,*
    816 F.Supp. 432 (W.D. Tex. 1993) .................................................................... 27

*Teichberg v. Smith,*
    734 F.Supp.2d 744 (D. Minn. 2010) .................................................................. 27

1

# TABLE OF AUTHORITIES
## (continued)

2

**Page**

3

*Texas v. Brown,*
  460 U.S. 730 (1983) ........................................................................................... 14

4

*U.S. v. Adjani,*
  452 F.3d 1140 (9th Cir. 2006) ............................................................. 15, 16, 17, 22

5

6

*U.S. v. Alexander,*
  761 F.2d 1294 (9th Cir. 1985) .................................................................... 19, 24

7

*U.S. v. Ayers,*
  924 F.2d 1468 (9th Cir. 1991) .......................................................................... 20

8

9

*U.S. v. Brooks,*
  427 F.3d 1246 (10th Cir. 2005) ....................................................................... 16

10

*U.S. v. Cardwell,*
  680 F.2d 75 (9th Cir. 1982) ............................................................................. 18

11

12

*U.S. v. Carter,*
  549 F.Supp.2d 1257 (D. Nev. 2008) ............................................................... 14

13

*U.S. v. Cartier,*
  543 F.3d 442 (8th Cir. 2008) ........................................................................... 16

14

15

*U.S. v. Ewain,*
  88 F.3d 689 (9th Cir. 1996) ............................................................................. 18

16

*U.S. v. Gourde,*
  440 F.3d 1065 (9th Cir. 2006) ......................................................................... 14

17

18

*U.S. v. Grubbs,*
  547 U.S. 90 (2006) ........................................................................................... 16

19

*U.S. v. Harrison,*
  566 F.3d 1254 (10th Cir. 2009) ....................................................................... 14

20

21

*U.S. v. Hay,*
  231 F.3d 630 (9th Cir. 2000) ............................................................... 16, 17, 21

22

*U.S. v. Heldt,*
  668 F.2d 1238 (D.C. Cir 1981) ....................................................................... 21

23

24

*U.S. v. Hinds,*
  856 F.2d 438 (1st Cir. 1988) ........................................................................... 20

25

*U.S. v. Hunter,*
  13 F.Supp.2d 574 (D. Vt. 1998) .............................................................. 21, 31

26

27

*U.S. v. Jackson,*
  131 F.3d 1105 (4th Cir. 1997) ......................................................................... 18

28

1
2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3

*U.S. v. Khanani,*
   502 F.3d 1281 (11th Cir. 2007)........................................................................ 16

4

5

*U.S. v. King,*
   693 F.Supp.2d 1200 (D. Hawaii 2010) ............................................................ 22

6

*U.S. v. Krupa,*
   --- F.3d ---, 2011 WL 353212 *3 (9th Cir. February 7, 2011) .......................... 16

7

*U.S. v. Kufrovich,*
   997 F.Supp. 246 (D. Conn. 1997) .................................................................... 21

8

9

*U.S. v. Lacy,*
   119 F.3d 742 (1997)........................................................................................ 17

10

*U.S. v. Leon,*
   468 U.S. 897 (1984)........................................................................................ 24

11

12

*U.S. v. Mann,*
   389 F.3d 869 (9th Cir. 2004)............................................................................ 15

13

*U.S. v. Ofshe,*
   817 F.2d 1508 (11th Cir. 1987)........................................................................ 19

14

15

*U.S. v. Perez,*
   484 F.3d 735 (5th Cir. 2007)............................................................................ 14

16

*U.S. v. Seybold,*
   726 F.2d 502 (9th Cir. 1984)............................................................................ 16

17

18

*U.S. v. Slocum,*
   708 F.2d 587 (11th Cir. 1983)........................................................................ 21

19

*U.S. v. Tamura,*
   694 F.2d 591 (9th Cir. 1982)............................................................................ 21

20

21

*U.S. v. Washington,*
   797 F.2d 1461 (9th Cir. 1986)........................................................................ 18

22

*U.S. v. White,*
   416 F.3d 634 (7th Cir. 2005)............................................................................ 20

23

24

*U.S. v. Whitney,*
   633 F.2d 902 (9th Cir. 1980)............................................................................ 19

25

*U.S. v. Whitten,*
   706 F.2d 1000 (9th Cir. 1983)................................................................... 19, 24

26

*U.S. v. Wong,*
   334 F.3d 831 (9th Cir. 2003)............................................................................ 17

27
28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- viii -          CASE NO. 3:09-cv-0168 JSW

DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF AUTHORITIES**
(continued)

Page

*Whalen v. Langfellow,*
    731 F.Supp.2d 868 (D. Minn. 2010) ........................................................................ 27

STATUTES

28 U.S.C. §2201 ................................................................................................................ 32

42 U.S.C. §2000aa ...................................................................................................... *passim*

Cal. Penal Code §1536 ...................................................................................................... 26

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- ix -                                                    CASE NO.  3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

I.        **INTRODUCTION**

Responding to an escalating campaign of harassment and intimidation aimed at University of California faculty engaged in animal research, the University of California Police Department ("UCPD") formed a special unit, the Animal Rights Working Group ("ARWG").  The ARWG was responsible for investigating the growing number of targeted home demonstrations, vandalism, threats, and intimidation aimed at UC Berkeley researchers and their families.  The need for this unit was underscored by fire-bombings and other violent attacks directed at University personnel at UCLA and UC Santa Cruz.  During the spring of 2008, the ARWG investigated a series of increasingly intimidating and threatening emails sent to UC Berkeley researchers, including, for example, one which referred to the UCLA attacks and warned the researcher to "quit torturing animals or you're next to receive that and MUCH worse you fucking murderous scum."  Another demanded the researcher to publicly announce the end of her animal research, "or I will fuck your life up."

On three separate occasions, the UCPD traced these emails to an IP address located at 3124 Shattuck in Berkeley, the location of Long Haul.  Officers were aware that Long Haul was a meeting place and resource for radical activists, including animal rights activists.  With probable cause to believe they would find evidence identifying the perpetrator of the emailed threats, UCPD obtained a court-approved warrant to search the Long Haul premises, and pursuant to that warrant seized computers and other electronic storage devices found at that location.  The warrant was supported by probable cause, was reasonably specific, and the ensuing search was properly executed.  Defendants conducted a targeted, limited search of the seized computers and promptly returned all property to Long Haul.  Defendants were not compelled to forego a warrant by the Privacy Protection Act ("PPA"), because they suspected a person affiliated with Long Haul was complicit, and because they were unaware of any publishing activity covered by the PPA, in any event.

Plaintiffs cannot prove any violation of their constitutional or statutory rights.  Even more fundamentally, Plaintiffs' attempt to impose personal liability on the individual defendants is barred as a threshold matter by defendants' qualified immunity and by the statutory good faith

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 1 -                                    CASE NO.  3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    defense furnished under the PPA.  Plaintiffs have not and cannot demonstrate defendants'

2    violation of any "clearly established" Fourth Amendment rights, nor can they prove that under the

3    PPA defendants lacked a reasonable, good faith belief in the lawfulness of their conduct.  On

4    these grounds and others, the University Defendants and the Federal Defendants are each entitled

5    to summary judgment in their favor.

6    **II.**     **STATEMENT OF FACTS**

7           **A.**     **Animal Rights Activists Directed Harassing and Threatening Activities Against**
                         **UCB Researchers.**
8

9           From late 2007 through 2008, animal rights activists directed a number of actions against

10   University of California, Berkeley  ("UCB") researchers designed to harass, threaten, and intimidate

11   the researchers and their families.  Dec. of William Kasiske ("Kas. Dec.") ¶4.  To respond to the

12   increasing concern for faculty safety, the UCPD created an "Animal Rights Working Group"

13   ("ARWG"), comprised of UCPD officers and members of other law enforcement agencies, that

14   collected information on animal rights activist activities, shared information between agencies, and

15   dedicated a group of UCPD officers to investigate complaints of unlawful conduct directed against

16   UCB animal researchers.  *Id.* at ¶5.  Defendants Kasiske, Alberts, Zuniga, Shaffer, and Hart were

17   members of ARWG.  *Id.*  Defendant MacAdam was not.  Dec. of Wade MacAdam ("Mac. Dec.") ¶3.

18   Defendants Kasiske, Alberts, and Zuniga participated in the investigation of animal rights activist

19   activities that were the subject of the search warrant at issue in this litigation.  Kas. Dec. ¶4; Dec. of

20   Karen Alberts ("Alb. Dec.") ¶4; Dec. of Timothy Zuniga ("Zun. Dec.") ¶5.

21          Beginning in late 2007 and continuing through 2008, animal rights activists conducted

22   numerous home demonstrations at researchers' residences.  Kas. Dec. ¶6.  These demonstrations

23   included chalking the researchers' driveways and sidewalks with offensive messages and placing

24   flyers laden with incendiary comments where neighbors would find them.  *Id.*  During these

25   demonstrations, animal rights activists chanted slogans meant to frighten and intimidate the

26   researchers, such as "For the animals, we will fight.  We know where you sleep at night."  *Id.*  They

27   vandalized researchers' homes during certain demonstrations.  *Id.*  As part of its investigation,

28   ARWG monitored these home demonstrations, at times followed the demonstrators from

Schiff Hardin LLP
Attorneys At Law
San Francisco
- 2 -                                                    CASE NO.  3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1   researchers' residences, and searched the internet to find information regarding planned

2   demonstrations.  Kas. Dec. ¶6.

3          A group identified as Stop Cal Vivisection claimed responsibility for various home

4   demonstrations, stating they were taking a radical stand against animal research conducted by UCB

5   researchers.  *Id.* at ¶¶7-12, Ex. A-D.  Stop Cal Vivisection maintained websites which disseminated

6   personal information regarding UCB researchers, listing the researchers' names, home addresses,

7   telephone numbers, and displaying graphic pictures seeking to portray the inhumane treatment of

8   animals.  *Id.* at ¶7, Ex. A.  Throughout 2008, there was a growing concern – fed by a series of violent

9   attacks on other UC campuses – that the safety of UCB researchers and their families were

10  increasingly at risk.  *Id.* at ¶9.  These attacks included two fire bombings in Santa Cruz on August 2,

11  2008, one aimed at a UC Santa Cruz researcher (while he was home with his family), and a second

12  which burned a vehicle belonging to another UC Santa Cruz researcher.  *Id.*

13         Given Stop Cal Vivisection's role in targeting the homes of UCB researchers, the ARWG

14  recognized the possibility that that group and/or certain of its members were involved in the unlawful

15  harassment of UCB researchers.  *Id.* at ¶8.  The ARWG sought to collect additional information

16  regarding the group and its activities.  *Id.*  Despite the anonymity of its websites, UCPD was able to

17  identify individuals who were actively involved in Stop Cal Vivisection, based in part on the

18  attendance at home demonstrations.  *Id.*  Several of these individuals were also identified as taking

19  part in the violent campaign of harassment and intimidation underway against UC faculty engaged in

20  animal research at other campuses.  *Id.*

21         In March, May and June of 2008, various UCB researchers received a series of threatening

22  and intimidating emails referencing their alleged use of animals in research.  *Id.* at ¶34.  These emails

23  culminated in a series of messages sent to a UCB researcher in June, 2008 which featured threats of

24  bodily harm aimed at the researcher.  *Id.*  This escalating series of threatening emails constituted the

25  basis for the search warrant at issue in this case.  *Id.*

26      **B.**   **Detective Kasiske Traced The Harassing And Threatening Emails Back To Long**
             **Haul.**

27

28         In March of 2008, several UCB researchers forwarded anonymous, harassing emails they

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 3 -

CASE NO. 3:09-cv-0168 JSW

DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1   had received to Detective Kasiske for investigation.  Kas. Dec. ¶35 and Ex. G.  The sender(s) of these

2   emails used false names to create email accounts and send the messages.  Kas. Dec. ¶¶35 and 36,

3   Ex. G.  Kasiske determined the messages originated from the same IP address (208.106.103.213).  *Id.*

4   He then obtained a court order requiring the service provider, Sonic.net,  to identify the name of the

5   subscriber for the IP address 208.106.103.213.  *Id.*  On March 21, 2008, the provider identified the

6   subscriber as "Jessy Palmer," at 3124 Shattuck Avenue in Berkeley.  *Id.*  *See also* Declaration of Sara

7   Ellis ("Ellis Dec.") ¶5, Ex. A (8/4/10 Depo. of Jesse Palmer ("*Palmer I*") at 137:6-140:2).  Kasiske

8   identified this as the Long Haul Infoshop, a place where animal rights activists were known to hold

9   meetings.  Kas. Dec. ¶¶35 and 36, Ex. G.

