# EXHIBIT G

```
 1                  UNITED STATES DISTRICT COURT
 2                 NORTHERN DISTRICT OF CALIFORNIA
 3                      SAN FRANCISCO DIVISION
 4
 5   LONG HAUL, INC. and EAST BAY        )
     PRISONER SUPPORT,                   )
 6                                       )
                         Plaintiffs,     )
 7                                       )
          v.                             )   No. C 09-00168-JSW
 8                                       )
     UNITED STATES OF AMERICA; MIGUEL    )
 9   CELAYA; KAREN ALBERTS; WILLIAM      )
     KASISKE; WADE MacADAM; TIMOTHY      )
10   ZUNIGA; MIKE HART; LISA SHAFFER;    )
     and DOES 1 - 25,                    )
11                                       )
                         Defendants.     )
12   _____)
13
14
15
16
17        DEPOSITION OF KATHRYN MILLER, taken on behalf
     of Defendants, at One Market Street, 32nd Floor, San
18   Francisco, California, commencing at 1:20 p.m.,
     Wednesday, November 10, 2010, before Donna J. Blum,
19   Certified Shorthand Reporter, No. 11133.
20
21
22
23
24
25
```

BARKLEY Court Reporters

```
 1   all left out the back.  So I -- at a certain point I went
 2   in the front, and they were no longer there.  So they had
 3   to all go out the back.
 4        Q.  Was the door open?
 5        A.  They looked the door.  They -- they were like,
 6   oh, we're all going to leave out the back, and when we're
 7   gone, then you can come in.
 8            So they locked up the front door.  Then they all
 9   left.  And at some point, I don't remember how I knew,
10   they had all gone.  But I was like okay, I'm going in.
11   And we all went in.
12        Q.  Did you ever go around the back?
13        A.  No, I didn't.
14        Q.  Did you ever speak to any of the police
15   officers?
16        A.  Yes.
17        Q.  How many of the police officers did you speak
18   to?
19        A.  Two or three.  It was at least two, and I'm not
20   sure, I may have spoken to a third.
21        Q.  Which are the two that you believe you spoke to?
22        A.  Their names I am not sure.
23        Q.  Can you describe them?
24        A.  One was a woman and I believe she was a UCP
25   officer.
```

69

Kathryn Miller

**BARKLEY**
Court Reporters

1  Q. What did she look like?
2  A. Kind of a -- my height, maybe a little shorter.
3  You know, police wear all that gear. So she seemed
4  large, but she may not have been that large. Round,
5  maybe blond hair.
6  Q. Does the name Sergeant Alberts jog your
7  recollection at all?
8  A. Yeah.
9  Q. And is that who you spoke to?
10 A. I am not entirely -- the other, the piece of
11 paper that I handed in my notes, she is one of the people
12 that I saw there.
13 Q. Okay.
14 A. And I'm just going to -- I have -- you know,
15 specifically who it was who was at the counter, I don't
16 know. She was one of the people I could see. The notes,
17 the people, I wrote down their badge numbers and names
18 were the only people I got close enough to see their
19 badge numbers and names. She was one of the people that
20 was there.
21 Q. When did you speak to her?
22 A. There was a point -- and I don't remember
23 whether this was before or after I had gone home, but I
24 was there, and I said, let's throw caution to the wind.
25 Let's see what's going on. I obviously have a key.

Kathryn Miller

BARKLEY
Court Reporters

1                    And I held up my key, and I was like, hey, I
2     have a key.
3                    And I opened the door and I went inside and I
4     said, do you all have a search warrant? You know, what
5     are you doing here?
6          Q.   And what'd she say?
7          A.   I'm not really quite sure what she said. At
8     some point it was either her or another officer, I can't
9     remember, one of them said, stay here, you know. I'm
10    going to go back and talk to my supervisor, and we'll see
11    what we can do about a search warrant.
12                   So I stood there for a minute, two minutes, I
13    don't know, whatever. They came up. I don't think a
14    supervisor or even if there was a supervisor there came
15    to talk to me, but the officer came back and said we're
16    not going to show you the warrant. You need to leave.
17    And so they sort of made me go back outside and locked
18    the door.
19         Q.   And how did they make you go back outside?
20         A.   They pushed me out the door.
21         Q.   Can you describe how that happened?
22         A.   They said you need to leave.
23         Q.   Did someone -- did one of the officers put his
24    or her hands on your body, physically push you out the
25    door?

