MELINDA HAAG (SBN 132612)
United States Attorney
JOANN M. SWANSON (SBN 88143)
Assistant United States Attorney
Chief, Civil Division
JONATHAN U. LEE (SBN 148792)
NEILL T. TSENG (CSBN 220348)
Assistant United States Attorneys
Northern District of California

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102
    Telephone:   (415) 436-6909 (Lee)
    FAX:         (415) 436-7169

Attorneys for the UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LONG HAUL, INC. and EAST BAY PRISONER SUPPORT,<br><br>                Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA; MITCHELL CELAYA; KAREN ALBERTS; WILLIAM KASISKE; WADE MACADAM; TIMOTHY J. ZUNIGA; MIKE HART; LISA SHAFFER; AND DOES 1-25,<br><br>                Defendants. | Case No. 09-00168 JSW<br><br>**DECLARATION OF MIKE HART**<br><br>*Date:*<br>*Time:*<br>*Courtroom:* |

1

I, Mike Hart, declare as follows:

1. I am a retired law enforcement officer. I make this declaration from my own personal knowledge. If called as a witness, I could and would competently testify to the contents of this declaration.

2. I worked in law enforcement from 1973 until March 2006 and from May 2006 to May 2009. From 1973-2006, I worked for the Alameda County Sheriff's Department. When I retired in March 2006, I held the rank of Lieutenant. I returned to work in May 2006. I was at that time made a deputized law enforcement officer for the Federal Bureau of Investigation so I could work on its Joint Terrorism Task Force. I was a deputized officer for the FBI from May 2006 to May 2009, at which time I retired.

3. Throughout most of 2008, I was aware that UC-Berkeley employees, faculty, and researchers, were receiving threatening emails for a period of time, perhaps up to a year. In early 2008 (I believe it was either March or April but am not sure), I attended a meeting on the UC-Berkeley campus during which UC-Berkeley staff described the e-mail threats they had been receiving. I recall that about 15-20 researchers attended this meeting. Several of those in attendance spoke of how they felt threatened by the e-mails. One of the researchers at the meeting said he was going to purchase a gun for personal protection.

4. I first heard about the search of the Long Haul when I was told by Lisa Shafer a few days before the warrant was served that she received a telephone call from Sgt Karen Alberts requesting our (JTTF) assistance in serving the search warrant.

5. I had no role in applying for the search warrant of the Long Haul.

6. On the day of the search of the Long Haul, I attended a briefing meeting led by Det. Kasiske of the UC-Berkeley Police Department. I reviewed the search warrant that morning at the

2

*Long Haul, Inc., et al. v. United States of America, et al.*
U.S. District Court Action  09-00168 JSW

meeting. I am not sure if I read the Statement of Probable Cause at the meeting, but I believe I did. In any case, the contents of the Statement of Probable Cause were discussed at the briefing meeting, and as a result it was my understanding someone was using at least one computer at the Long Haul premises to send threatening e-mails to UC-Berkeley staff.

7. My role in the search of the Long Haul was to provide exterior security. I drove my vehicle to the location and parked on a side street. I went to the front door, which was locked, with a group of officers that included Detective William Kasiske and Agent Lisa Shaffer. I recall that someone in the office next door volunteered to assist in entering the premises. The officers went through the building next door and entered Long Haul through the back entrance. I stayed outside the front door while the other officers entered the premises. My job was to make sure no one came into the premises to disrupt the search. I believe I was outside the front door for approximately one hour.

8. When a small crowd gathered near the front door, I moved inside the building's structure and continued to provide security by looking through the windows nearest to the front door. I believe I was doing this from the inside of the premises for an additional 30-45 minutes.

9. After the search had been completed and items designated for seizure by other officers, I helped to carry some of the items to vehicles parked in the side and back of the building. I did not review the contents of the boxes in detail, but I believe I carried 6-8 computer processing units (CPUs) and 2-3 boxes of computer disks.

10. Once I helped to carry items to the law enforcement vehicles outside the Long Haul premises, my involvement in the search of the Long Haul ended. At no time did I search any part of the Long Haul premises. I also did not search any computers. I did not keep any of the seized items or make any copies of any materials seized either.

11. At the time of the execution of the search warrant of the Long Haul, I did not know that Slingshot and/or EBPS were located on the Long Haul premises or that there were "tenants" located at the Long Haul premises.

12. I have reviewed parts of plaintiffs' motion for summary judgment in which a few statements about me have been made. These statements are incorrect.

13. For example, on page 5, line 13, the motion says that I was in August 2008 working for the FBI with the "UC Berkeley Animal Rights Task Force." I have never heard of the "UC Berkeley Animal Rights Task Force." In August 2008, I was an Alameda County Sheriff's Department employee, deputized to work for the FBI, and I worked on the FBI's Joint Terrorism Task Force (JTTF). Terrorism involving the animal rights area, including terrorism directed at UC-Berkeley faculty and staff, was part of my assignment while on the JTTF.

14. On page 6, line 16, plaintiffs' motion states "[t]he raid team removed every computer from the building." Plaintiffs' motion lists one of my discovery responses as supporting evidence for this statement. The motion is incorrect. I did not determine what computers were located inside Long Haul or which computers would be removed. My involvement was to assist in the carrying out of items that someone else had already determined were to be seized. As a result, I do not know if every computer was removed from the building. My discovery response cited in plaintiffs' brief does not say that every computer was removed from the building.

15. On page 7, line 1, plaintiffs' motion claims that at the time of the search, I knew Slingshot was a publication and was "connected" to Long Haul. The motion lists another of my discovery responses as supporting evidence. Again, the motion is incorrect. The discovery

4

*Long Haul, Inc., et al. v. United States of America, et al.*
U.S. District Court Action 09-00168 JSW

response plaintiffs' list in their motion states that I knew Slingshot was a publication. That is because at the time of the search I had heard generally of Slingshot. But, I did not know Slingshot had any connection to the Long Haul.

16. On page 25, lines 1 through 5, plaintiffs' motion makes more inaccurate statements. "Defendant Hart was assigned to assist with security and with searching the Long Haul premises" is incorrect because I did not search the premises nor was I assigned to search the premises. "He attended the pre-raid planning meeting" is basically correct because I attended the briefing on the morning of the search but I did not have any planning role in this search. "During the raid, Hart provided armed guard as the other officers entered and searched the premises and seized materials there" is essentially correct because although I don't specifically recall, I was in all likelihood armed and I was providing security so the search would not be interrupted or disturbed by anyone. "He also went inside and seized computers" is incorrect because as I said above, I did not make a determination about seizing any items from the premises but I did help to carry out items that had already been designated by other officers for seizure.

I declare under penalty of perjury that the foregoing is true and accurate and that I have executed this declaration on February 14, 2011, in Discovery Bay, California.

                                             /s/*Mike Hart*/  
                                             MIKE HART