SCHIFF HARDIN LLP
WILLIAM J. CARROLL (CSB #118106)
wcarroll@schiffhardin.com
SARAH D. YOUNGBLOOD (CSB #244304)
syoungblood@schiffhardin.com
One Market, Spear Street Tower
Thirty-Second Floor
San Francisco, CA  94105
Telephone:   (415) 901-8700
Facsimile:   (415) 901-8701

SARA L. ELLIS (ILSB #6224868)
sellis@schiffhardin.com
233 South Wacker Drive
Suite 6600
Chicago, IL  60606
Telephone    (312) 258-5800
Facsimile    (312) 258-5600

Attorneys for Defendants
MITCHELL CELAYA, KAREN ALBERTS,
WILLIAM KASISKE, WADE MACADAM and
TIMOTHY J. ZUNIGA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONG HAUL, INC., and EAST BAY PRISONER SUPPORT,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA; MITCHELL CELAYA; KAREN ALBERTS; WILLIAM KASISKE; WADE MACADAM; TIMOTHY J. ZUNIGA; MIKE HART; LISA SHAFFER; AND DOES 1-25,<br><br>Defendants. | Case No.  3:09-cv-0168 JSW<br><br>**DECLARATION OF WADE MACADAM IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT/ADJUDICATION** |

1.     I am employed as an Officer with the University of California Police

Department ("UCPD"), and I am a resident of Alameda County, California.  I have

personal knowledge of the facts set forth herein and, if called as a witness, I could and

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
CHICAGO

1   would testify truthfully thereto.

2       2.      I have been employed with University of California Police Department

3   ("UCPD") as a law enforcement officer for approximately eleven years.

4       3.      I was not a member of the Animal Rights Working Group ("ARWG").  I did

5   not participate in the investigation into the set of threatening emails that were the subject

6   of the search warrant, executed on August 27, 2008.

7       4.      I did not prepare or assist in the preparation of the search warrant that is

8   the subject of this matter or the Statement of Probable Cause in support of the search

9   warrant.

10      5.      I did not visit or examine the inside of the Long Haul premises before

11  August 27, 2008.

12      6.      In the morning the day of the execution of the search warrant, August 27,

13  2008, I attended a briefing meeting led by Detective William Kasiske.  During this

14  meeting, Kasiske explained where the team was going and reviewed the terms of the

15  warrant.  He described how the team would gain entry to the building, and described the

16  scope of the warrant.  Kasiske gave an overview of the investigation, described the

17  timing and content of the threatening emails and told the team how he had traced them

18  back to Long Haul.

19      7.      During the briefing meeting, I was made aware that UC-Berkeley faculty

20  and staff members were the subject of threatening emails and other threatening and

21  intimidating behavior, allegedly perpetrated by animal rights activists, over a period of

22  months.

23      8.      I am aware of several connections between Long Haul and animal rights

24  activists; including:  (1) Long Haul's hosting of a fundraiser for the group Stop Cal

25  Vivisection; (2) the presentation by a known animal rights activist, Peter Young, and

26  showing of the movie "Behind the Mask" at Long Haul; and, (3) several instances where

27  animal rights activists were followed before or after home demonstrations to Long Haul.

28      9.      During the briefing meeting, I learned that some of the threatening emails

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2                    CASE NO.  3:09-cv-0168 JSW

DECLARATION OF WADE MACADAM

originated from an IP address registered to the Long Haul premises and that one or more of the computers located at the Long Haul premises had been used to send threatening emails to UC-Berkeley faculty and it was unknown which individual or individuals were sending the threatening emails or which computers in particular had been used to send the threatening emails.  I was informed that there was reason to believe that a person associated with Long Haul may have been primarily responsible or given assistance to the individual or individuals responsible for sending the threatening and harassing emails.  Additionally, I was informed that the execution of the search warrant was intended to aid in identifying the individual(s) who sent the threatening emails and/or the computer(s) from whence they came.

