1  SCHIFF HARDIN LLP
   WILLIAM J. CARROLL (CSB #118106)
2  wcarroll@schiffhardin.com
   SARAH D. YOUNGBLOOD (CSB #244304)
3  syoungblood@schiffhardin.com
   One Market, Spear Street Tower
4  Thirty-Second Floor
   San Francisco, CA  94105
5  Telephone:     (415) 901-8700
   Facsimile:      (415) 901-8701
6  SARA L. ELLIS (ILSB #6224868)
   sellis@schiffhardin.com
7  233 South Wacker Drive
   Suite 6600
8  Chicago, IL  60606
   Telephone     (312) 258-5800
9  Facsimile     (312) 258-5600
   Attorneys for Defendants
10 MITCHELL CELAYA, KAREN ALBERTS,
   WILLIAM KASISKE, WADE MACADAM and
11 TIMOTHY J. ZUNIGA

12 MELINDA HAAG (SBN 132612)
   United States Attorney
13 JOANN M. SWANSON (SBN 88143)
   Assistant United States Attorney
14 Chief, Civil Division
   JONATHAN U. LEE (SBN 148792)
15 NEILL T. TSENG (CSBN 220348)
   Assistant United States Attorneys
16 Northern District of California
   450 Golden Gate Avenue, Box 36055
17 San Francisco, California 94102
   Telephone:     (415) 436-6909 (Lee)
18 FAX:           (415) 436-7169
   Attorneys for the FEDERAL DEFENDANTS

19

20              UNITED STATES DISTRICT COURT

21            NORTHERN DISTRICT OF CALIFORNIA

22 LONG HAUL, INC., et al,                    Case No.  3:09-cv-0168 JSW

23                  Plaintiffs,               **[PROPOSED] ORDER GRANTING
                                              DEFENDANTS' MOTIONS FOR
24 v.                                         SUMMARY JUDGMENT AND DENYING
                                              PLAINTIFFS' MOTION FOR SUMMARY
25                                            JUDGMENT**
   U.S.A., et al,
26                                            Date:     April 8, 2011
                   Defendants.                Time:     9:00 a.m.
27                                            Dept.:    11
                                              Judge:    Jeffrey S. White
28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Following the parties' submission of cross motions for summary judgment pursuant to the case management order, as modified by joint stipulation and order (Dkt. #113), and following oral argument on the cross motions, the Court issues the following order GRANTING defendants' motions for summary judgment and DENYING plaintiffs' motion for summary judgment.

## I.   DISCUSSION

### A.   Defendants Are Entitled To Summary Judgment On Plaintiffs' Second Cause Of Action Alleging Violation Of The Fourth Amendment.

#### 1.   Defendants Did Not Violate The Fourth Amendment.

##### a.   *The Search Warrant Was Supported By Probable Cause.*

Probable cause is a "flexible, common-sense standard," requiring that the facts available to the officer would "warrant a man of reasonable caution" in the belief that incriminating evidence is involved. *Texas v. Brown,* 460 U.S. 730, 742 (1983). It does not require that the belief be correct or more likely true than false. *U.S. v. Gourde*, 440 F.3d 1065, 1073 (9th Cir. 2006). The probable cause standard, in the context of a search warrant, requires an affidavit that establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This standard is readily met here.

The Statement of Probable Cause sets forth in explicit detail the basis for the belief that incriminating evidence could be found at Long Haul, including the fact that anonymous animal rights activist(s) had sent threatening emails to UC researchers from the IP address located at Long Haul in March, May, June 2008. Kasiske ("Kas.") Dec. ¶¶50, 52-53, Ex. N. *See, e.g., U.S. v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007) (IP address gave rise to probable cause to search physical address associated with IP address in child pornography investigation); *U.S. v. Harrison,* 566 F.3d 1254 (10th Cir. 2009); *U.S. v. Carter*, 549 F.Supp.2d 1257, 1261 (D. Nev. 2008).

##### b.   *The Search Warrant Was Not Unconstitutionally Overbroad.*

The Fourth Amendment specifies only two matters that must be "particularly describ[ed]" in the warrant: "the place to be searched" and "the persons or things to be seized." *Dalia v. U.S.,* 441 U.S. 238, 255 (1979). "Nothing in the language of the Constitution or in this Court's decisions interpreting that language suggests that, in addition to the [requirements set forth in the text], search

CASE NO. 3:09-cv-0168 JSW

[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1   warrants also must include a specification of the precise manner in which they are to be executed."

2   *Id.* at 257; *U.S. v. Mann*, 389 F.3d 869, 877 (9th Cir. 2004) ("While a search warrant must describe

3   items to be seized with particularity sufficient to prevent a general, exploratory rummaging in a

4   person's belongings, it need only be reasonably specific, rather than elaborately detailed.").

5      The Ninth Circuit had identified the following factors for use in determining whether a

6   warrant is sufficiently particular:  (1) whether probable cause exists to seize all items of a particular

7   type described in the warrant; (2) whether the warrant sets out objective standards by which

8   executing officers can differentiate items subject to seizure from those which are not; and (3)

9   whether the government was able to describe the items more particularly in light of the information

10  available to it at the time the warrant was issued.  *U.S. v. Adjani*, 452 F.3d 1140, 1148 (9th Cir. 2006).

11  Each of these factors supports the validity of the warrant here.

12              (1)      Computers and Electronic Storage Devices.

13     Plaintiffs argue that Defendants should have limited their search only to those computers that

14  were open to public use in Long Haul's western loft "Internet room."  To do so would have ignored

15  material and significant evidence, resulting in a partial, possibly ineffectual search that could have

16  compromised the entire investigation.[1]  The March, May, and June 2008 emails had all originated

17  from the same IP address, physically located at the Long Haul.[2]  Kas. Dec. ¶¶36, 38, 42, 50, 52, and

18  Ex. N.  Nothing in the information available to Kasiske enabled him to differentiate among the

19  computers located at the Long Haul address.  *Id.* at ¶¶45, 47.  Lacking any reasonable basis to

20  eliminate any computers as potential repositories of incriminating evidence, Kasiske sought and

21  received a warrant which by its terms authorized the search and seizure of "all computers" at Long

---

22      [1]  Plaintiffs' case law is inapposite.  In *Millender v. Los Angeles*, 620 F.3d 1016 (9th Cir.

23  2010), for example, the officers obtained a warrant to seize all firearms at the subject location, as
    well as evidence of gang activity, even though the victim provided a specific description of a
24  particular firearm used by the suspect.  Here, by contrast, officers did not know which computer
    inside Long Haul was used to threaten UC Berkeley faculty and staff.

