Jennifer Stisa Granick, Esq. (SBN 168423)
Matthew Zimmerman, Esq. (SBN 212423)
Marcia Hofmann, Esq. (SBN 250087)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333
Facsimile: (415) 436-9993
Email: jennifer@granick.com
        mattz@eff.org
        marcia@eff.org

Michael T. Risher (SBN 191627)
AMERICAN CIVIL LIBERTIES
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, California 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437
Email: mrisher@aclunc.org

Attorneys for Plaintiffs
LONG HAUL, INC. and
EAST BAY PRISONER SUPPORT

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LONG HAUL, INC. and EAST BAY PRISONER SUPPORT,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA; MITCHELL CELAYA; KAREN ALBERTS; WILLIAM KASISKE; WADE MACADAM; TIMOTHY J. ZUNIGA; MIKE HART; LISA SHAFFER; AND DOES 1-25,<br><br>Defendants. | ) Case No. C 09-00168-JSW<br>)<br>)<br>)<br>)<br>)<br>)<br>) **REPLY IN SUPPORT OF PLAINTIFFS'**<br>) **MOTION FOR SUMMARY JUDGMENT**<br>) **AND OPPOSITION TO DEFENDANTS'**<br>) **MOTION FOR SUMMARY JUDGMENT**<br>)<br>)<br>)<br>)<br>) |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

I.   INTRODUCTION ..................................................................................... 1

II.  ARGUMENT ............................................................................................ 3

    A.   Defendants Retaliated Against Long Haul For Supporting Animal Rights Activities Despite the Fact that These Activities Were First Amendment Protected and But A Small Part of the Public Services Long Haul Provided In 2008. ................................................. 3

    B.   Defendants Cannot Rehabilitate the Warrant Based on a New Declaration Drafted to Support Their Summary Judgment Motion........................................................................ 6

    C.   Defendants Cannot Save This Facially Overbroad Warrant by Reference to the Statement of Probable Cause or by Arguing that Their Search Was Otherwise "Reasonable." ....... 10

    D.   The Execution of the Search Violated the Fourth Amendment. ..................................... 12

        1.   The Search Of The Slingshot Office Violated The Fourth Amendment................... 12

        2.   The Search Of EBPS Violated The Fourth Amendment......................................... 13

        3.   The Lab's Forensic Search Of Long Haul's Computers Violated The Fourth Amendment. ................................................................................................ 14

    E.   The Defendants are Not Entitled to Qualified Immunity................................................ 15

    F.   Plaintiffs are Entitled to Summary Judgment on Their PPA Claims.............................. 19

    G.   Plaintiffs are Entitled to Injunctive and Declaratory Relief to Require the Government to Return Information It Unlawfully Seized. ........................................................................ 22

    H.   Defendants' Evidence Is Irrelevant and Lacks Foundation. ......................................... 23

    I.   Defendants' Objections Should Be Overruled Because Plaintiffs' Evidence Is Based on Sworn Testimony, Documents Produced In Discovery, and Delcarations Of Witnesses Who are Acknowledged to be the Persons Most Knowledgeable About Long Haul and EBPS. ........................................................................................................................ 25

III. CONCLUSION ....................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Hicks*, 480 U.S. 321 (1987) .............................................................................. 13, 14

*BellSouth Telecomm. v. W.R. Grace & Company-Conn.*, 77 F.3d 603 (2d Cir. 1996) ................. 25

*Bodney v. Pima County Sheriff's Dept.*, 2009 WL 2513786 (D. Ariz. 2009) .............................. 22

*Boyd v. City of Oakland*, 458 F. Supp. 2d 1015 (N.D. Cal. 2006) ............................................ 25

*Broadcast Music, Inc. v. Allis*, 667 F. Supp. 356 (S.D. Miss. 1986) ........................................ 22

*Cardwell v. Kurtz*, 765 F.2d 776 (9th Cir. 1985) .................................................................. 23

*Citicasters, Inc. v. McCaskill*, 883 F. Supp. 1282 (W.D. Mo. 1995) ...................................... 24

*Citicasters, Inc. v. McCaskill*, 89 F.3d 1350 (8th Cir. 1996) ................................................ 24

*Edwards v. Toys 'R' Us*, 527 F. Supp. 2d 1197 (C.D. Cal. 2007) ............................................ 26

*Ewing v. City of Stockton*, 588 F.3d 1218 (9th Cir. 2009). ..................................................... 9

*Flintkote Co. v. General Acc. Assur. Co.*, 410 F. Supp. 2d 875 (N.D. Cal. 2006) ........................ 25

*Groh v. Ramirez*, 540 U.S. 551 (2004) ........................................................................ passim

*Hideout Records and Distributors v. El Jay Dee, Inc.*, 601 F. Supp. 1048 (D. Del. 1984) ............ 22

*Horton v. California*, 496 U.S. 128 (1990) ......................................................................... 13

*Illinois v. Gates*, 462 U.S. 213 (1983) ................................................................................ 8

*In re Grand Jury Investigation Concerning Solid State Devices, Inc.*, 130 F.3d 853 (9th Cir. 1997) ................................................................................................................................. 19

*In re Kaypro*, 218 F.3d 1070 (9th Cir. 2000) ..................................................................... 26

*James v. Sadler,* 909 F.2d 834 (5th Cir. 1990) .................................................................... 17

*Klitzman, Klitzman and Gallagher v. Krut*, 744 F.2d 955 (3d Cir. 1984) .................................. 24

*KRL v. Moore*, 384 F.3d 1105 (9th Cir. 2004) .......................................................... 13, 16, 17

*Maryland v. Garrison*, 480 U.S. 79 (1987) ......................................................................... 23

*McKenzie v. Lamb*, 738 F.2d 1005 (9th Cir. 1984) ................................................................. 8

*Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989) ................................................................. 17

*Mena v. City of Simi Valley*, 226 F.3d 1031 (9th Cir. 2000) ................................................... 14

*Millender v. Los Angeles*, 620 F.3d 1016 (9th Cir. 2010) (en banc) ..................................... passim

*Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260 (9th Cir. 1998) ................ 24

*Olagues v. Russoniello*, 770 F.2d 791 (9th Cir. 1985) ........................................................... 24

*Patsy v. Board of Regents*, 457 U.S. 496 (1982) ................................................................... 24

*People v. Borrelli*, 77 Cal. App. 4th 703 (Cal. Ct. App. 2000) ................................................ 7

*Poolaw v. White*, 2007 WL 6970817 (D. N.M. 2007) ........................................................... 13

*Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022 (9th Cir. 2007) ..................................... 11

*Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008) ................................................................... 24

*Sorrels v. McKee*, 290 F.3d 965 (9th Cir. 2002) ................................................................... 16

*Stanford v. Texas*, 379 U.S. 476 (1965) .............................................................................. 18

*Stewart v. Pearce*, 484 F.2d 1031 (9th Cir. 1974) ............................................................... 24

*Sun v. Governmental Authorities on Taiwan*, 2001 WL 114443 (N.D. Cal. 2001) ................... 25

*Torres v. City of Los Angeles*, 548 F.3d 1197 (9th Cir. 2008) ................................................ 8

*United States v. Adams*, 343 F.3d 1024 (9th Cir. 2003) ........................................................ 6

*United States v. Adjani*, 452 F.3d 1140 (9th Cir. 2006) ........................................................ 9

*United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982) ........................................................ 16

*United States v. Fleet Management Ltd.*, 521 F. Supp. 2d 436 (E.D. Pa. 2007) ....................... 19

*United States v. Ford*, 184 F.3d 566 (6th Cir. 1999) ............................................... 10, 16, 19

*United States v. Gomez-Soto*, 723 F.2d 649 (9th Cir. 1984) ................................................. 16

*United States v. Hay*, 231 F.3d 630 (9th Cir. 2000) .............................................................. 9

*United States v. Hinds*, 856 F.2d 438 (1st Cir. 1988) ........................................................... 14

*United States v. Hunter*, 13 F. Supp. 2d 574 (D. Vt. 1998) ................................................. 19

*United States v. Jacobsen*, 466 U.S. 109 (1984) .................................................................. 17

*United States v. Kow*, 58 F.3d 423 (9th Cir. 1995) .................................................. 15, 16, 19

