```
 1                  UNITED STATES DISTRICT COURT

 2                NORTHERN DISTRICT OF CALIFORNIA

 3                     SAN FRANCISCO DIVISION

 4

 5  LONG HAUL, INC. and EAST BAY      )
    PRISONER SUPPORT,                 )
 6                                    )
                    Plaintiffs,       )
 7                                    )
         v.                           )  No. C 09-00168-JSW
 8                                    )
    UNITED STATES OF AMERICA; MIGUEL  )
 9  CELAYA; KAREN ALBERTS; WILLIAM    )
    KASISKE; WADE MacADAM; TIMOTHY    )
10  ZUNIGA; MIKE HART; LISA SHAFFER;  )
    and DOES 1 - 25,                  )
11                                    )
                    Defendants.       )
12  _____)

13

14

15

16

17         DEPOSITION OF WILLIAM SASISKE, taken on behalf

18     of Plaintiffs, at One Market Street, 32nd Floor, San

19     Francisco, California, commencing at 9:04 a.m.,

20     Tuesday, July 27, 2010, before Donna J. Blum,

21     Certified Shorthand Reporter, No. 11133.

22

23

24

25

                              2
```

1  Q. And do you know whether any other information
2 was given to the officers?
3  A. About the location of where?
4  Q. About the places to be searched.
5  A. I don't remember any other information being
6 given.
7  Q. And you don't know whether or not the officers
8 looked at the statement of probable cause. Is that
9 correct?
10  A. Yes. I don't remember if they looked at it or
11 not.
12  Q. Do you remember whether the possibility of there
13 being multiple offices or multiple spaces within the Long
14 Haul address was discussed?
15  A. I'm sorry, multiple spaces or --
16     What was the other part?
17  Q. Or offices within the Long Haul address?
18  A. No, I don't remember that, whether that was
19 discussed.
20  Q. What was discussed at the meeting in terms of
21 what officers were authorized by the warrant to seize?
22  A. Again, officers were referred to in the search
23 warrant, Exhibit 1B, which items were authorized to be
24 seized.
25  Q. Was there anything other than 1B that officers

76

1  Haul, and if those people supported Stop Cal Vivisection
2  Group or if they were even involved as members of the
3  group, to go there and ask them for that information
4  would reveal what was going on with our investigation.
5  And I wouldn't want to have members of Stop Cal
6  Vivisection group know what was going on with our
7  investigation.
8      Q.  You didn't know whether members of Long Haul
9  would or would not inform Stop Cal Vivisection?
10     A.  I didn't know for certain whether they would or
11 not, but that was a precaution that I would need to take
12 that they could do that.
13     Q.  Were -- was Long Haul any more likely than any
14 other establishment to fail to comply with a subpoena or
15 other valid legal process in your opinion?
16     A.  Than any other establishment?
17         MS. GRANICK:  Yes.
18         MS. ELLIS:  Objection, vague and foundation.
19         THE WITNESS:  Well, I guess I'll just go back to
20 what I said is that the Long Haul was a place where
21 animal rights activists were going, and I didn't know if
22 -- who was running the Long Haul and if those people were
23 supporting or involved in the group Stop Cal Vivisection
24 and if they would assist them or share information with
25 them if a subpoena was served.

```
 1              I don't know if it's more likely in that case
 2   versus in another organization that you're mentioning.
 3   BY MS. GRANICK:
 4       Q.  If the IP address had traced back to the
 5   Berkeley Public Library, would you have gotten a search
 6   warrant to enter the library and seize the computers
 7   there?
 8           MS. ELLIS:  Objection, incomplete hypothetical.
 9           THE WITNESS:  I mean that decision would depend
10   on a number of factors.  Since that didn't happen, I
11   can't really say that I know.  I would say probably in
12   general if it was a government institution like the
13   library and there weren't other factors that I knew of to
14   suspect that someone at the library was working with an
15   organization or something along those lines, if there
16   weren't other factors, then maybe in that case a subpoena
17   could work as opposed to a search warrant.  But it would
18   depend on, like I said, all the factors and why the
19   e-mails were coming from the library and things like
20   that.
21   BY MS. GRANICK:
22       Q.  Okay.  And I assume your answer would be similar
23   for a non-government entity like if the IP address had
24   traced back to a coffee shop?
25           MS. ELLIS:  Objection, incomplete hypothetical.
```

William Sasiske

BARKLEY
Court Reporters

```
 1  evidence.
 2          THE WITNESS:  The Long Haul was filled with
 3  signs all over the walls and many different places, and
 4  that particular sign was handmade, cardboard sign.  So it
 5  didn't indicate much of anything to me.
 6  BY MR. GRANICK:
 7      Q.  The fact that the sign was handmade in cardboard
 8  didn't indicate anything to you?
 9      A.  That coupled with, like I said, there were signs
10  all over the place that of different groups or events,
11  all sorts of different things, didn't mean anything.
12      Q.  Did you have a copy of the search warrant at the
13  premises when the search was being conducted?
14      A.  Yes.
15      Q.  Did you have a copy of the statement of probable
16  cause at the premises when the search was being
17  conducted?
18      A.  I don't remember for certain.  I believe it was
19  probably likely that I did, but I'm not sure.
20      Q.  Okay.  So I am gonna want to move on a bit, but
21  I have some photos I'd like to show him, but I don't have
22  paper copies of them, so if we could take a break for a
23  second and go off the record.
24          MS. ELLIS:  Uh-huh.
25          (Break taken.)
```

124

William Sasiske

BARKLEY
Court Reporters