1   SCHIFF HARDIN LLP
    WILLIAM J. CARROLL (CSB #118106)
2   wcarroll@schiffhardin.com
    SARAH D. YOUNGBLOOD (CSB #244304)
3   syoungblood@schiffhardin.com
    One Market, Spear Street Tower, 32nd Floor
4   San Francisco, CA  94105
    Phone: (415) 901-8700 / Fax: (415) 901-8701
5
    SARA L. ELLIS (ILSB #6224868)
6   sellis@schiffhardin.com
    233 South Wacker Drive, Suite 6600
7   Chicago, IL  60606
    Phone: (312) 258-5800 / Fax: (312) 258-5600
8
    Attorneys for Defendants MITCHELL CELAYA,
9   KAREN ALBERTS, WILLIAM KASISKE, WADE
    MACADAM and TIMOTHY J. ZUNIGA
10
    MELINDA HAAG (CSB #132612)
11  United States Attorney
    JOANN M. SWANSON (CSB #88143)
12  Assistant United States Attorney
    Chief, Civil Division
13  JONATHAN U. LEE (CSB #148792)
    NEILL T. TSENG (CSB #220348)
14  Assistant United States Attorneys
    Northern District of California
15  450 Golden Gate Avenue, Box 36055
    San Francisco, CA  94102
16  Phone: (415) 436-6909 (Lee) / Fax: (415) 436-7169

17  Attorneys for the FEDERAL DEFENDANTS

18                 UNITED STATES DISTRICT COURT

19                 NORTHERN DISTRICT OF CALIFORNIA

20

21  LONG HAUL, INC., et al.,                 Case No. 3:09-cv-0168 JSW

22                 Plaintiffs,               **DEFENDANTS' JOINT REPLY**
                                             **MEMORANDUM OF POINTS AND**
23  v.                                       **AUTHORITIES IN SUPPORT OF**
                                             **MOTIONS FOR SUMMARY**
24  U.S.A., et al.,                          **JUDGMENT**

                   Defendants.              [F.R.C.P. Rule 56]
25
                                             Date:     April 8, 2011
26                                           Time:     9:00 a.m.
                                             Dept.:    11
27                                           Judge:    Jeffrey S. White

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

## <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3    I.      INTRODUCTION ............................................................................................................ 1

4    II.     ARGUMENT ................................................................................................................... 2

5            A.      Defendants Are Entitled To Summary Judgment On Plaintiffs' Second
                     Cause Of Action For Violation Of The Fourth Amendment ................................... 2

6
7                    1.      Kasiske's Statement Established Probable Cause For Issuance Of
                             The Warrant ............................................................................................... 3

8                    2.      The Search Was Conducted In Accordance With The Warrant And
                             The Requirements Of Probable Cause ....................................................... 5

9
10           B.      All Individual Defendants Are Entitled To Qualified Immunity With
                     Regard to Plaintiffs' Fourth Amendment Claims ................................................... 9

11           C.      Plaintiffs Lack Any Basis For Asserting Their Fourth Amendment
                     Claims Against Defendants In Their Official Capacities...................................... 12

12
13           D.      Defendants Are Entitled To Summary Judgment On Plaintiffs' Third Cause
                     Of Action For Violation Of The Privacy Protection Act ..................................... 14

14                   1.      Defendants Lacked Any Knowledge Or Belief That Plaintiffs
                             Engaged In Publishing Activities At The Shattuck Street Premises......... 14

15
16                   2.      Defendants' Conduct Falls Within The Criminal Suspect Exception
                             Created By The PPA ................................................................................. 16

17                   3.      There is No PPA Liability for Seizure of Documentary Materials........... 18

18                   4.      The Good Faith Defense Furnishes An Additional Basis For
                             Granting Summary Judgment To The University Defendants................... 19

19
20   III.    EVIDENTIARY OBJECTIONS TO PLAINTIFFS' SUPPLEMENTAL
             EVIDENCE................................................................................................................... 20

21   IV.     CONCLUSION.............................................................................................................. 20

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

CASES

*Anderson v. Creighton*,
 483 U.S. 635 (1987) ............................................................................................. 10, 11

*Arizona v. Hicks*,
 480 U.S. 321 (1987) ................................................................................................. 7, 8

*Bethea v. Burnett*,
 2005 WL 1720631 (C.D. Cal. June 28, 2005) ............................................................ 17

*City of Arcadia v. USEPA*,
 265 F.Supp.2d 1142 (N.D. Cal. 2003) ................................................................. 16, 17

*City of Los Angeles v. Lyons*,
 461 U.S. 95 (1983) ...................................................................................................... 13

*Gilbert v. DaGrossa*,
 756 F.2d 1455 (9th Cir. 1985) ..................................................................................... 12

*Goodman v. U.S.*,
 369 F.2d 166 (9th Cir. 1966) ....................................................................................... 13

*Groh v. Ramirez*,
 540 U.S. 551 (2004) ............................................................................................. 5, 6, 9

*Hufford v. McEnaney*,
 249 F.3d 1142 (9th Cir. 2001) ..................................................................................... 10

*Hunter v. Bryant*,
 502 U.S. 224 (1991) .................................................................................................... 11

*Illinois v. Gates*,
 462 U.S. 213 (1983) ...................................................................................................... 3

*Johnson v. Homecomings Financial*,
 2010 WL 3075189 (S.D. Cal. Aug. 5, 2010) .............................................................. 17

*KRL v. Estate of Moore*,
 512 F.3d 1184 (9th Cir. 2008) ................................................................................. 9, 12

*MacPherson v. U.S.*,
 803 F.2d 479 (9th Cir. 1986) ....................................................................................... 18

*Malley v. Briggs*,
 475 U.S. 335 (1986) .................................................................................................... 11

*Motley v. Parks*,
 432 F.3d 1072 (9th Cir. 2005) ..................................................................................... 16

*Patsy v. Board of Regents*,
 457 U.S. 496 (1982) .................................................................................................... 13

*Pearson v. Callahan*,
 555 U.S. 223, 129 S.Ct. 808 (2009) ............................................................................ 11

*People v. Baylor*,
 97 Cal.App.4th 504 (2002) .......................................................................................... 13

*Ramirez v. Butte- Silver Bow County*,
 298 F.3d 1022 (9th Cir. 2002 ........................................................................................ 6

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Saucier v. Katz,*
    533 U.S. 194 (2001) ................................................................................................ 11

*Sorrels v. McKee,*
    290 F.3d 965 (9th Cir. 2002) .................................................................................. 9

*Steve Jackson Games, Inc. v. U.S. Secret Service,*
    816 F.Supp. 432 (W.D. Tex. 1993) ...................................................................... 16

*U.S. v. Adjani,*
    452 F.3d 1140 (9th Cir. 2006) ................................................................................ 3

*U.S. v. Alexander,*
    761 F.2d 1294 (9th Cir. 1985) .............................................................................. 10

*U.S. v. Ayers,*
    924 F.2d 1468 (9th Cir. 1991) ................................................................................ 7

U.S. v. Carter,
    549 F.Supp.2d 1257 (D.Nev. 2008) ...................................................................... 3

*U.S. v. Fumo,*
    565 F.Supp.2d 638 (E.D.Pa. 2008) ....................................................................... 8

*U.S. v. Giberson,*
    527 F.3d 882 (9th Cir. 2008) .................................................................................. 9

*U.S. v. Gilman,*
    684 F.2d 616 (9th Cir. 1982) ................................................................................ 10

*U.S. v. Gray,*
    78 F.Supp.2d 524 (E.D.Va. 1999) ......................................................................... 8

