IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LONG HAUL INC. and EAST BAY
PRISONER SUPPORT,

    Plaintiffs,

v.

UNITED STATES OF AMERICA, et al.,

    Defendants.

No. C 09-00168 JSW

**ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT**

Now before the Court are the motions for summary judgment filed by plaintiffs Long Haul, Inc. ("Long Haul") and East Bay Prisoner Support ("EBPS") (collectively, "Plaintiffs") and by defendants Mitchell Celaya, Karen Alberts, William Kasiske, Wade Macadam and Timothy Zuniga (collectively, "University Defendants") and Lisa Shaffer, Mike Hart, and the United States (collectively, "Federal Defendants"). Having considered the parties' pleadings and the relevant legal authority, the Court hereby denies Plaintiffs' motion for summary judgment and grants in part and denies in part Defendants' motion for summary judgment.

## BACKGROUND

Plaintiffs Long Haul, Inc. ("Long Haul") and East Bay Prisoner Support ("EBPS") filed this action against officers from the University of California Police Department, the United States, and Shaffer and Hart with the Federal Bureau of Investigation ("FBI") for their conduct in connection with a search of their premises on August 27, 2008.

On June 14, 2008, a series of threatening emails were sent to a professor at the University of California at Berkeley. Defendant Kasiske determined that the emails were sent from a computer at Long Haul. (Declaration of Matthew Zimmerman ("Zimmerman Decl."), Ex. 1, 3 (Warrant and Statement of Probable Cause). Kasiske determined that the sender of these emails was in violation of California Penal Code § 646.9 (a) (stalking). (*Id.*, Ex. 3.) In his Statement of Probable Cause, Kasiske stated "I know that Long Haul is a resource and meeting center for radical activists. I know that animal rights activists have held meetings at the Long Haul. The Long Haul's website advertises that they offer a computer room with four computers for 'activists orientated access.'" (*Id.*, Ex. 3.) Kasiske further stated that, based on his training and expertise, he knew that "establishments that offer public computer access often have some type of system for patrons to sign in or register to use the computers. A search of Long Haul's premises could reveal logs or sign-in sheets indicating which patrons used the computers on particular dates. This information would aid in identifying the suspect who sent the threatening emails using Long Haul's computers." (*Id.*, Ex. 3.) Kasiske further stated that "the suspect who sent the threatening email messages used the computers for other purposes as well. A search of the computers at Long Haul could reveal information the suspect stored on the computers, websites the suspect accessed, or other email accounts the suspect used." (*Id.*, Ex. 3.)

On August 26, 2008, Kasiske applied for and obtained a warrant to search the "premises, structures, rooms, receptacles, outbuildings, associated storage areas, and safes situated at: The Long Haul Infoshop, 3124 Shattuck Avenue, Berkeley, CA." (*Id.*, Ex. 1.) The warrant authorized the search for and seizure of any written, typed, or electronically stored documents containing the "names or other identifying information of patrons who used computers at the Long Haul Infoshop" and of all electronic data processing and storage devices, computers and computer systems. (*Id.*) The warrant also purported to authorize the officers to transfer the seized evidence to a secondary location for searching and to search the computers beyond the ten-day issuance period. (*Id.*) The warrant stated that the search authorized was for "evidence" of "[p]roperty or things used as a means to committing a felony" and "[p]roperty or things that

are evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony." (*Id.*) The search warrant incorporated by reference the statement of probable cause. (*Id.*)

On the inventory of items seized, the officer described the items discovered from the "INTERNET ROOM," from the "UPSTAIRS OFFICE," and from the "DOWNSTAIRS OFFICE - 'EAST BAY PRISONER SUPPORT.'" (Zimmerman Decl., Ex. 2.)

At the time of the search, the door to the EBPS's office was locked and had a paper or cardboard sign on it which said "East Bay Prisoner Support." (Zimmerman Decl., Ex. 11 (Deposition of Jeffrey Patrick Lyons, Jr.) at 53:24 - 54:8, 55:7-11.)

The Court shall address additional facts as necessary to its analysis in the remainder of this Order.