10          In May of 2008, two other UCB researchers forwarded additional harassing emails to

11   Kasiske, who determined they were sent from the same Long Haul IP address as the March, 2008

12   emails.  *Id.* at ¶38 and Ex. H.  In June of 2008, a researcher who had been one of the targets of the

13   earlier emails received additional emails that were significantly more graphic and threatening.  Kas.

14   Dec. ¶39, Ex. I and ¶40.  These June, 2008 emails called the researcher a "waste of life," referred to

15   the attacks at UCLA, and asserted that "you're next to receive that and MUCH worse you fucking

16   murderous scum."  *Id.*  The emails stated that the sender(s) knew where the researcher worked, lived,

17   shopped, her credit card number, and even what Netflix movies the researcher ordered.  *Id.*  After

18   obtaining these emails, Kasiske obtained a court order requiring Google to disclose the IP address

19   from which these emails originated.  *Id.* at ¶41, Ex. J.  Google responded, disclosing the same IP

20   address as the one used to send the March and May emails.  *Id.* at ¶42, Ex. K.  Kasiske obtained a

21   court order which required Sonic.net to identify the current subscriber for this IP address.  *Id.* at ¶43,

22   Ex. L.  On July 24, 2008, the subscriber was again identified as "Jessy Palmer," at 3124 Shattuck

23   Avenue, Berkeley, CA.  *Id.* at ¶44, Ex. M.  *See also Palmer I,* 140:4-143:2, 146:17-23.

24          **C.**       **Long Haul Provided Support and Resources to Animal Rights Activists.**

25          Long Haul had previously come to the attention of the ARWG.  *Id.* at ¶¶20-24, Exs. E and F;

26   Alb. Dec. ¶¶16-19; Zun. Dec. ¶¶17-21, Ex. A.  As part of their investigation into harassment of UCB

27   researchers, the UCPD officers monitored animal rights activists during home demonstrations.  Alb.

28   Dec. ¶16.  On at least three occasions, UCPD officers followed participants in the home

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -                                                                CASE NO. 3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1   demonstrations back to Long Haul.  Kas. Dec. ¶¶21-22, Ex. E; Alb. Dec. ¶¶17-18; Zun. Dec. ¶¶18-

2   19.  In addition, UCPD officers learned that Long Haul had hosted an event featuring a well-known

3   animal rights activist, Peter Young, in January 2008.  Kas. Dec. ¶23, Ex. F, EBPS's Response to Def.

4   USA's RFA #22-23 (Ellis Dec. ¶3, Ex. B); Long Haul's Response to Def. USA's RFA #25-26 (Ellis

5   Dec. ¶4, Ex. C).  The event followed the recent release of Young from prison, where he had served a

6   sentence for crimes relating to his animal rights activities.  *Id.*

7         UCPD officers also learned that Stop Cal Vivisection held a fundraiser at Long Haul in April

8   of 2008.  Zun. Dec. ¶21, Ex. A; Kas. Dec. ¶24; Alb. Dec. ¶20; *Palmer I,* 182:6-15.  The fundraiser

9   was held to defray the legal fees of its members who were facing criminal prosecution for their

10  alleged attacks on UC Santa Cruz researchers engaged in animal research.[1]  Zun. Dec. ¶21, Ex. A;

11  Kas. Dec. ¶24; Alb. Dec. ¶20.  UCPD officers conducted surveillance of the Long Haul fund-raiser

12  in order to obtain additional information regarding Stop Cal Vivisection's membership.  Zun. Dec.

13  ¶21; Kas. Dec. ¶24; Alb. Dec. ¶20.

14        **D.**      **Kasiske's Application For A Search Warrant.**

15        As a result of their investigations, Kasiske and other members of the ARWG believed that the

16  emails under investigation had originated from Long Haul.  Zun. Dec. ¶23; Kas. Dec. ¶45; Alb. Dec.

17  ¶26.  They believed the emails were sent from Long Haul either by a patron using one of Long

18  Haul's public access computers, or a person affiliated with Long Haul.  *Id.*  In either case, Kasiske

19  and others suspected that, in view of Long Haul's ties with Stop Cal Vivisection and other animal

20  rights extremists, a person or persons affiliated with Long Haul was complicit in the campaign of

21  email intimidation that had originated there.  Zun. Dec. ¶24; Kas. Dec. ¶¶46-47; Alb. Dec. ¶¶27-28.

22  After conferring with Sgt. Alberts, Kasiske decided to apply for a warrant to search the Long Haul

23  premises.  Kas. Dec. ¶48.

24              **1.**      **The Statement of Probable Cause.**

25        Kasiske prepared a search warrant application for all of the computers and electronic storage

26  ─────────────────────

27        [1]  Defendants have since learned that Long Haul provided Stop Cal Vivisection with a $50
    grant as a result of this fundraiser.  *See* Ellis Dec. ¶5, Ex. D (attachment to Long Haul's 2008
    taxes); *Palmer I,* 159:20-162:4.  EBPS's Response to Def. USA's RFA #19 (Ellis Dec. ¶3 Ex. B);

28  Long Haul's Response to Def. USA's RFA #24 (Ellis Dec. ¶4, Ex. C).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 5 -                                    CASE NO.  3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    devices located at Long Haul, as well as logs or other documents that would identify computer users

2    at Long Haul.  Kas. Dec. ¶49.  Prior to applying for the warrant, Kasiske reviewed Long Haul's

3    website in order to confirm its current street address and to acquaint himself with the physical

4    structure of the building.  *Id.*  In his review of the website, there was no information leading Kasiske

5    to believe there were any other tenants within the premises.[2]  *Id.*

6           On August 26, 2008, Kasiske provided the search warrant, with his affidavit and Statement of

7    Probable Cause to Judge Judith Ford.  Kas. Dec. ¶¶59-60.  The Statement of Probable Cause

8    included the following facts in support of the warrant application:

9    •       An overview of the ongoing harassment of UC researchers by animal rights activists.  Kas.

10           Dec. ¶¶50, 52 and Ex. N (Statement of Probable Cause).

11   •       A description of the emails and other harassment occurring from September, 2007 through

12           March, 2008 against UCB researchers, and steps taken to trace the origin of those emails to

13           the IP address located at 3124 Shattuck in Berkeley, which Kasiske recognized as Long

14           Haul's address.  *Id.*

15   •       A description of the June, 2008 emails including threats of bodily harm, which were again

16           traced back to the IP address located at 3124 Shattuck (Long Haul).  *Id.*

17   •       The fact that Long Haul was a resource and meeting place for radical activists, including

18           animal rights activists.  *Id.*

19          The Statement of Probable Cause also referred to the broader context of harassment and

20   intimidation of researchers at UCB and other UC campuses.  *Id.* at ¶¶50, 53 and Ex. N.  Kasiske

21   noted that for several months animal rights extremists had targeted many researchers, and that UCPD

22   had received "multiple reports of vandalism and noisy demonstrations that have taken place at the

23   private residences of the researchers" and of harassing email messages and phone calls.  *Id.*  He

24   noted the concerns arising out of fire bombings and other attacks that occurred against animal

25   researchers at UCLA and Santa Cruz.  *Id.*

26   _____

27          [2]  The photograph appearing on the website did not reflect any signage to indicate that any
     organization other than Long Haul was housed in the building.  Kas. Dec. ¶49.  *See also,*
28   Declaration of Jesse Palmer submitted in support of Plaintiff's motion ¶11, Ex. 1 (printout of
     Long Haul's website as Plaintiffs claim it existed on August 27, 2008).

1    The Statement of Probable Cause included an "Opinions and Conclusions" section, in which

2    Kasiske:

3    •    Asserted that seizure of the computers was necessary because information on the computers

4         was likely to assist in identifying the sender(s) of the subject emails, and because, due to the

5         complexity of searching the computers, the search would have to be conducted off-site.

6         Kas. Dec. ¶¶50, 55 and Ex. N.

7    •    Furnished a basis for seizure of additional materials (e.g. logs and sign-in sheets) which

8         could identify users of certain computers known to be available for public use at Long Haul.

9         *Id.*  Kasiske noted that establishments offering public computer access often have a system

10        for patrons to sign in to use the computers, and stated that such information would aid in

11        identifying the suspect(s) who sent the threatening emails.  *Id.*

12   •    Noted that a search of the computers at Long Haul could reveal information the suspect(s)

13        stored on the computers, websites the suspect(s) accessed, or other information that would

14        aid in identifying the suspect(s).  Kas. Dec. ¶¶50, 53 and Ex. N.

15        Judge Ford reviewed the warrant, the accompanying affidavit, the search warrant exhibits,

16   and the Statement of Probable Cause prepared by Kasiske before authorizing the search of the Long

17   Haul's premises.  Kas. Dec. ¶59.

18                        **2.    The Terms of the Search Warrant.**

19        The warrant identified the "places to be searched" as "The premises, structures, rooms,

20   receptacles, outbuildings, associated storage areas, and safes situated at:  The Long Haul lnfoshop,

21   3124 Shattuck Avenue, Berkeley, CA. This is a single-story brick building on the west side of

22   Shattuck Avenue. It has a red sign above the door that reads, "Long Haul lnfoshop."  *Id.* at ¶¶60, 61

23   and Ex. O.

24        The warrant identified the "property to be seized" as:

25             Any written, typed, or electronically stored documents, papers, notebooks,
              or logs containing names or other identifying information of patrons who
26             used the computers at the Long Haul Infoshop. All electronic data
              processing and storage devices, computers and computer systems including,
27             but not limited to, central processing units, external hard drives, CDs,
              DVDs, diskettes, memory cards, PDAs, and USB flash drives. Search of all

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 7 -                                    CASE NO.  3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

of the above items is for files, data, images, software, operating systems, deleted files, altered files, system configurations, drive and disk configurations, date and time, and unallocated and slack space, for evidence.

Kas. Dec. ¶¶60, 62 and Ex. O. Kasiske described the items to be seized as precisely as he could, given the nature of the computer equipment and the ability to store evidence of the threatening email messages in a variety of ways. *Id.* at ¶63.

The warrant incorporated the facts contained in the Statement of Probable Cause as facts to support the issuance of the warrant. *Id.* at ¶64. Kasiske intended that the Statement of Probable Cause support the seizure of all computers and electronic storage devices located at Long Haul. *Id.* He did not limit the items to be seized pursuant to the warrant or the Statement of Probable Cause to solely the public access computers. *Id.* Instead, he made specific mention of these computers to establish probable cause to search for any logs, sign in sheets, or other documents that would identify the users of the public access computers during the time periods when the researcher received the threatening emails. *Id.* at ¶64.