1    A.  No.  I wasn't physically pushed out the door,
2 but it was made clear that I was not welcome to stay
3 where I was.
4    Q.  How was that made clear to you?
5    A.  They said you need to leave.
6    Q.  And then you left?
7    A.  Usually I follow what people with guns tell me,
8 yes.
9    Q.  Were you ever asked by any officer to assist in
10 unlocking the cabinets behind the counter in the Info
11 Shop?
12    A.  Was I asked by an officer to do that?
13    Q.  Uh-huh.
14    A.  No.
15    Q.  Were you asked by anyone to do that?
16    A.  No.
17    Q.  Did you ever offer to unlock the cabinets?
18    A.  I did offer.
19    Q.  And how did that conversation come about?
20    A.  So they were looking through the side cabinet
21 and apparently didn't find what they were looking for,
22 and they had bolt cutters, and they were about to cut the
23 locks.  And I said, hey, I have the combos and I could
24 open those for you.  And they're like okay.
25          So they let me in, and I said, well, before I

1  give you the combos, could you let me see the search
2  warrant.  And they said no.  And I said, well then,
3  you're gonna have to cut them off yourself.  And they
4  made me go back outside again.
5       Q.  So how many times did you come inside?
6       A.  Twice.
7       Q.  How was it that you came in the second time?
8       A.  Because I was standing there watching.  I could
9  see they were about to cut the locks.  And I knocked on
10 the door, yelled or whatever that, hey, I could help you
11 get into that cabinet.  And they let me in the second
12 time.
13      Q.  Okay.  And this is after you had asked to see
14 the warrant the first time and were told no?
15      A.  Uh-huh, yes.
16      Q.  And then you asked to see the warrant a second
17 time and were told no?
18      A.  Yes.
19      Q.  And did you think the second time that they were
20 going to show you the warrant because you had the
21 combinations?
22      A.  It was worth a shot.  I had no idea what they
23 were going to do.
24      Q.  Did you observe guns drawn by any of the
25 officers at any point during the execution of the search

73

Kathryn Miller

BARKLEY
Court Reporters

```
 1             DEPOSITION OFFICER'S CERTIFICATE
 2   STATE OF CALIFORNIA   )
                           ) ss.
 3   COUNTY OF MARIN       )
 4
 5
 6        I, Donna J. Blum , hereby certify:
 7        I am a duly qualified Certified Shorthand
 8   Reporter in the State of California, holder of
 9   Certificate Number CSR 11133 issued by the Court
10   Reporters Board of California and which is in full force
11   and effect.  (Fed. R. Civ. P. 28(a)).
12        I am authorized to administer oaths or
13   affirmations pursuant to California Code of Civil
14   Procedure, Section 2093(b) and prior to being examined,
15   the witness was first duly sworn by me.  (Fed. R. Civ.
16   P. 28(a); 30(f)(1)).
17        I am not a relative or employee or attorney or
18   counsel of any of the parties, nor am I a relative or
19   employee of such attorney or counsel, nor am I
20   financially interested in this action.  (Fed. R. Civ. P.
21   28).
22        I am the deposition officer that
23   stenographically recorded the testimony in the foregoing
24   deposition and the foregoing transcript is a true record
25                            / / /
```

1  of the testimony given by the witness.  (Fed. R. Civ. P.
2  30(f)(1)).
3       Before completion of the deposition, review of
4  the transcript [XX] was [ ] was not requested.  If
5  requested, any changes made by the deponent (and
6  provided to the reporter) during the period allowed, are
7  appended hereto.  (Fed. R. Civ. P. 30(e)).

9  Dated: NOVEMBER 24, 2010

            _____

113

Kathryn Miller

BARKLEY
Court Reporters