10.     As part of the briefing meeting I was given access to and reviewed the search warrant.  I had a copy of the search warrant in my possession during the execution of the search warrant.

11.     Prior to the execution of the search warrant, I was aware that Long Haul was an activist organization and that the Long Haul premises were used by groups or organizations to hold meetings, discussions, fundraising and recreational activities. I was aware of this information through my work at UCPD.  I was not aware that the Long Haul premises contained multiple tenants until after the filing and service of this lawsuit.

12.     It was my understanding, prior to the execution of the search warrant, that Long Haul was an "infoshop" that sold and distributed newspapers and zines.

13.     Prior to the execution of the search warrant, I had no information regarding East Bay Prisoner Support ("EBPS").   Specifically, I was unaware at the time of the execution of the search warrant that EBPS was located at the Long Haul premises. Further, I was unaware that EBPS claimed to disseminated a newspaper, book, broadcast, or other similar form of communication to the public.

14.     I am informed and believe that the Declaration of Matthew Zimmerman submitted in support of Plaintiffs' Motion for Summary Judgment represents to the Court that my discovery responses state that I was aware of Slingshot at the time of the

1   execution of the search warrant.  (Zimmerman Dec., 12:9-10).  It is true that I was aware

2   that Slingshot was a publication, however my response also states that I did not know

3   that Slingshot was a newspaper and I was not aware of who published Slingshot.

4       15.     I was unaware at the time of the execution of the search warrant that

5   Slingshot was located at the Long Haul premises.  Further, at the time of the execution

6   of the search warrant I was unaware of any claimed connection between Long Haul and

7   Slingshot.  I was unaware at the time of the execution of the search warrant that

8   Slingshot claimed to be "sponsored" by Long Haul.

9       16.     I do not recall ever reviewing the Slingshot website.

10      17.     During the execution of the warrant, my tasks were to videotape the interior

11  condition of the premises prior to the search and after the search as well as to do

12  manual jobs as needed and provide assistance to the other officers.

13      18.     When we arrived at Long Haul to execute the search warrant, we observed

14  that there was only one entrance at the front of the building and it was locked.  The Long

15  Haul did not appear to be open for business.  I do not recall seeing any signs on the

16  front of the building indicating the presence of any tenant other than Long Haul, nor were

17  there multiple mailboxes suggesting multiple tenants.  The name on the front of the

18  building stated "Long Haul Infoshop."

19      19.     We gained access to the building by going through the neighbor's office

20  into the back and opening the back door of the Long Haul.  Long Haul's back door was

21  not very well secured.

22      20.     I videotaped the entry into the building and the condition of the premises

23  prior to the search.

24      21.     On the ground floor of the building there was a bathroom, a small kitchen

25  area, and an area with tables and chairs.  The walls were covered with posters and signs

26  addressing varied and miscellaneous causes and events.  Along the south wall of the

27  main floor were magazines, papers, and books.  There was a small hallway leading to

28  the front area of the building with three locked doors.  The front (east) of the building

1   contained the Shattuck street entrance, a counter, and shelving displaying magazines

2   and periodicals.  Behind the counter were locked cabinets.  There were additional,

3   varied posters and signs on the open wall spaces in the front of the building.

4         22.    There were two loft areas visible from the ground floor with staircases

5   leading up to them.  The western loft had a room that housed a number of computers

6   with a sign on the door that read, "Internet Room."  The eastern loft area had a couch

7   and long table and a room with a locked door.  The walls in the loft area were filled with

8   more posters and signs.

9         23.    At no time during the search did I observe anything that made me believe

10  the building contained separate tenants.  There were no separate mailboxes, entrances,

11  or doorbells, nor were there any permanent signs or other indicia that would alert

12  someone to the multi-tenant character of a location.

13        24.    I am informed and believed that the Declaration of Matthew Zimmerman

14  submitted in support of Plaintiffs' Motion for Summary Judgment represents to the Court

15  that I testified during deposition and in my responses to discovery that I cut and removed

16  all locks from within the Long Haul building (Zimmerman Dec., 10:20-21, 11:3-4).