25      [2]  As discussed further below, based on information developed through the AWRG's

26  investigations, including Long Haul's support of and sympathy for animal rights' activists,
    Kasiske reasonably believed that a person affiliated with Long Haul could have been complicit in
27  the crime under investigation.  Kas. Dec. ¶¶45-47.  It would have made no sense for him to limit
    the search only to the "public-access" computers, and exclude other computers a person affiliated
28  with Long Haul would have had access to and which may have contained incriminating evidence.

1   Haul.  *Id.* at ¶¶60, 63, 64 and Ex. O.   Probable cause for the seizure of "all computers" at Long Haul

2   was plainly established through the detailed discussion set forth in the Statement.  *Adjani*, 452 F.3d at

3   1140; *see also U.S. v. Krupa*, --- F.3d ---, 2011 WL 353212 *3 (9th Cir. February 7, 2011) (search of

4   13 computer towers and 2 laptops was supported by probable cause where defendant had control of

5   all computers); *U.S. v. Hay*, 231 F.3d 630, 637 (9th Cir. 2000) (probable cause supported search and

6   seizure of entire computer system).  Judge Ford concluded as much in issuing the warrant covering

7   "all computers and computer systems," a conclusion that is entitled to "great deference."  *Gates*, 462

8   U.S. at 236; *U.S. v. Seybold*, 726 F.2d 502, 503 (9th Cir. 1984).

9        In arguing that seizure of "all computers" was overbroad, Plaintiffs point to the "Opinions

10  and Conclusions" section of the Statement of Probable Cause, which notes that establishments with

11  public access computers typically maintain logs or sign-in sheets identifying the public users.  Kas.

12  Dec. ¶¶50, 55 and Ex. N.  In raising this point, Kasiske sought to broaden – not narrow – the scope

13  of the warrant, by describing the need to search for such logs or sign-in sheets *in addition to* the

14  search for and seizure of all computers.  *Id.* at ¶56.  Plaintiffs' argument, if accepted, would disregard

15  the bulk of the factual discussion included in Kasiske's Statement, as well as ignore the plain

16  language of the warrant itself, which makes it clear that Kasiske intended to have "all computers and

17  computer systems" seized.  *Id.* at ¶¶50, 60, 64 and Ex. O and N.[3]

18       The warrant's language authorizing seizure of all "electronic storage devices," including

19  external hard drives, CD's, DVD's, memory cards, USB flash drives, etc., was also sufficiently

20  particular and supported by probable cause.  Due to the ease with which such information can be

21  transferred from the computer's hard drive to an external storage device, it is necessary to include

22  such storage devices within the scope of a search for electronic information that exists (or at one time

23  existed) in the computer's hard drive.  *Id.* at ¶67.  The inclusion of such external storage devices does

24

---

25       [3]  Plaintiffs' suggestion to the contrary notwithstanding, there is no requirement for a
    warrant authorizing seizure of computers to include a search protocol addressing the examination
26  of the computer's contents.  *U.S. v. Grubbs*, 547 U.S. 90, 98 (2006) ("...this court has never
    required warrants to contain a particularized computer search strategy.")  Nor is a search protocol
27  required to comply with a search warrant.  *U.S. v. Kahanni,* 502 F.3d 1281, 1290-91 (11th Cir.
    2007); *U.S. v. Carter*, 543 F.3d 442, 447-48 (8th Cir. 2008); *U.S. v. Brook*, 427 F.3d 1246, 1251
28  (10th Cir. 2005).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO                                    - 3 -                     CASE NO.  3:09-cv-0168 JSW

[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

1   not render an otherwise proper search "overbroad."  *See, e.g., U.S. v. Hay*, 231 F.3d 630, 637 (9th

2   Cir. 2000) (warrant was sufficiently particular in requesting seizure of entire computer system

3   because agents had no idea where pornographic images would be stored); *U.S. v. Lacy,* 119 F.3d 742,

4   746-47 (1997) (same); *U.S. v. Wong*, 334 F.3d 831, 837-38 (9th Cir. 2003) (probable cause supported

5   warrant to search the computers, their components, and disks to "obtain data as it relates to this

6   case").  Given that Detective Kasiske did not know where the threatening emails or other electronic

7   evidence linking an individual with the threatening emails would be stored, the description in the

8   warrant was as particular as he reasonably could make it.  *Adjani*, 452 F.3d at 1148-49; *Hay*, 231

9   F.3d at 637; *Lacy*, 119 F.3d at 746-747 (this type of generic classification is acceptable "when a more

10  precise description is not possible").

11                     **2.      Documents Identifying Computer Users**

12             The warrant was also sufficiently particular with regard to documents identifying users of the

13  public-access computers.  Plaintiffs argue this description was overbroad in that it did not explicitly

14  limit the documents to the dates during which the researcher received the threatening emails.  (Pltffs'

15  MPA at pp. 12-13.)  This argument ignores the context furnished by the Statement of Probable Cause

16  and by Kasiske's pre-search briefing, which specified the time frame during which the emails were

17  sent.  Kas. Dec. ¶¶50, 71 and Ex. N; Alberts ("Alb.") Dec. ¶36; Zuniga ("Zun.") Dec. ¶36;

18  MacAdam ("Mac.") Dec. ¶6; Shaffer ("Shaf.") Dec. ¶10-12; Hart Dec. ¶6.  The warrant team was

19  thus aware of the relevant time frame and limited the scope of its search accordingly. *See Wong*, 334

20  F.3d at 837-38 (the specificity of the items listed in the warrant combined with the language directing

21  officers to "obtain data as it relates to this case" from the computers is sufficiently specific to focus

22  the officer's search); *Hay*, 231 F.3d at 636-38 (the warrant was not overbroad where the attachment

23  specifically mentioned the crime of child pornography and the preface to the warrant limited the

24  scope of the search to evidence of criminal activity).[4]  Moreover, Plaintiffs' focus on the lack of an

25

26  _____

         [4]  Unlike the cases cited by Plaintiffs, the warrant here did not authorize the search or
27  seizure of all of Plaintiffs' business records or documents.  *See U.S. v. Washington*, 797 F.2d
    1461, 1472 (9th Cir. 1986); *U.S. v. Cardwell*, 680 F.2d 75, 77 (9th Cir. 1982).  Rather, it focused
28  the search on a limited class of documents, those which would identify the users of the public
    computers.