*United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997) ............................................................. 9

*United States v. McGrew*, 122 F.3d 847 (9th Cir. 1997) ....................................................... 11

*United States v. Ofshe*, 817 F.2d 1508 (11th Cir. 1987) ....................................................... 14

*United States v. Otero*, 563 F.3d 1127 (10th Cir. 2009) ....................................................... 19

*United States v. Riccardi*, 405 F.3d 852 (10th Cir. 2005) ..................................................... 18

iii

*United States v. Stefonek*, 179 F.3d 1030 (7th Cir. 1999)..................................10, 15, 16

*United States v. Washington*, 797 F.2d 1461 (9th Cir. 1986) .................................... 16

*United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990)............................................ 18

*United States v. Wong*, 334 F.3d 831 (9th Cir. 2003)............................................... 10

*Whiteley v. Warden*, 401 U.S. 560 (1971) ..................................................1, 6, 13, 26

**Statutes and Legislative Authorities**

42 U.S.C. § 2000aa.................................................................................................. 22

42 U.S.C. § 2000aa(b) ....................................................................................... 3, 23

47 U.S.C. § 2000aa-6(b) ........................................................................................ 23

Cal. Pen. Code § 649(a) ........................................................................................... 7

Cal. Pen. Code § 649(e) ........................................................................................... 7

Cal. Pen. Code § 649(f).............................................................................................. 7

Cal. Penal Code § 1524 ......................................................................................... 7, 8

Cal. Penal Code § 1536 ............................................................................................ 24

Cal. Penal Code § 646.9(g) ....................................................................................... 7

Federal Rule of Evidence 1002 ............................................................................... 26

Federal Rule of Evidence 602 ........................................................................... 24, 25

Federal Rule of Evidence 701 ................................................................................. 25

Federal Rule of Evidence 702 ................................................................................. 25

Federal Rules of Civil Proceedure 30(b)(6)........................................................... 26

S. Rep. 96-874 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3950 ......................... 19, 22

**Other Authorities**

2 LaFave *Search and Seizure* § 3.2(d) (4th ed. 2004) ........................................... 13

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.   **INTRODUCTION**

Defendants seek to justify their search and seizure of Plaintiffs' private information and property by presenting this Court with information that they failed to provide to the magistrate issuing the warrant.  This effort should fail because (1) a warrant cannot be justified on the basis of information outside the four corners of the affidavit; (2) the information provided does not demonstrate probable cause to search or seize the Slingshot computers, the East Bay Prisoner Support (EBPS) computer, CDs, DVDs, the Slingshot photo file, EBPS mail, Long Haul's library lending logs, or any of the other information the officers reviewed or took from the premises, or to search Long Haul data for evidence of any crimes other than the identity of the person who sent the June 2008 threatening emails; (3) Defendants ignore facts that they knew or should have known which would have curtailed a reasonable officer's search and seizure to only information on the public access computers regarding the June emails; and (4) much of the information provided lacks foundation, authentication, personal knowledge and is hearsay.

The validity of a search warrant depends on the information presented in the affidavit, not on what an officer wished he had said after the fact.  *Whiteley v. Warden*, 401 U.S. 560, 565-66, 565 n.8 (1971); *Millender v. Los Angeles*, 620 F.3d 1016, 1029, 1034 (9th Cir. 2010) (en banc). The affidavit in this case could only have provided probable cause to search for logs of who used the public access computers during June of 2008, to seize those computers and to search them for evidence of who sent the June 2008 emails.  This is a small fraction of the information the warrant purported to authorize, and an even smaller fraction of what the raid team and the Forensics Lab actually searched and seized.   The warrant could not lawfully have authorized a search for evidence related to the March 2008 misdemeanor emails, the unmentioned-until-now May 2008 emails, photos of protest activity in Seattle, the nature of EBPS's mail, or evidence that suspects in other animal rights activism cases used Long Haul computers.

Nor were Defendants authorized to seize computers behind locked doors that could not have been accessed or used by members of the public.  The only information Kasiske provided to the magistrate regarding Long Haul's potential connection to the suspect was that (1) the March and June 14, 2008 email messages came from an IP address at Long Haul; (2) Long Haul is a

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

resource and meeting center for radical activists; (3) animal rights activists have held meetings at the Long Haul; and (4) Long Haul's website advertises that they offer a computer room for "activist oriented access."  Kasiske Decl., Ex. N, at 2 (Statement of Probable Cause) (Docket No. 115-14).  From this information, the magistrate could have concluded that an animal rights activist may have used the Long Haul computer room to send the threatening emails, but nothing more. Yet the warrant language Kasiske drafted went far beyond the scope of probable cause, and the officers' actions went far beyond even that.

Defendants now say that they viewed Long Haul as a potential bad actor.  Of course, they did not communicate their prejudice to the magistrate, and for that reason alone, the defense fails. Moreover, the claim does not bear scrutiny.  None of the aspersions that Defendants cast against Long Haul in their various new declarations establishes probable cause to believe that Long Haul was affiliated with the individual who sent the June threatening emails the officers were purportedly investigating.  Instead, Defendants' argument is further evidence that their conduct in this case was influenced by their negative perception of Long Haul's constitutionally protected political views and activities.

As to the Privacy Protection Act, Defendants' claimed ignorance of the fact that the Slingshot office and computers were used in any publishing activity is unreasonable in light of the uncontested facts that Defendants were familiar with Slingshot as an online publication, that they knew Slingshot "claimed an affiliation" with Long Haul, that every issue of Slingshot stated it was published from the Long Haul address, that the Infoshop had a rack of copies of the Slingshot newspaper, and that the locked middle loft door had a huge banner sign over it that said "Slingshot."  Similarly, their claim that they did not know the EBPS office and computer were used in any publishing activity is inconsistent with the facts that Kasiske reviewed the Long Haul webpage (which stated that EBPS had a "prison-related book/zine/video library" and that it hosted a regular event where people would "read and reply to prisoner mail" and "correspond with Political Prisoners"), that the EBPS office was locked with a large sign on the door which gave notice to the officers that that was a private office for EBPS, and  that Kasiske specifically

Case No. C 09-00168-JSW

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

identified the office as the "downstairs offices – "East Bay Prisoner Support" in his sworn inventory.  Kasiske Decl., Ex. R, at 3 (Docket No. 115-18).  In light of these undisputed facts, Defendants cannot evade liability now merely by filing declarations asserting that they did not believe that Slingshot or EBPS were publishers or even entities who had the "purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication."  42 U.S.C. § 2000aa(b) (documentary materials may not be searched for or seized).

## II.   ARGUMENT

### A.   Defendants Retaliated Against Long Haul For Supporting Animal Rights Activities Despite The Fact that These Activities Were First Amendment Protected and But A Small Part of the Public Services Long Haul Provided In 2008.

Defendants now confess[1] that they viewed individuals affiliated with Long Haul as criminal suspects because Long Haul was "actively involved in animal rights activities in Berkeley", and it "supported animal rights activists who were harassing UCB researchers". Defendants' Opposition and Cross Motion for Summary Judgment 30, hereinafter "Defendants' MSJ Opp.").  Defendant officers' distaste for Long Haul was manifest before the raid.  *See* Zimmerman Decl., Ex. 29 (Docket No. 106-8) (e-mail from Defendant Kasiske to Defendant Alberts) ("Somehow I'm not surprised that the IP address comes back to the Long Haul. … Maybe if we go over there and ask them really nicely, they will tell us who was using their computer room that night, ha, ha.").  Unsurprisingly, the officers' actions illustrated their bias against Long Haul. Long Haul has long alleged that the officers executed a search warrant instead of sending a subpoena for information, and that, once inside the Infoshop, the officers rummaged through

---

[1] This assertion is new, which is another reason to disregard it.  Defendant Kasiske was asked during his deposition whether he believed Long Haul was any more likely than any other establishment to fail to comply with a subpoena or other valid legal process.  He answered, "Well, I guess I'll just go back to what I said is that the Long Haul was a place where animal rights activists were going, and I didn't know if who was running the Long Haul and if those people were supporting or involved in the group Stop Cal Vivisection and if they would assist them or share information with them if a subpoena was served.  I don't know if it's more likely in that case versus in another organization that you're mentioning."  Zimmerman Suppl. Decl., Ex. 4, at 91:19-92:2.  Notably, Kasiske did not claim probable cause to believe Long Haul was "complicit" in sending the emails, or even that it was "actively involved" in animal rights or "supported" harassers.