*U.S. v. Harrison,*
    566 F.3d 1254 (10th Cir. 2009) ............................................................................. 3

*U.S. v. Hay,*
    231 F.3d 630 (9th Cir. 2000) .................................................................................. 3

*U.S. v. Heldt,*
    668 F.2d 1238 (D.C. Cir 1981) .............................................................................. 7

*U.S. v. Hinds,*
    856 F.2d 438 (1st Cir. 1988) .................................................................................. 7

*U.S. v. Kelley,*
    482 F.3d 1047 (9th Cir. 2007) ................................................................................ 3

*U.S. v. King,*
    693 F.Supp.2d 1200 (D. Hawaii 2010) ................................................................. 9

*U.S. v. Kufrovich,*
    997 F.Supp. 246 (D. Conn. 1997) .......................................................................... 7

*U.S. v. Lacy,*
    119 F.3d 742 (9th Cir. 1997) .................................................................................. 3

*U.S. v. McGrew,*
    122 F.3d 847 (9th Cir. 1997) .................................................................................. 6

*U.S. v. Perez,*
    484 F.3d 735 (5th Cir. 2007) .................................................................................. 3

*U.S. v. Rubio,*
    727 F.2d 786 (9th Cir. 1984) ................................................................................ 18

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- iii -

Case No. 3:09-cv-0168 JSW

DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

*U.S. v. Sedaghaty*,
   2010 WL 1490306 (D. Or. 2010) ........................................................................................... 9

*U.S. v. Slocum*,
   708 F.2d 587 (11th Cir. 1983) ............................................................................................. 7

*U.S. v. Whitten*,
   706 F.2d 1000 (9th Cir. 1983) ........................................................................................... 10

*U.S. v. Wong*,
   334 F.3d 831 (9th Cir. 2003) ............................................................................................... 3

*United States v. Cardwell*,
   680 F.2d 75 (9th Cir. 1982) ................................................................................................. 5

*United States v. Ford*,
   184 F.3d 566 (6th Cir. 1999) ....................................................................................... passim

*United States v. Kow*,
   58 F.3d 423 (9th Cir. 1995) ............................................................................................... 10

## STATUTES

1980 U.S.C.C.A.N. 3950 ............................................................................................... 19, 20

1980 U.S.C.C.A.N. 3961 ..................................................................................................... 19

42 U.S.C. § 2000aa ............................................................................................... 17, 18, 19

Cal. Penal Code §1536 ........................................................................................................ 13

Cal. Penal Code 646.9(a) ...................................................................................................... 4

Cal. Penal Code Ann. § 1540 ............................................................................................. 13

Schiff Hardin LLP
Attorneys At Law
San Francisco

- iv -

Case No.  3:09-cv-0168 JSW

DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

# I.     **INTRODUCTION**

Plaintiffs have conceded from the outset that Defendants had a lawful basis for searching and seizing at least some of the computers located at Long Haul. Given the uncontroverted evidence identifying Long Haul as the place where the threatening emails originated, they could hardly do otherwise. After much discovery and extensive briefing, Plaintiffs' attempt to distinguish the "public access" computers in Long Haul's "Internet room," which were concededly subject to seizure, from all other computers found on Long Haul's premises has been fully revealed as artificial, unjustified, and unsupportable.

As the undisputed facts demonstrate, and as Judge Ford rightly concluded, probable cause did not stop at the threshold of Long Haul's Internet room, but rather extended to all computers within the premises, any of which could have been the source of the threatening emails. Plaintiffs' protestations asserting that Long Haul was above suspicion do nothing to alter the fundamental fact that a reasonable officer investigating serious crimes against UC researchers and their families would account for the possibility that *any* computer at Long Haul may have been used by seizing *all* such computers. As a matter of law and undisputed fact, Plaintiffs have failed to demonstrate any violation of the Fourth Amendment arising out of the warrant or its execution. More fundamentally still, they have failed to demonstrate that any individual defendant violated any "clearly established" Fourth Amendment right and so are unable to overcome defendants' qualified immunity with respect to the Fourth Amendment claims.

Plaintiffs devote their discussion of the Privacy Protection Act claims to an unavailing attempt to impute to Defendants knowledge of publishing activities which, in the case of EBPS, did not even exist. In so doing, they ignore Defendants' "criminal suspect" defense, which applies here because Defendants had probable cause to believe that a person affiliated with Long Haul was complicit in stalking UC researchers. The undisputed facts – including the three separate episodes stretching from March to June, 2008, each involving multiple profane, intimidating, and harassing emails sent out of Long Haul to UC animal researchers – clearly demonstrate the existence of such probable cause here. Plaintiffs, intent upon wrapping their activities in the supposed cloak of the First Amendment, offer no meaningful rebuttal. Similarly

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

1   un-rebutted is the University Defendants' assertion of the good faith defense to the PPA, which

2   furnishes yet another basis for rejecting Plaintiffs' PPA claims against these individuals.

3   **II.      ARGUMENT**

4       **A.      Defendants Are Entitled To Summary Judgment On Plaintiffs' Second Cause Of Action For Violation Of The Fourth Amendment.**

5

6       Plaintiffs are either confused themselves or seek to confuse and obfuscate the issues

7   before the Court.  To be clear:  Defendants do not rely upon facts that were not part of Kasiske's

8   Statement of Probable Cause in seeking summary judgment on Plaintiffs' Fourth Amendment

9   claims.  Kasiske's Statement more than suffices to establish probable cause for issuance of the

10  warrant.  The facts regarding Long Haul's active support of Stop Cal Vivisection and other

11  animal rights activists, which Plaintiffs complain are beyond the "four corners" of Kasiske's

12  Statement, are not necessary to establish probable cause for Judge Ford's issuance of the warrant

13  and are not offered for that purpose.  Rather, as is entirely evident in Defendants' Opening Brief,

14  these facts relate to the Privacy Protection Act claims, in that they furnish additional support for

15  Defendants' assertion of the "criminal suspect" defense.  Plaintiffs' attempt to conflate those

16  defenses and suggest that Defendants, in seeking summary judgment on the Fourth Amendment

17  claim, are somehow improperly relying on "new" facts not shared with Judge Ford is unfounded

18  and misleading.

19      Plaintiffs' extended discussion of their dismissed First Amendment claim is similarly

20  beside the point.  Plaintiffs have never sought – and do not now seek – to amend their Complaint

21  in order to re-assert this claim.  Instead, they indulge in a distorted characterization of

22  Defendants' evidence, insisting that Defendants were "biased" against Long Haul, that they "did

23  not like Plaintiff's politics," and that this bias – rather than the objective facts giving rise to

24  probable cause – accounts for Defendants' actions in obtaining the warrant.  (Plaintiffs' Reply

25  and Opposition Brief ("Reply/Opp.") pp. 3-4.)  Plaintiffs cannot avoid summary judgment by

26  reference to unsupported allegations of retaliation and bias which are no longer part of this case.

27  The undisputed facts speak for themselves.  These facts fully describe the showing made to Judge

28  Ford in support of the warrant application.  As a matter of law, that showing demonstrates the

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -

Case No.  3:09-cv-0168 JSW

DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

1    existence of probable cause for the warrant and the ensuing search.