**EVIDENTIARY OBJECTIONS**

The Court rules on the parties' evidentiary objections as follows: (1) overruled as to the Declaration of Jessie Palmer, ¶¶ 5, 6, 8, 11, 17, 21 through 26 and Exs. 1, 8, 12 through 16; Declaration of Patrick Lyons, ¶ 2 and Ex.1; Declaration of Kathryn Miller, ¶¶ 7, 8; Supplemental Declaration of Kathryn Miller, ¶ 9 and Exs. 1 and 6; Declaration of William Kasiske, ¶¶ 16, 67, 101 at 22:2-3, 106 at 22:15-16 and 19-20; Declaration of Timothy Zuniga, ¶ 13; and (2) sustained as to Declaration of Matthew Zimmerman, Exs. 25, 27; Declaration of William Kasiske, ¶¶ 29, 66 at 15:22-25, 72 at 17:13-16, 74, 75, 99 at 18:22, 112; Declaration of Karen Alberts, ¶ 40. Additionally, the Court overrules all of the objections based on the grounds of mischaracterizing evidence. The parties are not actually objecting to evidence being admitted. Instead, they are raising arguments regarding what the evidence states. The Court is able to examine the evidence and determine what it actually states.

The Court need not rule on the remainder of the parties' evidentiary objections because the Court did not need to consider such evidence in order to resolve the cross-motions for summary judgment.

**ANALYSIS**

**A.      Legal Standards Applicable to Motions for Summary Judgment.**

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

4

**B.     The Parties' Cross Motions for Summary Judgment.**

**1.     Plaintiffs' Fourth Amendment Claim.**

"The Fourth Amendment provides that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'" *United States v. Giberson*, 527 F.3d 882, 886 (9th Cir. 2008) (quoting U.S. Const. Amend. IV). Plaintiffs contend that Defendants violated the Fourth Amendment by acting pursuant to a facially overbroad warrant and by failing to constrain their search to places and things for which probable cause may have existed.

**i.     Overbreath of Warrant.**

Plaintiffs argue that the search warrant was overbroad because it: (1) did not contain a time or date limitation; (2) authorized the seizure of all storage media, regardless of whether computer logs were likely to be stored there; (3) was not limited to publicly accessible computers; and (4) authorized the search for "evidence" without limitation.

"The Fourth Amendment requires that a warrant particularly describe both the place to be searched and the person or things to be seized. The description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986). The warrant "must describe the place to be searched or things to be seized with sufficient particularity, taking account of 'the circumstances of the case and the types of items involved.'" *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1991) (quoting *Spilotro*, 800 F.2d at 963). In addition, a warrant "must be no broader than the probable cause on which it is based." *Id*. In order to determine whether the description in the warrant was specific enough, courts consider: "(1) whether probable cause exists to seize all items of a particular type described in the warrant, ...; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, ...; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued... ." *Spilotro*, 800 F.2d at 963-64 (internal citations omitted).

A facially overbroad warrant may be cured by consideration of more specific standards set forth in the affidavit "only if (1) the warrant expressly incorporated the affidavit by reference and (2) the affidavit either is attached physically to the warrant or at least accompanies the warrant while agents execute the search." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 699 (9th Cir. 2009) (quoting *United States v. Kow,* 58 F.3d 423, 429 n.3 (9th Cir. 1995).

Here, the warrant expressly incorporates the statement of probable cause. (Zimmerman Decl., Ex. 1.) The parties dispute whether the statement of probable cause was attached physically to the warrant or at least accompanied the warrant while the search was executed. Viewing the evidence in the light most favorable to the non-moving party, there is evidence creating a question of fact which precludes granting summary judgment for either party on this issue. There is at least some evidence that the affidavit was reviewed by the search team and was attached to the warrant. (Declaration of Lisa Shaffer, ¶ 11.) But there is also evidence which creates a question of fact regarding whether a copy of the statement of probable cause accompanied the warrant during the search. (Supplemental Declaration of Matthew Zimmerman, Ex. 4 at 124:15-19.)