**E.** **The Warrant Team Executed the Search Warrant.**

**1.** **Assembling the Team and the Briefing Meeting.**

On the morning of August 27, 2008, Kasiske gathered the warrant team together at UCPD. *Id.* at ¶68, Ex. P. The members of the team were Kasiske, Alberts, Zuniga, MacAdam, Lisa Shaffer, and Mike Hart. *Id.* at ¶70. Lisa Shaffer was at the time a Special Agent of the FBI, assigned to its Joint Terrorism Task Force ("JTTF") and working on animal rights issues and cases for the FBI. Dec. of Lisa Shaffer ("Shaf. Dec.") ¶¶3-4. Mike Hart was at the time an Alameda County Sheriff's employee, deputized to work on the FBI's JTTF and working on animal rights issues and cases for the FBI. Dec. of Mike Hart ("Hart Dec.") ¶2. UCPD requested the assistance of Shaffer and Hart as members of the ARWG.[3] Kas. Dec. ¶70. Kasiske briefed the team before leaving to execute the warrant. *Id.* at ¶71. During this briefing, Kasiske explained where the team was going and reviewed the terms of the warrant with them. *Id.*; Alb. Dec. ¶36; Zun. Dec. ¶36; Mac. Dec. ¶¶6-9, Shaf. Dec.

---

[3] Plaintiffs' motion exaggerates the assistance of Shaffer and Hart provided by misstating their deposition testimony and discovery responses. Shaf. Dec. ¶¶29-35; Hart Dec. ¶¶13-16.

Schiff Hardin LLP
Attorneys At Law
San Francisco

¶10; Hart Dec. ¶6.  He described how the team would gain entry to the building and the scope of the warrant.  *Id.*  Kasiske gave an overview of the investigation, describing the timing and content of the threatening emails and how he had traced them back to Long Haul.  Kas. Dec. ¶71.  During the briefing meeting, the search warrant and the Statement of Probable Cause were available for team members to review.  Kas. Dec. ¶71; Alb. Dec. ¶37; Zun. Dec. ¶37; Mac. Dec. ¶10; Shaf. Dec. ¶¶10-12; Hart Dec. ¶6.

### 2.    Entering The Premises And Initial Inspection.

When the warrant team arrived at Long Haul, they found the front door locked and it appeared that Long Haul was not open for business.  Kas. Dec. ¶¶77, 78 and Ex. Q.  They observed there was a single entrance at the front of the building.[4]  *Id.*  Members of the warrant team spoke with someone who worked in the building next to Long Haul who allowed the team to come through that building and enter Long Haul through an unlocked back entrance.  *Id.* at ¶¶80, 81.

After gaining entry, the warrant team conducted a protective sweep of the premises.  *Id.* at ¶83.  MacAdam videotaped the entry into the building and the condition of the premises prior to the search.  Mac. Dec. ¶20.  The team observed a large ground floor that contained in the west end (opposite the Shattuck street entrance) a bathroom, a small kitchen area, and an area with tables and chairs.  Kas. Dec. ¶85; Alb. Dec. ¶48; Zun. Dec. ¶42; Mac. Dec. ¶21.  The walls were covered with posters and signs addressing various causes and events.  Kas. Dec. ¶¶85, 121 and 22, Exs. Z and AA; Alb. Dec. ¶48; Zun. Dec. ¶42; Mac. Dec. ¶21.  Along the south wall of the main floor were magazines, papers, and books.  Kas. Dec. ¶85; Alb. Dec. ¶48; Zun. Dec. ¶42; Mac. Dec. ¶21.  There was a small hallway leading to the front area of the building with three locked doors.  Kas. Dec. ¶¶85 and 126, Ex. EE; Alb. Dec. ¶48; Zun. Dec. ¶42; Mac. Dec. ¶21.  The front (east) of the building contained the Shattuck street entrance, a counter, and shelving displaying magazines and periodicals.  *Id.*  Behind the counter were locked cabinets.  *Id.*  There were additional, varied posters and signs on the open wall spaces in the front of the building.  *Id.*

There were two loft areas visible from the ground floor with staircases leading to them.  Kas.

---

[4]  The team did not observe any signs on the front of the building indicating the presence of any tenant other than Long Haul, nor were there multiple mailboxes suggesting multiple tenants.  Kas. Dec. ¶78; Alb. Dec. ¶43; Zun. Dec. ¶38; Mac. Dec. ¶18.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -                                                   CASE NO. 3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Dec. ¶86; Alb. Dec. ¶49; Zun. Dec. ¶43; Mac. Dec. ¶22.  The western loft had a room that housed computers with a sign on the door that read, "Internet Room."  *Id.*  The eastern loft area had a couch and long table and a room with a locked door.  Kas. Dec. ¶¶86 and 122, Ex. AA; Alb. Dec. ¶49; Zun. Dec. ¶43; Mac. Dec. ¶22.  The walls in the loft area were filled with more posters and signs.  *Id.*

### 3. The Search Of The Premises.

After the team secured the premises, they began to search for items identified in the warrant. MacAdam and Zuniga removed the locks on each of the four locked doors within the premises, videotaping the process.  Zun. Dec. ¶45; Mac. Dec. ¶24.

Kasiske focused on the search for computers and electronic storage devices.  Kas. Dec. ¶91. He searched the entire premises, locating eleven computers in the western loft room, two computers in the eastern loft room, and one computer in a room located along the ground floor hallway.  *Id.*  He coordinated the removal of these computers to a staging area on the ground floor, and then to waiting police vehicles.  *Id.* at ¶109.

In addition to searching for and seizing the computers, the warrant team searched the premises for the other items identified in the warrant, including electronic storage devices and documents containing information identifying patrons who used the Long Haul computers.  Alb. Dec. ¶¶54-57; Zun. Dec. ¶¶46, 57, 59, 60.

### a. *The Ground Floor.*

Alberts initially focused on searching the front room, which included locked cabinets.[5]  Alb. Dec. ¶54.  MacAdam removed the locks to the cabinet and Alberts searched these areas and the rest of the front room.  *Id.* at ¶¶54-55; Mac. Dec. ¶24.  Alberts did not locate any items which the warrant identified for seizure.  Alb. Dec. ¶57.

---

[5]  A small crowd had gathered in front of the building and Alberts went outside to speak with some of them.  Alb. Dec. ¶58.  Alberts and MacAdam allowed Kathryn Miller, a woman who claimed to work at Long Haul, to come inside and unlock the cabinets behind the front counter.  Alb. Dec. ¶58; Mac. Dec. ¶29; Ellis Dec. ¶8, Ex. G (11/10/10 Depo. of Kathryn Miller ("*Miller*") at 69:17-72:5, 72:17-73:12).  When Miller insisted that she read the warrant before providing keys to the warrant team, Alberts and MacAdam asked her to leave.  *Id.*  Miller came into the building a second time, but again refused to assist in unlocking the cabinets without first seeing the search warrant and again was asked to leave.  Alb. Dec. ¶59; *Miller*, 69:17-72:5, 72:17-73:12.

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 10 -                                                    CASE NO. 3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    Along the narrow hallway connecting the front and back spaces on the ground floor were

2    three small locked rooms.  Kas. Dec. ¶85 and ¶77, Ex. Q.  The team entered and searched each room.

3    *Id.* at ¶77, Ex. Q.  The westernmost room had a cardboard sign on the door, bearing the handwritten

4    words "East Bay Prisoner Support."  Kas. Dec. ¶98; Alb. Dec. ¶70; Ellis Dec. ¶9, Ex. H (9/22/10

5    Depo. of Patrick Lyons ("*Lyons*") at 54:23-55:6).  None of the warrant team participants knew

6    whether the handwritten sign referred to a slogan, a movement, an organization, or had some other

7    meaning.  Kas. Dec. ¶98; Alb. Dec. ¶70.  None of the warrant team knew what "East Bay Prisoner

8    Support" was.  Kas. Dec. ¶30; Alb. Dec. ¶33; Zun. Dec. ¶32; Mac. Dec. ¶13, Shaf. Dec. ¶27.  There

9    was no apparent indication that East Bay Prisoner Support was a distinct organization and was

10   paying rent to Long Haul for its use of this tiny room.  Kas. Dec. ¶99; Alb. Dec. ¶71; Zun. Dec. ¶53;

11   Mac. Dec. ¶27.  The warrant team believed that this room, like the other rooms along the hallway,

12   was used by Long Haul as office and/or storage space.  *Id.*  There was no apparent indication that the

13   room was being used for any publishing activities.  *Id.;* Shaffer Dec. ¶¶19, 34-35.

14       Entering this room, Shaffer encountered a pile of paperwork on the floor, a table, and a copy

15   machine.  Kas. Dec. ¶¶127 and 128, Exh. FF and GG; Ellis Dec. ¶6, Ex. E (7/28/10 Depo. of Lisa

16   Shaffer ("*Shaffer"*) at 62:22-63:2).  Shaffer looked at two envelopes to determine whether there were

17   any responsive documents.  *Shaffer*, 64:21-65:11; Shaffer Dec. ¶¶19, 34-35.  The sole items seized

18   from this room were a computer, flash drive, and miscellaneous CDs.  Kas. Dec. ¶95, 100-101 and

19   Ex. R .

20       **b.    *The Loft Areas.***

21       Following removal of the computers, Zuniga and Alberts searched the room in the eastern

22   loft area.  Alb. Dec. ¶¶60-66; Zuniga Dec. ¶¶55-60.  The small room had no sign on the door and

23   was cluttered with boxes, papers and files.  Kas. Dec. ¶123, Ex. BB; Alb. Dec. ¶63; Zuniga Dec. ¶57.

24   The room appeared to include storage space for old publications, which is what the warrant team

25   expected to see in a place self-described as a "lending library."  *Id.*  After a brief look, Alberts left the

26   room and assisted in the search elsewhere.  Alb. Dec. ¶67.  Zuniga searched the room for items listed

27   in the warrant, including a brief search of a file cabinet located just inside the door.  Zuniga Dec. ¶57.

28   The cabinet was an unorganized jumble of documents and miscellaneous items.  *Id.*  While searching

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO
- 11 -                                                    CASE NO. 3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1   through it, Zuniga came across some photographs which he briefly perused and noticed that one of

2   them appeared to contain evidence of criminal activity at a protest in Seattle.  *Id.*  At that point,

3   Zuniga consulted Shaffer because she had previously been assigned to the FBI's office in Seattle.

4   Zuniga Dec. ¶57.  She came into the room, looked at the photographs, and handed them back to

5   Zuniga.  *Id*; Shaffer Dec. ¶¶15, 33.  Believing the photographs to be irrelevant to his search, Zuniga

6   placed them off to the side and finished searching the room.  Zuniga Dec. ¶57.

7       Neither Kasiske, Zuniga, Alberts, nor any other member of the warrant team was aware that

8   the eastern loft room was used in the publication of Slingshot.  Kas. Dec. ¶106; Alb. Dec. ¶64;

9   Zuniga Dec. ¶60; Shaffer Dec. ¶26; Hart Dec. ¶15.  There was no apparent indication that this room

10  was being used for any publishing activities.  Kas. Dec. ¶¶106, 124 and 125, Exs. CC and DD; Alb.

11  Dec. ¶64; Zuniga Dec. ¶60.  The sole items seized from this room were the two computers removed

12  by Kasiske and some electronic storage devices.  Kas. Dec. ¶95, Ex. R.

13      The warrant team located a number of electronic storage devices in the western loft room,

14  including eleven computers, a portable flash drive, and various compact discs.  Kas. Dec. ¶¶92-95,

15  Ex. R.  These items were seized and inventoried by Kasiske.  *Id.*

16      Members of the team assembled the seized items in a back room on the ground floor and

17  inventoried them prior to their removal.  Kas. Dec. ¶109.  Once the team finished searching the

18  premises, MacAdam took a final video to document the condition of the premises at the conclusion

19  of the search.  Mac. Dec. ¶33.  The team took the computers and other electronic storage devices out

20  of the premises through the back door to their cars.  Kas. Dec. ¶109.  After the computers were

21  loaded into the cars, MacAdam, Shaffer, and Hart had no further involvement with the execution of

22  the warrant or the investigation into the threatening emails.  *Id.*; Shaffer Dec. ¶25; Hart Dec. ¶10.