17  However, my testimony was that I was tasked with opening the locked doors and that I

18  opened two of the doors downstairs, Corporal Zuniga assisted with cutting a lock on the

19  third door downstairs, and with Corporal Zuniga's assistance we pried open the door in

20  the eastern loft area.  I also cut the locks of the cabinets in the front of the building.  I do

21  not know whether these locks were <u>all</u> of the locks that were within the Long Haul

22  building.

23        25.    The interior walls of Long Hall were covered in signs and posters.  I do not

24  recall seeing either the "Slingshot" banner or the "East Bay Prisoner Support" sign that

25  plaintiffs claimed existed at the time of the execution of the warrant.

26        26.    I was not aware of the existence of a "Slingshot office" at any time during

27  the execution of the search warrant.  There was no indication that Slingshot was

28  operating out of the building or that it was in any way distinct from Long Haul.  There was

1   no indication that the room claimed to be the "Slingshot office" was being used for any

2   publishing activities.

3       27.    I was not aware of the existence of an "EBPS office" at any time during the

4   execution of the search warrant.  There was no indication that East Bay Prisoner

5   Support was a distinct organization and was paying rent to Long Haul for its use of this

6   tiny room.  I believed the room that is claimed to be the "EBPS office," like the other

7   rooms along the hallway, was used by Long Haul as office and/or storage space.  There

8   was no indication that the room was being used for any publishing activities.  The room

9   that is claimed to be the "EBPS office" was extremely small.

10      28.    All of the offices within Long Haul appeared to be administrative offices or

11  storage areas.  There was nothing about the offices that indicated to me that they were

12  separate offices.

13      29.    While I was cutting the lock to the front cabinet, a woman outside told me

14  to stop because she had the key and would open it.  I let her in because she said she

15  was going to assist me, but then people started yelling from outside for her not to help.

16  She went back outside and then came in and said she wasn't going to help.

17      30.    My supervisor, Sergeant Alberts, also had a conversation with this woman

18  and with other individuals outside.

19      31.    At no point in my conversations with the woman that came inside nor with

20  any of the other spectators did anyone ever tell me that Long Haul rented out some of its

21  offices to tenants or that any of the offices were used for publishing activities.

22      32.    Prior to and during the execution of the search warrant, I was not aware

23  that there was any sort of publishing activity occurring at or out of the Long Haul.  There

24  was nothing in the Long Haul premises during the execution of the search warrant that

25  alerted me to the possibility of publishing activities (i.e., no printing press, no industrial

26  printers, etc.).  The rooms that Plaintiffs allege were the sites of publishing activity looked

27  like nothing more than administrative offices or storage areas.

28      33.    During the search, I assisted the team in assembling all of the seized items

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

CASE NO.  3:09-cv-0168 JSW

DECLARATION OF WADE MACADAM

1    in the back room towards the kitchen.   When the search was concluded, I took a final

2    video of the premises to document its condition.

3         34.     I assisted the team in taking the computers and other electronic storage

4    devices out of the premises through the back door to the cars and provided security at

5    the cars during the process.  After the computers were loaded into the cars and taken

6    back to UCPD, I had no further involvement with the execution of the warrant or the

7    investigation into the threatening emails.

8         35.     I did not seize any items that were not described in the search warrant nor

9    exceed the scope of the search warrant.  I acted in good faith at all times during the

10    execution of the search warrant.

11    ///

12    ///

13    ///

14    ///

15    ///

16    ///

17    ///

18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DECLARATION OF WADE MACADAM

1       I declare under penalty of perjury under the laws of the State of California that the

2   information contained in the Declaration of Wade MacAdam In Support of Defendants'

3   Opposition to Plaintiffs' Motion for Summary Judgment and Defendants' Cross-Motion

4   for Summary Judgment/Adjudication is true and correct.

5       Executed on February 11 , 2011, in Berkeley, California.

6

7                             _____

8                                  Wade MacAdam

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28