1   explicit date range in the warrant limiting documents to be seized does not change the outcome.

2   Defendants indisputably were authorized to search for and seize documents identifying individuals

3   who used the computers from March through June, 2008.  The scope of their search would not have

4   been any different, had this explicit limitation appeared on the face of the warrant.  Plaintiffs have

5   not and cannot identify any place searched by Defendants that reasonably could not have contained

6   documents falling within this spring, 2008 time frame.[5]  Moreover, they cannot point to any

7   documents outside of that time frame that were seized by the warrant team.  That is because the

8   warrant team did not seize any documents.  Kas. Dec. ¶77, Ex. Q and ¶95, Ex. R.  That fact

9   demonstrates that the language of the warrant was not overbroad or unable to provide direction to

10  Defendants in conducting their search.  Because no documents were seized, Plaintiffs cannot

11  demonstrate any injury directly attributable to this aspect of the search.[6]

### a.   *The Warrant Was Properly Executed.*

13          (1)   The Search Was Limited to the Areas Described in the Warrant.

14  Officers properly searched the entire Long Haul premises pursuant to the facially valid

15  warrant.  Plaintiffs argue that certain locked rooms within Long Haul should have been deemed as

16  outside the scope of the search, in particular the locked room on the ground floor hallway bearing a

17  handwritten sign saying "East Bay Prisoner Support."  Defendants' search of this room was justified

18  in the first instance because the officers had no way of knowing whether it contained the computer or

19  computers from which the threatening emails had originated.  Second, there was nothing which

20  placed Defendants on notice that "East Bay Prisoner Support" was an organization, that it

21  "occupied" the room, that it paid rent on it, or that it had any independent Fourth Amendment rights

---

23          [5]  Plaintiffs' argument addressing Officer Zuniga's view of photographs located in the
24  eastern loft file cabinet as evidence that the warrant was not sufficiently particular misapprehends
    both the facts and the law.  Zuniga saw these photographs "in plain view" while conducting a
    lawful search of the file cabinet for documents described in the warrant.  *U.S. v. Ewain*, 88 F.3d
25  689, 693 (9th Cir. 1996) (finding evidence of postal theft while legally searching for evidence of
    methamphetamines was authorized by plain view doctrine); *U.S. v. Jackson*, 131 F.3d 1105,
26  1108 (4th Cir. 1997).  Neither Zuniga's brief inspection of the photographs nor his showing them
    to Agent Shaffer violated the Fourth Amendment.  Zun. Dec. ¶¶57-58; Shaf. Dec. ¶¶15, 33, 35.

27          [6]  In order to recover compensatory damages the §1983 plaintiff must prove not only that
    the search was unlawful, but that it caused him actual, compensable injury.  *Heck v. Humphrey*,
28  512 U.S. 477, 487 fn. 7 (1994).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

which could have impacted the ongoing search.

A warrant is valid when it authorizes the search of a street address – even one with several dwellings within it – if the [party] is in control of the whole premises, if the dwellings are occupied in common, or if the entire property is suspect. *U.S. v. Whitten*, 706 F.2d 1000, 1008 (9th Cir. 1983); *U.S. v. Alexander*, 761 F.2d 1294, 1301 (9th Cir. 1985). The validity of a warrant is judged on the basis of the information available at the time the warrant issued. *See Maryland v. Garrison,* 480 U.S. 79, 85 (1987).[7] There is no evidence in the record that any Defendant was aware there were tenants located within the Long Haul premises at the time of the warrant application.[8] Kas. Dec. ¶16; Alb. Dec. ¶12; Zun. Dec. ¶11; Mac. Dec. ¶11; Shaf. Dec. ¶¶26-27; Hart Dec. ¶11. Nothing on Long Haul's website indicated that they rented space in the building to tenants. Kas. Dec. ¶16-17; Alb. Dec. ¶12; Zun. Dec. ¶13. The warrant should be upheld on that basis alone. *See U.S. v. Whitney*, 633 F.2d 902, 908 (9th Cir. 1980); *U.S. v. Ofshe*, 817 F.2d 1508, 1514 (11th Cir. 1987) (search of multi-unit building upheld where warrant authorized search of a single business. Officers had no reason to know that the premises were subdivided into separate offices.).

Moreover, once the officers entered the Long Haul premises and began to search, there was no indication that multiple tenants used the space within the building. Kas. Dec. ¶88; Alb. Dec. ¶51-52; Zun. Dec. ¶44; Mac. Dec. ¶23. Factors that indicate a separate residence include separate access from the outside, separate doorbells, and separate mailboxes. *See U.S. v. Ayers*, 924 F.2d 1468, 1480

---

[7] In *Garrison*, the police obtained a warrant for a floor of a three-level residential building, under the mistaken belief that the floor designated in the warrant contained only one apartment-that of a suspect named McWebb. *Id.* at 81. The police relied on an informant, an exterior examination of the building, and an inquiry of a utility company when making this determination. *Id.* As it turned out, there were two apartments, one of which belonged to Garrison and which contained drugs that the police discovered during their search. *Id.* Analyzing the validity of the warrant, the Supreme Court stated that if the officers knew or should have known that there were two separate dwellings on the third floor, the warrant would not authorize the search of the whole floor (as it would not be particularized). *Id.* at 85. However, the Supreme Court found that the police investigation had produced a reasonable belief that there was only one tenant. *Id.* at 86, n. 10. The Supreme Court thus concluded that the warrant was valid based on the information that the officers disclosed and had a duty to disclose to the magistrate. *Id.* at 86.

[8] The existence of locks on interior doors, by itself, does not establish that the Long Haul building included tenants. There are any number of reasons for locking interior doors, including the presence of confidential information or valuable property. Defendants encountered locked cabinets behind the front counter, which were apparently locked for reasons having nothing to do with multiple tenants. Alb. Dec. ¶¶48, 54-5; *Palmer I,* 25:8-17.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -    CASE NO. 3:09-cv-0168 JSW

[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

(9th Cir. 1991); *U.S. v. Hinds,* 856 F.2d 438, 441-42 (1st Cir. 1988).  Here, EBPS shared the same

entrance as Long Haul.  Kas. Dec. ¶78.  There was no separate doorbell or mailbox on the outside of

the building.  *Id.* at ¶88.   There was no sign on the outside of the building indicating that EBPS had

an office within.  *Id.* at ¶¶78, 79.   The outside of the building was locked when the officers entered

as were all of the rooms on the inside of the building.  *Id.* at ¶¶78, 85, 86.  The only potential

indication that one of the rooms inside belonged to EBPS was a removable, handwritten, cardboard

sign tacked on the door to the room.  Kas. Dec. ¶98.  This factor alone cannot suffice to place the

officers on notice that the Long Haul premises contained a separate tenant, especially in the context

of other posters and signs throughout the premises.  *See U.S. v. White,* 416 F.3d 634, 639-40 (7th Cir.