3

private photographs, library logs, sales logs and mail, among other improper actions, exactly because they did not like Plaintiff's politics. Long Haul was right. The "animal rights activities" to which Defendants now point to as justification for their disparate treatment of Long Haul were both protected by the First Amendment, and were but a small fraction of the free speech and assembly activities that Long Haul and its patrons have long participated in. Yet, Defendants intentionally, and improperly, treated Long Haul people like criminals as a result.

First, Defendants point to the April 2008 fundraiser/café night held at Long Haul for the group Stop Cal Vivisection, at which the group sought to raise money for an activist facing "two misdemeanor charges – disturbing the peace and trespassing" and also to help an individual "whose car was recently searched and impounded." Zimmerman Suppl. Decl., Ex. 8. This fundraiser, which was perfectly lawful political activity, did not involve support for anybody who threatened UC researchers or otherwise participated in felonious or dangerous activity. And the fact that it was held at Long Haul does not mean that Long Haul endorsed it: the Infoshop hosted café nights for a wide variety of causes every Sunday night, just as its website that Kasiske reviewed specified. Zimmerman Suppl. Decl., Ex. 2, at 186:21-25 (Deposition of Jesse Palmer, vol. 1 ("*Palmer I*")). For example, the website at the time of the raid advertised a café night for an art collective in Indonesia. Palmer Decl., Ex. 1, at 2 (Docket No. 108-1). It was Long Haul's practice to give groups holding a café night a matching grant of $50, regardless of the group or cause.

Defendants next point to an event at which Peter Young spoke and where the movie "Behind the Mask" was screened as evidence that Long Haul was complicit with whomever was threatening UC Berkeley researchers. But Defendants' evidence relating to this event shows no connection between Mr. Young, the film, and harassing or threatening animal researchers. In fact, Mr. Young was prosecuted for freeing minks and foxes from fur farms in the Midwest in 1997. Kasiske Decl. ¶ 2 (Docket No. 115); Kasiske Decl., Ex. F, at 1 (Docket No. 115-6). Obviously, there was nothing unlawful about showing the film or about Mr. Young's speaking at the event, and the fact that Long Haul provided a forum for Mr. Young to speak about freeing animals from

1  fur farms in Wisconsin in 1997 does not suggest that Long Haul was involved in sending

2  threatening emails to animal researchers a decade later.  Part of Long Haul's purpose is to provide

3  a forum for political discourse, and it regularly held "radical movie nights": nine were advertised

4  on the Long Haul website in August of 2008, including movies about shark protection, Black

5  Panther George Jackson, the Attica Prison rebellion, New York's Critical Mass bicycle ride, a

6  punk band, and El Salvador.  Palmer Decl., Ex. 1, at 1-2 (Docket No. 108-1).  Long Haul is no

7  more complicit with animal rights activists – especially those few that threaten researchers – than

8  it is with "black power" groups or vegan cyclists.

9  The final factor that Defendants point to in support of the idea that Long Haul was

10  somehow complicit with animal rights activists is that there were "several instances where animal

11  rights activists were followed before or after home demonstrations to Long Haul."  Kasiske Decl.

12  ¶ 8 (Docket No. 115).  This vague claim lacks both illuminating detail and personal knowledge.

13  Following people to a public space does not implicate the managers of that space, or people

14  associated with it, in the activities of those people.  There is no indication that any of these people

15  had been engaged in anything other than lawful protest, no indication that they constituted

16  anything more than a tiny percentage of the total number of the demonstrators that UCPD

17  followed, and no reason to think that they had any particular affiliation with Long Haul other than

18  as patrons who were having a cup of coffee or using the public-access computers or lending

19  library while on their way to the nearby Ashby BART station (which Kasiske identifies as a

20  meeting place for the demonstrators he was following).  Kasiske Decl. ¶¶ 21-22 (Docket No. 115).

21  In its November 30, 2009 Order granting in part federal defendants' motion to dismiss the

22  Plaintiffs' First Amendment claims, this Court held that no cause of action lies unless the

23  Defendants acted with the impermissible motive of retaliating against Plaintiffs for or of curbing

24  Plaintiffs' First Amendment activities.  Order of November 30, 2009 at 15-16 (Docket No. 69).  In

25  their Opposition, however, Defendants admit[2] that it was the movie night, the Peter Young event,

26  the café night, and the fact that Long Haul was open to the public that led them to move against

27  ───────────────────

   [2] Statements of fact in a brief constitute judicial admissions.  *United States v. Adams*, 343 F.3d
28  1024, 1030 n.3 (9th Cir. 2003).

Case No. C 09-00168-JSW

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Long Haul as if they were criminals.  This certainly is what Plaintiffs claimed in their motion that the Court dismissed, and if this is not evidence of the retaliatory motive this Court held that the First Amendment claim requires, then it comes painfully close.

Moreover, Defendants' own words justify Plaintiffs' request for injunctive relief.  If it is this kind of activity – showing "radical" movies, letting people speak about their activism and experience in prison, opening your doors to people who may be coming from or going to lawful demonstrations, or every week allowing a different group to hold a fundraiser on premises – that attracts police suspicion of criminal sympathies, then Plaintiffs will certainly need an injunction to protect themselves in the future, as well as an order that the government expunge all of the data from Long Haul's computers that it seized and continues to hold.

**B.      Defendants Cannot Rehabilitate the Warrant Based on a New Declaration Drafted to Support Their Summary Judgment Motion.**

In arguing that the warrant was not overbroad, Defendants rely on lengthy new declarations drafted in support of this motion, rather than on the affidavit that Officer Kasiske actually submitted to the magistrate.  This legal strategy ignores the fundamental rule that "an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate." *Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971); *see Millender*, 620 F.3d at 1029, 1034 (9th Cir. 2010) (en banc) ("[I]n reviewing a search warrant, we are limited to the information and circumstances contained within the four corners of the underlying affidavit.") (citations omitted). Officer Kasiske's private thoughts about the significance of Long Haul's "sympathy for animal rights activists" and other political views, Defendants' MSJ Opp. 15 n.8 (Docket No. 114), while revealing about his motives in this case, are irrelevant to any probable cause determination.  Nor are any additional assertions Kasiske now makes to defend his investigation, including new information never given to the magistrate about the May emails, of any relevance.

Instead, what matters under the Fourth Amendment is the affidavit that Kasiske actually presented to the magistrate.  This affidavit includes information about two sets of emails, from March and June 2008.  (The May 2008 emails Defendants raise in their motion were not

6

1   mentioned at all in the affidavit, and so any information regarding those is irrelevant.)   The

2   discussion of the March emails is cursory: several U.C. professors received "harassing email

3   messages" between March 19 and March 25, all of which had been forwarded to Kasiske.  Kasiske

4   Decl., Ex. N, at 2 (Docket No. 115-14) (Statement of Probable Cause).  These messages did not

5   contain credible threats against safety, a required element for California's stalking statute, and the

6   sole crime mentioned in the affidavit.  *See* Cal. Penal Code § 646.9(g) (West 2011); *People v.*

7   *Borrelli*, 77 Cal. App. 4th 703, 714 (Cal. Ct. App. 2000).  Nor could the sending of a single email

8   to each professor constitute stalking, whatever its content, because the statute covers only

9   "repeated[]" acts against a person.  Cal. Pen. Code §§ 649(a), (e), (f).  Indeed, Kasiske and Alberts

10  "did not seek a warrant based on the March, 2008 emails because the harassment did not rise to

11  the level of a felony," Kasiske Decl. ¶ 37 (Docket No. 115), presumably because California law

12  does not authorize search warrants to search for mere evidence of a misdemeanor.  *See* Cal. Penal

13  Code § 1524.

14      The June 14 emails, however, do contain threatening language.  All three of these emails

15  were received on a single afternoon; four of them within the space of seven minutes and a single

16  email received one hour later.  Kasiske Decl., Ex. I, at 1-13 (Docket No. 115-9) (e-mails with time

17  stamps).  The affidavit indicates that all were sent from an IP address associated with Long Haul's

18  physical address.  Kasiske Decl., Ex. N, at 2 (Docket No. 115-14).  The affidavit includes the

19  following information, and only the following information about Long Haul:  "I know that the

20  Long Haul is a resource and meeting center for radical activists.  I know that animal rights

21  activists have held meetings at the Long Haul.  The Long Haul's website advertises that they offer

22  a computer room with four computers for 'activist oriented access.'"  *Id.*  Kasiske then concluded,

23  based on his training and experience, that "establishments that offer public computer access often

24  have some type of system for patrons to sign in or register to use the computers, [and a] "search of

25  Long Haul's premises could reveal logs or sign-in sheets indicating which patrons used the

26  computers on particular dates."  *Id.* at 4.  He also observes that a search of the computers "could

27  reveal information the suspect stored on the computers," including websites visited and other

28

7

email accounts used.  *Id*.  Nothing in the affidavit suggests that evidence of who sent the June emails might be found on any computers or any other type of electronic-storage devices other than the public-access computers, or on logs, if any, of who used those computers.