2              **1.      Kasiske's Statement Established Probable Cause For Issuance Of The Warrant.**

3

4         Plaintiffs' reply/opposition re-iterates the arguments raised in their Opening Brief.  Again,

5    they concede that probable cause arose out of the fact that the threatening emails were traced back

6    to Long Haul.  Again, they seek to argue that this probable cause extended only to the "public-

7    access" computers located in Long Haul's "Internet Room," and no others.[1]  Defendants have

8    previously discussed the numerous and obvious flaws in this argument.  (Defendants' Joint

9    Memorandum of Points and Authorities In Support of Motions for Summary Judgment and

10   Opposition ("Defts' Opening Brief") pp. 15-17.)  Chief among them is the fact that Plaintiffs

11   ignore the plain language of Kasiske's Statement and the warrant itself.  Having concluded that

12   the subject emails originated from Long Haul, Kasiske sought and received authorization to seize

13   and search "[a]ll electronic data processing and storage devices, computers and computer

14   systems" located at Long Haul's premises.  Kas. Dec. ¶¶61-62, Ex. N.  He did not limit the scope

15   of the requested search to "public-access" computers, because he did not and reasonably could

16   not have known whether those were the sole computers present at Long Haul.  Kas. Dec. ¶¶ 72,

17   73-75.  Judge Ford agreed, and issued the warrant.  There is ample authority to support her

18   decision, which is itself entitled to "great deference."  *Illinois v. Gates*, 462 U.S. 213, 236

19   (1983).[2]

20        Plaintiffs point to purported omissions in Kasiske's Statement, without suggesting how

21   inclusion of the "omitted" matters would have changed the scope of the warrant, or Judge Ford's

22   _____

23        [1]  Probable cause is not an exercise in hindsight judgment, as Plaintiffs argue.  Instead, "probable cause means a 'fair probability' that contraband or evidence is located in a particular place."  *U.S. v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007).  The test is satisfied as long as "it
24   would be reasonable to seek the evidence in the place indicated in the affidavit."  *U.S. v. Adjani*, 452 F.3d 1140, 1145 (9th Cir. 2006).

25        [2]  *See, e.g., U.S. v. Hay*, 231 F.3d 630, 637 (9th Cir. 2000); *U.S. v. Lacy*, 119 F.3d 742,
26   746-47 (9th Cir. 1997); *U.S. v. Wong*, 334 F.3d 831, 837-38 (9th Cir. 2003); *U.S. v. Perez*, 484 F.3d 735, 740 (5th Cir. 2007) (IP trace gave rise to probable cause to search physical address
27   associated in child pornography investigation); *U.S. v. Harrison*, 566 F.3d 1254 (10th Cir. 2009); *U.S. v. Carter*, 549 F.Supp.2d 1257, 1261 (D.Nev. 2008).

28

1    decision to issue it.  (Reply/Opp. p. 8.)  Kasiske did not believe any entity other than Long Haul

2    controlled the premises, so there was no need to search for or seize indicia of control.  Kas. Dec.

3    ¶¶49, 72, 78.  A request to search for "membership lists for Long Haul," may have been justified,

4    but was arguably premature, prior to determining what additional computers were maintained at

5    Long Haul, and whether those computers contained evidence.  Indeed, the omission of any

6    request to search Long Haul's "membership lists" undercuts any notion that Defendants were

7    "biased" against Long Haul, and/or sought to retaliate against it due to the political activities of its

8    members.

9           Similarly flawed is Plaintiffs' argument that probable cause only supported seizure of

10   "public access" computers because "the only mention" in Kasiske's Statement "was of public

11   access computers and any logs relating to them."  (Reply/Opp. pp. 8-9.)  Kasiske's Statement

12   refers to these specific computers because he knew about them at the time.  Kas. Dec. ¶¶18, 55,

13   64.  However, because he had no reason to assume they were the *only* computers in use at Long

14   Haul, he did not limit the warrant to the "public access" computers, but instead took care in

15   ensuring that the warrant authorized seizure of "[a]ll electronic data processing and storage

16   devices, computers and computer systems."  Failure to do so would have unduly limited the

17   search, leaving untouched other computers which could have just as readily contained evidence of

18   the crime.

19          Plaintiffs also argue that the March, 2008 emails described in the Statement of Probable

20   Cause are somehow irrelevant, because they "did not contain credible threats against safety," and

21   therefore did not violate California's stalking statute.  (Reply/Opp. p. 7.)  The question is not

22   whether the March emails, standing alone, would have supported a stalking charge.  Rather, the

23   question is whether these emails furnished an additional reason to believe that evidence of the

24   stalking (as embodied in the June, 2008 emails) could be located at Long Haul.[3]  Plainly, they did.

25   As disclosed in the Statement, all of the March emails – sent at various times over a six day

---

26        [3]  Plaintiffs' are wrong in asserting that the warrant failed to specify the offense for which
27   evidence is sought.  (Reply/Opp. p. 10.)  In the Statement of Probable Cause, which was
     incorporated by reference into the warrant, Kasiske identified the offense as a violation of Cal.
28   Penal Code 646.9(a).  Kas. Dec. ¶50, Ex. N.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 4 -                                                      Case No. 3:09-cv-0168-JSW

DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

1    period commencing on March 19, 2008 – originated from the same IP address as the June 2008,

2    emails, which was physically located at Long Haul.  Like the June 2008, emails, these March

3    emails were sent to UC Berkeley professors engaged in animal research.  Like the June 2008,

4    emails, the March emails included harassing and intimidating references to the professors' animal

5    research, including subject lines such as, "Hey animal killer," and "Why do you torture and kill

6    animals?" and obscene comments such as "The blood is on your hands you speciesist [sic] scum.

7    They die, you profit.  Sick motherfucker."  Kas. Dec. ¶35, Ex. G.  The March 2008, emails were

8    similar in content, directed at similar victims, and were apparently prompted by the same motive

9    to harass and intimidate animal researchers as the June, 2008 emails.  The fact that a Long Haul

10   computer or computers had been used on numerous occasions, separated by several months, for

11   this same unlawful purpose undeniably increased the likelihood that evidence of the June, 2008

12   stalking could be found at Long Haul in August, 2008.

13        Plaintiffs cite *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999), for the proposition

14   that the warrant should have specified a time period.  *Ford* relies upon a Ninth Circuit case,

15   *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982).  In *Cardwell*, the court noted that

16   there were "[n]o time or subject matter limitations" and that the supporting affidavit did not

17   "provide the information needed to limit the general nature of the warrant."  *Id*. at 78-79.  Here, in

18   contrast, the Statement of Probable Cause, which was incorporated into Kasiske's affidavit by

19   reference, did provide time period and subject matter information.  Kasiske Dec., Exs. N, O.

20              **2.      The Search Was Conducted In Accordance With The Warrant And
                          The Requirements Of Probable Cause.**

21

22        The search warrant clearly identified both the places to be searched and the items to be

23   seized.  Kas. Dec. ¶¶61-62, Ex. N.  Defendants limited their search accordingly.  Plaintiffs can

24   point to no evidence that Defendants exceeded the warrant's scope.

25        Plaintiffs' reliance on *Groh v. Ramirez*, 540 U.S. 551 (2004) is completely misplaced.  In

26   contrast to the instant warrant, the warrant at issue in *Groh* did not describe the items to be seized

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 5 -                                                         Case No.  3:09-cv-0168 JSW

DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

1   at all.  *Groh*, 540 U.S. at 558.[4]  While the *Groh* warrant application listed the particular items to

2   be seized, the warrant did not incorporate the warrant application by reference.  *Id*. at 557-58.  In

3   contrast, here the warrant obtained by Defendants described both the places to be searched and

4   the items to be seized with particularity, *and* specifically incorporated the Statement of Probable

5   Cause by reference.[5]

6          Plaintiffs assert the warrant's scope was exceeded in three instances:  (1) the search of the

7   "EBPS office;" (2) Zuniga's review of a small number of photographs found in a file cabinet

8   where he was searching for documents identifying users of the public access computers; and (3)

9   the SVRCF Lab's search of the computers taken from the western loft "Internet room."