If the statement of probable cause is considered, the warrant was not overbroad. The statement of probable cause includes a discussion of the emails, with the dates of those emails, and thus, sufficiently limits the time frame of the authorized search. Moreover, the statement of probable cause explains that the desired search was for documents potentially identifying the sender of those emails, and thus, sufficiently limits the scope of the items included in the search. Additionally, although the statement of probable cause focuses on the theory that a patron of Long Haul used a publicly accessible computer to send the threatening emails, viewing the evidence in light most favorable to Defendants the affidavit cannot be read, as a matter of law, to exclude the possibility that the emails were sent from any computer within Long Haul. The statement of probable cause states that the emails were sent from an IP address located within

6

1  Long Haul.[1]  Therefore, the Court finds that the affidavit, viewed in the light most favorable to
2  Defendants, provides probable cause to search every computer and all of the storage devices in
3  Long Haul.  Accordingly, the Court denies Plaintiffs' motion for summary judgment concerning
4  the overbreadth of the warrant.

5  However, if the statement of probable cause was not attached physically to the warrant
6  or did not at least accompany the warrant, then the search warrant was overbroad.  Moreover,
7  even if the affidavit were considered to narrow the scope of the warrant, viewing the evidence
8  in the light most favorable to Plaintiffs, the Court cannot conclude as a matter of law that there
9  was probable cause to search the non-publicly accessible computers or the storage devices in
10  the private offices.  Therefore, Defendants' motion for summary judgment is denied regarding
11  the overbreadth of the warrant.

12  **ii.  Scope of the Search**.

13  Plaintiffs argue that, even if the statement of probable cause narrowed the scope of the
14  warrant, the search exceeded the scope of the warrant because Defendants: (1) searched and
15  seized items from private offices; (2) searched the office belonging to EBPS, a tenant of Long
16  Haul; and (3) searched items not covered by the warrant, such as photographs and mail.
17  Defendants cross move on the grounds that the search was within the scope of the warrant.

18  As discussed above, viewing the statement of probable cause in the light most favorable
19  to the non-moving party, the Court cannot find for either party as a matter of law regarding the
20  lawfulness of Defendants' search and seizure of the non-publicly accessible computers.

21  The parties dispute whether Defendants knew or should have known that EBPS was a
22  separate organization renting an office space from Long Haul.  A search warrant authorizing the
23  search of an entire multi-unit dwelling or building when there is only probable cause to search
24  one of the units would violate the particularity requirement or would be over broad if the

---

[1] The description of the documents to be searched by the lab, and the fact that the computers from the locked offices have, to this day, not been searched, strongly supports the argument that Defendants themselves did not believe that the emails were sent by someone who worked at or was a member of Long Haul, as opposed to a patron using the publicly accessible computers.  However, the Court may not make credibility determinations on a motion for summary judgment.

7

officers knew that the building was a multi-unit one. *See Maryland v. Garrison*, 480 U.S. 79, 85 (1987); *see also Mena*, 226 F.3d at 1037-38 (finding that there was no evidence in the record to create a question of fact that any officer knew or should have known that the residence was a multi-unit dwelling). Moreover, even if the warrant is facially valid, the manner in which the search warrant is executed may violate a plaintiff's constitutional rights if, during the search, the officers become aware that the warrant describes multiple units but continue to search in areas for where there is no probable cause. *See Mena*, 226 F.3d at 1038 ("If, during the search, the officers become aware that the warrant describes multiple residences, the officers must confine their search to the residence of the suspect.") (quoting *United States v. Kyles*, 40 F.3d 519, 524 (2d Cir. 1994)).

The Court finds that there is evidence in the record creating a question of fact which precludes granting summary judgment for either party regarding whether the search and seizure of the computer from EBPS's office was lawful. Viewing the evidence in the light most favorable to Defendants, the only indications that EBPS's office may have been under the control of a separate tenant was a cardboard, non-permanent sign on the internal door to the office in an area where there were lots of posters and signs and the fact that the door was locked. Moreover, Defendants testified that they were not aware before the search that EBPS was a separate organization which rented space from Long Haul and that what they observed during the search did not put them on notice of this information either. Considering the evidence in the light most favorable to Defendants, the Court cannot find as a matter of law that it was clear that EBPS was an independent organization which rented the office from Long Haul.