23  Zuniga's involvement ended with his role in returning Plaintiffs' property back to them.  Zuniga Dec.

24  ¶63.

25  **F.**   **Defendant Kasiske Promptly Returned Plaintiffs' Property And Properly**
        **Limited The Scope Of The Search.**

26

27      **1.**   **The Prompt Return of Plaintiffs' Property.**

28  On September 18, 2008, Kasiske requested a court order to authorize the release of all

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 12 -                                                    CASE NO.  3:09-cv-0168 JSW

DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    property seized during the search.  Kas. Dec. ¶113.  After the order was signed later that day, Kasiske

2    called Seth Chazin, an attorney representing Long Haul.  *Id.;* EBPS's Response to Def. USA's RFA

3    #6 (Ellis Dec. ¶3, Ex. B); Long Haul's Response to Def. USA's RFA #10 (Ellis Dec. ¶4, Ex. C).  On

4    September 19, 2008, six computers from the western loft room and two computers from the eastern

5    loft room were retrieved by a representative of Long Haul.[6]  Kas. Dec. ¶113 and Ex. S.

6         On September 23, 2008, UCPD finished copying the remaining computer hard drives.  *Id.* at

7    ¶114.  Kasiske notified Mr Chazin that there was more property to retrieve.  *Id.*  On September 30,

8    2008, Kasiske released the remaining property to a Long Haul representative.  *Id.* and Ex. T.

9              **2.       The Search of the Computers.**

10        Kasiske initially requested the Silicon Valley Regional Computer Forensics Laboratory (the

11   "SVRCF Lab") to accept all computers seized during the search and conduct a forensic examination.

12   Kas. Dec. ¶115.  The SVRCF Lab stated that it could accept only a limited number of computers

13   based on workload considerations.  *Id.*  Kasiske sent the SVRCF Lab the six computers seized from

14   the western loft area.  *Id.* at ¶¶115-116, Exs. U and V.  The remaining computer hard drives and other

15   storage media were copied by UCPD personnel.  *Id.* at 120.  The SVRCF Lab returned the six

16   computers to UCPD after the hard drives were imaged.  Alb. Dec. ¶78.  The computers taken from

17   the eastern loft room and the first floor hallway room were never searched.  Kas. Dec. ¶120.

18        Kasiske provided the SVRCF Lab a list of search terms to use for the search of the six

19   western loft computers.  *Id.* at ¶¶116-117, Ex. V.  This list included the names and contact

20   information for the victims, names and contact information for suspects who had been identified in

21   previous animal rights cases; and terms used by suspects who had previously targeted researchers

22   ("vivisection", etc.).  *Id.*  The search terms submitted by UCPD and utilized by the SVRCF Lab were

23   limited in scope and calculated to locate material relating to the investigation into the threatening

24   emails.  *Id*

25        In October and November 2008, the SVRCF Lab sent two reports to Kasiske regarding its

26   search of the six computers.  *Id.* at ¶118, Exs. W and X.  One report referred to a CD that identified

27

28        [6]  The person who retrieved this Long Haul property was Chloe Watlington, one of the
three members of EBPS.  Kas. Dec. ¶113, Ex. S; *Lyons*, 16:6-13.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 13 -                                        CASE NO.  3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1   files containing Kasiske's search terms.  Kas. Dec. at ¶118, Exs. W and X.  Kasiske reviewed these

2   files and concluded they were not relevant to the investigation.  *Id.* at ¶119, Ex. Y.

## III.    ARGUMENT

### A.    Defendants Are Entitled To Summary Judgment On Plaintiffs' Second Cause Of Action Alleging Violation Of The Fourth Amendment.

#### 1.    Defendants Did Not Violate The Fourth Amendment.

##### a.    *The Search Warrant Was Supported By Probable Cause.*

Probable cause is a "flexible, common-sense standard," requiring that the facts available to

the officer would "warrant a man of reasonable caution" in the belief that incriminating evidence is

involved.  *Texas v. Brown,* 460 U.S. 730, 742 (1983).  It does not require that the belief be correct or

more likely true than false.  *U.S. v. Gourde*, 440 F.3d 1065, 1073 (9th Cir. 2006).  The probable cause

standard, in the context of a search warrant, requires an affidavit that establishes "a fair probability

that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462

U.S. 213, 238 (1983).  This standard is readily met here.

The Statement of Probable Cause sets forth in explicit detail the basis for the belief that

incriminating evidence could be found at Long Haul, including the fact that anonymous animal

rights activist(s) had sent threatening emails to UCB researchers from the IP address located at Long

Haul in March, May, and June 2008.  Kas. Dec. ¶¶50, 52-53, Ex. N.  *See, e.g., U.S. v. Perez*, 484 F.3d

735, 740 (5th Cir. 2007) (IP address gave rise to probable cause to search physical address associated

with IP address in child pornography investigation); *U.S. v. Harrison,* 566 F.3d 1254 (10th Cir.

2009); *U.S. v. Carter*, 549 F.Supp.2d 1257, 1261 (D. Nev. 2008).  Indeed, Plaintiffs apparently

concede the existence of probable cause for issuance of a warrant, and instead base their Fourth

Amendment challenge on the scope of the warrant.  (Pltffs' MPA at pp. 10-16.)

##### b.    *The Search Warrant Was Not Unconstitutionally Overbroad.*

The Fourth Amendment specifies only two matters that must be "particularly describ[ed]" in

the warrant:  "the place to be searched" and "the persons or things to be seized."  *Dalia v. U.S.,* 441

U.S. 238, 255 (1979).  "Nothing in the language of the Constitution or in this Court's decisions

interpreting that language suggests that, in addition to the [requirements set forth in the text], search

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 14 -

CASE NO.  3:09-cv-0168 JSW

DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    warrants also must include a specification of the precise manner in which they are to be executed."

2    *Dalia*, 441 U.S. at 257; *U.S. v. Mann*, 389 F.3d 869, 877 (9th Cir. 2004) ("While a search warrant

3    must describe items to be seized with particularity sufficient to prevent a general, exploratory

4    rummaging in a person's belongings, it need only be reasonably specific, rather than elaborately

5    detailed.").

6         The Ninth Circuit has identified the following factors for use in determining whether a

7    warrant is sufficiently particular:  (1) whether probable cause exists to seize all items of a particular

8    type described in the warrant; (2) whether the warrant sets out objective standards by which

9    executing officers can differentiate items subject to seizure from those which are not; and (3)

10   whether the government was able to describe the items more particularly in light of the information

11   available to it at the time the warrant was issued.  *U.S. v. Adjani*, 452 F.3d 1140, 1148 (9th Cir. 2006).

12   Each of these factors supports the validity of the warrant here.

13                   (1)       Computers and Electronic Storage Devices.

14        Defying the "common sense standard" that prevails in assessing probable cause, Plaintiffs

15   argue that Defendants should have limited their search only to those computers that were open to

16   public use in Long Haul's western loft "Internet room."  To do so would have ignored material and

17   significant evidence, resulting in a partial, possibly ineffectual search that could have compromised

18   the entire investigation.[7]  The March, May, and June 2008 emails had all originated from the same IP

19   address, physically located at the Long Haul.[8]  Kas. Dec. ¶¶36, 38, 42, 50, 52, and Ex. N.  Nothing in

20   the information available to Kasiske enabled him to differentiate among the computers located at the

---

21        [7] Plaintiffs' overbreadth argument relies on inapposite case law.  In *Millender v. Los

22   Angeles*, 620 F.3d 1016 ( 9th Cir. 2010), for example, the officers obtained a warrant to seize all
     firearms at the subject location, as well as evidence of gang activity, even though the victim

23   provided a specific description of a particular firearm used by the suspect.  Here, by contrast,
     officers did not know which computer inside Long Haul was used to threaten UCB faculty and

24   staff.

25        [8] As discussed further below, based on information developed through the ARWG's
     investigations, including Long Haul's support of and sympathy for animal rights activists,

26   Kasiske reasonably believed that a person affiliated with Long Haul could have been complicit in
     the crime under investigation.  Kas. Dec. ¶¶45-47.  It would have made no sense for him to limit

27   the search only to the "public-access" computers, and exclude other computers to which a person
     affiliated with Long Haul would have had access and which may have contained incriminating

28   evidence.

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 15 -                                             CASE NO. 3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Long Haul address. Kas. Dec. ¶¶45, 47.  Lacking any reasonable basis to eliminate any computers as potential repositories of incriminating evidence, Kasiske sought and received a warrant which by its terms authorized the search and seizure of "all computers" at Long Haul.  *Id.* at ¶¶60, 63, 64 and Ex. O.  Probable cause for the seizure of "all computers" at Long Haul was plainly established through the detailed discussion set forth in the Statement.  *Adjani*, 452 F.3d at 1140; *see also U.S. v. Krupa*, --- F.3d ---, 2011 WL 353212 *3 (9th Cir. February 7, 2011) (search of 13 computer towers and 2 laptops was supported by probable cause where defendant had control of all computers); *U.S. v. Hay*, 231 F.3d 630, 637 (9th Cir. 2000) (probable cause supported search and seizure of entire computer system).  Judge Ford concluded as much in issuing the warrant covering "all computers and computer systems," a conclusion that is entitled to "great deference."  *Gates*, 462 U.S. at 236; *U.S. v. Seybold*, 726 F.2d 502, 503 (9th Cir. 1984).

In arguing that seizure of "all computers" was overbroad, Plaintiffs point to the "Opinions and Conclusions" section of the Statement of Probable Cause, which notes that establishments with public access computers typically maintain logs or sign-in sheets identifying the public users.  Kas. Dec. ¶¶50 and 55, Ex. N.  In raising this point, Kasiske sought to broaden – not narrow – the scope of the warrant, by describing the need to search for such logs or sign-in sheets *in addition to* the search for and seizure of all computers.  *Id.* at ¶56.  Plaintiffs' argument thus disregards the bulk of the factual discussion included in Kasiske's Statement, and ignores the plain language of the warrant itself, which makes it abundantly clear that Kasiske intended to have "all computers and computer systems" seized.  *Id.* at ¶¶50, 60, 64, Ex. O and N.[9]

The warrant's language authorizing seizure of all "electronic storage devices," including external hard drives, CD's, DVD's, memory cards, USB flash drives, etc., was also sufficiently particular and supported by probable cause.  Due to the ease with which such information can be

---

[9]  Plaintiffs' suggestion to the contrary notwithstanding, there is no requirement for a warrant authorizing seizure of computers to include a search protocol addressing the examination of the computer's contents.  *U.S. v. Grubbs*, 547 U.S. 90, 98 (2006); *U.S. v. Brooks*, 427 F.3d 1246, 1251 (10th Cir. 2005) ("... this court has never required warrants to contain a particularized computer search strategy.")  Nor is a search protocol required to comply with a search warrant. *U.S. v. Khanani*, 502 F.3d 1281, 1290-91 (11th Cir. 2007); *U.S. v. Cartier*, 543 F.3d 442, 447-48 (8th Cir. 2008).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 16 -                                    CASE NO.  3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    transferred from the computer's hard drive to an external storage device, it was necessary to include

2    such storage devices within the scope of a search for electronic information that exists (or at one time

3    existed) in the computer's hard drive.  Kas. Dec. ¶67.  The inclusion of such external storage devices

4    does not render an otherwise proper search "overbroad."  *See, e.g., U.S. v. Hay*, 231 F.3d 630, 637

5    (9th Cir. 2000) (warrant was sufficiently particular in requesting seizure of entire computer system

6    because agents had no idea where pornographic images would be stored); *U.S. v. Lacy,* 119 F.3d 742,

7    746-47 (9th Cir. 1997) (same); *U.S. v. Wong*, 334 F.3d 831, 837-38 (9th Cir. 2003) (probable cause

8    supported warrant to search the computers, their components, and disks to "obtain data as it relates to

9    this case").  Given that Kasiske did not know where the threatening emails or other electronic

10   evidence linking an individual with the threatening emails would be stored, the description in the

11   warrant was as particular as he reasonably could make it.  *Adjani*, 452 F.3d at 1148-49; *Hay*, 231

12   F.3d at 637; *Lacy*, 119 F.3d at 746-747 (this type of generic classification is acceptable "when a more

13   precise description is not possible").