2005) (lacking information about the text, size, and permanence of barbershop sign in window of

single family residence, court could not find that sign put officers on notice of separate business in

premises).  Under the circumstances, the officers reasonably could not have known whether "East

Bay Prisoner Support" was a cause, a "project," a slogan, or something else.  There is no basis for

imputing knowledge to them that it was a tenant that could even arguably claim Fourth Amendment

rights independent of Long Haul.

> (2)     The Search Was of Reasonable Duration And Thoroughness.

Plaintiffs complain that Defendants' search for documents was overbroad, in that they

viewed lending logs, lists of volunteers, prisoner mail, and photographs while conducting their

search of the premises.  (Pltffs' MPA at p. 18.)

The search was reasonable.  Officers are entitled and expected to examine an object in order

to determine whether or not it is one they are authorized to seize.  *See U.S. v. Slocum,* 708 F.2d 587,

604 (11th Cir. 1983).  This is especially true for searches of documents, which often require

examination before any determination can be made as to whether they fall within the scope of a

warrant.  Thus, "innocuous records must be examined to determine whether they fall into the

category of those papers covered by the search warrant."  *U.S. v. Kufrovich,* 997 F. Supp 246, 264

(D. Conn. 1997); citing *Andresen v. Maryland,* 427 U.S. 463, 482 fn. 1 (1976).  Although care must

be taken to minimize the intrusion, records searches require that many, and often all, documents in

the targeted location be searched because "few people keep documents of their criminal transactions

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 7 -                                   CASE NO.  3:09-cv-0168 JSW
[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

1  in a folder marked 'crime records.'" *U.S. v. Hunter*, 13 F.Supp.2d 574, 582 (D. Vt. 1998) (internal

2  quotation marks omitted).  Agents authorized by warrant to search a location for documents

3  containing specific information are entitled to examine all files located at the site for the specified

4  information. *See U.S. v. Heldt*, 668 F.2d 1238, 1267 (D.C. Cir 1981).  Defendants' search here

5  readily falls within these parameters.

6              (3)    The Seized Computers Were Properly Searched And Promptly
                     Returned.
7

8          In the Statement of Probable Cause, Kasiske expressly sought authorization to remove the

9  computers and electronic storage devices off-site for forensic review.  Kas. Dec. ¶¶50, 55, 64 and Ex.

10  N.  Given the difficulty of segregating computer files containing evidence of the crime, he was

11  justified in doing so. *See U.S. v. Hay,* 231 F.3d 630, 637 (9th Cir. 2000) (removing entire computer

12  system off-site justified by time, expertise, and controlled environment required for proper analysis);

13  *U.S. v. Tamura,* 694 F.2d 591, 596 (9th Cir. 1982).

14          UCPD imaged all hard drives and returned to Plaintiffs all seized computers and storage

15  devices within six weeks of the execution of the search warrant.  Kas. Decl. ¶¶113 and 114.  Given

16  the care and expertise required for the computer search and the workload of the SVRCF Lab, this

17  time frame was reasonable.

18          Furthermore, because the search terms submitted by the UCPD and utilized by the SVRCF

19  Lab to search the six public access computers were targeted and calculated to locate material relating

20  to the investigation (Kas. Decl. ¶¶116-117, Ex. V), this limited search did not violate the Fourth

21  Amendment. *See U.S. v. King,* 693 F.Supp.2d 1200, 1229 (D. Hawaii 2010) (officers limited search

22  of computer and peripheral devices to that which would produce evidence of defendant's alleged

23  crimes); *Adjani,* 452 F.3d at 1150 ("The government should not be required to trust the suspect's

24  self-labeling when executing a warrant.").

25

26

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 8 -

CASE NO.  3:09-cv-0168 JSW

[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

**3.      Defendants Are Entitled To Qualified Immunity With Regard To Plaintiffs' Fourth Amendment Claims.**

**a.      *Plaintiffs Cannot Establish That Defendants, Or Any Of Them, Violated Their "Clearly Established" Fourth Amendment Rights Under The Specific Circumstances Alleged Here.***

As established above, Plaintiffs cannot prove that Defendants violated their Fourth Amendment rights, as alleged.  In addition, plaintiffs cannot meet the more demanding standard -- arising out of Defendants' assertion of qualified immunity -- requiring Plaintiffs to prove that Defendants violated "clearly established" Fourth Amendment rights under the circumstances presented here.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, ---, 129 S. Ct. 808, 815 (2009) (internal quotation marks and citation omitted).  "The protection of qualified immunity applies regardless of whether the government official's error 'is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Id.* (citation omitted).  Qualified immunity protects government officials from their exercise of poor judgment, and fails to protect only those who are "plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In order to resolve a public official's claims of qualified immunity, a court must determine whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 202 (2001).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.*  In other words, "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id.*; *see also Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (to overcome qualified immunity, plaintiff must demonstrate the rights he asserts "were already delineated with sufficient clarity to make a reasonable [public official] in the defendant's circumstances aware that what he was doing violated the right.")

1    In order to overcome Defendants' assertion of qualified immunity here, Plaintiffs would

2 have to demonstrate, at a minimum,  that it was "clearly established" under existing case law at

3 the time that:

4    (1) the search warrant was unconstitutionally overbroad on its face;

5    (2) their search of the Long Haul premises should not have included the locked

6 westernmost room on the ground floor; and

7    (3) there was no probable cause to search for or seize computers and storage devices other

8 than the pubic access computers and storage devices in the western loft area.

9 Plaintiffs have not and cannot cite case law existing at the time of the search "clearly

10 establishing" any violation of Plaintiffs' Fourth Amendment rights under the circumstances

11 presented here.  *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989) (Qualified immunity must

12 be determined, not only with reference to existing "established law," but also with reference to

13 "the information [the defendants] possessed.") (internal quotations omitted).

14    In the Fourth Amendment context, qualified immunity extends to officers obtaining a warrant

15 where they have a reasonable belief that their application is supported by probable cause; and to

16 officers executing the warrant, where they reasonably rely upon the warrant in conducting the search.