The remainder of the affidavit indicates that the search was for evidence relating to a felony, as required by California Penal Code § 1524, which means that that the warrant authorized a search only for evidence relating to the June 14 emails.

A judge determining whether to issue a search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  "While conclusive evidence of guilt is of course not necessary under this standard to establish probable cause, '[m]ere suspicion, common rumor, or even strong reason to suspect are not enough.'"  *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206-07 (9th Cir. 2008) (arrest case) (quoting *McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir. 1984)).  The magistrate must also ensure "that the scope of the warrant be limited by the probable cause on which [it] is based."  *Millender*, 620 F.3d at 1024 (citation omitted).  The practical, common-sense reading of the affidavit is that a single suspect (Kasiske refers to "suspect," not to "suspects," Kasiske Decl., Ex. N, at 4 (Docket No. 115-14)) used the public-access computers at Long Haul to commit a felony by sending a series of harassing emails over the course of seventy minutes on June 14, 2008.

The warrant application is notable for what it did not contain.  Kasiske did not ask to search or seize indicia of control of the premises, as is commonly done in cases where someone associated with the premises is suspected of a crime.  *See Ewing v. City of Stockton*, 588 F.3d 1218, 1229 (9th Cir. 2009).  He did not assert, much less establish, any need to search for membership lists for Long Haul, or to search for privately owned computers, or to look for records of who has access to computers other than the public-access computers.  He did not try to justify looking at photographs of protests in Seattle, or library lending logs, or mail from prisoners.  The

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   only mention was of public access computers and any logs relating to them; and that is all that the

2   warrant could properly have authorized.

3       The cases that Defendants cite simply hold that those affidavits provided probable cause

4   under circumstances that have nothing to do with the case at bar.  In *Adjani*, for example, the court

5   asked whether "there was probable cause to believe that evidence of the crime in question …

6   could be found on computers accessible to [the suspect]."  *United States v. Adjani*, 452 F.3d 1140,

7   1147 (9th Cir. 2006).  In that case, because the computers were at the suspect's home, the answer

8   was yes.  *Adjani* does not justify a search of computers in a business's private, locked offices

9   where the suspect was merely a patron who used the public-access computers.

10      And while a warrant may properly authorize the search of external storage devices,

11  Defendants are wrong to state that this warrant did so.  In *United States v. Hay*, the warrant

12  properly authorized seizing an entire system, including external hard drives, only because the

13  "affidavit explained why it was necessary to seize the entire computer system" to see whether its

14  owner had stored child pornography on those devices.  *United States v. Hay*, 231 F.3d 630, 637

15  (9th Cir. 2000).  The government already knew that Hay had a single computer in his apartment

16  and that he was the only one who used it.  *Id.* at 633.  Similarly, in *United States v. Lacy*, 119 F.3d

17  742, 746 (9th Cir. 1997), the affidavit explained that persons who collect child pornography "store

18  it for long periods in a secure place, typically in their homes" and "established probable cause to

19  believe Lacy's entire computer system was likely to evidence criminal activity" relating to child

20  pornography.  Importantly, "[i]n the affidavit supporting the search warrant application, a Customs

21  agent explained there was no way to specify what hardware and software had to be seized to

22  retrieve the images accurately."  *Id.* at 746-47.  In contrast, Kasiske's affidavit provides no reason

23  to believe that the storage media listed in the warrant would contain evidence of the identity of a

24  person who had used a public access computer on June 14.  The third case Defendants cite

25  involved a man suspected of murdering his live-in girlfriend; the warrant authorized a search of

26  his home and computer for "twelve items the police expected to find in Wong's home that directly

27  related to [her] murder."  *United States v. Wong*, 334 F.3d 831, 833-35, 837-38 (9th Cir. 2003).

28

1   Although the case mentions that the warrant authorized the seizure of disks, their inclusion is

2   simply not an issue in the case.

3       The warrant should have limited the search and seizure to evidence showing persons who

4   used the public-access computers on the afternoon of June 14 (and, perhaps, March 19-25).

5   Instead, it broadly authorized the seizure of "[a]ny" records of any type "containing names or

6   other identifying information of patrons who used the computers at the Long Haul Infoshop."

7   "Failure to limit broad descriptive terms by relevant dates, when such dates are available to the

8   police, will render a warrant overbroad."   *United States v. Ford*, 184 F.3d 566, 576 (6th Cir.

9   1999).  The same is true with failure to specify the offense for which evidence is sought.  *United*

10  *States v. Stefonek*, 179 F.3d 1030, 1032-33 (7th Cir. 1999); *see also Groh v. Ramirez*, 540 U.S.

11  551, 562-63 (2004) (citing *Stefonek*, 179 F.3d at 1032-33, for the same point).  This warrant was

12  obviously facially overbroad.

13      **C.      Defendants Cannot Save This Facially Overbroad Warrant by Reference to**
            **the Statement of Probable Cause or by Arguing that Their Search Was**
14          **Otherwise "Reasonable."**

15      In defending the rummaging through Long Haul's and EBPS's offices, computers and

16  paper files, Defendants argue that the raid team limited its activities to searching for evidence of

17  those matters set forth in the affidavit.

18      As a legal matter, even if the search was narrowly conducted, which it was not, self-

19  restraint cannot cure a facially invalid warrant.  In *Groh*, the officer presented a detailed warrant

20  application that established probable cause to search a ranch for particular weapons.  540 U.S. at

21  555.  The search warrant, however, listed the street address of the home to be searched in the box

22  on the form that was for items to be seized.  *Id.*  There was an itemized list of things to be seized

23  in the warrant application, but that document was neither incorporated by reference nor attached to

24  the warrant.  *Id.*  The agents orally described what they were looking for to the residents of the

25  home, and left the search warrant following the intrusion, but they did not leave a copy of the

26  warrant application.  *Id.*  The Court held that, even though the scope of that search did not exceed

27

28

Case No. C 09-00168-JSW

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   probable cause set forth in the affidavit, the Fourth Amendment requires a facially valid warrant

2   and thus the search was invalid.  *Id.* at 563.

3        Similarly, the search here is not saved by incorporation of the affidavit.  Kasiske

4   intentionally did not distribute copies of the affidavit to the raid team.  Kasiske Decl. ¶ 69 (Docket

5   No. 115).  At his deposition, when asked if he had a copy of the statement of probable cause

6   during the search, answered, "I believe it was probably likely that I did, but I'm not sure."

7   Zimmerman Suppl. Decl., Ex. 4, at 124:15-19.  Kasiske now says he believes that he may have

8   had the statement of probable cause with him tucked away in "a folder with relevant paperwork."

9   Kasiske Decl. ¶ 111 (Docket No. 115).  This is far too little far too late.  A single copy of an

10  affidavit that is hidden in a folder during the search is not "available" to the search team,

11  particularly where there is no evidence that any member of the team referred to it or even knew

12  about its presence.  *Millender*, 620 F.3d at 1025-26 (affidavits must be made available in a useable

13  way).