10  (Reply/Opp. at pp.12-15.)  None of these searches exceeded the scope of the warrant and none

11  violated the requirements of the Fourth Amendment.[6]

12         With regard to the "EBPS office," Plaintiffs fail to address the Ninth Circuit cases

13  previously cited by Defendants upholding the validity of warrants which authorize the search of a

14  street address – even one with several dwellings within it – if the [party] is in control of the whole

15  premises, if the dwellings are occupied in common, or if the entire property is suspect.  (*See*

16  Defts' Opening Brief at p. 19.)  Here, the entire property was suspect, because, at a minimum, any

17  computer on the premises could have been the source of the threatening emails.  Even if the

18  officers had somehow concluded that the cardboard, hand-lettered "East Bay Prisoner Support"

19  sign signaled the presence of a separate tenant, it would not have undercut the validity of the

20  warrant, or the authorization it furnished to enter the room and determine whether or not it

21

22         [4]  The same is true for the other two cases relied upon by Plaintiffs.  As in *Groh,* both of
    these cases address warrants which contained no description of the items sought.  *U.S. v.*
23  *McGrew*, 122 F.3d 847, 849 (9th Cir. 1997); *Ramirez v. Butte- Silver Bow County*, 298 F.3d
    1022, 1026 (9th Cir. 2002).  *Ramirez* is the Ninth Circuit opinion from which the petitioner in
24  *Groh* appealed.

25         [5]  Plaintiffs have no evidence to dispute Kasiske's testimony that the Statement of
    Probable Cause accompanied the warrant during the search of the Long Haul premises.
26
           [6]  Plaintiffs decry Defendants' purportedly "bowdlerized account" of their search activities
27  in the declarations submitted in support of the instant motions.  (Reply/Opp. at p. 12.)  Pointedly,
    Plaintiffs fail to cite to a single instance in which these declarations contradict their deposition
    testimony (which is limited by the questions posed by Plaintiffs' counsel) on the subject.

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 6 -                                                      Case No.  3:09-cv-0168 JSW

DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

1    contained computers or other specified items.

2         There was no indication that Long Haul lacked control of the whole premises, in any

3    event.  Plaintiffs rely solely upon the cardboard sign on a locked door, which was one of a

4    number of locked rooms in a building that was closed for business.  They have presented no

5    evidence of separate access from the outside, separate doorbells, or separate mailboxes.  *See U.S.*

6    *v. Ayers,* 924 F.2d 1468, 1480 (9th Cir. 1991); *U.S. v. Hinds,* 856 F.2d 438, 441-42 (1st Cir. 1988).

7    They cite no case which even suggests that the circumstances present here should have alerted

8    Defendants to EBPS' status as a separate tenant.

9         Plaintiffs also address Defendants' brief review of photographs in the eastern loft room.

10   Although none of these photographs were seized, Plaintiffs apparently argue that a Fourth

11   Amendment violation occurred when Zuniga and Shaffer looked at the photographs.  Because

12   Zuniga did not know where documents identifying computer patrons would be kept, he was

13   authorized to search in places where such evidence would likely be found, as in a filing cabinet.

14   *See U.S. v. Heldt*, 668 F.2d 1238, 1267 (D.C. Cir 1981).  Indeed, because the photographs

15   themselves could have included evidence (e.g. photographs depicting Long Haul's "Internet

16   Room," and/or patrons using any computer located on the premises) a cursory inspection of the

17   photographs was justified by the warrant, which explicitly authorized a search for documents

18   identifying such patrons.[7]  Zuniga took note of a photograph portraying a protest in Seattle, which

19   appeared to have evidence of criminal activity.  After discussing the issue with Shaffer, who had

20   worked in Seattle, the photographs were set aside.  To the extent this closer, albeit brief,

21   examination of a limited number of photographs went beyond the search authorized by the

22   warrant, it was justified by the plain view doctrine.

23        Plaintiffs cite *Arizona v. Hicks*, 480 U.S. 321 (1987) in arguing that Defendants' review of

24   the photographs was not covered by the plain view doctrine.  Their reliance is misplaced.  In

25        [7] Officers are entitled and expected to examine an object in order to determine whether or
26   not it is one they are authorized to seize.  *See U.S. v. Slocum*, 708 F.2d 587, 604 (11th Cir. 1983).
     This is especially true for searches of documents, which often require examination before any
27   determination can be made as to whether they fall within the scope of a warrant.  Thus,
     "innocuous records must be examined to determine whether they fall into the category of those
28   papers covered by the search warrant."  *U.S. v. Kufrovich*, 997 F.Supp. 246, 264 (D. Conn. 1997).

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 7 -                                              Case No. 3:09-cv-0168 JSW
DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

1   *Hicks,* the agent, executing a search for weapons, moved stereo equipment to record the serial

2   numbers located on it.  480 U.S. at 325.  While the stereo equipment itself was in plain view, the

3   Supreme Court determined there was no probable cause to move the equipment in order to view

4   the serial numbers.  *Id*. at 326.  *Hicks* is distinguishable on its facts.  There, the officers' act of

5   moving the stereo equipment was unrelated to the objectives which authorized the intrusion.

6   Here, the warrant authorized Zuniga to search the files in the file cabinet for evidence of the

7   identity of computer patrons, and to determine if any files or documents (including any

8   photographs) contained such evidence.  *Hicks* does not support any claim that a Fourth

9   Amendment violation arose out of Defendants' closer examination of photos which they were

10  entitled to review in executing the warrant.[8]

11        Finally, Long Haul asserts that the SVRCF Lab's search of the computers seized from its

12  "Internet room" exceeded the scope of the warrant, because that search identified a number of

13  documents which were briefly reviewed by Kasiske and found to be unrelated to the

14  investigation.  Courts have long recognized that, due to the voluminous data stored on computers,

15  a reasonable search will, of necessity, encompass some review of innocuous records.  *See, e.g.*,

16  *U.S. v. Fumo,* 565 F.Supp.2d 638, 649 (E.D.Pa. 2008) ("[B]ecause of the nature of computer files,

17  the government may legally open and briefly examine each file when searching a computer

18  pursuant to a valid warrant in order to determine which files are described by the warrant.

19  [citation omitted]. For few people keep documents of their criminal transactions in a folder

20  marked 'crime records'."); *U.S. v. Gray,* 78 F.Supp.2d 524, 529 (E.D.Va. 1999) ("[A]lthough

21  care must be taken to ensure a computer search is not overbroad, searches of computer records

22  'are no less constitutional than searches of physical records, where innocuous documents may be

23  scanned to ascertain their relevancy.'").  This is precisely what happened here.  The search terms

24  used by the Lab were clearly targeted and calculated to locate material relating to the

25

26

27        [8]  Plaintiffs cite no basis for their characterization of the cabinet search as "general
      rummaging."  Certainly, it finds no support in the testimony of Defendants, who were the only

28    individuals present at the time.

1    investigation.  Kas. Dec. ¶¶116-117, Ex. V.[9]  Where, as here, search terms are structured to find

2    items reasonably related to the items described in the warrant and affidavit, a search of the

3    computer is not overbroad.  *See U.S. v. King*, 693 F.Supp.2d 1200, 1229 (D. Hawaii 2010)

4    (officers limited search of computer and peripheral devices to that which would produce evidence

5    of defendant's alleged crimes); *U.S. v. Sedaghaty*, 2010 WL 1490306 *5 (D. Or. 2010) (same).