On the other hand, viewing the evidence in the light most favorable to Plaintiffs, Kasiske testified that, prior to the search, he had seen the name "East Bay Prisoner Support" listed as a "friend" on Stop Cal Vivisection's Myspace page but did not know that EBPS was located at Long Haul. Although he declared that when he saw the "East Bay Prisoner Support" sign on the door, he did not know if the sign referred to a slogan, a movement, an organization, or had some other meaning, this sign, in combination with his prior knowledge of the

1  organization would have put him on notice that EBPS maintained a separate office space that
2  was not under the control of Long Haul. Therefore, the Court denies the parties' cross-motions
3  on this ground.

4  With respect to the search of the photographs, the search warrant authorized the search
5  and seizure of "[a]ny written, typed, or electronically stored documents, papers, notebooks or
6  logs... ." (Zimmerman Decl., Ex. 1.) Photographs are not a category of items authorized by the
7  search warrant. Once it became clear that the photographs were photographs, and not written,
8  typed, or electronically stored documents, the search should have ended. There was no
9  authority to flip through the five or six photographs.

10  Moreover, Zuniga declared that while he searched a file cabinet, he:

> came across some photographs which I briefly perused and noticed that one of them appeared to be of a protest in Seattle and looked as if it may have evidence of criminal activity. I consulted Agent Shaffer because she had previously been assigned to the FBI's office in Seattle.

(Declaration of Timothy J. Zuniga, ¶ 57.) Just as moving the stereo equipment to view the serial numbers constituted an independent search that produced an additional invasion of Plaintiffs' privacy interests in *Arizona v. Hicks*, 480 U.S. 321, 324-25 (1987), looking through even just a couple of photographs was an independent search outside the scope of the warrant.

Defendants' contention that the photographs were in plain view is unavailing. For an item to be in "plain view," "its incriminating character must be immediately apparent." *Horton v. California*, 496 U.S. 128, 137 (1990) (internal quotation marks and citation omitted). As opposed to describing the facts depicted by the photographs, such as whether the photographs captured people vandalizing property, Zuniga merely proffers a legal conclusion regarding criminal activity. Moreover, he states only that the photographs "*may have* evidence of criminal activity," and thus brought in Shaffer to consult on the photographs. If the incriminating nature were "immediately apparent," there would have been no need to consult with another officer to determine whether the photographs contained evidence of criminal activity. Accordingly, the Court finds that, on this limited ground, Plaintiffs have demonstrated that Defendant Zuniga violated Long Haul's constitutional rights. However, the Court cannot

9

1 grant summary adjudication for Plaintiffs on this issue because, viewing the evidence in the
2 light most favorable to Defendants, the Court cannot say, as a matter of law, that Defendants
3 would not be entitled to qualified immunity regarding the search of the photographs.

4 Shaffer's examination of EBPS's mail poses a closer question. Printed envelopes, unlike photographs, fall with the category of items authorized by the warrant to be searched. Moreover, although envelops containing mail are not likely to contain names or other identifying information of patrons who used the computers at Long Haul, viewing the evidence in the light most favorable to Defendants, it may not have been immediately apparent that the envelopes contained mail. Therefore, the Court cannot grant Plaintiffs' motion for summary judgment on this ground. On the other hand, viewing the evidence in the light most favorable to Plaintiffs, it would have been immediately apparent that the envelopes contained EBPS's mail and did not have any identifying information regarding Long Haul's patrons. Accordingly, the Court cannot grant Defendants' motion for summary judgment on this ground either.

### iii. Additional Grounds Raised by Defendants.

Defendants also affirmatively move for summary judgment on the following issues: (1) the duration of the seizure of the computers was reasonable; (2) the scope of the search of the computers was reasonable; (3) the Defendants are entitled to qualified immunity; (4) Plaintiffs' claims against Defendants in their official capacities fail as a matter of law. Defendants made copies of the hard drives and returned all of the computers within six weeks. (Kasiske Decl., ¶¶ 113, 114.) To the extent the computers were lawfully seized, Plaintiffs do not contend that six weeks was unreasonably long. However, as discussed above, viewing the evidence in the light most favorable to Plaintiffs, the Court cannot find as a matter of law that the seizure of the computers from the locked offices was reasonable. Moreover, Defendants have not set forth any justification for retaining copies of the hard drives. Therefore, the Court cannot find this extended seizure lawful as a matter of law either.