**2.       Documents Identifying Computer Users**

15           The warrant was also sufficiently particular with regard to documents identifying users of the

16   public-access computers.  Plaintiffs argue this description was overbroad in that it did not explicitly

17   limit the documents to the dates during which the researcher received the threatening emails.  (Pltffs'

18   MPA at pp. 12-13.)  This argument ignores the context furnished by the Statement of Probable Cause

19   and by Kasiske's pre-search briefing, which specified the time frame during which the emails were

20   sent.  Kas. Dec. ¶¶50, 71 and Ex. N; Alb. Dec. ¶36; Zun. Dec. ¶36; Mac. Dec. ¶6, ; Shaf. Dec. ¶¶10-

21   12; Hart Dec. ¶6.  The warrant team was thus aware of the relevant time frame and was able to limit

22   the scope of its search accordingly.  *See Wong*, 334 F.3d at 837-38 (the specificity of the items listed

23   in the warrant combined with the language directing officers to "obtain data as it relates to this case"

24   from the computers is sufficiently specific to focus the officer's search); *Hay*, 231 F.3d at 636-38 (the

25   warrant was not overbroad where the attachment specifically mentioned the crime of child

26   pornography and the preface to the warrant limited the scope of the search to evidence of criminal

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 17 -                                                        CASE NO.  3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

activity).[10] Moreover, Plaintiffs' focus on the lack of an explicit date range in the warrant limiting documents to be seized is nothing more than a red herring. Defendants indisputably were authorized to search for and seize documents identifying individuals who used the computers from March through June, 2008. The scope of their search would not have been any different, had this explicit limitation appeared on the face of the warrant. Plaintiffs have not and cannot identify any place searched by Defendants that reasonably could not have contained documents falling within this Spring, 2008 time frame.[11] Moreover, they cannot point to any documents outside of that time frame that were seized by the warrant team. That is because the warrant team *did not seize any documents at all.* Kas. Dec. ¶77, Ex. Q and ¶95, Ex. R. That fact demonstrates that the language of the warrant was not overbroad or unable to provide direction to Defendants in conducting their search. Because no documents were seized, Plaintiffs cannot demonstrate any injury directly attributable to this aspect of the search.[12]

### a. *The Warrant Was Properly Executed.*

(1) The Search Was Limited to the Areas Described in the Warrant.

Officers properly searched the entire Long Haul premises pursuant to the facially valid warrant. Plaintiffs argue that certain locked rooms within Long Haul should have been deemed as outside the scope of the search, in particular the locked room on the ground floor hallway bearing a handwritten sign saying "East Bay Prisoner Support." Defendants' search of this room was justified

---

[10] Unlike the cases cited by Plaintiffs, the warrant here did not authorize the search or seizure of all of Plaintiffs' business records or documents. *See U.S. v. Washington*, 797 F.2d 1461, 1472 (9th Cir. 1986); *U.S. v. Cardwell*, 680 F.2d 75, 77 (9th Cir. 1982). Rather, it focused the search on a limited class of documents, those which would identify the users of the public computers.

[11] Plaintiffs' argument addressing Zuniga's view of photographs located in the eastern loft file cabinet as evidence that the warrant was not sufficiently particular, (Pltffs' MPA at pp. 15) misapprehends both the facts and the law. Zuniga came across these photographs "in plain view" while conducting a lawful search of the file cabinet for documents described in the warrant. *U.S. v. Ewain*, 88 F.3d 689, 693 (9th Cir. 1996) (finding evidence of postal theft while legally searching for evidence of methamphetamines was authorized by plain view doctrine); *U.S. v. Jackson*, 131 F.3d 1105, 1108 (4th Cir. 1997). The photographs which Zuniga encountered fell within this "plain view" exception. His brief inspection of the photos with Shaffer did not violate the Fourth Amendment. Zuniga Dec. ¶¶57-58; Shaffer Dec. ¶¶15, 33, 35.

[12] In order to recover compensatory damages the §1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury. *Heck v. Humphrey*, 512 U.S. 477, 487 fn. 7 (1994).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 18 -

CASE NO. 3:09-cv-0168 JSW

DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    in the first instance because the officers had no way of knowing whether it contained the computer or

2    computers from which the threatening emails had originated.  Second, there was nothing which

3    placed Defendants on notice that "East Bay Prisoner Support" was an organization, that it

4    "occupied" the room, that it paid rent on it, or that it had any independent Fourth Amendment rights

5    which could have impacted the ongoing search.

6         A warrant is valid when it authorizes the search of a street address – even one with several

7    dwellings within it – if the [party] is in control of the whole premises, if the dwellings are occupied

8    in common, or if the entire property is suspect.  *U.S. v. Whitten*, 706 F.2d 1000, 1008 (9th Cir. 1983);

9    *U.S. v. Alexander*, 761 F.2d 1294, 1301 (9th Cir. 1985).  The validity of a warrant is judged on the

10   basis of the information available at the time the warrant issued.  *See Maryland v. Garrison,* 480 U.S.

11   79, 85 (1987).[13]  There is no evidence in the record that any Defendant was aware there were tenants

12   located within the Long Haul premises at the time of the warrant application.[14]  Kas. Dec. ¶16; Alb.

13   Dec. ¶12; Zun. Dec. ¶11; Mac. Dec. ¶11; Shaf. Dec. ¶¶26-27; Hart Dec. ¶11.  Nothing on Long

14   Haul's website indicated that they rented space in the building to tenants.  Kas. Dec. ¶16-17; Alb.

15   Dec. ¶12; Zun. Dec. ¶13.  The warrant should be upheld on that basis alone.  *See U.S. v. Whitney*,

16   633 F.2d 902, 908 (9th Cir. 1980); *U.S. v. Ofshe*, 817 F.2d 1508, 1514 (11th Cir. 1987) (search of

17   multi-unit building upheld where warrant authorized search of a single business.  Officers had no

18   _____

19   [13]  In *Garrison,* the police obtained a warrant for a floor of a three-level residential
building, under the mistaken belief that the floor designated in the warrant contained only one

20   apartment-that of a suspect named McWebb.  *Id.* at 81.  The police relied on an informant, an
exterior examination of the building, and an inquiry of a utility company when making this

21   determination.  *Id.*  As it turned out, there were two apartments, one of which belonged to
Garrison and which contained drugs that the police discovered during their search.  *Id.*  Analyzing

22   the validity of the warrant, the Supreme Court stated that if the officers knew or should have
known that there were two separate dwellings on the third floor, the warrant would not authorize

23   the search of the whole floor (as it would not be particularized).  *Id.* at 85.  However, the Supreme
Court found that the police investigation had produced a reasonable belief that there was only one

24   tenant.  *Id.* at 86, n. 10.  The Supreme Court thus concluded that the warrant was valid based on
the information that the officers disclosed and had a duty to disclose to the magistrate.  *Id.* at 86.

25   [14]  Plaintiffs erroneously point to the existence of locks on the four doors within the
building as evidence of multiple tenants.  In fact, there could have been any number of reasons for

26   locking interior doors, including the presence of confidential information or valuable property.
Defendants encountered locked cabinets behind the front counter, which were apparently locked

27   for reasons having nothing to do with multiple tenants, as well as the locked door to the office in
the eastern loft used by Slingshot, who was not a tenant.  Alb. Dec. ¶¶48, 54-5; Ellis Dec ¶2, Ex. A

28   (*Palmer I,* 25:8-17).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 19 -                                                                                     CASE NO.  3:09-cv-0168 JSW

DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    reason to know that the premises were subdivided into separate offices.).

2        Moreover, once the officers entered the Long Haul premises and began to search, there was

3    no indication that multiple tenants used the space within the building.[15]  Kas. Dec. ¶88; Alb. Dec.

4    ¶51-52; Zun. Dec. ¶44; Mac. Dec. ¶23.  Factors that indicate a separate residence include separate

5    access from the outside, separate doorbells, and separate mailboxes.  *See U.S. v. Ayers,* 924 F.2d

6    1468, 1480 (9th Cir. 1991); *U.S. v. Hinds,* 856 F.2d 438, 441-42 (1st Cir. 1988).  Here, EBPS shared

7    the same entrance as Long Haul.  Kas. Dec. ¶78.  There was no separate doorbell or mailbox on the

8    outside of the building.  *Id.* at ¶88.  There was no sign on the outside of the building indicating that

9    EBPS had an office within.  *Id.* at ¶¶78, 79.  The outside of the building was locked when the officers

10   entered as were all of the rooms on the inside of the building.  *Id.* at ¶¶78, 85, 86.  The only potential

11   indication that one of the rooms inside belonged to EBPS was a removable, handwritten, cardboard

12   sign tacked on the door to the room.  *Id.* at ¶98.  This factor alone cannot suffice to place the officers

13   on notice that the Long Haul premises contained a separate tenant, especially in the context of other

14   posters and signs throughout the premises.  *See U.S. v. White*, 416 F.3d 634, 639-40 (7th Cir. 2005)

15   (lacking information about the text, size, and permanence of barbershop sign in window of single

16   family residence, court could not find that sign put officers on notice of separate business in

17   premises).  Under the circumstances, the officers reasonably could not have known whether "East

18   Bay Prisoner Support" was a cause, a "project," a slogan, or something else.  There is no basis for

19   imputing knowledge to them that it was a tenant that could even arguably claim Fourth Amendment

20   rights independent of Long Haul.

21            (2)    The Search Was of Reasonable Duration And Thoroughness.

22        Plaintiffs complain that Defendants' search for documents was overbroad, in that they

23

---

24   [15]  Plaintiffs seem to want to have their cake and eat it, too, when it comes to
     characterizing the office used by Slingshot.  Plaintiffs refer to this space as a "private office,"

25   suggesting Slingshot had Fourth Amendment privacy rights of its own.  (Pltffs' MPA at pp. 16-
     17).  However, the facts disclosed in discovery demonstrate that Slingshot was part and parcel of

26   Long Haul.  Ellis Dec. ¶2, Ex. A (*Palmer I,* 29:8-30:3, 75:17-78:20).  The office used by Slingshot
     was not a "private office."  *Id.* at 78:17-20; Ellis Dec. ¶7, Ex F (9/22/10 Depo. of Max Harris

27   ("*Harris")* at 35:14-38:14.  Furthermore, if Slingshot is a separate entity from Long Haul, Long
     Haul has no standing to bring either the Fourth Amendment or PPA claims on behalf of

28   Slingshot.

1    viewed lending logs, lists of volunteers, prisoner mail, and photographs while conducting their

2    search of the premises.  (Pltffs' MPA at p. 18.)  The search was reasonable.  Officers are entitled and

3    expected to examine an object in order to determine whether or not it is one they are authorized to

4    seize.  *See U.S. v. Slocum*, 708 F.2d 587, 604 (11th Cir. 1983).  This is especially true for searches of

5    documents, which often require examination before any determination can be made as to whether

6    they fall within the scope of a warrant.  Thus, "innocuous records must be examined to determine

7    whether they fall into the category of those papers covered by the search warrant."  *U.S. v. Kufrovich*,

8    997 F.Supp. 246, 264 (D. Conn. 1997); citing *Andresen v. Maryland*, 427 U.S. 463, 482 n. 1 (1976).