17 The Supreme Court has recognized that it is inevitable that law enforcement officials will in some

18 cases reasonably but mistakenly conclude that probable cause is present.  "[I]n such cases those

19 officials ... should not be held personally liable."  *Rodis v. City and County of San Francisco*, 558

20 F.3d 964, 970-71 (9th Cir. 2009) (internal citations and quotation marks omitted; alterations in

21 original).  Officers lose their shield of qualified immunity "[o]nly where the warrant application is so

22 lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Malley*

23 *v. Briggs,* 475 U.S. 335, 344-45 (1986) (citing *U.S. v. Leon,* 468 U.S. 897, 923 (1984)).  The inquiry

24 is  "whether a reasonably well-trained officer in [defendant's] position would have known that his

25 affidavit failed to establish probable cause and that he should not have applied for the warrant."

26 *Malley*, 475 U.S. at 345.  There is no basis for reaching any such conclusion with regard to Kasiske

27 and Alberts' actions here. *See Johnson v. Walton*, 558 F.3d 1106, 1111 (9th Cir. 2009) (finding

28 officer's belief reasonable that she had probable cause to apply for search warrant and granting her

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 10 -

CASE NO.  3:09-cv-0168 JSW

[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

1   qualified immunity); *KRL v. Estate of Moore*, 512 F.3d 1184, 1190 (9th Cir. 2008).  Further, the

2   additional members of the warrant team are entitled to qualified immunity because their reliance on

3   the warrant was objectively reasonable.  *Marks v. Clarke,* 102 F.3d 1012, 1028 (9th Cir. 1996) (citing

4   *Leon,* 468 U.S. at 920-21); *Barlow v. Ground,* 943 F.2d 1132, 1139 (9th Cir. 1991) ("A  police officer

5   generally has qualified immunity for conducting an unconstitutional search if he is acting on the

6   basis of a facially valid warrant."); *Marks v. Clarke,* 102 F.3d 1012, 1029-30 (9th Cir. 1997); *See*

7   *Maryland v. Garrison,* 480 U.S. 79, 88 (1987) (officer's reasonable failure to appreciate that a

8   facially valid warrant was overbroad when conducting a search created no Fourth Amendment

9   violation).  Zuniga and MacAdam, reasonably relied upon the facially valid warrant, and are entitled

10  to immunity.  Similarly, Shaffer and Hart's assistance was minimal and they had a reasonable basis

11  for their belief that their participation did not violate the Fourth Amendment.  Shaffer Dec. ¶4-27;

12  Hart Dec. ¶3-11.  For example, neither Shaffer nor Hart searched or seized any documents or

13  computers, but both assisted in the carrying out of seized items.  Shaf. Dec. ¶13-20; Hart Dec. ¶7-10.

14          As for the execution of the warrant, including the search of the westernmost room on the

15  ground floor and the seizure and subsequent search of computers other than those in the western loft

16  area, Plaintiffs cannot carry their burden of showing defendants' search of the  premises breached a

17  clearly established Fourth Amendment right.  In fact, Ninth Circuit precedent permitted the search of

18  the entire premises under the well-established rule applicable when the entire property was suspect

19  or under the control of the suspects.  *U.S. v. Gilman*, 684 F.2d 616, 618 (9th Cir. 1982); *U.S. v.*

20  *Whitten*, 706 F.2d 1000, 1008 (9th Cir. 1983); *U.S. v. Alexander*, 761 F.2d 1294, 1301 (9th Cir.

21  1985).

22          Therefore, the individual defendants' qualified immunity is a separate basis for granting

23  defendants' motion for summary judgment as to the Fourth Amendment claims.

24          **4.      Plaintiffs Lack Any Basis For Asserting Their Fourth Amendment
                      Claims Against Defendants In Their Official Capacities.**

25

26          Plaintiffs' claims against the individual University Defendants in their official capacities are

27  limited to claims for prospective injunctive relief.  *Doe v. Lawrence Livermore Nat'l Lab*., 131 F.3d

28  836, 840 (9th Cir. 1997) ("[T]he Eleventh Amendment allows only prospective injunctive relief to

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO
                                    - 11 -                        CASE NO.  3:09-cv-0168 JSW
[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

1    prevent an ongoing violation of federal law."). Because a suit against an official in his or her official

2    capacity is a suit against the state, a practice, policy or procedure of the state must be at issue in a

3    claim for official capacity injunctive relief. *Haber v. Melo*, 502 U.S. 21, 25 (1991). Plaintiffs have

4    not and cannot identify any practice or policy of the UCPD which resulted in the claimed violation

5    of the Fourth Amendment. Further, Plaintiffs cannot demonstrate any continuing or imminent

6    constitutional violation which could support any claim for prospective injunctive relief.

7    Accordingly, Plaintiffs' official capacity claims against the University Defendants are barred by the

8    Eleventh Amendment.

9         Plaintiffs' claims for injunctive relief are also defective because, as established above, they

10   are unable to prove any violation of their Fourth Amendment rights. In addition, in order to obtain

11   injunctive relief, Plaintiffs must demonstrate "the basic requisites of the issuance of equitable relief

12   in these circumstances – the likelihood of substantial and immediate irreparable injury, and the

13   inadequacy of remedies at law." *City of Los Angeles v. Lyons,* 461 U.S. 95, 101-03 (1983); *Stanley v.*

14   *University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994). Plaintiffs must demonstrate

15   that a "credible threat" exists that they will again be subject to the specific injury for which they seek

16   injunctive relief. *Kolender v. Lawson*, 461 U.S. 352, 355 fn.3 (1983). A reasonable showing of a

17   "sufficient likelihood" that the plaintiff will be injured again is necessary. *Lyons,* 461 U.S. at 108,

18   111. The "mere physical or theoretical possibility" of a challenged action again affecting the plaintiff

19   is not sufficient. *Murphy v. Hunt,* 455 U.S. 478, 482 (1982). Here, neither EBPS nor Long Haul can

20   demonstrate any probability they will be injured again based on an improper search and seizure of

21   their property. Plaintiffs do not qualify for injunctive relief because they are unable to show that the

22   practices to which they object are likely to be repeated *as to them*. *Sample v. Johnson,* 771 F.2d

23   1335, 1339 (9th Cir. 1985). Finally, Plaintiffs have failed to demonstrate they lack an adequate

24   remedy at law for the return of the copies of the seized computers which remain in custody.

25   California law provides adequate remedies for the return of any seized property, including a motion

26   under Cal .Penal Code §1536. *See City of West Covina v. Perkins,* 525 U.S. 234, 240-41 (1999).