14       Nor could Kasiske's pre-raid briefing serve the role of properly limiting the search.  Even

15  if Kasiske had properly described the scope of the search authorized by the magistrate (which is

16  highly doubtful), an oral briefing is no substitute for a review of a written document.  *United*

17  *States v. McGrew*, 122 F.3d 847, 849 (9th Cir. 1997) (rejecting government's argument that "so

18  long as its agents are aware of the contents of the affidavit listing the items they may seize, the

19  Fourth Amendment's particularity requirement is satisfied"); *see also Groh*, 540 U.S. at 558

20  (search's scope must be described in the warrant or affidavit, not described after the fact); *Ramirez*

21  *v. Butte-Silver Bow County*, 298 F.3d 1022, 1026-27 (9th Cir. 2007) (oral statements cannot

22  substitute for written description of property to be seized).  Instead, Kasiske's new declaration

23  vaguely states that he informed the team of the time frame that the emails were sent.  Kasiske

24  Decl. ¶ 71 (Docket No. 115).  This information no doubt included the March emails for which the

25  officers could not lawfully obtain a search warrant and probably also the May emails that Kasiske

26  failed to mention in the affidavit.  Also, when asked during his deposition, Kasiske said that, with

27  regard to what could or could not be searched or seized, he merely showed his fellow officers

28

---

11

Exhibit 1B to the search warrant.  Zimmerman Suppl. Decl., Ex. 4, at 76:22-24; Zimmerman Decl., Ex. 1, at 2 (Docket No. 116-1).  This cannot cure a facially defective warrant.

In any case, the facts do not support Defendants' claim that their searches and seizures were properly tailored to probable cause.  Most obviously, there is no mention of May 2008 emails in the Statement of Probable Cause, and yet Defendants claim to this day they were "indisputably" "authorized to search for and seize documents identifying individuals who used the computers from March through June, 2008."  Defendants' MSJ Opp. 18 (Docket No. 114).  That search unnecessarily swept up innocent users, when the officers could have targeted their investigation to the specific dates and times when the offending emails were sent.  The affidavit does not mention how relevant information could have been stored on any electronic devices other than computers, yet the team seized a flash drive from the EPBS officer and "misc. CDs/cassettes" from that office and from the Slingshot office.  Kasiske Decl., Ex. R, at 2-3 (Docket No. 115-18). Defendants searched through files that could not possibly have contained anything mentioned in the affidavit, including a file containing only photographs and artwork, as discussed below.  Given this general rummaging through Long Haul's and EPBS's papers, Defendants cannot claim that their search was limited by the affidavit.

**D.   The Execution of the Search Violated the Fourth Amendment.**

Defendants' own bowdlerized account of their actual search of Long Haul, while self serving, nonetheless shows that their conduct violated core Fourth Amendment principles.

1.   The Search Of The Slingshot Office Violated The Fourth Amendment.

Zuniga and Shaffer examined materials well beyond the scope of the warrant in the Slingshot office.  For example, Zuniga looked through a thick folder of photographs that had been collected for inclusion in the Slingshot newspaper.  Zuniga Decl. ¶ 57 (Docket No. 117); Miller Decl. ¶¶ 7-8 (Docket No. 109).  As broad as the warrant was, it did not authorize the search of photographs, and Zuniga should not have been searching through a file of them at all.  *Arizona v. Hicks*, 480 U.S. 321, 325 (1987) (Fourth Amendment violated when officer searching for weapons moved stereo equipment to locate serial number); *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir.

2004) ("[A] search may not exceed the scope of the search warrant."). And this was no momentary lapse: Zuniga went through the scores of photographs in the file, Miller Decl. ¶ 8 (Docket No. 109), and extracted five to six pictures to show to Agent Shaffer because "one of them appeared to be of a protest in Seattle" and Zuniga knew that Shaffer had been stationed there, Zuniga Decl. ¶ 57 (Docket No. 117); Shaffer Decl. ¶ 15 (Docket No. 121). He then "called" Shaffer, who was downstairs in the shelving area, "to [the] room to look at [the] photographs." Shaffer Decl. ¶ 14 (Docket No. 121). Zuniga claims that he did this because one of the photos "looked as if it may have evidence of criminal activity." Zuniga Decl. ¶ 57 (Docket No. 117). This self-serving attempt to invoke the plain-view doctrine is inadequate. First, the doctrine is inapplicable because Zuniga should not have been looking through a folder of photos as all. Second, it can justify a search only the incriminating character of the materials is "immediately apparent," *Horton v. California*, 496 U.S. 128, 136-37 (1990), such that the officer has probable cause to believe the item is evidence before he moves it in any way. *Hicks*, 480 U.S. at 324-25, 327-29. Defendants present no facts to show that there was anything incriminating about the photos, much less that it was immediately apparent that they contained probable cause of a crime. Zuniga's conclusory language, to the extent it indicates that he felt there was probable cause, is inadequate under the Fourth Amendment: "[I]f there is one bright star in the Fourth Amendment heaven, it is that probable cause must be shown on the basis of facts rather than mere conclusions." *Poolaw v. White*, 2007 WL 6970817, *6 (D. N.M. 2007) (quoting 2 LaFave *Search and Seizure* § 3.2(d) 64 (4th ed. 2004)); *accord Whiteley v. Warden*, 401 U.S. 560, 564-65 (1971). Zuniga's general rummaging through the photographs and then calling another officer to look at some that he found interesting is exactly what the Fourth Amendment prohibits.

> 2. The Search Of EBPS Violated The Fourth Amendment.

Defendants should not have searched the EBPS office once they entered Long Haul and saw that it was a locked office belonging to a separate organization under *Mena v. City of Simi Valley*, 226 F.3d 1031, 1038 (9th Cir. 2000). *See* Plaintiffs' Mot. 17 **(**Docket No. 110). Kasiske admits he "had seen the name 'East Bay Prisoner Support' listed as a "friend"' on another

organization's webpage.  Kasiske Decl. ¶ 30 (Docket No. 115).  In his original report describing the raid he notes that he seized a computer and storage media from a padlocked rooms "labeled 'East Bay Prisoner Support.'"  Kasiske Decl., Ex. R, at 3 (Docket No. 115-18).  The EBPS office was clearly labeled as such.  So while the officers may not have known about EBPS's tenancy at the Long Haul prior to the search, once they arrived, they should not have taken advantage of the warrant to search their separate and private office.

The cases Defendants cite relate to whether the police should have recognized before applying for a warrant that a building contained separate units, not what the officers should have done once they discovered their error during the search.  A closer reading of these cases shows they support EBPS's position. In one, the court upheld the search because when the agents realized they were searching a multi-unit building they were careful to limit their search to the business that was named in the warrant.  *United States v. Ofshe*, 817 F.2d 1508, 1514 (11th Cir. 1987).  In the other, the house did not contain multiple units; it was a single house with two families living in it.  *United States v. Hinds*, 856 F.2d 438, 441-42 (1st Cir. 1988).

Here, when the raid team came upon a separate, locked office with a sign on the door saying "East Bay Prisoner Support" they should have refrained, as the agents in *Ofshe* did, from searching that separate business.  Instead, they entered the office, rifled the organization's papers, looked through its mail and left the materials in disarray on the floor, and seized its computer and storage devices.

Shaffer also admits looking at two of EBPS's letters, though Defendants do not explain how this review resulted in EBPS's organized mail being left in a disorganized pile in the middle of their office floor.  Regardless, letters could not reasonably contain any information about who sent the June 14 emails, and Shaffer should not have touched the mail at all.  *Hicks*, 480 U.S. at 324-25, 327-29.