6    The potential intermingling of personal information with evidence of a crime does not justify an

7    exception or heightened procedural protections for computers beyond the Fourth Amendment's

8    reasonableness requirement.  *U.S. v. Giberson*, 527 F.3d 882, 888-89 (9th Cir. 2008).  The search

9    terms used by the SVRCF Lab were limited and targeted, and did not unnecessarily intrude into

10   unrelated or immaterial files.

          **B.      All Individual Defendants Are Entitled To Qualified Immunity With Regard
11                  to Plaintiffs' Fourth Amendment Claims.**
12

13        First, Plaintiffs have failed to uphold their burden of showing that any clearly established

14   constitutional right was violated.  *See Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

15   "[C]ommon to cases in which qualified immunity is unavailable is that the issue has been litigated

16   extensively and courts have consistently recognized the right at issue."  *Id.* at 971 (internal

17   quotation marks, citation and internal ellipse omitted).

18        Plaintiffs have failed to demonstrate that it was "clearly established" that the search

19   warrant was unconstitutionally overbroad on its face.  Plaintiffs' reliance on *Groh v. Ramirez*, 540

20   U.S. 551 (2004), as discussed above, is entirely misplaced.  Plaintiffs also argue that the warrant

21   was facially invalid because it did not contain a date range.  But they cite no precedent clearly

22   establishing any such requirement, and the Ninth Circuit cases they do cite are inapposite.[10]

23   _____

24        [9] Terms such as "animal research" and "vivisection" related to the language contained
     within the threatening emails or fake email accounts used to send the threatening emails.  The
25   term "arson" related to the specific reference to the events at UCLA where animal rights activists
     placed incendiary devices in the homes of animal researchers.  Using these search terms,
26   Defendants anticipated they would discover evidence of the person(s) who sent the threatening
     emails by searching for terms that directly related to or were used in the body of the threatening
     emails or email addresses themselves.

27        [10] As discussed above, Plaintiffs' reliance on *United States v. Ford*, 184 F.3d 566, 576
     (6th Cir. 1999) is misplaced.  Further, in *KRL v. Estate of Moore*, 512 F.3d 1184, 1192-93 (9th
28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 9 -                          Case No.  3:09-cv-0168 JSW

DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

1    Moreover, as to the public access logs, Plaintiffs have not identified any place searched by

2    Defendants that reasonably could not have contained documents falling within the Spring 2008

3    time frame.  It is also undisputed that Defendants did not seize a single document.  Kas. Dec. ¶77,

4    Ex. Q and ¶95, Ex. R.

5         Second, to overcome qualified immunity, "the right the official is alleged to have violated

6    must have been 'clearly established' in a more particularized, and hence more relevant, sense:

7    The contours of the right must be sufficiently clear that a reasonable official would understand

8    that *what he is doing* violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)

9    (emphasis added).  The plaintiff has the burden to establish "a particular, rather than abstract,

10   right."  *Hufford v. McEnaney*, 249 F.3d 1142, 1148 (9th Cir. 2001).  Plaintiffs cite no authority

11   demonstrating that that Defendants' execution of the warrant was clearly unconstitutional under

12   the circumstances presented here.

13        Third, Plaintiffs have wholly failed to respond to the Ninth Circuit precedent cited in

14   Defendants' motion permitting the search of the entire Long Haul premises under the well-

15   established rule applicable when an entire property is suspect or under the control of the suspects.

16   *See* Defts' Opening Brief p. 24 (citing *U.S. v. Gilman*, 684 F.2d 616, 618 (9th Cir. 1982); *U.S. v.*

17   *Whitten*, 706 F.2d 1000, 1008 (9th Cir. 1983); *U.S. v. Alexander*, 761 F.2d 1294, 1301 (9th Cir.

18   1985)).  This line of cases is dispositive of Plaintiffs' Fourth Amendment claims.  At the very

19   least, each of the individual defendants should be dismissed on qualified immunity grounds

20   because it was reasonable for each of the officers involved to conclude that the Fourth

21   Amendment permitted seizure of the computers and storage devices at the Long Haul premises.

22   Plaintiffs' hindsight analysis of the facts now known to its counsel misses the point of qualified

23

24   (*footnote continued from previous page*)
     Cir. 2008), also cited by Plaintiffs, the warrant did contain a time period, but the court held that
25   no reasonable officer could conclude that the evidence supported that time period.  In *United*
     *States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995), "the government did not contain the scope of the
26   warrant by reference to limiting descriptions in the affidavit."  Here, by contrast, the search
     warrant expressly incorporated the Statement of Probable Cause which contained the dates of the
27   emails.  Kas. Dec. ¶60, Ex. O.  Because the warrant here incorporated the Statement of Probable
     Cause by reference, the court should include the contents of the Statement in analyzing the
28   warrant's validity.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 10 -                                                          Case No.  3:09-cv-0168 JSW

DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

immunity entirely.  Qualified immunity gives public officials the benefit of the doubt so long as the law at the time of their conduct did not clearly prohibit their actions.  *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam).  Qualified immunity provides "ample room for mistaken judgments" and protects all government officials except "the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Thus, officials are immune from claims for damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).  To defeat qualified immunity, plaintiffs must establish a mistake in judgment by any of the defendants in the execution of the search warrant.  Indeed, here, it would have been irresponsible to not seize all computers at the Long Haul premises given the undisputed source of the threatening emails.

Even assuming *arguendo* a Fourth Amendment violation occurred, the individual defendants would still be entitled to qualified immunity, which shields them from liability for reasonable mistakes in fact or law that resulted in a Fourth Amendment violation.  *Pearson v. Callahan*, 555 U.S. 223, ___, 129 S.Ct. 808, 815 (2009).  To say that a search or seizure under the Fourth Amendment is "unreasonable" does not answer the qualified immunity question of "reasonableness."  Qualified immunity asks whether, in light of settled law and the circumstances, the official reasonably could have believed his action lawful.  *See Hunter*, 502 U.S. at 228.  If so, the defense applies even though the defendant's action was, in the Fourth Amendment sense, "unreasonable."  *Saucier's* explanation on this fundamental point remains important:

> Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution. Yet, even if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, *Anderson* still operates to grant officers immunity for reasonable mistakes as to the legality of their actions. The same analysis is applicable in excessive force cases, where in addition to the deference officers receive on the underlying constitutional claim, qualified immunity can apply in the event the mistaken belief was reasonable.

*Saucier v. Katz,* 533 U.S. 194, 206 (2001).  The undisputed evidence establishes that each of the

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 11 -                                                      Case No.  3:09-cv-0168 JSW

DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

1   individual defendants acted reasonably in the search of the Long Haul premises and in the seizure

2   of items from within the premises.  This is perhaps most clear with regard to Defendants Zuniga,

3   MacAdam, Shaffer and Hart, none of whom participated in preparation of the search warrant or

4   Statement of Probable Cause.  Zuniga Dec. ¶48; MacAdam Dec. ¶4; Shaffer Dec. ¶8; Hart Dec. ¶5.

5   *See KRL*, 512 F.3d at 1192-1193 ("When analyzing qualified immunity, our underlying inquiry is

6   the *reasonableness* of the officer's conduct. . . .  The distinction between lead and line officers lends

7   itself well to cases . . . in which some officers plan and direct the search, and other officers merely

8   assist in its execution.").  For example, Hart and Shaffer did not search or seize any documents or

9   computers but merely helped carry out items already designated for seizure by others.  Shaf. Dec.