With respect to the scope of the search of the computers, Kasiske requested that the lab search for the following: "*In addition to seeking evidence pertaining to email threats,* we are hoping to discover whether or not these computers were used to communicate or otherwise

10

1 document anything regarding arson attacks, vandalisms, and other harassment that has been
2 perpetrated against University of California researchers." (Kasiske Decl., Ex. V (emphasis
3 added).) The Court cannot find, as a matter of law, that Kaiske's request falls within the scope
4 of the warrant and the statement of probable cause.

5 Despite the fact qualified immunity "provides ample protection to all but the plainly
6 incompetent or those who knowingly violate the law," *see Malley v. Briggs*, 475 U.S. 335, 341
7 (1986), questions of fact preclude the Court from granting summary judgment in Defendants'
8 favor. The Ninth Circuit has "repeatedly emphasize[d]" the "distinction between warrants with
9 disputable probable cause and warrants so lacking in probable cause that no reasonable officer
10 would view them as valid." *See KRL v. Estate of Moore*, 512 F.3d 1184, 1190 (9th Cir. 2008).
11 Here, as the Court discussed above, viewing the evidence in the light most favorable to
12 Plaintiffs, the statement of probable cause did not accompany the warrant when the officers
13 executed the search. Without the affidavit, the warrant was indisputably overbroad and no
14 reasonable officer could have mistakenly believed otherwise. Moreover, without a valid
15 warrant, no reasonable officer could have mistakenly believed that the search and/or the seizure
16 was lawful. Accordingly, the Court denies Defendants' motion for summary judgment on this
17 ground.

18 Finally, Defendants challenge Plaintiffs' claim against the University Defendants in
19 their official capacity for prospective injunctive relief. Defendants argue that Plaintiffs are not
20 entitled to an injunction to retrieve their property because they have an adequate remedy at law,
21 the filing of a motion under California Penal Code § 1536. According to Defendants, the filing
22 of a motion under California Penal Code § 1536 constitutes a "remedy at law" because it would
23 be a motion filed under a state law. However, regardless of whether Plaintiffs proceed to seek
24 the return of their property through an injunction in this Court or through a motion in state
25 court, Plaintiffs are still seeking the same equitable relief – the return of their property. The
26 filing of a motion pursuant to a state law does not change the nature of the relief Plaintiffs seek.
27 However, Defendants also argue that Plaintiffs' claims against the University Defendants in
28 their official capacity are claims against the state and, thus, must challenge a practice, policy, or

11

procedure of the state. Plaintiffs do not respond to this argument. When a party sues state officers in their official capacity, the claim is treated as one against the state. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Therefore, the plaintiff must demonstrate that a policy or custom of a governmental entity, of which the defendant official is an agent, was the moving force behind the violation. *Id*. Plaintiffs do not argue, let alone submit any evidence, to demonstrate that a policy or custom of the University of California played any role in their alleged violations. Accordingly, the Court grants Defendants' motion for summary judgment on Plaintiffs' claims for injunctive relief against the University Defendants in their official capacities.

### 2. Plaintiffs' PPA Claim.

The PPA "generally prohibits government officials from searching for and seizing documentary materials possessed by a person in connection with a purpose to disseminate information to the public." *Citicasters v. McCaskill,* 89 F.3d 1350, 1353 (8th Cir. 1996). The PPA provides protection for both "work product materials"[2] and "documentary materials"[3]:

> Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize any work product materials possessed by a person reasonably believed to have a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication....

---

[2] "Work product materials" are defined as follows: "...materials, other than contraband or the fruits of a crime or things otherwise criminally possessed, or property designed or intended for use, or which is or has been used, as the means of committing a criminal offense, and-
(1) in anticipation of communicating such materials to the public, are prepared, produced, authored, or created, whether by the person in possession of the materials or by any other person;
(2) are possessed for the purposes of communicating such materials to the public; and
(3) include mental impressions, conclusions, opinions, or theories of the person who prepared, produced, authored, or created such material."
*See* 42 U.S.C. § 2000aa-7(b).