9    Although care must be taken to minimize the intrusion, records searches require that many, and often

10   all, documents in the targeted location be searched because "few people keep documents of their

11   criminal transactions in a folder marked 'crime records.'"  *U.S. v. Hunter*, 13 F.Supp.2d 574, 582 (D.

12   Vt. 1998) (internal quotation marks omitted).  Agents authorized by a warrant to search a location for

13   documents containing specific information are entitled to examine all files located at the site for the

14   specified information.  *See U.S. v. Heldt*, 668 F.2d 1238, 1267 (D.C. Cir 1981).  Defendants' search

15   here readily falls within these parameters.

      (3)  The Seized Computers Were Properly Searched And Promptly
           Returned.

18     In the Statement of Probable Cause, Kasiske expressly sought authorization to remove the

19   computers and electronic storage devices off-site for forensic review.  Kas. Dec. ¶¶50, 55, 64 and Ex.

20   N.  Given the difficulty of segregating computer files containing evidence of the crime, he was

21   justified in doing so.  *See U.S. v. Hay,* 231 F.3d 630, 637 (9th Cir. 2000) (removing entire computer

22   system off-site justified by time, expertise, and controlled environment required for proper analysis);

23   *U.S. v. Tamura,* 694 F.2d 591, 596 (9th Cir. 1982).

24     UCPD imaged all hard drives and returned to Plaintiffs all seized computers and storage

25   devices within six weeks of the execution of the search warrant.  Kas. Dec. ¶¶113 and 114.  Given

26   the care and expertise required for the computer search and the workload of the SVRCF Lab, this

27   time frame was reasonable.  *Id.* at ¶114.

28     Furthermore, because the search terms submitted by the UCPD and utilized by the SVRCF

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 21 -

CASE NO.  3:09-cv-0168 JSW

DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1   Lab to search the six public access computers were targeted and calculated to locate material relating

2   to the investigation (Kas. Dec. ¶¶116-117, Ex. V), this limited search did not violate the Fourth

3   Amendment.  *See U.S. v. King*, 693 F.Supp.2d 1200, 1229 (D. Hawaii 2010) (officers limited search

4   of computer and peripheral devices to that which would produce evidence of defendant's alleged

5   crimes); *Adjani*, 452 F.3d at 1150 ("The government should not be required to trust the suspect's

6   self-labeling when executing a warrant.").  Plaintiffs have no evidence to the contrary.

> **3.     Defendants Are Entitled To Qualified Immunity With Regard To Plaintiffs' Fourth Amendment Claims.**
>
> **a.     *Plaintiffs Cannot Establish That Defendants, Or Any Of Them, Violated Their "Clearly Established" Fourth Amendment Rights Under The Specific Circumstances Alleged Here.***

11          As established above, Plaintiffs cannot prove that Defendants violated their Fourth

12   Amendment rights, as alleged.  As a practical matter, however, this Court need not reach that

13   question, because it is abundantly clear that Plaintiffs cannot meet the more demanding standard –

14   arising out of Defendants' assertion of qualified immunity – requiring Plaintiffs to prove that

15   Defendants violated "clearly established" Fourth Amendment rights under the circumstances

16   presented here.

17          "The doctrine of qualified immunity protects government officials from liability for civil

18   damages insofar as their conduct does not violate clearly established statutory or constitutional

19   rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, ---,

20   129 S. Ct. 808, 815 (2009) (internal quotation marks and citation omitted).  "The protection of

21   qualified immunity applies regardless of whether the government official's error 'is a mistake of

22   law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Id.* (citation

23   omitted).  Qualified immunity protects government officials from their exercise of poor judgment,

24   and fails to protect only those who are "plainly incompetent or those who knowingly violate the

25   law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

26          In order to resolve a public official's claims of qualified immunity, a court must determine

27   whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

28   *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  "The relevant, dispositive inquiry in determining

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 22 -

CASE NO. 3:09-cv-0168 JSW

DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1  whether a right is clearly established is whether it would be clear to a reasonable officer that his

2  conduct was unlawful in the situation he confronted." *Saucier,* 533 U.S. at 202.  In other words,

3  "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful,

4  summary judgment based on qualified immunity is appropriate." *Id.*; *see also Devereaux v.*

5  *Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (to overcome qualified immunity, plaintiff must

6  demonstrate the rights he asserts "were already delineated with sufficient clarity to make a

7  reasonable [public official] in the defendant's circumstances aware that what he was doing

8  violated the right.")

9       In order to overcome Defendants' assertion of qualified immunity here, Plaintiffs would

10  have to demonstrate, at a minimum,  that it was "clearly established" under existing case law at

11  the time that (1) the search warrant was unconstitutionally overbroad on its face; (2) their search

12  of the Long Haul premises should not have included the locked westernmost room on the ground

13  floor; and (3) there was no probable cause to search for or seize computers and storage devices

14  other than the pubic access computers and storage devices in the western loft area.  Plaintiffs have

15  not and cannot cite case law existing at the time of the search "clearly establishing" any violation

16  of Plaintiffs' Fourth Amendment rights under the circumstances presented here.[16]

17       In the Fourth Amendment context, qualified immunity extends to officers obtaining a

18  warrant where they have a reasonable belief that their application is supported by probable cause;

19  and to officers executing the warrant, where they reasonably rely upon the warrant in conducting

20  the search.  The Supreme Court has recognized that it is inevitable that law enforcement officials

21  will in some cases reasonably but mistakenly conclude that probable cause is present.  "[I]n such

22  cases those officials ... should not be held personally liable." *Rodis v. City and County of San*

23  *Francisco*, 558 F.3d 964, 970-71 (9th Cir. 2009) (internal citations and quotation marks omitted;

24  alterations in original).  Officers lose their shield of qualified immunity "[o]nly where the warrant

25  application is so lacking in indicia of probable cause as to render official belief in its existence

26

27      [16] Qualified immunity must be determined, not only with reference to existing "established
28  law," but also with reference to "the information [the defendants] possessed." *Baker v. Racansky*,
887 F.2d 183, 187 (9th Cir. 1989) (internal quotations omitted).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 23 -                                    CASE NO.  3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

unreasonable." *Malley v. Briggs,* 475 U.S. 335, 344-45 (1986) (citing *U.S. v. Leon,* 468 U.S. 897, 923 (1984)).  The inquiry is  "whether a reasonably well-trained officer in [defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley,* 475 U.S. at 345.  There is no basis for reaching any such conclusion with regard to Kasiske's and Alberts' actions here.  *See Johnson v. Walton,* 558 F.3d 1106, 1111 (9th Cir. 2009) (finding officer's belief reasonable that she had probable cause to apply for search warrant and granting her qualified immunity); *KRL v. Estate of Moore*, 512 F.3d 1184, 1190 (9th Cir. 2008).  Further, the additional members of the warrant team are entitled to qualified immunity because their reliance on the warrant was objectively reasonable.  *Marks v. Clarke,* 102 F.3d 1012, 1028-30 (9th Cir. 1996) (citing *Leon,* 468 U.S. at 920-21); *Barlow v. Ground,* 943 F.2d 1132, 1139 (9th Cir. 1991) ("A  police officer generally has qualified immunity for conducting an unconstitutional search if he is acting on the basis of a facially valid warrant."); s*ee also Maryland v. Garrison,* 480 U.S. 79, 88 (1987) (officer's reasonable failure to appreciate that a facially valid warrant was overbroad when conducting a search created no Fourth Amendment violation).  Zuniga and MacAdam, reasonably relied upon the facially valid warrant, and are entitled to immunity.  Zun. Dec. ¶¶35, 37, 62; Mac. Dec. ¶¶4, 10, 35.  Similarly, Shaffer and Hart's assistance was minimal and they had a reasonable basis for their belief that their participation did not violate the Fourth Amendment.  Shaffer Dec. ¶¶4-27; Hart Dec. ¶¶3-11.  For example, neither Shaffer nor Hart searched or seized any documents or computers, but both assisted in the carrying out of seized items.  Shaf. Dec. ¶¶13-20; Hart Dec. ¶¶7-10.

As for the execution of the warrant, including the search of the westernmost room on the ground floor and the seizure and subsequent search of computers other than those in the western loft area, Plaintiffs cannot carry their burden of showing Defendants' search of the premises breached a clearly established Fourth Amendment right.  In fact, Ninth Circuit precedent permitted the search of the entire premises under the well-established rule applicable when the entire property was suspect or under the control of the suspects.  *U.S. v. Gilman*, 684 F.2d 616, 618 (9th Cir. 1982); *U.S. v. Whitten*, 706 F.2d 1000, 1008 (9th Cir. 1983); *U.S. v. Alexander*, 761 F.2d 1294, 1301 (9th Cir. 1985).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO
- 24 -
CASE NO. 3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Therefore, the motion should be granted on qualified immunity grounds as to each of the Individual Defendants.

### 4. Plaintiffs Lack Any Basis For Asserting Their Fourth Amendment Claims Against Defendants In Their Official Capacities.

Plaintiffs' claims against the individual University Defendants in their official capacities are limited to claims for prospective injunctive relief. *Doe v. Lawrence Livermore Nat'l Lab*., 131 F.3d 836, 840 (9th Cir. 1997) ("[T]he Eleventh Amendment allows only prospective injunctive relief to prevent an ongoing violation of federal law."). Because a suit against an official in his or her official capacity is a suit against the state, a practice, policy or procedure of the state must be at issue in a claim for official capacity injunctive relief. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Plaintiffs have not and cannot identify any practice or policy of the UCPD which resulted in the claimed violation of the Fourth Amendment. Further, Plaintiffs cannot demonstrate any continuing or imminent constitutional violation which could support any claim for prospective injunctive relief. Accordingly, Plaintiffs' official capacity claims against the University Defendants are barred by the Eleventh Amendment.

Plaintiffs' claims for injunctive relief are also defective because, as established above, they are unable to prove any violation of their Fourth Amendment rights. In addition, in order to obtain injunctive relief, Plaintiffs must demonstrate "the basic requisites of the issuance of equitable relief in these circumstances – the likelihood of substantial and immediate irreparable injury, and the inadequacy of remedies at law." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101-03 (1983); *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994). Plaintiffs must demonstrate that a "credible threat" exists that they will again be subject to the specific injury for which they seek injunctive relief. *Kolender v. Lawson*, 461 U.S. 352, 355 n.3 (1983). A reasonable showing of a "sufficient likelihood" that the plaintiff will be injured again is necessary. *Lyons,* 461 U.S. at 108, 111. The "mere physical or theoretical possibility" of a challenged action again affecting the plaintiff is not sufficient. *Murphy v. Hunt,* 455 U.S. 478, 482 (1982). Here, neither EBPS nor Long Haul can demonstrate any probability they will be injured again based on an improper search and seizure of their property. Plaintiffs do not qualify for injunctive relief because they are unable to show that the

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 25 -                                    CASE NO. 3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1   practices to which they object are likely to be repeated *as to them*. *Sample v. Johnson,* 771 F.2d

2   1335, 1339 (9th Cir. 1985).  Finally, Plaintiffs have failed to demonstrate they lack an adequate

3   remedy at law for the return of the copies of the seized computers which remain in custody.

4   California law provides adequate remedies for the return of any seized property, including a motion

5   under Cal. Penal Code §1536.  *See City of West Covina v. Perkins,* 525 U.S. 234, 240-41 (1999).

6   **B.      Defendants Are Entitled To Summary Judgment On Plaintiffs' Third Cause Of**
        **Action For Violation Of The Privacy Protection Act.**

7

8       Subject to certain exceptions, the Privacy Protection Act ("PPA") makes the search or seizure

9   of certain materials unlawful if: (a) the materials are "work product materials" prepared, produced,

10  authored, or created "in anticipation of communicating such materials to the public," 42 U.S.C.

11  §2000aa-7(b)(1); (b) the materials include "mental impressions, conclusions, or theories" of its

12  creator, §2000aa-7(b)(3); and (c) the materials are possessed for the purpose of communicating the

13  material to the public by a person "reasonably believed to have a purpose to disseminate to the

14  public" some form of "public communication," §§2000aa-7(b)(3), 2000aa(a).  Alternatively, the PPA

15  applies when the materials are: (a) "documentary materials" that contain "information," §2000aa-

16  7(a), and (b) the materials are possessed by a person "in connection with a purpose to disseminate to

17  the public" some form of "public communication."  §§2000aa(b), 2000aa-7(a).

18      Here, Plaintiffs have no claim under the PPA, because Defendants lacked any knowledge or

19  belief that either of them was engaged in publishing activities at the Long Haul premises.  Second,

20  even if Defendants knew of such activities, there would still be no liability under the PPA, because

21  their conduct falls within multiple exceptions set forth in the statute.  Third, each of the individual

22  University Defendants have an additional defense, based on their reasonable, good faith belief in the

23  lawfulness of their actions.

24          **1.      Defendants Lacked Any Knowledge Or Belief That Plaintiffs Engaged In**
                  **Publishing Activities At The Shattuck Street Premises.**

25

26      The PPA prohibits searches and seizures only of those protected materials in the possession

27  of a person reasonably believed to be engaged in publishing activities.  *See* 42 U.S.C. §2000aa(a).

28  At most, certain Defendants reasonably believed that, as an "infoshop," Long Haul was engaged in

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 26 -

CASE NO. 3:09-cv-0168 JSW

DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1   the lending, sale, or distribution of books, 'zines, or newspapers.  Kas. Dec. ¶97; Alb. Dec. ¶56.

2   They did not believe that Long Haul was engaged in the production or publishing of any such

3   materials.  Kas. Dec. ¶89; Alb. Dec. ¶53; Zun. Dec. ¶49; Mac. Dec. ¶32.  Specifically, Defendants

4   lacked any knowledge or belief that the computers seized from the eastern loft office were used in

5   publishing Slingshot, or in any other publishing activity.  Kas. Dec. ¶106; Alb. Dec. ¶64; Zun. Dec.

6   ¶55; Mac. Dec. ¶26.

7          Plaintiffs cite various "facts" seeking to demonstrate that Defendants had the requisite

8   knowledge of publishing activities.  They also cite additional facts, which, they contend, Defendants

9   "could have" known about, had they investigated further.[17]  These latter facts are irrelevant to the

10  assessment of PPA liability.[18]  Defendants were unaware of any publishing activities at Long Haul.

11  Kas. Dec. ¶89; Alb. Dec. ¶53; Zun. Dec. ¶49; Mac. Dec. ¶32, Shaf. Dec. ¶¶26-27; Hart Dec. ¶¶11.

12  Their belief that no publishing was taking place was objectively reasonable in light of the facts they

13  knew at the time.  Accordingly, they cannot be liable for violating the PPA.  *See Teichberg v. Smith*,

14  734 F.Supp.2d 744, --- (D. Minn. 2010) (Where no officers testified to knowledge that plaintiff was a

15  journalist, no violation of the PPA occurred because the officers did not knowingly seize

16  documentary evidence in the possession of one with a purpose to disseminate it to the public);

17  *Whalen v. Langfellow,* 731 F.Supp.2d 868, 885 (D. Minn. 2010).

18                          **a.     *Slingshot.***

19         Plaintiffs are unable to cite facts demonstrating that Defendants were aware (or should have

20  been aware, in light of the facts known at the time) of Long Haul's publication of Slingshot from

21  3124 Shattuck.

22         <u>Text in Slingshot newspapers</u>:  Plaintiffs inaccurately assert that every issue of Slingshot

23

24         [17]  For example, Plaintiffs suggest Defendants "could have searched for EBPS on the
     Internet and would have found the group's Myspace page."  (Pltffs'MPA at p. 21.)

25

26         [18]  The PPA does not impose an obligation on law enforcement officials to undertake an
     investigation into whether or not PPA-protected materials might be present at a proposed search
27   location.  Rather, the statute simply creates an objective standard for determining whether, *in light
     of the facts known to the officer at the time*, the officer "reasonably believed" the person
28   possessing the materials was engaged in publishing activities.  *Steve Jackson Games, Inc. v. U.S.
     Secret Service,* 816 F.Supp. 432, 440 (W.D. Tex. 1993).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                                    - 27 -                      CASE NO.  3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    since 1994 "says that it is published from that Shattuck Avenue address."[19]  Even if this were true, it

2    is irrelevant, since no Defendant recalls ever reading such a statement, nor do they recall reading the

3    actual statement which is the apparent basis for Plaintiffs' characterization.  Kas. Dec. ¶28; Alb. Dec.

4    ¶32; Zun. Dec. ¶27; Mac. Dec. ¶15.

5         Text on Long Haul website:  Plaintiffs point to text and a link appearing at the bottom of one

6    of the site's multiple pages, indicating that Slingshot was among the "individual collectives at the

7    Long Haul."  This statement says nothing about publication of Slingshot at 3124 Shattuck.

8    Moreover, no Defendant recalls reviewing this statement.  Kas. Dec. ¶28; Alb. Dec. ¶32; Zun. Dec.

9    ¶27; Mac. Dec. ¶15.  Kasiske, Zuniga, and Alberts each reviewed portions of the Long Haul site, but

10   none recall viewing the page containing the link to Slingshot.  Kas. Dec. ¶26-29; Alb. Dec. ¶13; Zun.

11   Dec. ¶14.

12        Slingshot "banner" above the eastern loft space:  The "banner" was among dozens of signs

13   and posters that blanketed the interior wall spaces at Long Haul.  Kas. Dec. ¶¶84and 122, Ex. AA;

14   Alb. Dec. ¶50; Zun. Dec. ¶47; Mac. Dec. ¶25.  None of the Defendants noticed this particular

15   "banner" at the time of the raid.  Kas. Dec. ¶104; Alb. Dec. ¶50; Zun. Dec. ¶47; Mac. Dec. ¶25.

16   Moreover, there was nothing about the banner signifying that Slingshot was based in the eastern loft

17   room, or that it engaged in publishing activities there.

18        Issues of Slingshot in news rack in front room:  Plaintiffs contend there were a number of

19   issues of Slingshot in the front room news rack.[20]  Even if true, this would be entirely consistent with

20   Defendants' understanding that Long Haul was an "infoshop" that sold and distributed newspapers

21   and zines.  Kas. Dec. ¶14; Alb. Dec. ¶9; Zun. Dec. ¶10; Mac. Dec. ¶12.  It did nothing to alert

22   Defendants to any on-site publication of Slingshot.  Kas. Dec. ¶106; Alb. Dec. ¶64; Zun. Dec. ¶60;

23   Mac. Dec. ¶26.

---

24        [19]  Plaintiffs have refrained from putting any of these issues into evidence.  In fact, the
25   Autumn, 2008 issue of Slingshot includes text stating "Slingshot Newspaper" in bold large type,
     next line: "Sponsored by Long Haul": next line "3124 Shattuck Avenue, Berkeley, CA  94705."
26   Ellis Dec.¶10, Ex. I. Far from "saying it is published" from the Shattuck address, this can
     reasonably be read as simply stating that Slingshot's "sponsor," Long Haul, is located at the
27   Shattuck address.

28        [20]  Defendants object to Ex. 16 (photo of news rack) to the Palmer Dec. as lacking
     foundation.  The photo was taken many days after the August 27, 2008 search. Ellis Dec. ¶11.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 28 -    CASE NO.  3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Slingshot's webpage:  No Defendant recalls ever viewing this webpage, with the exception of Zuniga.  Kas. Dec. ¶26; Alb. Dec. ¶32; Mac. Dec. ¶15.  Zuniga testified that he saw the webpage on or before February 19, 2008, more than six months before the search of Long Haul.  Zun. Dec. ¶27.  According to Plaintiffs' evidence, the webpage stated in 2008 that Slingshot "is an all volunteer, non-profit, tax exempt project of the Long Haul."  Zuniga commented in an email to Alberts that "On their home page they claim an affiliation with the Long Haul on 3124 Shattuck Avenue here in Berkeley."  Zun. Dec. ¶29.  Zuniga does not recall seeing or taking note of anything on the page that suggested to him that Slingshot was published from 3124 Shattuck, nor does he recall being aware of an "affiliation" between Long Haul and Slingshot six months later, when Long Haul was searched.  *Id.* at ¶30.

### b.  *EBPS.*

Plaintiffs cite no facts demonstrating Defendants were aware (or should have been aware, in light of the facts known at the time) of EBPS engaging in any publishing activities at Long Haul at the time of the search.

The sole fact Plaintiffs point to is a cryptic reference which allegedly appeared on Long Haul's website in August 2008, which simply advertises the "East Bay Prisoner Support Night" and briefly describes EBPS as a "prison abolitionist project formed by members of the Anarchist Black Cross, Prison Activist Resource Center and Prison Literature Project."  Palmer Dec. ¶11, Ex. 1.  There is nothing here even suggesting that EBPS maintained an office at Long Haul, and certainly nothing suggesting EBPS published anything from Long Haul.  No Defendant was aware that EBPS maintained an office at Long Haul, that it engaged in publishing activities generally, or that it published anything from Long Haul.  Kas. Dec. ¶99; Alb. Dec. ¶71; Zun. Dec. ¶53; Mac. Dec. ¶27, Shaf. Dec. ¶27, Hart Dec. ¶11.

EBPS Was Not Engaged In Publishing.  More fundamentally, regardless of the state of Defendants' knowledge, EBPS cannot assert a PPA claim, because in fact it was not engaged in any publishing activities as defined by the PPA.  EBPS is a very small, very loosely run "organization."[21]

_____

[21]  EBPS has no formal structure or legal identity.  It is comprised of three volunteers who created it in January 2008.  *Lyons*, 11:13-15, 16:6-13; 21:9-21, 22:5-21.  It is not incorporated,

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 29 -                                    CASE NO. 3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

EBPS asserts that it engages in letter writing to individual prisoners, and that it sends out literature (which it apparently obtains from third parties) to various individuals and groups on its mailing list. Lyons Dec. ¶¶3, 4.  Defendants are aware of no evidence that EBPS publishes any "newspaper, book, broadcast, or other similar form of public communication."  §2000aa-7(a), (b).

> ### 2.   Defendants' Conduct Falls Within The Criminal Suspect  Exception Created By The PPA.

Even if Plaintiffs could establish Defendants knowingly seized computers containing PPA-protected materials – which they cannot – Defendants would remain entitled to summary judgment, because their conduct falls within the express criminal suspect exception set forth in the PPA.

The PPA expressly exempts from its requirements any search or seizure of protected materials where "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate."  §2000aa(a)(1), 2000aa(b)(1).  Where applicable, this "criminal suspect exception" furnishes a complete defense to an alleged PPA violation.  *See, e.g.*, *S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553 (6th Cir. 2007); *Berglund v. City of Maplewood*, 173 F.Supp.2d 935 (D. Minn.2001), *aff'd* 50 Fed.Appx. 805, 2002 WL 31609767, *cert.denied*, 539 U.S. 965.

The criminal suspect exception is clearly applicable here.  Defendants had ample cause to believe that a person affiliated with Long Haul was complicit in sending the threatening emails.  Kas. Dec. ¶¶45-47, 50, 52-55, 75 and Ex. N.  Defendants had traced these emails back to the Long Haul premises.  *Id.* at ¶¶35-45, 50, 52-55 and Ex. N.  They were aware from their investigation that Long Haul was actively involved in animal rights activities in Berkeley, and that it supported animal rights activists who were harassing UCB researchers.  *Id.* at ¶¶20-24.  Based on these facts, Defendants did not view Long Haul as an "innocent third party," but instead reasonably and prudently viewed individuals affiliated with Long Haul as criminal suspects.[22]  Defendants were not obliged by the

---

does not file taxes, and does not have a bank account.  *Id.*  The group would meet at most weekly and sometimes a month would go by between meetings.  *Id.* at 17:2-8.

[22]  Defendants recognized that others who were not affiliated with Long Haul may also have been responsible for sending the threatening emails from the Long Haul premises, including patrons of Long Haul who had access to computers in the "public access" room at Long Haul. Kas. Dec. ¶¶45-47, 75.  They were not so imprudent, though, to assume that the threatening emails

PPA to forego a search warrant and instead serve a subpoena on individuals for whom there was probable cause to suspect were complicit in the very crime under investigation. Under these circumstances, the suspect exception to the PPA clearly applies. *See, e.g., DePugh v. Sutton*, 917 F.Supp. 690, 696 (W.D. Mo. 1996) ("The P.P.A. clearly allows the government to depart from the requirements of the Act in those instances in which the person suspected of a crime is in possession of documents related to the crime.")[23]

The criminal suspect exception extends to seizure of computers containing PPA-protected material commingled with evidence of a crime. *Guest v. Leis*, 255 F.3d 325 (6th Cir. 2001). In *Guest*, the Sixth Circuit addressed claims arising out of the seizures of two electronic bulletin board servers suspected of housing evidence and contraband relating to obscenity, child pornography, and other crimes. The Sixth Circuit noted that "when police execute a search warrant for documents on a computer, it will often be difficult or impossible (particularly without the cooperation of the owner) to separate the offending materials from other 'innocent' material on the computer" at the site of the search. *Id.* at 341-42. Given these pragmatic concerns, the court refused to find PPA-liability for incidental seizures; to construe the PPA otherwise would "prevent police in many cases from seizing evidence located on a computer." *Id.* at 342. Instead, the court held that "when protected materials are commingled on a criminal suspect's computer with criminal evidence that is unprotected by the act, we will not find liability under the PPA for seizure of the PPA-protected materials." *Id.* The same is true here. *See also U.S. v. Hunter*, 13 F.Supp.2d 574, 582 (D. Vt. 1998) (concluding that materials for weekly legal newsletter published by the defendant from his law office "relate" to the defendant's alleged involvement in his client's drug crimes when the former was inadvertently seized in a search for evidence of the latter).

---

must have been sent by an unaffiliated patron. Indeed, such an assumption would have unreasonably ignored the possibility the emails originated from other computers on the premises sharing the same IP address, and would have disregarded the substantial evidence linking Long Haul with animal rights activists. Kas. Dec.¶¶20-24, 35-45, 50, 52-55 and Ex. N.

[23] For similar reasons, Defendants' conduct also falls within another PPA exception which applies where there is reason to believe that service of a subpoena "would result in the destruction, alteration, or concealment" of "documentary materials" protected under the PPA. 42 U.S.C.A. §2000aa(b)(3). Clearly, Defendants' reasonable suspicions regarding complicity on the part of a person or persons affiliated with Long Haul suffice to trigger this exception as well.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 31 -                                                    CASE NO. 3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

3. **Plaintiffs' Claims Against The University Defendants Are Barred By The Good Faith Defense Available Under The PPA.**

As a separate, additional, and complete defense to Plaintiffs' PPA claims, each of the individual University Defendants is entitled to the statutory good faith defense provided by the PPA. Under the statute, a damages action may be pursued against an individual state employee where, as here, the state has not waived its sovereign immunity. 42 U.S.C. §2000aa-6(a)(1). However, such claims against individual employees are subject to the PPA's "good faith defense," which provides a complete defense to liability where the individual "had a reasonable good faith belief in the lawfulness of his conduct." 42 U.S.C. §2000aa-6(b).

The good faith defense bars Plaintiffs' claims. First, with regard to the criminal suspect exception, even if – notwithstanding the ample facts supporting a finding of probable cause – the court were to conclude there was insufficient probable cause to suspect a person affiliated with Long Haul was complicit in the electronic stalking, the University Defendants would still have no PPA liability, because they each had a good faith, reasonable belief that probable cause existed. Kas. Dec. ¶¶50, 52, 112 and Ex. N; Alb. Dec. ¶77; Zun. Dec. ¶62; Mac. Dec. ¶35.

Additionally, each University Defendant had a reasonable, good faith belief that Long Haul's activities as an "infoshop" included lending and sale of books, zines, and newspapers, but did not extend to any publishing activities occurring at 3124 Shattuck. Kas. Dec. ¶¶89, 97; Alb. Dec. ¶¶53, 56; Zun. Dec. ¶49; Mac. Dec. ¶32. This good faith belief furnishes a complete defense.

C. **Defendants Are Entitled To Summary Judgment On Plaintiff's Fourth Cause Of Action Seeking Declaratory Relief.**

Plaintiffs' complaint includes a claim for declaratory relief under 28 U.S.C. §2201, *et seq.* Because the Court dismissed this claim against Shaffer and Hart by order dated November 30, 2009 [Dkt. 69, p. 17], Plaintiffs' claim for declaratory relief is operative against defendants Alberts, Kasiske, MacAdam, and Zuniga only. Because Plaintiffs' claims for alleged constitutional violations fail for the reasons described above, their declaratory relief claims also fail. *See*, *e.g.*, *Carr HUML Investors, LLC v. Arizona*, 2007 WL 4403981, *18 (D. Ariz. 2007). 28 U.S.C. §2201 does not provide Plaintiffs with an independent claim for relief against any defendant. *Dong v. Chertoff*, 513

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 32 -

CASE NO. 3:09-cv-0168 JSW

DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    F.Supp.2d 1158, 1160 (N.D. Cal. 2007) (citations omitted).

2    **IV.    EVIDENTIARY OBJECTIONS**

3         Defendants object to and move to strike evidence offered in support of Plaintiffs' Motion for

4    Summary Judgment.[24]  Defendants further object to the portions of Plaintiffs' motion that cite to or

5    discuss this inadmissible evidence.

6         **A.    Lacks Authentication (Fed. Rule of Evid. 901) and Incomplete Document (Fed.
            Rule of Evid. 106)**

7

8         Defendants object to the following evidence on the grounds that it lacks authentication as

9    required under Fed. Rule of Evid. 901:[25]  (1) Zimmerman Dec. Ex. 27; (2) Palmer Dec. Ex. 1-16;

10   and, Lyons Dec. Ex. 1-3.  Defendants object to the following evidence on the grounds that Plaintiffs

11   have produced an incomplete document:  (1) Zimmerman Dec. ¶20 Ex. 19; and, (2) Zimmerman

12   Dec. ¶26 Ex. 25.  Additionally, defendants object that Exhibit 3 to the Declaration of Jesse Palmer

13   was not attached to Plaintiffs' filing.

14        **B.    Hearsay (Fed. Rule of Evid. 802)**

15        Defendants object to the following evidence on the grounds that it contains inadmissible

16   hearsay pursuant to Fed. Rule of Evid. 802:  (1) Zimmerman Dec. ¶6, Ex. 5 (*Palmer II Depo.*) at

17   313:18-22, 314:8-12, 314:18-20, 314:23-315:2, 315:18-20, and 316:21-24; (2) Zimmerman Dec.

18   ¶20, Ex. 19; (3) Palmer Dec. 2:25-27; and, (4) Miller Dec. 2:4-5.

19        **C.    Lacks Foundation (Fed. Rules of Evid. 602 and 701)**

20        Defendants object to the following evidence on the grounds that it lacks foundation pursuant

21   to Fed. Rules of Evid. 602 (personal knowledge) and/or 701 (lay opinion):  (1) Zimmerman Dec. ¶5,

22   Ex. 4 (*Palmer I Depo.*) at 25:18-26:3; (2) Zimmerman Dec. ¶6, Ex. 5 (*Palmer II Depo.*) at 293:12-

23   15, 293:16-19, 293:6-9, 297:17-24, 313:18-22, 314:8-12, 314:18-20, 314:23-315:2, 315:5-8,

---

24        [24] Plaintiffs' supporting declarations are replete with mischaracterizations of the cited
25   testimony, incorrect citations, and inadmissible evidence.  However, for the ease of the Court and
     for the sake of brevity, Defendants have listed only the most egregious violations of the Federal
26   Rules of Evidence and mischaracterizations of testimony here.  Defendants reserve the right to
     address additional objections in later briefing or hearings.

27        [25] The Ninth Circuit has "repeatedly held that unauthenticated documents cannot be
28   considered in a motion for summary judgment."  *Orr v. Bank of America, NT & SA,* 285 F.3d
     764, 773 (9th Cir. 2002) (citations omitted).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 33 -                                              CASE NO.  3:09-cv-0168 JSW
DEFENDANTS' NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT; JOINT MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1    315:18-20, 316:21-24, 325:11-14, 377:24-378:3, and 381:22-382:1; (3) Zimmerman Dec. ¶12,

2    Ex. 11 (*Lyons Depo.*) at 85:10-12, 86:1-6, 86:14-21, and 89:13-21; (4) Zimmerman Dec. ¶19, Ex. 18

3    (*Harris Depo.*) at 73:24-74:3; (5) Zimmerman Dec. ¶20, Ex. 19; (6) Palmer Dec. 2:12, 2:17-19,

4    2:22-24, 2:25-27, 3:3-9, 3:18-20, 5:4-6, 5:18-20, 5:24-25, 6:3-5, 6:10-12, 6:26-27, and 7:10-12; (7)

5    Lyons Dec. 2:5-13, 2:14-15 and 2:17-19; and, (8) Miller Dec. 2:4-5, 2:18-22, 2:25-26, and 3:2-5.

6          D.    **Mischaracterizes Cited Testimony or Document**

7          Defendants object to the following evidence on the grounds that the declarant has

8    mischaracterized the cited deposition testimony or document:  (1) Zimmerman Dec. ¶¶5(h), 5(i),

9    6(g), 6(l), 7(h), 7(k), 7(p) , 7(t), 7(v), 7(cc), 8(d), 8(g), 8(h), 8(l), 8(q), 9(i), 9(n), 11(a), 12(e), 12(g),

10   12(i), 12(j), 13(e), 13(k), 13(l), 13(m), 13(o), 13(p), 16(b), 17(b), 27(a), 29(a), and 30(a); and

11   (2) Palmer Dec. ¶11.

12   **V.    CONCLUSION**

13         For the foregoing reasons, the University Defendants and the Federal Defendants each

14   respectively request this Court to enter summary judgment in their favor on each claim asserted

15   against them by Plaintiffs Long Haul and EBPS, respectively and to deny Plaintiffs' motion for

16   summary judgment in its entirety.

17   Dated:  February 14, 2011              SCHIFF HARDIN LLP

18

19                                         By:____*/s/ William J. Carroll*_____
                                               William J. Carroll
20                                         Attorneys for Defendants
                                           MITCHELL CELAYA, KAREN ALBERTS,
21                                         WILLIAM KASISKE, WADE MACADAM and
                                           TIMOTHY J. ZUNIGA

22   Dated:  February 14, 2011              MELINDA HAAG
                                           United States Attorney
23

24                                         By:____*/s/ Jonathan U. Lee*_____
                                               Jonathan U. Lee
25                                             Assistant United States Attorney
                                           Attorneys for the FEDERAL DEFENDANTS
26   SF\9971485.1

27

28

- 34 -                                      CASE NO.  3:09-cv-0168 JSW