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 12 -                                    CASE NO.  3:09-cv-0168 JSW
[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

**B.**     **Defendants Are Entitled To Summary Judgment On Plaintiffs' Third Cause Of Action For Violation Of The Privacy Protection Act.**

Subject to certain exceptions, the Privacy Protection Act ("PPA") makes the search or seizure of certain materials unlawful if: (a) the materials are "work product materials" prepared, produced, authored, or created "in anticipation of communicating such materials to the public," 42 U.S.C. §2000aa-7(b)(1); (b) the materials include "mental impressions, conclusions, or theories" of its creator, §2000aa-7(b)(3); and (c) the materials are possessed for the purpose of communicating the material to the public by a person "reasonably believed to have a purpose to disseminate to the public" some form of "public communication," §§2000aa-7(b)(3), 2000aa(a).  Alternatively, the PPA applies when the materials are: (a) "documentary materials" that contain "information," §2000aa-7(a), and (b) the materials are possessed by a person "in connection with a purpose to disseminate to the public" some form of "public communication."  §§2000aa(b), 2000aa-7(a).

Here, Plaintiffs' PPA claim fails, because Defendants lacked any knowledge or belief that either plaintiff was engaged in publishing activities at the Long Haul premises.  Second, even if Defendants knew of such activities, there would still be no liability under the PPA, because their conduct falls within multiple exceptions set forth in the statute.  Third, each of the individual University Defendants have an additional defense, based on their reasonable, good faith belief in the lawfulness of their actions.

**1.**     **Defendants Lacked Any Knowledge Or Belief That Plaintiffs Engaged In Publishing Activities At The Shattuck Street Premises.**

The PPA prohibits searches and seizures only of those protected materials in the possession of a person reasonably believed to be engaged in publishing activities.  *See* 42 U.S.C. §2000aa(a).  At most, certain Defendants reasonably believed that, as an "infoshop," Long Haul was engaged in the lending, sale, or distribution of books, 'zines, or newspapers.  Kas. Dec. ¶97; Alb. Dec. ¶56.  They did not believe that Long Haul was engaged in the production or publishing of any such materials.  Kas. Dec. ¶89; Alb. Dec. ¶53; Zun. Dec. ¶49; Mac. Dec. ¶32.  Specifically, Defendants lacked any knowledge or belief that the computers seized from the eastern loft office were used in publishing Slingshot, or in any other publishing activity.  Kas. Dec. ¶106; Alb. Dec. ¶64; Zun. Dec.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 13 -

CASE NO.  3:09-cv-0168 JSW

[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

1  ¶55; Mac. Dec. ¶26.

2    Plaintiffs cite various "facts" seeking to demonstrate that Defendants had the requisite

3  knowledge of publishing activities.  They also cite additional facts, which, they contend, Defendants

4  "could have" known about, had they investigated further.[9]  These latter facts are irrelevant to the

5  assessment of PPA liability.[10]  Defendants were unaware of any publishing activities at Long Haul.

6  Kas. Dec. ¶89; Alb. Dec. ¶53; Zun. Dec. ¶49; Mac. Dec. ¶32; Shaf. Dec. ¶¶26-27; Hart Dec. ¶¶11.

7  15.  Their belief that no publishing was taking place was objectively reasonable in light of the facts

8  they knew at the time.  Accordingly, they cannot be liable for violating the PPA.  *See Teichberg v.*

9  *Smith*, 734 F.Supp.2d 744, -- (D. Minn. 2010) (Where no officers testified to knowledge that plaintiff

10  was a journalist, no violation of the PPA occurred because the officers did not knowingly seize

11  documentary evidence in the possession of one with a purpose to disseminate it to the public);

12  *Whalen v. Langfellow,* 731 F.Supp.2d 868, 885 (D. Minn. 2010).

13      **a.**  ***Slingshot.***

14    Plaintiffs are unable to cite facts demonstrating that Defendants were aware (or should have

15  been aware, in light of the facts known at the time) of Long Haul's publication of Slingshot from

16  3124 Shattuck.

17    <u>Text in Slingshot newspapers</u>:  Plaintiffs inaccurately assert that every issue of Slingshot

18  since 1994 "says that it is published from that Shattuck Avenue address."[11]  Even if this were true, it

19  is irrelevant, since no Defendant recalls ever reading such a statement, nor do they recall reading the

20  actual statement which is the apparent basis for Plaintiffs' characterization.  Kas. Dec. ¶28; Alb. Dec.

21
22    [9]  For example, Plaintiffs suggest Defendants "could have searched for EBPS on the Internet and would have found the group's Myspace page."  (Pltffs' MPA at p. 21.)

23    [10]  The PPA does not impose an obligation on law enforcement officials to undertake an
24  investigation into whether or not PPA-protected materials might be present at a proposed search location.  Rather, the statute simply creates an objective standard for determining whether, *in light of the facts known to the officer at the time*, the officer "reasonably believed" the person
25  possessing the materials was engaged in publishing activities.  *Steve Jackson Games, Inc. v. U.S. Secret Service,* 816 F.Supp. 432, 440 (W.D. Tex. 1993).

26    [11]  Plaintiffs did not put a Slingshot issue into evidence.  In fact, the Autumn, 2008 issue
27  of Slingshot includes text stating "Slingshot Newspaper" in bold large type, next line: "Sponsored by Long Haul": next line "3124 Shattuck Avenue, Berkeley, CA 94705."  Ellis Dec.
28  ¶14, Ex. M.  Far from "saying it is published" from the Shattuck address, this can reasonably be read as simply stating that Slingshot's "sponsor," Long Haul, is located at the Shattuck address.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 14 -

CASE NO.  3:09-cv-0168 JSW

[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

¶32; Zun. Dec. ¶27; Mac. Dec. ¶15.

Text on Long Haul website:  Plaintiffs point to text and a link appearing at the bottom of one of the site's multiple pages, indicating that Slingshot was among the "individual collectives at the Long Haul."  This statement says nothing about publication of Slingshot at 3124 Shattuck. Moreover, no Defendant recalls reviewing this statement.  Kas. Dec. ¶28; Alb. Dec. ¶32; Zun. Dec. ¶27; Mac. Dec. ¶15.  Kasiske, Zuniga, and Alberts each reviewed portions of the Long Haul site, but none recall viewing the page containing the link to Slingshot.  Kas. Dec. ¶26-29; Alb. Dec. ¶13; Zun. Dec. ¶14.

Slingshot "banner" above the eastern loft space:  The "banner" was among dozens of signs and posters that blanketed the interior wall spaces at Long Haul.  Kas. Dec. ¶84; Alb. Dec. ¶50; Zun. Dec. ¶47; Mac. Dec. ¶25.  None of the Defendants noticed this particular "banner" at the time of the raid.  Kas. Dec. ¶104; Alb. Dec. ¶50; Zun. Dec. ¶47; Mac. Dec. ¶25.  Moreover, there was nothing about the banner signifying that Slingshot was based in the eastern loft room, or that it engaged in publishing activities there.

Issues of Slingshot in news rack in front room:  Plaintiffs contend there were a number of issues of Slingshot in the front room news rack.[12]  Even if true, this would be entirely consistent with Defendants' understanding that Long Haul was an "infoshop" that sold and distributed newspapers and zines.  Kas. Dec. ¶14; Alb. Dec. ¶9; Zun. Dec. ¶10; Mac. Dec. ¶12.  It did nothing to alert Defendants to any on-site publication of Slingshot.  Kas. Dec. ¶106; Alb. Dec. ¶64; Zun. Dec. ¶60; Mac. Dec. ¶26.

Slingshot's webpage:  No Defendant recalls ever viewing this webpage, with the exception of Zuniga.  Kas. Dec. ¶26; Alb. Dec. ¶32; Mac. Dec. ¶15.  Zuniga testified that he saw the webpage on or before February 19, 2008, more than six months before the search of Long Haul.  Zun. Dec. ¶27. According to Plaintiffs' evidence, the webpage stated in 2008 that Slingshot "is an all volunteer, non-profit, tax exempt project of the Long Haul."  Zuniga commented in an email to Alberts that "On their home page they claim an affiliation with the Long Haul on 3124 Shattuck Avenue here in

---

[12]  Defendants object to Ex. 16 (photo of news rack) to the Palmer Dec. as lacking foundation.  The photo was taken many days after the August 27, 2008 search.  Ellis Dec. ¶15.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 15 -                                   CASE NO. 3:09-cv-0168 JSW
[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

Berkeley." *Id.* at ¶29. Zuniga does not recall seeing or taking note of anything on the page that suggested to him that Slingshot was published from 3124 Shattuck, nor does he recall being aware of an "affiliation" between Long Haul and Slingshot six months later, when Long Haul was searched. *Id.* at ¶30.

### b.   *EBPS.*

Plaintiffs cite no facts demonstrating Defendants were aware (or should have been aware, in light of the facts known at the time) of EBPS engaging in any publishing activities at Long Haul at the time of the search.

The sole fact Plaintiffs point to is a cryptic reference which allegedly appeared on Long Haul's website in August 2008, which simply advertises the "East Bay Prisoner Support Night" and briefly describes EBPS as a "prison abolitionist project formed by members of the Anarchist Black Cross, Prison Activist Resource Center and Prison Literature Project." Palmer Dec. ¶11, Ex. 1. There is nothing here even suggesting that EBPS maintained an office at Long Haul, and certainly nothing suggesting EBPS published anything from Long Haul. No Defendant was aware that EBPS maintained an office at Long Haul, that it engaged in publishing activities generally, or that it published anything from Long Haul. Kas. Dec. ¶99; Alb. Dec. ¶71; Zun. Dec. ¶53; Mac. Dec. ¶27; Shaf. Dec. ¶27, Hart Dec. ¶11.

<u>EBPS Was Not Engaged In Publishing</u>. More fundamentally, regardless of the state of Defendants' knowledge, EBPS cannot assert a PPA claim, because in fact it was not engaged in any publishing activities as defined by the PPA. EBPS is a very small, very loosely run "organization."[13] EBPS asserts that it engages in letter writing to individual prisoners, and that it sends out literature (which it apparently obtains from third parties) to various individuals and groups on its mailing list. Lyons Dec. ¶¶3,4. Defendants are aware of no evidence that EBPS publishes any "newspaper, book, broadcast, or other similar form of public communication." §2000aa-7(a), (b).

---

[13] EBPS has no formal structure or legal identity. It is comprised of three volunteers who created it in January 2008. *Lyons,* 11:13-15, 16:6-13; 21:9-21, 22:5-21. It is not incorporated, does not file taxes, and does not have a bank account. *Id.* The group would meet at most weekly and sometimes a month would go between meetings. *Id.* at 17:2-8.

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 16 -                                    CASE NO.  3:09-cv-0168 JSW
[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

2. **Defendants' Conduct Falls Within The Criminal Suspect Exception Created By The PPA.**

Even if plaintiffs could establish they knowingly seized computers containing PPA-protected materials – which they cannot – Defendants' would remain entitled to summary judgment, because their conduct falls within the express criminal suspect exception set forth in the PPA.

The PPA expressly exempts from its requirements any search or seizure of protected materials where "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." §2000aa(a)(1), 2000aa(b)(1). Where applicable, this "criminal suspect exception" furnishes a complete defense to an alleged PPA violation. *See, e.g.*, *S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553 (6th Cir. 2007); *Berglund v. City of Maplewood*, 173 F.Supp.2d 935 (D. Minn.2001), *aff'd* 50 Fed.Appx. 805, 2002 WL 31609767, *cert. denied*, 539 U.S. 965.

The criminal suspect exception is clearly applicable here. Defendants had ample cause to believe that a person affiliated with Long Haul was complicit in sending the threatening emails. Kas. Dec. ¶¶45-47, 50, 52-55, 75 and Ex. N. Defendants had traced these emails back to the Long Haul premises. *Id.* at ¶¶35-45, 50, 52-55 and Ex. N. They were aware from their investigation that Long Haul was actively involved in animal rights activities in Berkeley, and that it supported animal rights activists who were harassing UCB researchers. *Id.* at ¶¶20-24. Based on these facts, Defendants did not view Long Haul as an "innocent third party," but instead reasonably and prudently viewed individuals affiliated with Long Haul as criminal suspects.[14] Defendants were not obliged by the PPA to forego a search warrant and instead serve a subpoena on individuals for whom there was probable cause to suspect were complicit in the very crime under investigation. Under these circumstances, the suspect exception to the PPA clearly applies. *See, e.g., DePugh v. Sutton*, 917

---

[14] Defendants recognized that others who were not affiliated with Long Haul may also have been responsible for sending the threatening emails from the Long Haul premises, including patrons of Long Haul who had access to computers in the "public access" room at Long Haul. Kas. Dec. ¶¶45-47, 75. They were not so imprudent, though, to assume that the threatening emails must have been sent by an unaffiliated patron. Indeed, such an assumption would have unreasonably ignored the possibility the emails originated from other computers on the premises sharing the same IP address, and would have disregarded the substantial evidence linking Long Haul with animal rights activists. Kas. Dec.¶¶20-24, 35-45, 50, 52-55 and Ex. N.

Schiff Hardin LLP
Attorneys At Law
San Francisco

- 17 -                                    CASE NO. 3:09-cv-0168 JSW
[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

1   F.Supp. 690, 696 (W.D. Mo. 1996) ("The P.P.A. clearly allows the government to depart from the

2   requirements of the Act in those instances in which the person suspected of a crime is in possession

3   of documents related to the crime.")[15]

4        The criminal suspect exception extends to seizure of computers containing PPA-protected

5   material commingled with evidence of a crime.  *Guest v. Leis*, 255 F.3d 325 (6th Cir. 2001).  In

6   *Guest*, the Sixth Circuit addressed claims arising out of the seizures of two electronic bulletin board

7   servers suspected of housing evidence and contraband relating to obscenity, child pornography, and

8   other crimes.  The Sixth Circuit noted that "when police execute a search warrant for documents on a

9   computer, it will often be difficult or impossible (particularly without the cooperation of the owner)

10  to separate the offending materials from other 'innocent' material on the computer" at the site of the

11  search.  *Id.* at 341-42.  Given these pragmatic concerns, the court refused to find PPA-liability for

12  incidental seizures; to construe the PPA otherwise would "prevent police in many cases from seizing

13  evidence located on a computer."  *Id.* at 342.  Instead, the court held that "when protected materials

14  are commingled on a criminal suspect's computer with criminal evidence that is unprotected by the

15  act, we will not find liability under the PPA for seizure of the PPA-protected materials."  *Id.*  The

16  same is true here.  *See also U.S. v. Hunter*, 13 F.Supp.2d 574, 582 (D. Vt. 1998) (concluding that

17  materials for weekly legal newsletter published by the defendant from his law office "relate" to the

18  defendant's alleged involvement in his client's drug crimes when the former was inadvertently seized

19  in a search for evidence of the latter).

20          **3.      Plaintiffs' Claims Against The University Defendants Are Barred By The
                      Good Faith Defense Available Under The PPA.**

21

22          As a separate, additional, and complete defense to Plaintiffs' PPA claims, each of the

23  individual University Defendants is entitled to the statutory good faith defense provided by the PPA.

24  Under the statute, a damages action may be pursued against an individual state employee where, as

25

26          [15] For similar reasons, Defendants' conduct also falls within another PPA exception
    which applies where there is reason to believe that service of a subpoena "would result in the
27  destruction, alteration, or concealment" of "documentary materials" protected under the PPA.  42
    U.S.C.A. §2000aa(b)(3).  Clearly, Defendants' reasonable suspicions regarding complicity on the
28  part of a person or persons affiliated with Long Haul suffice to trigger this exception as well.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 18 -                                              CASE NO. 3:09-cv-0168 JSW
[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

1    here, the state has not waived its sovereign immunity.  42 U.S.C. §2000aa-6(a)(1).  However, such

2    claims against individual employees are subject to the PPA's "good faith defense," which provides a

3    complete defense to liability where the individual "had a reasonable good faith belief in the

4    lawfulness of his conduct."  42 U.S.C. §2000aa-6(b).

5         The good faith defense bars Plaintiffs' claims.  First, with regard to the criminal suspect

6    exception, even if – notwithstanding the ample facts supporting a finding of probable cause – the

7    court were to conclude there was insufficient probable cause to suspect a person affiliated with Long

8    Haul was complicit in the electronic stalking, the University Defendants would still have no PPA

9    liability, because they each had a good faith, reasonable belief that probable cause existed.  Kas. Dec.

10   ¶¶50, 52, 112 and Ex. N; Alb. Dec. ¶77; Zun. Dec. ¶62; Mac. Dec. ¶35.

11        Additionally, each University Defendant had a reasonable, good faith belief that Long Haul's

12   activities as an "infoshop" included lending and sale of books, zines, and newspapers, but did not

13   extend to any publishing activities occurring at 3124 Shattuck.  Kas. Dec. ¶¶89, 97; Alb. Dec. ¶¶53,

14   56; Zun. Dec. ¶49; Mac. Dec. ¶32.   This good faith belief furnishes a complete defense.

15   **C.       Defendants Are Entitled To Summary Judgment On Plaintiff's Fourth Cause Of
              Action Seeking Declaratory Relief.**
16

17        Plaintiffs' complaint includes a claim for declaratory relief under 28 U.S.C. §2201, *et seq*.

18   Because the Court dismissed this claim against Shaffer and Hart by order dated November 30, 2009

19   [Dkt. 69, p. 17], Plaintiffs' declaratory relief claim is operative against defendants Alberts, Kasiske,

20   MacAdam, and Zuniga only.  Because Plaintiffs' claims for alleged constitutional violations fail for

21   the reasons described above, their declaratory relief claims also fail.  *See*, *e.g*., *Carr HUML*

22   *Investors, LLC v. Arizona*, 2007 WL 4403981, 18 (D. Ariz. 2007).  28 U.S.C. §2201 does not provide

23   Plaintiffs with an independent claim for relief against any defendant.  *Dong v. Chertoff*, 513

24   F.Supp.2d 1158, 1160 (N.D. Cal. 2007) (citations omitted).

25   ///

26   ///

27   ///

28   ///

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 19 -                    CASE NO.  3:09-cv-0168 JSW
[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

1    **II.**    **CONCLUSION**

2           For the foregoing reasons, the Court GRANTS defendants' joint motions and enters

3    summary judgment in favor of each defendant on each claim asserted against them by Plaintiffs

4    Long Haul and EBPS, respectively and DENIES Plaintiffs' motion for summary judgment in its

5    entirety.

6           IT IS SO ORDERED.

7

8    Dated:  April ___, 2011

9                                                          _____
                                                           Hon. Jeffrey S. White
10                                                         UNITED STATES DISTRICT JUDGE

11

12

13   SF\9974071.1

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                                                    - 20 -                    CASE NO.  3:09-cv-0168 JSW
[PROPOSED] ORDER ON DEFENDANTS' JOINT NOTICES OF MOTION AND MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFFS'
                                    MOTION FOR SUMMARY JUDGMENT