        3.     <u>The Lab's Forensic Search Of Long Haul's Computers Violated The Fourth Amendment.</u>

The warrant purported to authorize a search of Long Haul's computers for "evidence." This is clearly overbroad. *United States v. Kow*, 58 F.3d 423, 427 (9th Cir.1995) (collecting cases

14

in which the Ninth Circuit has "criticized repeatedly the failure to describe in a warrant the specific criminal activity suspected"); *see also Stefonek*, 179 F.3d at 1033 (same); *Groh*, 504 U.S. at 557 (citing with approval *Stefonek*, 179 F.3d at 1033). Not surprisingly, the actual search of those computers went far beyond the scope of probable cause, that is, beyond that which would reasonably identify the sender of the June 14 emails. Kasiske asked the Lab to search for terms such as "animal research" and "vivisection", and not just for terms specific to the June 14 (or March 2008, or even May 2008) emails. Kasiske Decl., Ex. V, at 1 (Docket No. 115-22). Kasiske even took the opportunity to search the computers for the names of other "suspects" and researchers whose names do not appear in the warrant or the affidavit and for whom Kasiske had no evidence connecting them to the June 14 messages. *See id.* Kasiske expressly asked the lab to look for "[e]vidence pertaining to threatening email messages" with no date limitation, as well as for evidence of other crimes there was no probable cause for, including "arson, vandalism, or other harassment." *Id.* Because the search was so overbroad, it revealed an enormous amount of information about perfectly legal research and communications by Long Haul patrons, including the email addresses of patrons and the web pages they visited. *See* Kasiske Decl., Exs. X, Y (Docket No. 115-24, 25) (results of search). This information ranged from the political to the mundane. *See* Kasiske Decl. Ex. Y, 3-4 (Docket No. 115-25) (list of email addresses); *id.* 5-6 (list of Myspace pages visited); *id.* 7 ("[F]ile was a discussion forum … related to veganism and diet); *id.* 9 ("[S]omeone was looking up a skin care or cosmetic product on Amazon.com. The product was made by a company called Beauty 'Without Cruelty.'"). Innocent communications were revealed unnecessarily, while nothing of evidentiary value was recovered. *See* Kasiske Decl., Ex. Y, at 1 (Docket No. 115-25). Far from being reassuring, this is exactly the sort of harm the Fourth Amendment was designed to prevent. Exacerbating matters, Defendants refuse to destroy their copy of the data copied from these computers.

### E. The Defendants are Not Entitled to Qualified Immunity.

Defendants do not enjoy qualified immunity because they violated Plaintiffs' clearly established rights.

Case No. C 09-00168-JSW

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

First, the search warrant was unconstitutionally overbroad on its face. It would have been readily apparent to any reasonable officer that a warrant authorizing a search "for evidence" but not specifying a crime or a date range violates the long-standing particularity requirements of the Fourth Amendment.   Any reasonable officer should have known that the information in the affidavit about emails on a few days in March and a single afternoon in June could not authorize a warrant to search for and seize records of anybody who had used the Infoshop computers without temporal limit.  *See, e.g.*, *KRL*, 512 F.3d at 1193; *Ford*, 184 F.3d at 576 (citing *United States v. Cardwell*, 680 F.2d 75, 79 (9th Cir. 1982));[3] *Kow*, 58 F.3d at 427 (warrant for records must "limit the scope of the seizure to a time frame within which the suspected criminal activity took place"). Additionally, any reasonable officer would have known that searching for "evidence," without limitation or elaboration, was improper.  *See, e.g.*, *Kow*, 58 F.3d at 427; *United States v. Washington*, 797 F.2d 1461, 1474 (9th Cir. 1986); *United States v. Gomez-Soto*, 723 F.2d 649, 653-54 (9th Cir. 1984). The Supreme Court has in fact used a case invalidating a warrant for "evidence of crime" as the prototypical example of an inadequate description.  *Groh*, 540 U.S. at 563 (citing *Stefonek*, 179 F.3d at 1033).

Because Officer Kasiske "himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid."  *Groh*, 540 U.S. at 564.  Alberts, who also reviewed the affidavit and warrant as Kasiske's supervisor, is in the same position as a leader of the team.  Alberts Decl. ¶ 23-24 (Docket No. 118); *see KRL*, 512 F.3d at 1190 ("Officers who plan and lead a search 'must actually read the warrant and satisfy themselves that they understand its scope and limitations, and that it is not defective in some obvious way.'").  So is Zuniga, who may have reviewed it at the pre-raid meeting and participated in the general investigation.  *See* Zuniga Decl. ¶¶ 27-30, 37 (Docket No. 117) (does not remember the statement of probable cause but it is his practice to review probable-cause statement); *KRL*, 512 F.3d at 1190.

Nor does qualified immunity save the other officers from their participation in the illegal

---

[3] Decisions from other circuits may defeat qualified immunity.  *Sorrels v. McKee*, 290 F.3d 965, 970 (9th Cir. 2002).

Case No. C 09-00168-JSW
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

raid. "It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted." *Groh*, 540 U.S. at 563. The officers all read the warrant and at least some of them the statement of probable cause. Hart Decl. ¶ 6 (Docket No. 119) (warrant and affidavit); MacAdam Decl. ¶ 10 (Docket No. 120) (warrant); Shaffer Decl. ¶ 10-11 (Docket No. 121) (warrant and affidavit). Defendants were integral participants in the search and assisted in removing computers and electronic-storage devices that they should have known would be subject to the illegal search for evidence. The assertion that Shaffer and Hart's assistance was minimal because all they did was carry Plaintiffs' property to police cars is both factually and legal inaccurate. Hart provided armed guard during the illegal search and he and Shaffer personally seized computers. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (seizure occurs when "there is some meaningful interference with an individual's possessory interests in that property."). Shaffer was the officer who looked through the Slingshot photo file and examined EBPS's mail. Both were more than minimal players in the raid at Long Haul. *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (armed officers who did not pat down the plaintiff and stayed on the lawn were integral to the search and liable); *Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir. 1989) (officer who does not enter an apartment, but stands at the door, armed with his gun, while other officers conduct the search, can be a "full, active participant" in the search).

The search in this case is much like the one in *Groh*, and Defendants are similarly not entitled to qualified immunity. In *Groh*, the Supreme Court found the warrant "plainly invalid" because it did not contain a list of things to be searched for and seized. 540 U.S. at 557. The Court denied qualified immunity because no reasonable officer could believe that a warrant that plainly did not comply with the particularity requirement was valid. *Id.* As with the warrant in *Groh*, the one here is facially invalid because it authorized a search for "evidence" without limitation as to offense or date. As in *Groh*, Defendants are not entitled to qualified immunity because the warrant's infirmity would be apparent to a reasonable officer.

Second, any reasonable officer would have known that a search for evidence of who used public access computers to send threatening emails does not include a search of separate locked

17

offices that belong to other tenants who may or may not have computers inside.  When officers search through the books and papers of an activist organization they should be particularly alert to the Fourth Amendment's particularity requirement.  *Stanford v. Texas*, 379 U.S. 476, 511-12 & n.16 (1965).  Probable cause to search for and seize public-access computers that may have been used by an animal rights activist visiting Long Haul does not support seizure of other computers and devices that the officers happen to find in locked private offices on the premises.  *See*, *e.g.*, *United States v. Weber*, 923 F.2d 1338, 1340, 1346 (9th Cir. 1990) (in 1987, "the law was clear that a warrant could not be broader than the probable cause on which it was based.").

Third, the affidavit in support of the warrant does not establish probable cause to search for or seize anything other than the public access computers and logs, if any, of who used those computers on June 14.

Additionally, Defendants Kasiske and the United States violated Long Haul's clearly established rights by indiscriminately searching Long Haul computers for suspects, crimes, victims and date ranges unrelated to probable cause.  This too violates the particularity requirement that goes back to the very text of the Constitution.  Particularly in cases where the computer is merely a storage device for evidence, failure to focus on the relevant files may lead to a Fourth Amendment violation.  For example, in *United States v. Riccardi*, 405 F.3d 852, 862 (10th Cir. 2005), which involved an investigation into harassing phone calls, the court held that a warrant authorizing seizure of all storage media and "not limited to any particular files" violated the Fourth Amendment.  Agents cannot simply request permission to seize "all records" from an operating business unless agents have probable cause to believe that the criminal activity under investigation pervades the entire business.  *See Ford*, 184 F.3d at 576 (collecting cases); *In re Grand Jury Investigation Concerning Solid State Devices, Inc.*, 130 F.3d 853, 857 (9th Cir. 1997).  Asking for "any and all data, including but not limited to" a list of items, has been held to turn a computer search warrant into an unconstitutional general warrant. *United States v. Fleet Management Ltd.*, 521 F. Supp. 2d 436, 443-44 (E.D. Pa. 2007); *see also United States v. Otero*, 563 F.3d 1127, 1132 (10th Cir. 2009) (warrant authorizing seizure of "any and all information

18

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  and/or data" fails the particularity requirement).  "To withstand an overbreadth challenge, the

2  search warrant itself, or materials incorporated by reference, must have specified the purpose for

3  which the computers were seized and delineated the limits of their subsequent search."  *United*

4  *States v. Hunter*, 13 F. Supp. 2d 574, 584 (D. Vt. 1998) (citing *Kow*, 58 F.3d at 423).

5      Defendants Zuniga and Shaffer violated Long Haul's clearly established rights by going

6  through the Slingshot photo file, among other files in that office.  Defendant Shaffer and others

7  violated EBPS's rights by looking through EBPS's mail.  Defendant Alberts and others violated

8  Long Haul's rights by searching through lending library logs and sales logs that had nothing to do

9  with patron computer use.  In at least these ways, Defendants acted contrary to longstanding

10  Fourth Amendment principles and are not entitled to qualified immunity.

11      **F.      Plaintiffs are Entitled to Summary Judgment on Their PPA Claims.**

12      Defendants claim they are not liable under the PPA because they did not know that their

13  searches of, and seizures of the computers from, the Slingshot and EBPS offices involved

14  protected materials.  This defense is both legally and factually insufficient.

15      PPA immunity is limited to an officer who had a "reasonable good faith … in the

16  lawfulness of his conduct."  S. Rep. 96-874, at 15 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3950,

17  3961.  Even if this Court credits the Defendants' assertions that they did not know the Slingshot

18  and EBPS materials they searched and seized were used to disseminate information to the public,

19  their asserted ignorance was unreasonable.  Several of the officers on the raid team admit that they

20  knew Slingshot was an online publication and that it was a project of Long Haul.  Kasiske Decl. ¶¶

21  26-27, 29 (Docket No. 115); Zuniga Decl. ¶¶ 26, 29 (Docket No. 117).  They claim, however, that

22  they didn't know that the Slingshot office housed Slingshot.  But the Slingshot office has for many

23  years (and at the time of the raid) had a large banner over the door proclaiming what it is:

24

25

26

27

28

Case No. C 09-00168-JSW

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT



*See*, *e.g.*, Miller Suppl. Decl. ¶ 3.

None of the Defendants deny that this banner was there at the time of the raid, nor can they.  Instead, the U.C.P.D. members of the raid team uniformly aver that they "do not recall ever seeing a sign over the door to the 'Slingshot office' at any time during the execution" of the warrant.  Kasiske Decl. ¶¶ 87, 104 (Docket No. 115); Zuniga Decl. ¶ 56 (Docket No. 117); Alberts Decl. ¶ 61 (Docket No. 118); MacAdam ¶ 25 (Docket No. 120).  The Federal Defendants do not

Case No. C 09-00168-JSW

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

say one way or the other whether they noticed the banner.  Plaintiffs have thus established that the banner was hanging above the door, because "[a]n affiant's failure to remember an event is not a specific denial that the event occurred for purposes of summary judgment."[4]  *Broadcast Music, Inc. v. Allis*, 667 F. Supp. 356, 358 (S.D. Miss. 1986); *accord Hideout Records and Distributors v. El Jay Dee, Inc.*, 601 F. Supp. 1048, 1053 (D. Del. 1984); *Bodney v. Pima County Sheriff's Dept.*, 2009 WL 2513786, *10 (D. Ariz. 2009).

Reasonable officers entering the locked office depicted in the photograph would have understood that the office housed Slingshot, particularly if they were also aware that Slingshot was a publication and a project of Long Haul.  An office need not have printing presses or "industrial printers" (whatever those might be) in order to qualify for protections under the PPA, since both the text of the statute and its legislative history show that Congress "rejected the idea of a 'press only' bill" in favor of one that would protect "all those who have a purpose to disseminate information to the public."  S. Rep. 96-874, at 9 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3950, 3956; *see* 42 U.S.C. § 2000aa.  Although the officers' lack of knowledge of the PPA may well have led them to ignore this clear indication that they were entering the Slingshot office, ignorance of a twenty-eight-year-old federal statute is neither reasonable nor a defense.

As to the EBPS materials, Defendants claim they "had no reason to believe" that EBPS was a distributor of information to the public.  To the contrary, Defendants Kasiske, Alberts, and Zuniga had reviewed Long Haul's website prior to the search.  Kasiske Decl. ¶ 16 (Docket No. 115); Zuniga Decl. ¶ 12 (Docket No. 117); Alberts Decl. ¶ 11 (Docket No. 118).  That website stated that EBPS offered a "prison-related book/zine/video library" and that it hosted a regular event where people would "read and reply to prisoner mail" and "correspond with Political Prisoners."  Palmer Decl. ¶ 11 (Docket No. 108); Palmer Decl., Ex. 1, at 3 (Docket No. 108-1).  That was enough to put the officers on notice that EBPS distributed books, zines and videos to the public and to prisoners.  Upon entering Long Haul, when the officers saw the locked and labeled

---

[4] This rule is particularly appropriate in this matter, because since none of the Defendants knew about the PPA they had no reason to take note of the banner, any more than they had reason to take note of the huge number of issues of Slingshot that were at Long Haul.

Case No. C 09-00168-JSW

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

EBPS door in a hallway of other locked and labeled offices, a reasonable officer would have paused to determine whether EBPS or these other organizations were separate from Long Haul and whether those offices were within the scope of the warrant.  The offficers could have asked the landlord, or Ms. Miller, but the most trivial investigation on the Internet and would have found EBPS's Myspace page, which indicated that EBPS possessed "information about political prisoners, prison conditions, grand jury resistance, security culture, campaigns, event information, and resources for prisoners" as well as a "prison-related zine, book, and video library."  Lyons Decl. ¶ 4 (Docket No. 107).  It was unreasonable for the officers to disregard the evidence in front of their faces, and to fail to do further investigation, and thus to violate the PPA by searching and seizing EBPS's work product and documentary materials.  *Maryland v. Garrison*, 480 U.S. 79, 88 n.14 (1987) (approving search where officers' conduct was consistent with a reasonable effort to ascertain and identify the place intended to be searched within the meaning of the Fourth Amendment and noting that if after the police begin to execute the warrant and set foot upon the described premises they discover a factual mistake, they must then reasonably limit their search accordingly).

Finally, as Plaintiffs explain in their opening brief, the PPA's protections for documentary (as opposed to work-product) materials do not depend on whether the officers believed or knew of the nature of those materials.  Rather, the officers' knowledge (or lack thereof) goes to whether individual officers, but not entities, may assert the good-faith defense of 47 U.S.C. § 2000aa-6(b).  Thus, this defense is not available to the United States.  47 U.S.C. § 2000aa-6(b).  The United States is liable for the PPA violations that occurred when Hart seized the computers containing PPA documentary materials and because both Hart and Shaffer were integral participants in the raid.  Hart Decl. ¶ 9 (Docket No. 119); *see* 47 U.S.C. § 2000aa(b) (unlawful to "search for *or* seize documentary materials") (emphasis added).

**G.    Plaintiffs are Entitled to Injunctive and Declaratory Relief to Require the Government to Return Information It Unlawfully Seized.**

An injunction properly lies to expunge information seized in violation of the Fourth Amendment.  *Cardwell v. Kurtz*, 765 F.2d 776, 779 (9th Cir. 1985); *Klitzman, Klitzman and*

22

*Gallagher v. Krut*, 744 F.2d 955, 962 (3d Cir. 1984) (ordering return of papers seized under overbroad warrant); *see Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1274-75 (9th Cir. 1998).  As this Court held in ruling on Defendants' Motion to Dismiss, this is also a proper remedy for violations of the PPA.  Order of November 30, 2009 at 15-16 (Docket No. 69); *see Citicasters, Inc. v. McCaskill*, 883 F. Supp. 1282, 1289 (W.D. Mo. 1995), *rev'd on other grounds*, 89 F.3d 1350 (8th Cir. 1996).  Defendants' claim that Plaintiffs should seek return of property under Cal. Penal Code § 1536 is irrelevant for two reasons.  First, Defendants have already returned Plaintiffs' property; it is their information that Plaintiffs seek to have expunged, and § 1536 does not provide for the expungement of information.  Second, Plaintiffs need not exhaust state remedies before seeking injunctive relief in federal court for a violation of their rights.  *Stewart v. Pearce*, 484 F.2d 1031, 1033 (9th Cir. 1974); *see Patsy v. Board of Regents*, 457 U.S. 496, 509 (1982).  Declaratory relief is also proper, because such relief is also properly issued even in cases where an injunction is not warranted.  *See Olagues v. Russoniello*, 770 F.2d 791, 803 (9th Cir. 1985).

Thus, the Court should grant an injunction requiring expungement against the state defendants, including UCPD Chief Celaya who is sued in his official capacity only.  The Court should grant declaratory relief against all defendants other than the United States, stating that retention, use, or dissemination of Plaintiffs' data would violate the Fourth Amendment and the PPA.

**H.    Defendants' Evidence Is Irrelevant and Lacks Foundation.**

Plaintiffs make the following objections to Defendants' evidence; the exact language or exhibit objected to, as well as the grounds for the objection that applies to that specific piece of proffered evidence, are set forth in the proposed order.

Much of Defendants' evidence lacks a sufficient foundation as to personal knowledge under Federal Rule of Evidence ("FRE") 602.  A declaration must affirmatively show that each matter set forth is based on the declarant's personal knowledge.  *Shakur v. Schriro*, 514 F.3d 878, 889-90 (9th Cir. 2008).  A boilerplate recitation that the declaration is made on personal

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

knowledge is insufficient. *Boyd v. City of Oakland*, 458 F. Supp. 2d 1015, 1023 (N.D. Cal. 2006); *Sun v. Governmental Authorities on Taiwan*, 2001 WL 114443, at * 4 (N.D. Cal. 2001).   Unlike Plaintiffs' evidence which comes from two long term Long Haul volunteers and one of the founders of East Bay Prisoner Support group, there is no indication that Defendants' proffered evidence regarding the surveillance of activists, the activities of groups that met at Long Haul, and crimes committed in other parts of the state are based on the declarants' personal knowledge. Indeed, the context suggests that this evidence is based on reports from other persons. *See, e.g.*, Kasiske Decl. ¶¶ 4, 6-12, 20 (Docket No. 115).   Defendants also speculate about the motives and knowledge of other persons, including activists, *id.* ¶¶ 22, 40 , and other police officers, *id.* ¶¶ 45, 46; Zuniga Decl. ¶¶ 6, 17 (Docket No. 117), without giving any indication that this is based on personal knowledge or is a permissible lay or expert opinion, in violation of FRE 602, 701, 702.

Evidence in a summary-judgment motion "must set forth 'concrete particulars.   It is not sufficient merely to assert a conclusion without supplying supporting arguments or facts.   In addition, ultimate or conclusory facts and conclusions of law cannot be utilized on a summary judgment motion." *BellSouth Telecomm. v. W.R. Grace & Company-Conn.*, 77 F.3d 603, 615 (2d Cir. 1996) (citations omitted); *see Flintkote Co. v. General Acc. Assur. Co.*, 410 F. Supp. 2d 875, 885 (N.D. Cal. 2006).   Defendants repeatedly present conclusions without providing the supporting facts that are necessary to evaluate the validity of the conclusion.   For example, they opine that "[t]here was no indication" that EBPS was a tenant, that Slingshot was published from Long Haul, or that offices were being used for publishing activities.   Kasiske Decl. ¶¶ 99, 106 (Docket No. 115).   But without an indication of what the witness would have considered to be an indication that, for example, EBPS was a tenant, the validity of this conclusion cannot be evaluated.   Thus, although witnesses may properly state that they did not encounter specified items associated with publishing a newspaper, they cannot simply opine that there was no indication of publishing activity without saying what would have indicated such activity.   Nor can they simply declare they were acting "in good faith," *id.* ¶ 112, or that certain actions were

Case No. C 09-00168-JSW
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    supported by probable cause, *id.* ¶ 72, or that the warrant authorized certain searches, *id.* ¶ 66.

2    These are legal determinations for the Court.

3        Much of the proffered evidence is simply irrelevant. For example, Kasiske's extended

4    explanation of what he intended the affidavit to mean and his subjective reasons for writing the

5    warrant, *id.* ¶¶ 52-76, are irrelevant, because the validity of the warrant must be judged solely on

6    the affidavit. *Whiteley*, 401 U.S. at 565 n.8 (1971); *Millender*, 620 F.3d at 1029, 1034. Equally

7    irrelevant is his intent in drafting the parameters for the searches of computers, because he never

8    communicated those limitations to the Lab.

9        Many documents taken from the websites of various organizations lack authentication and

10   are hearsay. *See*, *e.g.*, Kasiske Decl., Exs. A, C, D, F (Docket Nos. 115-1, 115-3, 115-4, 115-6).

11   And Defendants' description of these documents, as well as their description of other documents,

12   violates FRE 1002, which generally requires that the contents of a document be proved by a copy

13   of the document itself.

14   **I.    Defendants' Objections Should Be Overruled Because Plaintiffs' Evidence Is
15          Based on Sworn Testimony, Documents Produced In Discovery, and
           Delcarations Of Witnesses Who are Acknowledged to be the Persons Most
16          Knowledgeable About Long Haul and EBPS.**

17       Defendants object to the testimony of witnesses whom plaintiffs designated under F.R.C.P.

18   30(b)(6) as the persons most knowledgeable about the affairs of Long Haul and EBPS. This

19   objection fails because "[e]ach of the declarants occupies a position at [the organization] from

20   which personal knowledge of the facts to which he testifies can be inferred." *Edwards v. Toys 'R'

21   Us*, 527 F. Supp. 2d 1197, 1101-02 (C.D. Cal. 2007); *see In re Kaypro*, 218 F.3d 1070, 1075 (9th

22   Cir. 2000) ("Personal knowledge may be inferred from a declarant's position" in an

23   organization."). Jesse Palmer, for example, testified on behalf of Long Haul and is an attorney

24   who has been a member of Long Haul since 1994. Zimmerman Suppl. Decl., Ex. 2, at 21:14-21.

25   He has been involved with Slingshot continuously since 1988, other than one year when he lived

26   on the East Coast. *Id.* 78:21-79:13. He has authority to sign checks on Long Haul's bank account,

27   as well as a key to the building. *Id.* 23:21-24:6, 75:22-76:5. He knows the process by which

28

Case No. C 09-00168-JSW

REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Long Haul rents office space.  *Id.*  99:16-100:7.  Mr. Palmer's personal knowledge can be inferred from his tenure and position at the organization.

Similarly, Patrick Lyons, who testified on behalf of EBPS, is a founder and one of the three members of that organization.  Zimmerman Suppl. Decl., Ex. 5, at 7:23-8:14.  He was in the office soon after the raid.  *Id.* 81-86.  He would certainly know what the door to the EBPS office usually looks like and that it had been damaged.

Finally, Kathryn Miller has worked on Slingshot since 1999.  Miller Decl. ¶ 2 (Docket No. 109).  She watched the officers searching Long Haul through the front window and then entered the Slingshot office immediately after the raid and saw the condition of the office.  *Id.* ¶¶ 3-7.  A person who returns to her office of ten years immediately after the police have raided it and finds the door pried open and the files in disarray may legitimately infer that the police were responsible for the changed state of affairs.  Her 12 years of experience working on Slingshot also qualify her to testify as to the newspapers' practices and policies.

## III.   <u>CONCLUSION</u>

In sum, Defendants do not dispute Plaintiffs' factual assertions regarding the matters necessary for this Court to rule on summary judgment, including the content of the Statement of Probable Cause, the language of the warrant, the information available to the officers prior to and during the raid, the condition and appearance of the Long Haul and EBPS offices prior to and after the raid, and the officers' conduct during the raid.  Based on these undisputed facts and the legal arguments set forth above, Plaintiffs' motion for summary judgment should be granted and Defendants' denied.

DATED:  February 28, 2011

By   */s/ Jennifer Stisa Granick*
JENNIFER STISA GRANICK

c/o ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone:  (415) 436-9333 x127
Facsimile:  (415) 436-9993

COUNSEL FOR PLAINTIFFS

26