10   ¶¶13-20; Hart Dec. ¶¶7-10.  Moreover, Plaintiffs' repeated assertions that Shaffer "examined" mail

11   or "looked through" photos are baseless.  Shaffer did not look through mail; she looked only at the

12   outside of two envelopes.  Shaf. Dec. ¶35.  Nor did she look through photos; she looked only at

13   photos Officer Zuniga showed her.  *Id.*

**C.   Plaintiffs Lack Any Basis For Asserting Their Fourth Amendment Claims Against Defendants In Their Official Capacities.**

16   Plaintiffs' opposition/reply papers concede the bulk of their "official capacity" claims

17   against Defendants.  Indeed, the sole "official capacity" claim addressed by Plaintiffs is their

18   claim against UCPD Chief Mitchell Celaya, who is sued solely in his official capacity.

19   (Reply/Opp. p. 23.)  For the reasons set forth in Defendants' Opening Brief, Plaintiffs' official

20   capacity claims against each of the other Defendants must be summarily adjudicated in their

21   favor.  (Defts' Opening Brief p. 25.)[11]

---

[11]   There is no claim for injunctive or declaratory relief against Hart, Shaffer or the United States.  Plaintiffs, in their Reply/Opp., request injunctive relief against the state defendants only.  *See* Reply/Opp. at 23:15-16.  Although they seek declaratory relief "against all defendants other than the United States," *id.* at 23:16-18, there is no federal defendant other than the United States against whom Plaintiffs may obtain injunctive or declaratory relief.  Claims against Hart and Shaffer in their official capacities are considered to be claims against the United States.  *See Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985) ("a suit against IRS employees in their official capacity is essentially a suit against the United States").  Moreover, the federal defendants understood this Court's previous order dismissed (with leave to amend) Plaintiffs' claims for injunctive and declaratory relief against Hart and Shaffer in their official capacities for lack of standing.  *See* Doc. #69 at 16:19-22.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 12 -                                        Case No. 3:09-cv-0168 JSW
DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

1    Summary judgment is also the proper means of disposing of Plaintiffs' official capacity

2    claim against Chief Celaya.  Here, Plaintiffs' sole argument is that Chief Celaya is subject to a

3    claim for injunctive relief in his official capacity requiring the "expungement" of data copied

4    from the seized computers.  (Reply/Opp. pp. 22-23.)  Even if Plaintiffs could establish the Fourth

5    Amendment violation necessary to sustain this claim  – which they cannot – they would still lack

6    any basis for obtaining an injunction, because they have failed to demonstrate the inadequacy of

7    available legal remedies.  *See City of West Covina v. Perkins,* 525 U.S. 234, 240-41 (1999).

8    Plaintiffs argue that their legal remedy is inadequate, baldly asserting that "[California Penal

9    Code section] 1536 does not provide for the expungement of information."  (Reply/Opp. p. 23.)

10    Plaintiffs cite no authority, and ignore the relevant statutory scheme.  The Supreme Court in

11    *Perkins* referred to the Ninth Circuit's "conclusion that California law provides adequate

12    remedies for return of their property, including a motion under Cal. Penal Code Ann. § 1536 or a

13    motion under § 1540."  *Id.* at 240.  These statutes provide a means of restoring property to a

14    person under various circumstances, including where there is no probable cause supporting

15    issuance of the warrant.  Pointedly, Plaintiffs do not disclaim any property interest in the

16    information contained on the imaged hard drives, which remain in the custody and control of the

17    UCPD.  *See, e.g. People v. Baylor*, 97 Cal.App.4th 504, 508 (2002) (criminal defendant sought

18    return or expungement of DNA profile under Penal Code Section 1536, based on asserted

19    property interest in profile); *Goodman v. U.S.*, 369 F.2d 166, 168 (9th Cir. 1966) (ordering return

20    of copies along with improperly seized original records).  Plaintiffs here have a legal remedy

21    available to them for return of the imaged hard drives, by means of a motion under Penal Code

22    sections 1536 or 1540.  Because they have an adequate remedy at law, Plaintiffs' claim for

23    prospective injunctive relief must fail.[12]

24    ────────────

25    [12]  The absence of an available remedy at law is one of the "basic requisites of the
issuance of equitable relief."  *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 (1983).  The
26    requirement does not arise out of, nor is it related to, the administrative exhaustion requirement
addressed in *Patsy v. Board of Regents*, 457 U.S. 496, 509 (1982).  Defendants do not argue that
27    Plaintiffs' injunction claim is barred by a failure to exhaust available administrative remedies.
Rather, it is barred because this Court need not and should not exercise its equitable powers when
28    adequate legal remedies exist.  *Patsy* is entirely inapposite.

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 13 -    Case No. 3:09-cv-0168 JSW

DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

D.   **Defendants Are Entitled To Summary Judgment On Plaintiffs' Third Cause Of Action For Violation Of The Privacy Protection Act.**

Plaintiffs devote their opposition/reply to an attempt to establish that Defendants were aware – or should have been aware, had they had investigated further – of Plaintiffs' purported publishing activities.  In so doing, they entirely ignore Defendants' alternative "criminal suspect" and "good faith" defenses – each of which justify entry of summary judgment in Defendants' favor.  Moreover, Plaintiffs' focus on the "knowledge of publication" issue is  misplaced, in that they have failed to raise any disputed issue of material fact which would preclude summary judgment on this ground, either.

1.   **Defendants Lacked Any Knowledge Or Belief That Plaintiffs Engaged In Publishing Activities At The Shattuck Street Premises.**

<u>Long Haul</u>.  Plaintiffs' reply/opposition focuses on the "Slingshot" banner that hung above the door in the eastern loft area as evidence that Defendants should have known that publishing activities occurred in that location.[13]  (Reply/Opp. pp. 19-20.)  Plaintiffs ignore the relevant context.  The officers were searching a building that housed a self-described "anarchist collective" which served as a meeting place for a variety of activist groups, anarchist study groups, and other community organizations.  Palmer Dec. ¶2.  Not surprisingly, they observed posters and signs covering the walls throughout the interior spaces of the Long Haul that addressed varied and miscellaneous causes and events.  *See, e.g.,* Kasiske Dec. ¶¶85-87.  In this setting, there was little reason to take note of a banner with the word "Slingshot," and in fact none of the officers did so.  Even if they had, the banner would have done nothing to alert them to actual publishing activity occurring within the premises.  The banner was entirely consistent with Long Haul's role as a library and "infoshop" which sold or loaned various newspapers and

---

[13]   Defendants explained in their opening brief why the other factors previously touted by Plaintiffs, including a reference to Long Haul in the printed edition of Slingshot, do nothing to establish the requisite knowledge by Defendants.  (Defts' Opening Brief pp. 27-29.)  Plaintiffs now mention these other factors only in passing, without any attempt to rebut Defendants' showing.  (Reply/Opp. p. 2.)  In so doing, Plaintiffs again seek to mislead this Court by repeating their inaccurate assertion that "every issue of Slingshot stated it was published from the Long Haul address."  (*Id.* at 2:19-20.)  As Defendants noted previously, the cited reference contains no such "statement."  (Defts' Opening Brief p. 28, n. 19.)

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 14 -                                                    Case No.  3:09-cv-0168 JSW
DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

1   "zines."  A reasonable officer who took note of the banner may have concluded that Long Haul

2   supported "Slingshot," and/or that it sold or distributed issues of "Slingshot," but there was no

3   apparent reason to conclude that it *published* Slingshot.  This is especially true in light of the

4   small, cramped room behind the wall displaying the banner, the size of which itself belied any

5   notion that a newspaper was published there.  Alberts Dec. ¶¶62-63.  Plaintiffs have failed to

6   identify any sufficient basis for this Court to impute knowledge of Long Haul's publishing

7   activities to Defendants as a matter of law.  Because they lacked any such knowledge, summary

8   judgment must be granted in their favor.

9        EPBS.  Plaintiffs' reply/opposition does nothing to counter Defendants' showing that they

10  could not possibly have known of any publishing activity by EBPS at the Long Haul premises,

11  because no such publishing occurred there.  (Defts' Opening Brief pp. 29-30.)  Plaintiffs fail to

12  argue to the contrary, and instead simply point to a passing reference to EBPS which ostensibly

13  appeared on the Long Haul website, and assert that the reference "was enough to put the officers

14  on notice that EBPS distributed books, zines and videos to the public and to prisoners."

15  (Reply/Opp. p. 21.)  Even if true, this assertion is beside the point.  Distribution is not the same as

16  publication.  Because EBPS has failed to demonstrate it engaged in publishing activities at Long

17  Haul, its PPA claim fails at the outset.

18       Even if EBPS had engaged in publishing activities at Long Haul, it has failed to counter

19  Defendants' showing that they were entirely unaware of any such activities.  The sole

20  "knowledge" Plaintiffs point to is Defendants' purported awareness of language on the Long Haul

21  website, advertising the "East Bay Prisoner Support Night" and inviting participants to "[b]rowse

22  through and/or donate to our growing prison-related book/zine/video library" and to "Read and

23  reply to prisoner mail."  (Reply/Opp. p.21).  There is no evidence that the three specified

24  Defendants (Kasiske, Zuniga, and Alberts) ever saw this item on the Long Haul site, or that they

25  would have had any reason to take any note of it, even assuming the item appeared on the site at

26  the time they looked at it.  And even if they had seen the item, it would not change the result here,

27  as the language does nothing to reveal any publishing activities of EBPS at Long Haul.

28       Finally, Plaintiffs suggest that Defendants could have discovered additional facts

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 15 -                                    Case No. 3:09-cv-0168 JSW
DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

1   regarding EBPS, had they conducted an investigation on the internet.[14]  (Reply/Opp. p. 22.)  As

2   discussed, the PPA does not impose any such obligation to investigate, but instead creates an

3   objective standard for determining whether, in light of the facts known to the officer at the time,

4   the officer "reasonably believed" the person possessing the materials was engaged in publishing

5   activities.  *Steve Jackson Games, Inc. v. U.S. Secret Service,* 816 F.Supp. 432, 440 (W.D. Tex.

6   1993).  Plaintiffs do not cite any contrary case; indeed they cite no authority at all for their

7   assertion that Defendants had a statutory "duty to investigate" the possible presence of publishing

8   activities under the PPA.[15]  Further, even if such an obligation to investigate existed, Plaintiffs'

9   unsupported assertions fail to identify the reasons why Defendants would have undertaken such

10  an internet investigation of EBPS prior to the search – when no Defendant had any inkling that

11  EBPS occupied the Long Haul premises.  Finally, even had Defendants searched the internet and

12  found EBPS's Myspace page, it would change nothing.  The page ostensibly described EBPS'

13  "prison-related zine, book, and video library."  (Reply/Opp. p. 22).  This information does nothing

14  to suggest that EBPS engaged in publishing activities anywhere – much less at the Long Haul

15  premises.  Because Defendants had no information about any such activities, they cannot be held

16  to have violated the PPA under the undisputed facts here.

17          **2.      Defendants' Conduct Falls Within The Criminal Suspect Exception
18                    Created By The PPA.**

19          Defendants have demonstrated that, regardless of whether Plaintiffs could establish they

20  knowingly seized PPA-protected materials, they remain entitled to summary judgment, because

21  their conduct falls within the criminal suspect exception set forth in the PPA.  (Defts' Opening

22  Brief pp. 30-31.)  Plaintiffs' opposition/reply papers make no mention whatsoever of this defense.

23  Their silence amounts to a waiver of any opposition.  *City of Arcadia v. USEPA,* 265 F.Supp.2d

24
25          [14]  Plaintiffs' concede that no such obligation existed for the University Defendants, due to
      the statutory good faith defense asserted by those Defendants.  (Reply/Opp. p. 22.)  *See also*
      Plaintiffs' Motion for Summary Judgment ("Pltffs Opening Brief"), 22:27-28, n. 4.

26          [15]  In their Opening Brief, Plaintiffs cited *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir.
27  2005) in asserting that Defendants were obligated to do further investigation prior to seizing PPA
      protected materials.  (Pltffs Opening Brief, 21:1-6 and 22:3-10.)  *Motley*, a Fourth Amendment
28  case that does not even mention the PPA, is inapposite.

1   1142, 1154 n. 16 (N.D. Cal. 2003); *Bethea v. Burnett,* 2005 WL 1720631, *17 n. 13 (C.D. Cal.

2   June 28, 2005); *Johnson v. Homecomings Financial,* 2010 WL 3075189, *3 (S.D. Cal. Aug. 5,

3   2010).

4        Despite their failure to oppose this defense, Plaintiffs may assert that certain of their

5   Fourth Amendment arguments are germane to Defendants' criminal suspect defense.  Any such

6   attempt would be futile, since these Fourth Amendment arguments do nothing to counter

7   Defendants' showing that they had "probable cause to believe" that a person affiliated with Long

8   Haul was complicit in sending the threatening emails.  42 U.S.C. § 2000aa(a)(1), 2000aa(b)(1).

9   Plaintiffs' Fourth Amendment arguments rely heavily on the proposition that the Court cannot

10  consider anything outside the "four corners" of the Kasiske affidavit in determining whether the

11  warrant was supported by probable cause.  Even assuming its accuracy as a matter of Fourth

12  Amendment jurisprudence, this proposition has little bearing on the question of whether the

13  University Defendants had probable cause to believe in Long Haul's complicity for purposes of

14  the PPA defense.  That inquiry extends to *any facts* which were known to the University

15  Defendants at the time of the search.

16       As demonstrated in their Opening Brief, Defendants had more than ample reason to

17  believe that an unknown person affiliated with Long Haul was responsible for sending the

18  emailed threats, including the fact that on three separate occasions harassing emails had been

19  traced back to Long Haul; that Long Haul actively supported Stop Cal Vivisection, an

20  organization known to harass UC animal researchers; and that participants in "home

21  demonstrations" aimed at harassing UC animal researchers and their families in their homes went

22  to Long Haul following such demonstrations.  (Defts' Opening Brief pp. 3-5, 30.)[16]  Plaintiffs

23  ───────────────

    [16]  Plaintiffs inaccurately assert that Defendants' suspicions are "new," post-dating the
24  depositions given in this case.  (Reply/Opp. p. 3 fn.1.)  They fail to support this by citing any
    testimony disclaiming the witness' belief that a person affiliated with Long Haul was complicit in
25  the crime.  Indeed, while the deposition questioning did not frame the issue directly, Kasiske
    nevertheless made it clear that he believed Long Haul's association with Stop Cal Vivisection
26  created a real risk that someone associated with Long Haul would destroy or conceal evidence if
    presented with a subpoena.  Ellis Supp. Decl.¶2, Ex. A (Kasiske depo at 83:22-84:13, 85:13-86:3,
    86:24-87:8, 90:16-91:12, 93:18-94:12.)  Alberts voiced the same concerns during her deposition.
27  Ellis Supp. Dec. ¶3, Ex. B (Alberts depo at 53:20-54:5, 56:13-57:4, 71:15-72:9, 86:7-87:3, 89:12-
    20, 93:13-94:7.

28

1    have not and cannot dispute these facts.  Rather, they argue that – notwithstanding these facts –

2    they were somehow above suspicion, because they were at all times simply engaging in their First

3    Amendment rights.  (Reply/Opp. pp. 3-6.)  Regardless of whether or not individuals affiliated

4    with Long Haul exercised First Amendment rights in supporting Stop Cal Vivisection and other

5    animal rights' activists, it was lawful and reasonable for Defendants to consider the relevance of

6    those activities in investigating the source of the threatening emails.  The First Amendment did

7    not bar them from doing so.  *See, e.g.*, *U.S. v. Rubio,* 727 F.2d 786, 791 (9th Cir. 1984) ("We

8    strongly disagree with any inference that criminal investigation is somehow prohibited when it

9    interferes with such First Amendment interests."); *MacPherson v. U.S.,* 803 F.2d 479, 484 (9th

10   Cir. 1986) (observing that investigation and surveillance of suspected criminals "inevitably"

11   involves tracking the First Amendment activities of individuals.).

12       Finally, Long Haul's efforts to now offer innocent explanations for the "movie night" and

13   other activities cited by Defendants, based largely on facts unknown to Defendants at the time, is

14   beside the point.  (*See* Reply/Opp. pp. 3-5.)  The issue is whether Long Haul's support of Stop

15   Cal Vivisection and other facts known to Defendants at the time – including the fact that the

16   March, May, and June emails had all originated from Long Haul – supported Defendants'

17   reasonable belief that a person affiliated with Long Haul was complicit.  Clearly, they did.  Long

18   Haul's post-hoc efforts to explain and justify these activities change nothing.

19              **3.    There is No PPA Liability for Seizure of Documentary Materials.**

20       Plaintiffs are relegated to arguing for strict liability against the United States regarding

21   documentary materials.[17]  Plaintiffs claim that the United States may not assert a good faith

22   defense under 42 U.S.C. § 2000aa-6(b).  But the United States has not sought to do so.  *See* Deft's

23   Opening Brief p. 32 (only the University Defendants assert good faith defense).  The United

24   States, along with the other Defendants, has asserted the criminal suspect exception with respect

25   to both work product materials and documentary materials under 42 U.S.C. §§ 2000aa(a)(1) &

26   (b)(1), as well as the exception at 42 U.S.C. § 2000aa(b)(3) pertaining to the possible destruction,

---

27           [17]  Plaintiffs' PPA claim against the United States excludes any PPA claim against Hart or
28   Shaffer.  *See* 42 U.S.C. § 2000aa-6(d).

- 18 -                                Case No.  3:09-cv-0168 JSW

1   alteration or concealment of documentary materials were a subpoena to have been served.  For

2   the reasons set forth in this brief and in Defendants' Opening Brief at pp. 30-31, those exceptions

3   exempt the United States from liability.  As a separate defense, the United States also asserts,

4   along with the other Defendants, that it is not liable as to "work product materials" because any

5   such materials were not "possessed by a person reasonably believed to have a purpose to

6   disseminate to the public" a form of public communication.  42 U.S.C. § 2000aa(a).[18]  For the

7   reasons stated in this brief and in Defendants' Opening Brief at pp. 26-30, the United States, like

8   the other Defendants, lacked any knowledge or belief that either Plaintiff was engaged in

9   publishing activities at the Long Haul premises.

10              **4.      The Good Faith Defense Furnishes An Additional Basis For Granting
                          Summary Judgment To The University Defendants.**
11

12          The University Defendants have each asserted the PPA's good faith defense, which the

13   statute extends to an individual who has "a reasonable good faith belief in the lawfulness of his

14   conduct."  42 U.S.C. §2000aa-6(b).  Apart from conceding that their PPA claims against the

15   University Defendants must be based on facts actually known to those Defendants, Plaintiffs'

16   papers make no mention at all of the PPA's good faith defense.  (Reply/Opp. p. 22.)

17          As explained in Defendants' Opening Brief, the good faith defense bars Plaintiffs' PPA

18   claims on twogrounds:  1) Defendants' reasonable good faith belief that a person affiliated with

19   Long Haul was a criminal suspect; and 2) Defendants' reasonable good faith belief as to the

20   absence of any publishing activities at Long Haul.  (Defts' Opening Brief p. 32.)  Plaintiffs'

21   opposition/reply papers do nothing to rebut, or even address, these alternative bases for the good

22   faith defense.

23          As recognized in the PPA's legislative history cited by Plaintiffs, "the good faith defense

24   has often precluded the recovery for unlawful searches and seizures."  S. Rep. 96-874, at *15

25   (1980), *reprinted* 1980 U.S.C.C.A.N. 3950, 3961.  In order to broaden the availability of a

26          [18]  Plaintiffs apparently concede that the requirements of § 2000aa are separate from the
     good faith defense at § 2000aa-6(b).  *See* Pltffs Opening Brief at p. 22 & 22 n.4.  Plaintiffs have
27   not argued that the United States is barred from asserting the reasonable belief requirement of
     § 2000aa(a).
28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 19 -                                    Case No. 3:09-cv-0168 JSW

DEFENDANTS' JOINT REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT

1   damages remedy under the PPA, the statute bars government units from relying on the good faith

2   defense, *while at the same time ensuring that individual defendants retain the right to assert it.*

3   *Id.* The good faith defense precludes recovery against the individual University Defendants here.

4   **III.   EVIDENTIARY OBJECTIONS TO PLAINTIFFS' SUPPLEMENTAL EVIDENCE**

5          Defendants object to and move to strike the supplemental evidence offered in support of

6   Plaintiffs' reply/opposition, as follows: Lacks Authentication (FRE901):  Miller Supp.Decl. Exhs

7   1-6; Hearsay (FRE 802):  Zimmerman Supp. Dec. – ¶2, Ex. 1; ¶3, Ex. 2 (*Palmer I*) at 75:4-16; ¶4,

8   Ex. 3 (*Palmer II*) at 315:15-20; and, ¶6, Ex. 5 (*Lyons*) at 82:16-19; Miller Supp. Dec. – 2:22-23,

9   2:25-27, 3:3-4, and 3:6-7; Lacks Foundation (FRE 602 and/or 701):  Zimmerman Supp. Dec. – ¶2,

10  Ex. 1; ¶s3, Ex. 2 (*Palmer I*) at 75:4-16; ¶4, Ex. 3 (*Palmer II*) at 315:5-8 and 315:15-20; and, ¶6,

11  Ex. 5 (*Lyons*) at 82:16-19, 86:1-6, and 86:14-21; Miller Supp. Dec. – 2:10-11, 2:15-16, 2:16-17,

12  2:22-23, 2:25-27, 3:3-4, 3:6-7, and 3:9-11; Best Evidence Rule (FRE 1002):  Miller Supp.Dec. –

13  2:22-23, 2:25-27, 3:3-4, 3:6-7, and ¶8, Ex. 5.

14  **IV.   CONCLUSION**

15         For the foregoing reasons, and for the additional reasons set forth in their Opening Brief,

16  the University Defendants and the Federal Defendants each respectively request this Court to

17  enter summary judgment in their favor on each claim asserted against them by Plaintiffs Long

18  Haul and EBPS, respectively, and to deny Plaintiffs' motion for summary judgment in its entirety.

19  Dated:  March 14, 2011                    SCHIFF HARDIN LLP

20                                            By:_____*/s/ William J. Carroll*_____
                                                  William J. Carroll
21                                            Attorneys for Defendants
                                              MITCHELL CELAYA, KAREN ALBERTS,
22                                            WILLIAM KASISKE, WADE MACADAM and
                                              TIMOTHY J. ZUNIGA
23

24  Dated:  March 14, 2011                    MELINDA HAAG
                                              United States Attorney
25
                                              By:_____*/s/ Jonathan U. Lee*_____
26                                                 Jonathan U. Lee
                                                   Assistant United States Attorney
27  SF\9985919.1                              Attorneys for the FEDERAL DEFENDANTS

28