[3] "Documentary materials" are defined as follows: "...materials upon which information is recorded, and includes, but is not limited to, written or printed materials, photographs, motion picture films, negatives, video tapes, audio tapes, and other mechanically, magnetically or electronically recorded cards, tapes, or discs, but does not include contraband or the fruits of a crime or things otherwise criminally possessed, or property designed or intended for use, or which is or has been used as, the means of committing a criminal offense."
*See* 42 U.S.C. § 2000aa-7(a).

> Notwithstanding any other law, it shall be unlawful for a government officer or employee, in connection with the investigation or prosecution of a criminal offense, to search for or seize documentary materials, other than work product materials, possessed by a person in connection with a purpose to disseminate to the public a newspaper, book, broadcast, or other similar form of public communication....

*See* 42 U.S.C. § 2000aa(a), (b). There are certain exceptions to the PPA's prohibition of searches and seizures, including when "there is probable cause to believe that the person possessing such materials has committed or is committing the criminal offense to which the materials relate." *See* 42 U.S.C. § 2000aa(a)(1), (b)(1).

Defendants argue that they are entitled to summary judgment on Long Haul's PPA claim because: (1) they lacked any knowledge that Long Haul engaged in any publishing activities at 3124 Shattuck Avenue; (2) their conduct falls within the criminal suspect exception; and (3) the individual University Defendants are subject to the good faith defense. The Court finds that there is evidence creating questions of fact which preclude summary judgment in favor of either party on this claim.

However, with respect to EBPS's PPA claim, Plaintiffs' sole support for their assertion that EBPS disseminates a newspaper, book, broadcast, or similar public communication to the public is a printout from Long Haul's website as it existed at the time of the search. (Palmer Decl., ¶ 11, Ex. 1.) Under the heading "Ongoing events at the Long Haul," the website stated:

> East Bay Prisoner Support is a newly formed prison abolitionist project.... Find out about and connect with other anti-prison groups that are fighting the growing prison-industrial complex. Browse through and/or donate to our growing prison-related book/zine/video library. Read and reply to prisoner mail. Correspond with Political Prisoners. And/or initiate your own prisoner related project.

(*Id*.) Even if Defendants reviewed this section of Long Haul's website, this language would not have put a reasonable officer on notice that EBPS disseminated public communications. Plaintiffs argue that this language was sufficient to put the officers on notice that "EBPS distributed books, zines and videos to the public and to prisoners." (Plaintiffs' Reply at 21.) However, merely corresponding with individual prisoners is not akin to disseminating "a newspaper, book, broadcast, or other similar form of public communication." Although it is

13

possible that within the correspondence, EBPS members sent books, zines and videos to prisoners, a reasonable officer would not be aware of such conduct from the mere statement that EBPS corresponded with prisoners. Moreover, even if EBPS members did send books, zines and videos to prisoners, nothing in this website material would put a reasonable officer on notice that work product or documentary materials under the PPA were in the EBPS office. Finally, there is no evidence in the record that any of the officers even saw this portion of Long Haul's website. Accordingly, the Court grants Defendants' motion for summary judgment on EBPS's PPA claim.

### 3. Plaintiffs' Claim for Declaratory Relief.

Defendants move for summary judgment against Plaintiffs' claim for declaratory relief on the grounds that all of Plaintiffs' claims for constitutional violations fail. However, as discussed above, except for Plaintiffs' claims for injunctive relief against the University Defendants in their official capacities and EBPS's PPA claim, the Court is denying Defendants' motion for summary judgment. Therefore, the Court denies Defendants' motion for summary judgment as to Plaintiffs' claim for declaratory relief.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment as to Plaintiffs' claims for injunctive relief against the University Defendants in their official capacities and EBPS's PPA claim. The Court DENIES the remainder of Defendants' motion for summary judgment and DENIES Plaintiffs' motion for summary judgment in full.

Pursuant to Northern District Civil Local Rule 72-1, this matter is HEREBY REFERRED to a randomly assigned Magistrate Judge for purposes of conducting a settlement conference, to be completed within sixty days, if possible.

**IT IS SO ORDERED.**

Dated: July 26, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE